BOIES SCHILLER FLEXNER LLP
ALISON L. ANDERSON (SBN 275334)
*alanderson@bsfllp.com*
725 S Figueroa St, 31st Floor
Los Angeles, CA 90017
Tel: (213) 995-5720/ Fax: (213) 629-9022

SIGRID S. MCCAWLEY*
*smccawley@bsfllp.com*
ALISHA MORICEAU*
*amoriceau@bsfllp.com*
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Tel: (954) 356-0011/ Fax: (954) 356-0022

KENYA K. DAVIS*
*kdavis@bsfllp.com*
1401 New York Ave., NW
Washington, DC 20005
Tel: (202) 237-2727/ Fax: (202) 237-6131

ERICA N. SWEETING*
*esweeting@bsfllp.com*
55 Hudson Yards, 20th Floor
New York, NY 10001
Tel: (212) 446-2300/ Fax: (212) 446-2350
*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiffs Rosey Fletcher,*
*Erin O'Malley, and Callan Chythlook-Sifsof*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEY FLETCHER, ERIN O'MALLEY, AND CALLAN CHYTHLOOK-SIFSOF<br><br>Plaintiffs,<br><br>v.<br><br>PETER FOLEY, GALE "TIGER" SHAW III, UNITED STATES SKI & SNOWBOARD, AND UNITED STATES OLYMPIC AND PARALYMPIC COMMITTEE,<br><br>Defendants. | Case No. 2:23-cv-00803<br><br>**COMPLAINT** |

**COMPLAINT**

Plaintiffs Rosey Fletcher, Erin O'Malley, and Callan Chythlook-Sifsof (together, "Plaintiffs") for their Complaint against Defendants Peter Foley ("Foley"), Gale "Tiger" Shaw ("Shaw"), the United States Ski and Snowboard ("USSS"), and the United States Olympic and Paralympic Committee ("USOPC") (together, "Defendants"), allege as follows:

## INTRODUCTION

1.     This case involves the molestation, exploitation, sexual abuse, and harassment of world-renowned athletes associated with the United States Snowboard Team ("the Team"), at the hands of their trusted coach, Peter Foley, with the assistance, permission, and endorsement of United States Ski and Snowboard personnel and the United States Olympic and Paralympic Committee.

2.     Athletes are uniquely vulnerable to abuse because, among other things, athletes want and need the approval of their coaches.  Coaches are the gatekeepers to an athlete's success and have tremendous power over an athlete's future.  Founding coaches of a sport, as is Foley to snowboarding, yield a level of power that can be career ending for an athlete if they do not comply with the coach's demands.  In fact, several athletes knew the cost and stayed silent about his behavior for many years to preserve their careers.  Many still do.

3.     Where there is a lack of effective reporting and investigatory mechanisms for athletes, there becomes a breeding ground for predators, such as Peter Foley, to take advantage of their positions and prey on others.

4.     Moreover, the management teams of the athletic organizations responsible for reporting signs of abuse chose to protect the reputation of their organizations, coaches, and colleagues to the detriment of the athletes they serve.  In this case, Defendants put money and medals above the safety of the athletes who were the pillars of their organizations.

5.     Having made its Olympic debut at the 1998 Winter Olympic Games

in Japan, the snowboarding community has remained relatively small, making it prone to power imbalances which only contribute to a false sense of security and obligatory silence.

6.     Foley is the premier and most acclaimed snowboarding coach in the United States and arguably the world.  Foley has held immense power in the snowboarding community since becoming the first coach of the Team after its inception in 1994.  He has been responsible for the careers of several medalists and advised hundreds of others.  To say he is the Kingmaker and Queenmaker of the sport would not be an overstatement.

7.     From his position of power and respect, Foley garnered the trust of athletes and their families.  He then exploited his relationship with athletes and subordinate personnel to coerce sexual acts through force, manipulation, emotional abuse, intimidation, and retaliation.  This unequal power dynamic created an environment of coercion that was stronger and more effective than any physical weapon could ever be.

8.     Foley's predatory behavior was constant and well known to members and associates of the Team, the USSS, and the USOPC.

9.     Foley's widespread sexual misconduct did not occur without the help of others.  Foley's abuse was reported to executives of the USSS and the USOPC on numerous occasions by multiple athletes who were coached by Foley, yet no action was taken.  Instead, over time, organizations and individuals banned together with Foley to facilitate and conceal his pattern of unwanted sexual abuse.  This union of organizations and individuals became part of the growing "Foley Sexual Abuse and Cover Up Enterprise."  The Foley Sexual Abuse and Cover Up Enterprise had many participants, grew over time in an effort to further cover up Foley's misconduct, and included Foley, the USSS, the USSS's executives, the USOPC, the USOPC's executives, Gale "Tiger" Shaw, Alan Ashley, Abbi Nyberg,

Jeffery Archibald, Allison Pitt, Lisa Kosglow, and Sophie Goldschmidt.   There may be other members of the Foley Sexual Abuse and Cover Up Enterprise who are currently unknown but discoverable through the discovery process.

10.     Had the USSS or the USOPC taken the safety of their young athletes seriously, Foley's behavior could have been prevented.  Instead, for nearly twenty years, coaches and executives at both organizations enabled Foley's behavior, refused to act, and helped cover up Foley's behavior, allowing him to continue his pattern of abuse.

11.     Several athletes and personnel were not allowed to pursue economic opportunities in the snowboarding industry due to Foley's cherry picking, which was directly tied to a quid pro quo for his sexual abuse and harassment.  There were: (1) athletes who were forced to comply with Foley's demands and therefore were allowed to pursue medals and sponsorship opportunities, (2) athletes and personnel who suffered from Foley's abuse and the aftershocks and trauma caused them to forego economic opportunities they would have pursued but for the abuse they suffered at the hands of Foley, and lastly (3) athletes and personnel who did not participate in the abuse were ultimately punished by Foley, including by not being allowed to compete in marquee competitions and thus not allowed to pursue lucrative sponsorship opportunities.

12.     As alleged further herein, Foley abused his position of power in the snowboarding community to garner loyalty and trust while instilling fear and intimidation.  Foley did so all while USSS and USOPC shielded him, disregarded allegations, and failed to protect the female athletes of their organizations.

13.     Due to Defendants' conduct, Plaintiffs and countless other victims have been immeasurably and permanently harmed.

**PARTIES**

14.   Rosey Fletcher is an individual who resides and is domiciled in Alaska.

15.   Erin O'Malley is an individual who resides and is domiciled in California.

16.   Callan Chythlook-Sifsof is an individual who resides and is domiciled in Alaska.

17.   Defendant Peter Foley is an individual who resides and is domiciled in Oregon.

18.   Defendant Gale "Tiger" Shaw III is an individual who resides and is domiciled in Utah.

19.   Defendant United States Ski & Snowboard is the national governing body for Olympic skiing and snowboarding, with its principal place of business and headquarters in Park City, Utah.

20.   Defendant United States Olympic & Paralympic Committee is a federally chartered nonprofit corporation, 36 U.S.C. § 220502(a), with the capacity to sue and be sued, 36 U.S.C. § 220505(b)(9), with its principal place of business and headquarters in Colorado Springs, Colorado.

## JURISDICTION, VENUE, AND CALIFORNIA'S SEXUAL ABUSE AND COVER-UP ACCOUNTABILITY ACT

21.   This Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367 for the state law claims alleged.

22.   This Court has personal jurisdiction over all Defendants because they have purposefully availed themselves of the privilege of doing business in California and this lawsuit arises out of and relates to their contacts with California.

23.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)–(c) because USSS and USOPC conduct substantial business throughout this district, including, but not limited to sponsoring training camps, overseeing local ski and snowboard organizations, evaluating athletes; events giving rise to claims herein occurred in this district; and at least one Defendant is a corporation subject to the personal jurisdiction of this District.

24.     This action is timely under the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, and California's Sexual Abuse and Cover Up Accountability Act. California's Sexual Abuse and Cover Up Accountability Act (AB-2777) amended California Civil Procedure Section 340.16, extending the statute of limitations and opening up revival windows for adult survivors of sexual assault and related claims.

## FACTUAL BACKGROUND

25.     The USOPC was founded in 1894 and serves as both the National Olympic Committee and National Paralympic Committee for the United States. The USOPC describes its focus as "protecting, supporting and empowering America's athletes, and is responsible for fielding U.S. teams for the Olympic, Paralympic, Youth Olympic, Pan American and Parapan American Games, and serving as the steward of the Olympic and Paralympic movements in the U.S."

26.     The USSS was founded in 1905 and is the national governing body ("NGB") for competitive skiing and snowboarding. The USSS describes its mission as "to lead, encourage and support athletes in achieving excellence by empowering national teams, clubs, coaches, parents, officials, volunteers and fans."

27.     In 1994, the USSS named Defendant Foley the first head coach of the United States Snowboard Team. Foley served as head coach from 1994 through March 2022, when these claims herein came to the surface.

28.     On the Team, Foley coached both male and female athletes, which at times included athletes who were minors.

29.     At Foley's direction, female and male athletes and employees were routinely forced to share rooms at hotels and even beds (2–4 individuals per bed) with Foley and with each other while traveling to training camps and USSS- and USOPC-sponsored competitions, which normalized inappropriate conduct and gave easy access for Foley to abuse athletes.  At times, Foley, male coaches, and staff were sharing beds with multiple teenage girls.  Rosey, for example, describes attending a training camp at the age of 19, where she shared a bed with her coach, Foley, and another young female athlete.  This was all while athletes as young as 14 traveled and trained with the Team.

30.     Foley's power within the USSS organization extended beyond its athletes.  As the first and only head coach of the Team since the organization's inception, Foley wielded power over the operations side of the organization, as well.  For example, it was well known that Foley decided which members of the communications and event teams could attend competitions and gain special access to press areas at those competitions.

31.     During his time as head coach, Foley destroyed the careers of multiple women and girls on the Team or associated with the Team by sexually assaulting, mentally abusing, and exploiting them and retaliating against those who refused to give in to his perverted desires.

32.     Foley sexually and/or mentally abused at least three of the snowboard athletes he coached on the Team.

33.     Foley's sexual abuse involved, among other things, digital vaginal penetration, forceful groping and fondling, and sexual comments—all of which were unconsented and unwanted.

34.     Plaintiffs Rosey Fletcher, Erin O'Malley, and Callan Chythlook-Sifsof were athletes who competed for the Team and were coached by Foley.

35.     Foley used his coaching position and authority within the USSS and USOPC to sexually abuse, manipulate, batter, and control subordinate athletes.

36.     Foley would invite young female athletes to his hotel room, where he would be in bed with other young female athletes.

37.     Often times, Foley would socialize with athletes outside of snowboarding practice, competitions, or training camps, including attending social outings.

38.     Foley brought athletes who were minors, whom he coached and were entrusted in his care, to bars and night clubs and encouraged underage drinking.  At said outings, Foley would creepily watch young women, Team female athletes included, as they danced, frothing over them, and making crude comments about their bodies to their peers.

39.     Foley and other male coaches made comments about female athletes' bodies and at times, encouraged female athletes to lose weight, claiming that the weight loss would make them more sexually attractive, even though additional body mass is advantageous in snowboarding as a sport.

40.     Foley and other male coaches would laugh when male athletes made sexually forward comments toward their peers and subordinates.  Perhaps most egregiously, on one occasion, a male athlete told a story, in the presence of other female athletes, about coercing a woman into giving him oral sex, but he then degradingly pushed her off of him when he was unsatisfied with her performance. Foley joined the other male coaches and athletes in laughter and did not punish the male athlete storyteller.

///

///

41.    This was not a surprise as Foley, himself, routinely talked about pornography and other sexual acts openly in front of athletes he coached no matter their age or gender.

42.    Male athletes would regularly get intoxicated after races and try to kiss female athletes without their consent.

43.    Male coaches, including Foley, would slap female athletes' butts when they finished their races, even though the coaches would not similarly slap the butts of male athletes.

44.    Physical assault did not stop with slapping butts.  Notably, a female athlete once spilled barbeque sauce on her chest while eating and a male coach approached her and licked it off her chest without warning or her consent.

45.    Additionally, male athletes and coaches, Foley included, would bust into hotel rooms, get in the beds with female athletes, and proceed to "hump" or imitate sexual acts with the legs of said female athletes.

46.    These same male athletes and coaches would also grab the bras of female athletes out of their dresser drawers and run down the hall with them.

47.    This toxic culture which led to the harassment, molestation, exploitation, and assaults of Plaintiffs bled across the organizations for an extensive period and was obvious to everyone who participated on, was associated with, or oversaw the Team.  The message was clear: play along and stay on the team to pursue your career or refuse to play along and lose your shot to pursue your future in a sport you love.  Thus, even after victims were assaulted they did not reveal that abuse to anyone for fear of being ostracized by their peers and removed from the Team by Foley and other coaches.

48.    From the time of its inception until 2018, all of the coaches and staff, with the exception of one or two physical therapists, were exclusively male.  This gender bias was also reflected in the leadership of the organization.  Thus, when a

**COMPLAINT**

female athlete did wish to report abuse there was not anyone available to report to and feel safe.

49.     The USSS and the USOPC knew of Foley's sexual conduct, abuse of power, and controlling behavior; yet, the USSS and the USOPC empowered him to be the gatekeeper for which athletes were selected to compete in competitions, including the Olympics.

50.     If athletes failed to comply with Foley's sexual advances and demands or complained about the sexually charged and harassing environment, they would be punished by not being selected to compete, attend, or participate in competitions, including the Olympics.

51.     At no time during the periods of time alleged did the USSS or USOPC have in place a reasonable system or procedure to investigate, supervise, and monitor the Team's coaches or staff, including Foley, to prevent sexual and verbal abuse, pre-sexual grooming, sexual harassment, or the molestation of children and young adults, nor did they implement a system or procedure to oversee or monitor conduct toward athletes and others in their care.

52.     When Plaintiffs reported Foley's abuse, they were ignored, intimidated, or provided with misinformation.  Moreover, their allegations and any attempt at an investigation was ultimately intercepted by the Foley Sexual Abuse and Cover Up Enterprise, which included the very members of the USSS and the USOPC entrusted with protecting their welfare and responsible for reporting said abuse.

53.     Meanwhile, Foley continued to maintain control over athletes and received praise and protection.

54.     Foley's sexual abuse and the misconduct of other Defendants came to the public's attention in February 2022, during the Beijing Olympics, when Callan Chythlook-Sifsof bravely spoke out in an Instagram post.

55.     After Callan's post, Plaintiffs Rosey and Erin, revealed that they had suffered sexual abuse against them at the hands of Foley.

56.     USOPC "temporarily suspended" Foley during the Olympics following the post.  Despite the suspension, video footage showed Foley in a restricted area at the finish line of the Women's Snowboard Cross event.

57.     Foley was ultimately disciplined for "favoritism" but his exploitation and abuse as head coach went well beyond that.

58.     Additionally, after the Olympics' temporary suspension expired, there was no suspension in place, which permitted Foley to attend a trip to Austria for a post-Olympics competition in early March 2022.  This allowed Foley intimate access to athletes to intimidate them into supporting him during the investigation.

59.     To this day, Plaintiffs continue to suffer depression, anxiety, and fear stemming from Foley's abuse.  Plaintiffs have also suffered from the humiliation, guilt, shame, and disgust of the sexual abuse and harassment they faced as a result of Foley's abuse of power.

**I.**     **Foley and the Foley Sexual Abuse and Cover Up Enterprise were designed to Manipulate, Sexually Abuse, and Control Athletes.**

   **A.**     **Rosey Fletcher and the Foley Sexual Abuse and Cover Up Enterprise.**

60.     Rosey is a three-time Olympic snowboarder from Girdwood, Alaska. She is a world renowned athlete who competed at the 1998 Winter Olympics in Nagano, the 2002 Winter Olympics in Salt Lake City, and the 2006 Winter Olympics in Turin, Italy.

61.     Rosey knew Foley controlled whether or not she would become an Olympian because "whatever he says goes."

62.     In fact, Rosey knew Foley would be the determining factor as to whether or not she would have a successful professional snowboarding career because Foley had immense power in the snowboarding community.

63.     Given Foley's connections in the snowboarding industry, Foley's approval, mentorship, and professional support were invaluable to Rosey.  She believed Foley could open doors for her so that she could achieve professional success in the industry.

64.     On more than one occasion, Foley exploited their unequal power dynamic to sexually abuse and harass Rosey at USSS- and USOPC-sponsored competitions.

65.     Foley sexually assaulted Rosey when she was just 19 years old.  All the athletes and coaches were sharing a room after a training camp before their flights the next day.  Rosey was on the edge of the bed asleep and felt someone sneak in behind her in the bed.  It was Foley.

66.     Foley reached his left arm over Rosey's body and put his fingers inside her, digitally penetrating the teenage Rosey without her consent.

67.     On a separate occasion, Foley sexually assaulted Rosey again.  That time, Foley intercepted her as she was exiting a postrace event and suddenly began to forcibly kiss her without her consent.

68.     Rosey did not feel like she could tell Foley to stop because of his power over her career, even though she felt his conduct was an assault and did not want him to touch her in any way.

69.     Rosey felt vulnerable, afraid, and alone.

70.     In 2006, after Rosey won an Olympic Medal at Winter Olympics, Foley approached her at a postrace event in Turin, Italy and said he still remembered "how she was breathing," referring to the first time he assaulted her.

71.     Foley used his position of power and authority over Rosey to force her to comply with his sexual demands.

72.     Rosey feared physical and professional retaliation.  She believed that if she did not keep silent or adhere to Foley's desires, he would prevent her from professional opportunities or reaching her goals, and she would never succeed in her career as a snowboarder.

73.     The shock and confusion resulting from the abuse and trauma, coupled with Foley's authoritative demands and manipulative assertions led Rosey to suppress the abuse and remain silent about Foley's conduct.

74.     Rosey did not pursue legal remedies until now as a direct and proximate result of Foley's intimidation, control, manipulation, and the affirmative steps that he took during the abuse to keep her silent, and the affirmative steps the Foley Sexual Abuse and Cover Up Enterprise, the USSS, and the USOPC took in order to prevent Rosey from reporting Foley's misconduct.

75.     Accordingly, any statute of limitations applicable to Rosey's claims, if any, is tolled and Foley is estopped from raising such a defense as his actions described above deprived Rosey of the opportunity to commence this lawsuit before now.

76.     Moreover, Rosey's claims are also timely because they are revived under California Assembly Bill 2777 (AB-2777), also known as the Sexual Abuse and Cover Up Accountability Act, which amends California Civil Procedure Section 340.16.

77.     Rosey has suffered from the humiliation, guilt, shame, and disgust of the sexual abuse and harassment she faced as a result of Foley's abuse of power. Rosey has also expended significant costs on therapy and suffers mental anguish, severe emotional distress, and loss of enjoyment of life as a direct and proximate result of Foley's abuse.

1
2

**B.   Erin O'Malley and the Foley Sexual Abuse and Cover Up Enterprise.**

3
4
5
6
7

78.   Erin is a former professional snowboarder.  She joined the Team the second year after its inception, competing for the Team in 1995 until her untimely retirement in 2003.   During her career, she competed at elite national and international snowboarding competitions, including  in the World Cup and Winter Olympics.

8
9
10

79.   Erin knew Foley controlled whether or not she would have a successful professional snowboarding career because Foley's power in the snowboarding community.

11
12

80.   Given Foley's connections in the snowboarding industry, Foley's approval, mentorship, and professional support were invaluable to Erin.

13
14
15

81.   Erin was mentally and verbally abused and sexually assaulted and harassed at USSS- and USOPC-sponsored competitions by Foley who exploited their unequal power dynamic.

16
17

82.   Foley began mentally and verbally abusing Erin when she was just 15 years old.

18
19
20

83.   Foley would comment on Erin's body weight, calling her "chubby" and suggesting that she lose weight.  This caused Erin to spiral.  She stopped eating, developed an eating disorder, and worked out excessively.

21
22
23

84.   Erin ultimately experienced massive weight loss.  To which, Foley praised her, even though weight loss would negatively impact her performance as a snowboarder.

24
25
26
27

85.   One evening after a competition, Foley cornered Erin inside of an elevator and pinned her against the back wall of the elevator.  Foley began groping Erin and forcibly trying to kiss her—all without her consent.  Rosey was in the elevator with Erin and Foley and witnessed the assault.

28

86.    Erin tried to get away from Foley.  When the elevator doors opened, Erin and Rosey ran out and down the hallway as Foley chased them to their room.

87.    In the room, Erin and Rosey pleaded with Foley to leave them alone, saying "no" and begging him to stop.

88.    As Rosey begged Foley to leave the hotel room, Erin hid on the side of a bed in utter panic, praying Foley would not find her.

89.    Foley ultimately left the room.

90.    Both Erin and Rosey were terrified by the experience and feared for their safety.

91.    The trauma resulting from the mental abuse and sexual assault Erin endured, coupled with Erin's fear of physical and professional retaliation, led Erin to suppress the traumatic moment and remain silent about Foley's abuse.

92.    Foley's mental abuse, which caused Erin to develop an eating disorder, directly led to the premature end of Erin's professional snowboarding career.  But for Foley's abuse, Erin's professional snowboarding career would have continued.

93.    Erin believed there was no one she could report Foley's behavior to. Erin did not report the assault until March of 2022 as a direct and proximate result of the Foley's manipulation and intimidation, the affirmative steps that he took during the abuse to keep her silent, and the affirmative steps the Foley Sexual Abuse and Cover Up Enterprise, the USSS, and the USOPC took in order to prevent Erin from reporting Foley's misconduct.

94.    Accordingly, any statute of limitations applicable to Erin's claims, if any, is tolled and Foley is estopped from raising such a defense as his actions described above deprived Erin of the opportunity to commence this lawsuit before now.

95.    Moreover, Erin's claims are also timely because they are revived under AB-2777, also known as the Sexual Abuse and Cover Up Accountability Act, which amends California Civil Procedure Section 340.16.

96.    Erin has suffered from the humiliation, guilt, shame, and disgust of the sexual abuse and harassment she faced as a result of Foley's abuse of power. Erin has also expended significant costs on therapy and suffers mental anguish, severe emotional distress, and loss of enjoyment of life as a direct and proximate result of Foley's abuse.

**C.    Callan Chythlook-Sifsof and the Foley Sexual Abuse and Cover Up Enterprise.**

97.    Callan is a former professional snowboarder who began competing at the elite level in snowboard cross, a snowboarding event, when she was just 14 years old.  At the age of 15, Callan was invited to her first Winter X Games competition in Aspen, Colorado, sponsored by the USSS.  She competed in national and international competitions on behalf of the United States in snowboard cross with the Team from 2005 until 2014, including the Winter Olympics in Vancouver in 2010.

98.    Callan knew Foley's tremendous power in the snowboarding community could make or break her career.

99.    Given Foley's connections in the snowboarding industry, Foley's approval, mentorship, and professional support were invaluable to Callan who aspired to be an Olympian.

100.   Foley exploited their unequal power dynamic, exposing Callan to his toxic culture of sexual abuse and harassment at USSS- and USOPC-sponsored competitions.

101.   Callan first met Foley as a young athlete when she was just 14 years old.  Shortly after making the Team, Callan recalls him whispering between her

and another teammate's ear that he wanted to "put [his] tongue inside her pussy" as he pointed to a younger girl on the dance floor of a bar.

102.  Foley brazenly took nude photos of female athletes.  Callan knew Foley had taken nude photos of female athletes on the Team.

103.  Foley's abuse and control allowed others to feel comfortable demonstrating similar abusive behavior, which cultivated a demeaning environment.

104.  Despite being in a position of power and discipline, Foley would not punish or correct individuals on the Team who exhibited inappropriate conduct, including those who made sexually explicit comments, said racially discriminatory remarks, or participated in sexual abuse.

105.  Instead, Foley joined in: laughing, making similar comments, and revealing sex stories of his own—all in the presence of his subordinates, no matter their age.

106.  Callan was forced to be subjected to these conversations and actions, enduring abuse of all kinds, including racial discrimination from members of the Team and harassment. Members of the Team routinely engaged in gross sexual misconduct in Callan's presence.

107.  It was widely known that the culture of the Team was rooted in and permeated with recklessness.  The Team knew of and permitted underage drinking and encouraged partying and socializing amongst coaches and athletes.  This obviously created a breeding ground for sexual violence and assault.

108.  On one occasion, Callan attended her first Junior World Championship event on behalf of the USSS Team in Zermatt, Switzerland in 2005.  Then just 16 years-old, Callan joined the many other athletes to celebrate after the events.

109.   What should have been a highlight of the beginning of her career, became one of the most gruesome nights.  Callan, at 16 years of age, was sexually assaulted and raped by a male coach nearly three times her age from an opposing team.

110.   Although it was not a USSS coach that sexually assaulted Callan, USSS set the stage for the assault to occur and failed to change the toxic environment that would facilitate many more USSS athletes and USSS personnel to be harmed in the same way.

111.   Indeed, Abbi Nyberg, who was a program manager with USSS at the time of this incident and who travelled with the team for the particular competition, knew of the excessive drinking between coaches and young athletes and grossly failed to implement *any* safeguards to protect Callan.  It is because of Nyberg and the USSS's failures to protect its athletes that Callan endured this attack.

112.   Absent vague and unspecified verbal "cautions" to not drink, Nyberg and the USSS never implemented any parameters or safeguards to protect athletes.  At no point did the Team warn parents or other athletes of the nature and culture of the Team trips that often-included underage drinking and partying.

113.   Over the years, Callan was so anxiety ridden from the toxic environment and an awareness of Foley's abuse, she made efforts to protect herself by distancing herself from Foley, other coaches, and athletes of the Team that made her uncomfortable.

114.   Callan's attempt at protecting herself from abuse led to a decline in her professional opportunities.

115.   She was singled out, stopped receiving adequate coaching from Foley, ignored for competitions despite her skills, and ultimately forced to retire.

116.   Callan's lack of trust in her coach severely affected her mental health and her athletic performance.

117.   Despite all she endured, during the summer of 2021, Callan was named a coach for the U.S. Paralympics Snowboarding National Team.

118.   Callan knew she now had athletes in her care to protect even though none of the USSS executives, agents, or coaches ever protected her.

119.   Callan feared physical and professional retaliation for herself and the athletes she coached which led her to suppress her disdain for Foley's behavior and remain silent about Foley's conduct.

120.   Callan publicly reported Foley's behavior and the toxic culture in an Instagram post in February 2022.

121.   Callan's delayed public reporting of the abuse she suffered and the conduct that was allowed in this small community is a direct and proximate result of Foley's intimidation and the affirmative steps that he, the Foley Sexual Abuse and Cover Up Enterprise, the USSS, and the USOPC took in order to prevent Callan from reporting Foley's misconduct.

122.   Accordingly, any statute of limitations applicable to Callan's claims, if any, is tolled and Foley is estopped from raising such a defense as his actions described above deprived Callan of the opportunity to commence this lawsuit before now.

123.   Moreover, Callan's claims are also timely because they are revived under AB-2777, also known as the Sexual Abuse and Cover Up Accountability Act, which amends California Civil Procedure Section 340.16.

124.   In the years following the assault, Callan has experienced panic attacks, suicidal thoughts, depression, anxiety, and fear stemming from Foley's abuse.  Callan has also suffered from the humiliation, guilt, shame, and disgust of the sexual abuse and harassment she faced as a result of Foley's abuse of power.

## II.  **The Foley Sexual Abuse and Cover Up Enterprise, including the USSS, the USOPC, and Gale "Tiger" Shaw Protected Foley, Allowed Him Intimate Access to Athletes, Ignored Allegations Against Him, and Interfered With Investigations Concerning His Abuse.**

125.    Since its inception, the USSS has failed to treat female athletes on the snowboarding and ski teams as professionals and failed to protect the safety of the young athletes in their care, including at USSS- and USOPC-sponsored competitions.

126.    Defendant Gale "Tiger" Shaw was the President and Chief Executive Officer ("CEO") of the USSS from March 2014 to March 2022.  Before that, Shaw served as the Chief Operations Officer ("COO") of the USSS in 2013.

127.    Coaches and high-level executives encouraged and facilitated irresponsible and illegal behavior around alcohol, including underage drinking at USSS- and USOPC-sponsored competitions and driving under the influence.

128.    The toxic culture of abuse fostered by Foley and others at the USSS and the USOPC bled across the organizations over a long period of time.

129.    The USSS, the USOPC, and Shaw enabled Foley's exploitation and abuse.

130.    The USSS, the USOPC, and Shaw knew about the unlawful behavior yet failed to fulfill their duties to keep athletes safe.

131.    The United States Center for SafeSport ("SafeSport") was established under the auspices of the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017 ("the SafeSport Act").  *See* 132 Stat. 318, Pub. L. 115-126.

132.    The SafeSport Act provides a cause of action for conduct Plaintiffs were subjected to at the hands of Foley.  For example, under the SafeSport Act,

> Any person who, while a minor, was a victim of a violation of section
> 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A,

2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred. The court may also award punitive damages and such other preliminary and equitable relief as the court determines to be appropriate.

*Id.*

133. The SafeSport Act established SafeSport as an independent entity to investigate reports of abuse and to protect athletes from abuse across all Olympic Sports (collectively referred to as "the Movement"). The SafeSport Act establishes reporting requirements for a broad category of members of the NGBs.

134. SafeSport established a SafeSport Code ("the Code") in 2017 that is periodically modified. The Code defines SafeSport's authority and jurisdiction, prohibited categories of misconduct, and SafeSport's process for responding to and resolving abuse and misconduct claims affecting the U.S. Olympic and Paralympic Movement.[1] The operative SafeSport Code prohibits much of the conduct that Plaintiffs were subjected to at the hands of Defendants.

135. The Code is binding on NGBs and provides SafeSport with "the exclusive jurisdiction to investigate and resolve allegations that a Participant engaged in . . . 1. Sexual Misconduct . . . 3. Misconduct Related to Reporting . . . 4. Misconduct Related to Aiding and Abetting[.]"[2] The Code bars NGBs from investigating and resolving allegations of misconduct that SafeSport has exclusive jurisdiction over, although it allows NGBs to "implement necessary and

---

[1] *See* https://uscenterforsafesport.org/response-and-resolution/safesport-code/.
[2] The SafeSport Code, effective April 1, 2022, at Section IV.A., https://uscenterforsafesport.org/wp-content/uploads/2022/02/2022-SafeSport-Code.pdf.

appropriate measures, up to and including suspension, to address any allegations of misconduct."[3]

136.   Moreover, the Code provides that:

> The obligation to report is broader than reporting a pending charge or criminal arrest of a Participant; it requires reporting to the Center any conduct which, if true, would constitute Sexual Misconduct or Child Abuse.  The obligation to report to the Center is an ongoing one and is not satisfied simply by making an initial report. The obligation includes reporting, on a timely basis, all information of which an Adult Participant becomes aware, including the names of witnesses, third-party reporters, and Claimants.

137.   An "Adult Participant" with duties to report sexual misconduct under the Code, includes:

> Any individual who is seeking to be, currently is, or was at the time of an alleged Code violation:
>
> a.   A member or license holder of an NGB, LAO, or the USOPC;
> b.   An employee or board member of an NGB, LAO, or the USOPC;
> c.   Within the governance or disciplinary jurisdiction of an NGB, LAO, or the USOPC; and
> d.   Authorized, approved, or appointed by an NGB, LAO, or the USOPC to have regular contact with or authority over Minor Athletes.

138.   Prior to reporting to SafeSport, Callan made formal complaints to Shaw that she had personal knowledge of multiple counts of Foley's misconduct. Shaw was an "Adult Participant" with duties to report sexual misconduct under the SafeSport Act and the Code.  Despite his reporting obligations, Shaw failed to take action to protect young athletes and refused to instruct Plaintiffs on how to report

[3] The SafeSport Code, effective April 1, 2022, at  Section V.A., https://uscenterforsafesport.org/wp-content/uploads/2022/02/2022-SafeSport-Code.pdf.

to SafeSport.  In particular, Shaw never sanctioned Foley, implemented *any* new procedures for co-ed traveling, or even encouraged other athletes that the USSS took sexual misconduct and safety seriously.

139.   In or about and between 2020 and 2022, Callan again reported Foley's sexual abuse, including that he was taking nude photos of young women on the Team and within the USSS organization without their consent, to Abbi Nyberg, a Program Manager at USSS and one of the few female employees of the organization.  Callan trusted that Nyberg would protect her and other female athletes, but Nyberg failed to take the required action.  Nyberg was an "Adult Participant" with duties to report sexual misconduct under the SafeSport Act and the Code.  Despite Nyberg's position at USSS, she did not report or take any steps in response to Callan's reporting to ensure the safety of athletes.

140.   Later, Callan yet again reported Foley's abuse, including that he was taking nude photos of young women on the Team and within the USSS organization without their consent, to Jeffery Archibald, who was an assistant coach on the Team.  Archibald was an "Adult Participant" with duties to report sexual misconduct under the SafeSport Act and the Code.  Archibald failed to fulfill his reporting obligations.

141.   In March of 2022, Rosey, Erin, and Callan reported Foley's sexual abuse to the current General Counsel for the USSS, Allison Pitt, who failed to fulfill her reporting obligations and obstructed Plaintiffs' efforts to report by providing them false information about SafeSport and SafeSport's process.  Indeed, Pitt falsely told Plaintiffs that they could not report to SafeSport if they wished to remain anonymous.  This was simply not true.  Section X.A.2, specifically provides that "Nothing in this Code shall be construed to require a victim of child abuse or other misconduct to self-report."  Fully aware of Plaintiffs' individualized fear of

Foley, Pitt also warned Plaintiffs that they would be required to confront Foley face-to-face if they reported to SafeSport despite that not being a requirement.

142. Pitt's response to Rosey, Erin, and Callan's reports caused Plaintiffs emotional distress, as they thought their claims were finally going to be heard and that there was going to be action taken against Foley. Pitt was an "Adult Participant" with duties to report sexual misconduct under the SafeSport Act and the Code. Plaintiffs' interactions with Pitt resulted in additional confusion and delayed legitimate investigative processes.

143. Rosey and Erin also reported the sexual abuse to Sophie Goldschmidt, the current and first ever female President and CEO of the USSS. Goldschmidt was an "Adult Participant" with duties to report sexual misconduct under the SafeSport Act and the Code. Goldschmidt provided Plaintiffs with hope that there would be a response to their sexual abuse claims. Instead, their complaints, once again, fell on deaf ears, and they were met with confusion and a failure to act.

144. After Plaintiffs endured Pitt's discouraging remarks that reporting to SafeSport would be an "extensive and challenging reporting process," Goldschmidt doubled down on Pitt's comments confirming that Pitt was "transparent that the process may take time."

145. In February 2022, Lisa Kosglow, who was a member of the USSS board, attempted to interfere with the investigation into Foley. Kosglow was an "Adult Participant" with duties to report sexual misconduct under the SafeSport Act and the Code. Kosglow, who is neighbors and good friends with Foley, called Rosey on February 16, 2022, and said Foley asked Kosglow if she would reach out to Rosey on his behalf.

146. Kosglow also impermissibly called Erin and tried to pressure her by explaining that Foley "was so devastated as a result of the abuse reports." Despite these direct complaints, Kosglow never reported the allegations to SafeSport as

promised.  Moreover, she violated the Code which is clear that—at all times—the USSS was precluded from independently investigating allegations of sexual abuse.

147.   In March 2022, Plaintiffs filed formal complaints with SafeSport against Foley, reporting their allegations of Foley's sexual abuse and harassment, and the USSS's impermissible interference.

148.   On March 18, 2022, SafeSport temporarily suspended Foley pending its investigation and listed Foley in the SafeSport database as a recipient of temporary restrictions with a general account of the charges pending against him.

149.   Despite the pending investigation, Foley went to a post-Olympics competition, where he intimidated athletes and sought assurances from them that they would speak up in his favor amidst the sexual abuse allegations against him.

150.   Despite the pending sexual abuse claims against him, the USSS and the USOPC did nothing to prevent Foley from attending this USSS- and USOPC-sponsored competition which allowed him intimate access to athletes at the precise time the allegations of this complaint were publicly lodged.

151.   On March 20, 2022, the USSS released a statement that Foley was terminated by the organization after reports surfaced of his contribution to a "toxic culture among the team in the workplace where certain athletes were favored over others."  The USSS made this statement, specifying that Foley had not been suspended because of the accusations of sexual abuse, even though under the Code, the USSS had authority to take temporary measures and implement a safety plan to protect athletes against him and his sexual abuse.

152.   On March 22, 2022, ESPN released an article recounting the

///

///

///

**COMPLAINT**

experiences Plaintiffs suffered and reporting that they filed their complaints with SafeSport.[4]

153.   In response to the ESPN article, Senator Charles E. Grassley (R), on behalf of the Senate Judiciary Committee, sent a letter to Goldschmidt and Pitt, copying Ju'Riese Colon, the current CEO of SafeSport.   The letter expressed concern with the "sexual misconduct committed by Peter Foley" and "allegations of interference by U.S. Ski and Snowboard[.]"   The letter also stated that SafeSport had reported to the Judiciary Committee, pursuant to the SafeSport Act, that USSS was "interfering with an investigation concerning the abuse of athletes."   The letter went onto say:

> The reports shared by the Center are very troubling.   They allege that U.S. Ski and Snowboard leadership has been conducting its own investigation outside of the investigation being conducted by the Center, has failed to make notifications regarding sexual misconduct to the Center, and has failed to timely provide the Center with evidence in the possession of U.S. Ski and Snowboard.   Further, it has been reported that U.S. Ski and Snowboard has actively provided misinformation to individuals involved in the investigation in an effort to discourage participation in the Center's investigation and to attempt to identify who may be participating in the investigation.

154.   As of the date of the instant filing, SafeSport's investigations of the USSS's and Foley's wrongdoing remain ongoing.

**A.**   **The Foley Sexual Abuse and Cover Up Enterprise.**

155.   Throughout the alleged period, the Foley Sexual Abuse and Cover Up Enterprise had the common purpose of preventing (or attempting to prevent) the

---

[4]   https://www.espn.com/olympics/snowboarding/story/_/id/33564119/women-detail-new-sexual-assault-misconduct-allegations-ex-us-snowboard-coach-peter-foley.

reporting, prosecution, or disclosure of Foley's sexual abuse, sexual assault, mental abuse, and exploitive or retaliatory behavior.

156.   The Foley Sexual Abuse and Cover Up Enterprise also shared the common purpose of covering up Foley's sexual abuse, sexual assault, mental abuse, and exploitive or retaliatory behavior.   To achieve their common goals, Defendants hid from the general public the unlawfulness of Foley's conduct and suppressed and/or ignored warnings and complaints from Plaintiffs about Foley's conduct.

157.   Defendants' scheme and the above-described racketeering activities amounted to a common course of conduct intended to cause Plaintiffs and others to hide and conceal Foley's conduct.   Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Plaintiffs. Defendants' illicit activities are part of their ongoing business and constitute a continuing threat to Plaintiffs and each of their property.

158.   Plaintiffs have been injured in their property and business by reason of these violations.   Defendants interfered with Plaintiffs' current and prospective contractual relations, because Plaintiffs lost opportunities to work at certain competitions, were precluded from participating in competitions more suitable for their skill level and status as an elite athlete, and were forced into early retirement due to injuries exacerbated by a history of harassment.

159.   The efforts to protect Foley and cover up his grave abuse not only allowed for intimidation of current athletes—to get their public support of Foley— but it also involved efforts to stifle reporting so that Foley could continue to be protected at the peril of athletes.

160.   Had members of the Foley Sexual Abuse and Cover Up Enterprise not been complicit and had they reported or implemented safety mechanisms instead

of concealing Foley's predatory behavior, Plaintiffs would not have been injured. Therefore, Plaintiffs' injuries were directly and proximately caused by Defendants' racketeering activities.

161.   Foley, the USSS, the USOPC, and Shaw comprised the Foley Sexual Abuse and Cover Up Enterprise within the meaning of RICO, 18 U.S.C. 1961(4); that is, the Foley Sexual Abuse and Cover Up Enterprise constituted a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce. The Foley Sexual Abuse and Cover Up Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Foley Sexual Abuse and Cover Up Enterprise.

162.   The purposes of the Foley Sexual Abuse and Cover Up Enterprise were to develop the Team, and to recruit women and girls to participate in the sport and to engage in illegal sexual activity with Foley and Members of the Foley Sexual Abuse and Cover Up Enterprise.  By promoting the Foley Sexual Abuse and Cover Up Enterprise, keeping quiet about the criminal conduct, and enabling Foley and others, Members of the Foley Sexual Abuse and Cover Up Enterprise expected to receive financial opportunities and personal benefits, including increased power and status within the Foley Sexual Abuse and Cover Up Enterprise.

163.   The Foley Sexual Abuse and Cover Up Enterprise had the common purpose of preventing (or attempting to prevent) the reporting, prosecution, or disclosure of Foley's sexual misconduct through threats and misrepresentations to Plaintiffs.  In particular, the Foley Sexual Abuse and Cover Up Enterprise lured Plaintiffs away from making formal complaints with the appropriate channels of SafeSport by promising Plaintiffs they would investigate the conduct.  The Foley Sexual Abuse and Cover Up Enterprise shared the common purpose of intervening in Plaintiffs' efforts to report the sexual assault and harassment they witnessed and

endured.  Instead, those complaints were never investigated and no one from the USSS or the USOPC took action to remedy the gross harm caused by Foley and others.

164.   Participants in the Foley Sexual Abuse and Cover Up Enterprise determined its members and assigned each member with a specific task to fulfill these common purposes of using false pretenses to prevent individual Plaintiffs from reporting Foley's sexual misconduct.  Foley was personally aware and permitted the progress of these acts.

165.   Foley Sexual Abuse and Cover Up Enterprise participant Gale "Tiger" Shaw, former CEO of the USSS, became aware that Foley was pressuring young female athletes to take nude and sexually suggestive photos, yet failed to meet his reporting obligations.  As CEO, Shaw failed to use reasonable care in investigating Foley and failed to take reasonable steps to ensure the safety of minors and young women, including Plaintiffs, from sexual harassment, molestation, and abuse. Shaw never implemented or sought to create a reasonable system of reporting abuse allegations or mechanisms for coaches and staff to prevent pre-sexual grooming, sexual harassment, molestation and abuse of children and young adults.  Shaw's history of inaction was in furtherance of the goals and objectives of the Foley Sexual Abuse and Cover Up Enterprise: to facilitate an environment that permitted or encouraged Foley to continue to be a sexual predator against vulnerable female athletes.  While CEO of USSS, Shaw personally benefitted from Foley's standing as a coach with a history of coaching athletes to Olympic and World Cup victories during his tenure.

166.   Foley Sexual Abuse and Cover Up Enterprise participant Alison Pitt, former General Counsel of the USSS, failed to fulfil her reporting obligations and obstructed Plaintiffs' efforts to report.  Pitt lied to Plaintiffs about SafeSport and SafeSport's reporting process in an effort to conceal Foley's wrongdoing and

continue to benefit from Foley's coaching ability and longtime tenue with the USSS.  Pitt's conduct in intervening in the reporting process effectively prevented others from making their own independent reports because she falsely promised she would report to SafeSport.

167.  Foley Sexual Abuse and Cover Up Enterprise participant Lisa Kosglow, member of the USSS Board and personal friend of Foley, interfered with the investigation by calling Rosey and Erin.  Particularly, Kosglow called Rosey and said she was calling on behalf of Foley who directly requested that Kosglow reach out to Rosey to get her take on what was going on.  Kosglow also called Erin in order to discourage her from reporting the assault because Foley "was so devastated as a result of the abuse reports."  Kosglow knew of Foley's misconduct and agreed to personally contact certain Plaintiffs in order to threaten and discourage further reports so she could continue to benefit from the USSS's relationship with Foley as a board member and also preserve the personal friendship she has with Foley.

168.  Foley Sexual Abuse and Cover Up Enterprise participant Sophie Goldschmidt, current CEO of USSS, was also aware of Foley's misconduct and failed to follow her obligations to report the abuse.  Instead, she cautioned Callan and falsely reiterated that reporting to SafeSport is an "extensive and challenging process" (as Kosglow warned) in order to discourage Plaintiffs from reporting.  Goldschmidt was aware of Foley's misconduct, and not only failed to follow her duties to report the abuse, but instead exaggerated the complexity of the reporting process to SafeSport in an effort to evade her obligations, discourage Plaintiffs from reporting, and accommodate Foley's gross sexual misconduct.  As CEO of USSS, Goldschmidt personally benefitted from Foley's standing as a coach with a history of coaching athletes to Olympic and World Cup victories for decades.

169.   Foley Sexual Abuse and Cover Up Enterprise participant Abbi Nyberg, a program manager for USSS, developed a trusting relationship with Callan.  She listened to details of sexual abuse and harassment of Foley and other male athletes.  Callan explained that Foley was taking nude and sexually suggestive photos of young women on the team.  Nyberg then took a job as program manager of the USSS and never reported Foley's misconduct.  Nyberg gained Callan's trust and turned a blind eye to Callan's pleas when she personally gained a higher position in her career.  Nyberg's conduct in failing to report the misconduct effectively concealed additional testimony of Foley's misconduct.

170.   Foley Sexual Abuse and Cover Up Enterprise participant Alan Ashley, a former executive with USOPC, willfully endeavored to prevent athletes from continuing to report in order to protect claims against Foley's misconduct.

171.   USSS convened a Team athlete meeting to corral support for Foley.

172.   In furtherance of the Foley Sexual Abuse and Cover Up Enterprise, Defendants and other Members of the Abuse Enterprise travelled nationally and internationally to promote the Team, coach and compete at training camps and competitions, and recruit women and girls to engage with Foley and the Team.

173.   Foley and other Members of the Foley Sexual Abuse and Cover Up Enterprise invited women and girls to travel with the Team, participate in "development" programs, and train at USSS-sponsored training camps.

174.   Foley communicated with female athletes by email and telephone through the use of traditional calls and text messages.

175.   Foley and other Members of the Foley Sexual Abuse and Cover Up Enterprise also arranged for the women and girls to travel to meet Foley on occasion at training camps and other competitions.

176.    Among the means and methods by which Foley and other Members of the Foley Sexual Abuse and Cover Up Enterprise participated in the conduct of the affairs of the Foley Sexual Abuse and Cover Up Enterprise were the following:

a.    Committing, attempting, and aiding and abetting the commission of crimes and conspiring to commit crimes, including but not limited to engaging in non-consensual sexual activity, taking advantage of the power dynamic of coach over athlete, engaging in sexual activity with girls under 18 years old, extortion, coercion, and blackmail;

b.    Promoting Foley within the Abuse Enterprise and empowering him to have decision-making over who would succeed within the organization, including who would be selected to compete in the Olympics;

c.    Obtaining sensitive information about members and associates of the Abuse Enterprise to maintain control over them;

d.    Taking embarrassing, degrading, and sexually suggestive photos of female athletes to maintain power and control over them;

e.    Recruiting and grooming female athletes for Foley; and

f.    Isolating women and girls from friends and family and making them dependent on Foley and the Abuse Enterprise for their financial wellbeing.

///

///

///

**B. Foley, Emboldened by the Foley Sexual Abuse and Cover Up Enterprise, Defamed and Discredited Plaintiffs.**

177.   In early February 2022, via Instagram, Callan publicly exposed Foley's sexual misconduct, including reports of Foley having taken naked photos of female athletes for decades, making sexual explicit comments, and other abuse.

178.   Following Callan's public allegations, many other survivors of Foley's sexual abuse came forward, including Rosey and Erin.

179.   In February and March of 2022, Foley undertook a concerted and malicious effort to discredit Plaintiffs and to damage their reputation by claiming that Plaintiffs' reports of what they suffered from at the hands of Foley should not be credited.

180.   On or about February 11, 2022, Foley issued a false statement to the media and public designed to maliciously discredit Plaintiffs.  That statement contained the following deliberate falsehoods:

a.   That Foley "**was totally surprised by the allegations.**"

b.   That Foley "**vehemently deny the allegations.**"

181.   In addition to Foley's own verbal attacks and as part of Foley's efforts, he directed his agent and attorney, Howard Jacobs, to attack Plaintiffs' truthfulness and integrity and to accuse them of lying.

182.   On or about March 20, 2022, speaking through his authorized agent, Foley issued additional false statements to the media and public reiterating that Foley denies the allegations against him and in an attempt to further discredit Plaintiffs and damage their reputation, stating:

a.   "**Any allegations of sexual misconduct being made against [Foley] are false.**"

b.   "**Mr. Foley has not engaged in any conduct that violates the SafeSport Code.**"

Counting on the Foley Sexual Abuse and Cover Up Enterprise's protection, Foley issued these statements, knowing they were false, in a deliberate attempt to devalue Plaintiffs' credibility.

## FIRST CAUSE OF ACTION
Violation of 18 U.S.C. §§ 1962(c), 1964(c) – Racketeer Influenced and Corrupt Organizations Act (RICO)
(*All Plaintiffs Against All Defendants*)

183.   Plaintiffs re-allege and incorporate by reference herein the allegations contained herein above in paragraphs 1–182, as though fully set forth and brought in this cause of action.

184.   Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of the Foley Sexual Abuse and Cover Up Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

185.   The Foley Sexual Abuse and Cover Up Enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4) consisting of: (i) Defendants, including each of their employees and agents; (ii) the Foley Sexual Abuse and Cover Up Enterprise Participants, including but not limited to Foley, the USSS and its executives, the USOPC and its executives, Gale "Tiger" Shaw, Alan Ashley, Abbi Nyberg, Jeffery Archibald, Allison Pitt, Lisa Kosglow, and Sophie Goldschmidt; and (iii) other unnamed co-conspirators as set forth above.  The Foley Sexual Abuse and Cover Up Enterprise is an ongoing organization that functions as a continuing unit.  As set forth above, the Foley Sexual Abuse and Cover Up Enterprise was designed and used as a tool to effectuate Foley and the Foley Sexual Abuse and Cover Up Enterprise Participants to participate in a pattern of racketeering activity.

186.   Section 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor

in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of suit, including a reasonable attorney's fee." 18 U.S.C. § 1964.

187.   The Foley Sexual Abuse and Cover Up Enterprise falls within the meaning of 18 U.S.C. § 1961(4) and consists of a group of "persons" associated together for the common purpose of: (i) endorsing and facilitating Foley's sexual harassment and abuse of athletes and subordinate personnel, while creating a similar environment for the Team, (ii) harassing and misleading Foley's victims to prevent the reporting, disclosure, or prosecution of his sexual acts, and (iii) intervening in Plaintiffs' efforts to report by concealing and refusing to report Foley's sexual offenses to the appropriate authorities, including SafeSport.

188.   Defendants have conducted and participated in the affairs of the Foley Sexual Abuse and Cover Up Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1961(5), which includes multiple instances of obtaining a victim for the purpose of committing or attempting to commit aggravated sexual abuse in violation of 18 U.S.C. §§ 1590 and 1591 as described above, and multiple instances of transporting female athletes for the purposes of furthering the common purposes of the Foley Sexual Abuse and Cover Up Enterprise, including sexual abuse, sexually illicit photography, and other immoral purposes in violation of 18 U.S.C. § 2421, also known as the Mann Act. The pattern of racketeering activity also included multiple instances of mail and wire fraud through use of interstate channels described below.

189.   The Foley Sexual Abuse and Cover Up Enterprise engaged in and affected interstate commerce, where Defendants utilized phone, email, and mail in order to threaten and intimidate Plaintiffs and make arrangements for Foley to further his illicit sexual activities.

190.   Each participant in the Foley Sexual Abuse and Cover Up Enterprise had a systemic linkage to each other participant through corporate ties, contractual relationships, and employment relationships, and functioned as a continuing unit for the purpose of furthering the scheme and their common purposes.

191.   Defendants used the mail and wires for the transmission, delivery, travel, and transportation of the following that were a result of Defendants' illicit scheme:

    a.    Contracts amongst and between Foley, the USSS, the USOPC, Shaw, Nyberg, and Goldschmidt;

    b.    Wires and mails between the USSS, the USOPC, Shaw, Nyberg, and Goldschmidt, regarding Foley's sexual misconduct, his victims, and concealing his acts to prevent reporting and prosecution;

    c.    Travel and transportation of athletes such as Plaintiffs to various competitions and snowboarding events;

    d.    Electronic transmissions through cellular phone and electronic mail to transmit elicit photographs of athletes; and

    e.    Message transmissions through electronic channels such as text messages, electronic mail, and telephone in order to invite and facilitate meetings and contact with Plaintiffs in order to further sexual harassment and abuse.

192.   Defendants utilized the interstate, mail, and wires for the purpose of obtaining money or property, such as Olympic medals, by means of omissions, false pretenses, and misrepresentations described therein.

193.   Defendants also used the internet and other electronic facilities to carry out the scheme and conceal the ongoing sexual and fraudulent activities taking place within the Foley Sexual Abuse and Cover Up Enterprise.

194.   The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common purpose to deceive authorities, such as SafeSport, and the public about Foley's sexual misconduct.

195.   To achieve their common goals, Defendants hid from the general public the unlawfulness of Foley's conduct and Defendants suppressed and/or ignored warnings from Plaintiffs and other third parties about his conduct.

196.   Defendants' scheme and the above-described racketeering activities amounted to a common course of conduct intended to cause Plaintiffs and others to hide and conceal Foley's conduct.  Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Plaintiffs. Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to Plaintiffs' property.

197.   The pattern of racketeering activity alleged herein and the Foley Sexual Abuse and Cover Up Enterprise are separate and distinct from each other. Defendants engaged in a pattern of racketeering activity alleged herein for the purpose of conducting the affairs of the Foley Sexual Abuse and Cover Up Enterprise.

198.   Plaintiffs have been injured in their property and business by reason of these RICO violations.  Defendants interfered with Plaintiffs' current and prospective relations with current and forthcoming business contracts as a result of Foley's conduct.

199.   By reason of and as a result of Defendants' conduct in furtherance of the Abuse Enterprise and resulting RICO violations, Plaintiffs have been injured in their property and business.  As detailed above, each Plaintiff has suffered direct interference with promised work and severe damage to their professional and business interests.  As a result of the assaults and harassment perpetuated by and

allowed by Defendants, Plaintiffs were denied participation in select competitions, and particularized assignments, and thus lost revenue from select partnerships with sponsors.

200.   Foley's assault and Defendants' RICO violations have caused Erin to feel distress including developing an eating disorder and extreme weight loss because of Foley and others' harassment and degrading comments about her weight.  As a result, Erin has continued to experience fear and anxiety and also sought professional help.  After years of performing as an elite snowboarder, including at the World Cup level, Erin was forced into an early retirement due to a phenomenal and unexpected injury that was exacerbated by the emotional distress of the assault and harassment she endured on the Team.

201.   Erin has lost both the opportunity to continue competing as a snowboarder, and has not participated in the sport since her retirement.

202.   Foley's assault and Defendants' RICO violations have caused Rosey to be fearful, distressed, anxious, degraded, and depressed.  While dedicating nearly her entire life to becoming an Olympic athlete, Rosey has gained a global distrust for the sport and has been discouraged from competing.  Unlike her male counterparts, such as Shaun White who went on to earn nearly $10 million a year in prize money and endorsements, Rosey and similarly situated athletes have had their growth as athletes stunted by the Enterprise.

203.   Callan was a premier snowboarder and snowboard coach having started in the sport at 14 years old.  But for Foley's direct action and the atmosphere set up by Defendants and the Foley Sexual Abuse and Cover Up Enterprise, Callan would still be coaching and benefiting from the lucrative contracts she received as a coach.  Moreover, her addiction has been exacerbated by the ongoing trauma of not being believed.  The damage to her reputation and her ability to compete and coach is unfathomable.

204.   The USSS utilized a point system for determining which athletes were permitted to compete.   Despite her prestige skill, Callan's points were often lowered in an effort to prevent her from competing. On at least one occasion, Callan's points were inaccurate and her protestations to have the calculations reviewed were ignored.

205.   Callan has been a superior athlete and competed at the elite level as young as 15 years old.  Having dedicated her life to competitive snowboarding, she was amongst the world's top snowboarding athletes, earning multiple metals in World Cup and Olympic events.  As a result of her reporting the grave sexual misconduct of Foley and other male athletes and staff, Callan has lost opportunities to complete at a level consistent her superior skill and status as an elite athlete when she was forced to compete in less prestigious junior competitions.

206.   Callan has experienced years of anxiety and depression caused from the Team's lack of care and complete disregard of her reports.  Even when Callan was brave enough to make the story public in her Instagram post, she received dozens of personal messages from supporters of Foley, condoning her for making the claims public, which speaks to the wide-spread influence Foley has over the industry.

207.   Even with receiving such high accolades as an athlete, Callan has struggled with the idea of competing and coaching due to her inability to reconcile her obligations as an athlete and coach with Foley and other members of the Abuse Enterprise and their outward failure to protect young female athletes.

208.   At all relevant times, all Defendants and their co-conspirators were aware of the essential nature and scope of the Foley Sexual Abuse and Cover Up Enterprise and intended to participate in it.

## SECOND CAUSE OF ACTION
Violation of 18 U.S.C. §§ 1591(a), 1595(a) – Sex Trafficking

(*Plaintiff Rosey Fletcher Against Defendants Peter Foley, USSS, and USOPC*)

209.   Plaintiff Rosey re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–182, as though fully set forth and brought in this cause of action.

210.   Foley knowingly recruited and enticed Rosey to engage in sexual acts with him based on coercion, fear, and the false hope that doing so and remaining quiet about it would aid her professional career, in violation of 18 U.S.C. § 1591(a)(1).

211.   Foley knowingly benefited from the abuse he inflicted on Rosey using force and coercion to make Rosey engage in sex acts for commercial gain and advantage, in violation of 18 U.S.C. § 1591(a)(2).

212.   The USSS and the USOPC recklessly disregarded the fact that means of force, threats of force, fraud, and/or coercion would be used to cause Rosey to engage in a commercial sex act in exchange for her participation in USSS and USOPC-sponsored competitions, which the USSS and the USOPC benefited from financially.

213.   The conduct of Foley, the USSS, and the USOPC affected interstate commerce, including, but not limited to, because Foley enticed Rosey to cross state lines with him for USSS- and USOPC-sponsored competitions under the pretense that doing so would further her career in exchange for engaging in and keeping quiet about sex acts.

214.   Rosey did not pursue legal remedies until now as a direct and proximate result of the Foley's intimidation, control, manipulation, and the affirmative steps that he took during the abuse to keep her silent, and the affirmative steps the Foley Sexual Abuse and Cover Up Enterprise, the USSS, and the USOPC took in order to prevent Rosey from reporting Foley's misconduct.

215.   Accordingly, any statute of limitations applicable to Rosey's claims, if any, is tolled. Foley's actions described above deprived Rosey of the opportunity to commence this lawsuit before now.

216.   As result of Foley, the USSS, and the USOPC's conduct, Rosey has expended significant costs on therapy and suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

217.   Foley, the USSS, and the USOPC's unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Rosey's rights.

218.   Rosey claims compensatory and punitive damages herein.

219.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

### THIRD CAUSE OF ACTION
Violation of 18 U.S.C. §§ 1591(a), 1595(a) – Sex Trafficking
(*Plaintiff Erin O'Malley Against Defendants Peter Foley, USSS, and USOPC*)

220.   Plaintiff Erin re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–182, as though fully set forth and brought in this cause of action.

221.   Foley knowingly enticed Erin to engage in sexual favors for his benefit based on coercion, fear, and the false hope that doing so and remaining quiet about it would aid her professional career, in violation of 18 U.S.C. § 1591(a)(1).

222.   Foley knowingly benefited from the abuse he inflicted on Erin using force and coercion to make Erin engage in sex acts for commercial gain and advantage, in violation of 18 U.S.C. § 1591(a)(2).

223.   The USSS and the USOPC recklessly disregarded the fact that means of force, threats of force, fraud, and/or coercion would be used to cause Erin to engage in a commercial sex act  in exchange for her participation in USSS- and USOPC-sponsored competitions, which the USSS and the USOPC benefited from financially.

224.   The conduct of Foley, the USSS, and the USOPC affected interstate commerce, including, but not limited to, because Foley enticed Erin to cross state lines with him for USSS- and USOPC-sponsored competitions under the pretense that doing so would further her career in exchange for engaging in and keeping quiet about sexual conduct.

225.   Erin did not pursue legal remedies until now as a direct and proximate result of the Foley's intimidation, control, manipulation, and the affirmative steps that he took during the abuse to keep her silent, and the affirmative steps the Foley Sexual Abuse and Cover Up Enterprise, the USSS, and the USOPC took in order to prevent Erin from reporting Foley's misconduct.

226.   Accordingly, any statute of limitations applicable to Erin's claims, if any, is tolled. Foley's actions described above deprived Erin of the opportunity to commence this lawsuit before now.

227.   As result of Foley, the USSS, and the USOPC's conduct, Erin has expended significant costs on therapy and suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

228.   Foley, the USSS, and the USOPC's unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Erin's rights.

229.   Erin claims compensatory and punitive damages herein.

230.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

**FOURTH CAUSE OF ACTION**

Civil Code § 1708.5 – Sexual Battery

(*Plaintiff Rosey Fletcher Against Defendant Peter Foley*)

231.   Plaintiff Rosey re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–182, as though fully set forth and brought in this cause of action.

232.   Foley committed acts with the intent to cause a harmful or offensive contact with an intimate part of Rosey, and a sexually offensive and unwanted contact with Rosey directly resulted from Foley's said acts.

233.   Foley exploited his position of authority to intimidate, overwhelm, and subdue Rosey.  Any objections to his conduct would be met with retaliation.

234.   Foley abused his position of power and authority over Rosey, who was in no position to reject his sexual advances due to her age and vulnerability.

235.   Foley's batteries on Rosey caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

236.   Foley's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Rosey's rights.

237.   Rosey claims compensatory and punitive damages herein.

238.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

///

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **FIFTH CAUSE OF ACTION**
Civil Code § 1708.5 – Sexual Battery
(*Plaintiff Erin O'Malley Against Defendant Peter Foley*)

239.   Plaintiff Erin re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–182, as though fully set forth and brought in this cause of action.

240.   Foley committed acts with the intent to cause a harmful or offensive contact with an intimate part of Erin, and a sexually offensive and unwanted contact with Erin directly resulted from Foley's said acts.

241.   Further, Foley committed acts to cause an imminent apprehension that (1) harmful or offensive contact with an intimate part of Erin would occur or (2) harmful or offensive contact with Erin by use of Foley's intimate part would occur, and a sexually offensive and unwanted contact with Erin directly resulted from Foley's said acts.

242.   Foley exploited his position of authority to intimidate, overwhelm, and subdue Erin.  Any objections to his conduct would be met with retaliation.

243.   Foley abused his position of power and authority over Erin, who was in no position to reject his sexual advances due to her age and vulnerability.

244.   Foley's batteries on Erin caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

245.   Foley's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Erin's rights.

246.   Erin claims compensatory and punitive damages herein.

247.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

1

2

## SIXTH CAUSE OF ACTION
### Battery
*(Plaintiff Rosey Fletcher Against Defendant Peter Foley)*

248.   Plaintiff Rosey re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–182, as though fully set forth and brought in this cause of action.

249.   Foley intended to commit and committed acts of unwanted contact with Rosey.

250.   Foley committed unwanted contact with Rosey in a harmful and offensive manner, including but not limited to by inflicting sexual abuse against Rosey.

251.   Among other batteries, Foley sexually abused Rosey without her consent, without equality, and as a result of coercion.

252.   Foley exploited his position of authority to intimidate, overwhelm, and subdue Rosey.  Any objections to his conduct would be met with retaliation.

253.   Foley abused his position of power and authority over Rosey, who was in no position to reject his sexual advances due to her age and vulnerability.

254.   Foley's batteries on Rosey caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

255.   Foley's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Rosey's rights.

256.   Rosey claims compensatory and punitive damages herein.

257.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

///

///

1
2

## **SEVENTH CAUSE OF ACTION**
Battery
(*Plaintiff Erin O'Malley Against Defendant Peter Foley*)

3
4
5

258.   Plaintiff Erin re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–182, as though fully set forth and brought in this cause of action.

6
7

259.   Foley intended to commit and committed acts of unwanted contact with Erin.

8
9
10

260.   Foley committed unwanted contact with Erin in a harmful and offensive manner, including but not limited to by inflicting sexual abuse against Erin.

11
12

261.   Among other batteries, Foley sexually abused Erin without her consent, without equality, and as a result of coercion.

13
14

262.   Foley exploited his position of authority to intimidate, overwhelm, and subdue Erin.  Any objections to his conduct would be met with retaliation.

15
16

263.   Foley abused his position of power and authority over Erin, who was in no position to reject his sexual advances due to her age and vulnerability.

17
18
19

264.   Foley's batteries on Erin caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

20
21

265.   Foley's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Erin's rights.

22

266.   Erin claims compensatory and punitive damages herein.

23
24

267.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

25

///

26

///

27
28

# EIGHTH CAUSE OF ACTION
California Civil Code § 340.16 – Sexual Assault
(*Plaintiff Rosey Fletcher Against Defendants Peter Foley, USSS, and USOPC*)

268.   Plaintiff Rosey re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–182, as though fully set forth and brought in this cause of action.

269.   Foley touched an intimate part of Rosey, against her will, for sexual arousal, sexual gratification, or sexual abuse.

270.   Foley committed an act of sexual penetration against Rosey's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on Rosey.

271.   Foley's conduct placed Rosey in reasonable apprehension of bodily harm.

272.   Foley's actions caused Rosey to fear retaliation in the future and there was a reasonable possibility that Foley could execute on a threat of retaliation.

273.   Foley's assaults on Rosey caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

274.   Foley's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Rosey's rights.

275.   Rosey claims compensatory and punitive damages herein.

276.   One or more entities, including, but not limited to the USSS and/or the USOPC, are legally responsible for damages arising out of Foley's sexual assault against Rosey.

277.   The USSS and/or the USOPC, including, but not limited to, their officers, directors, representatives, employees, or agents, engaged in a cover up or

**COMPLAINT**

attempted a cover up of a previous instance or allegations of sexual assault by Foley of such abuse.

278.   Newly enacted CCP 340.16, effective January 1, 2023, is the governing California State Statute extending the statute of limitations and granting revival of a plaintiff's claims seeking to recover damages suffered as a result of a sexual assault that occurred on or after the plaintiff's 18th birthday when one or more entities are legally responsible for damages and the entity or their agents engaged in a cover up.

279.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## NINTH CAUSE OF ACTION
California Civil Code § 340.16 – Sexual Assault
(*Plaintiff Erin O'Malley Against Defendants Peter Foley, USSS, and USOPC*)

280.   Plaintiff Erin re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–182, as though fully set forth and brought in this cause of action.

281.   Foley touched an intimate part of Erin, against her will, for sexual arousal, sexual gratification, or sexual abuse.

282.   Foley's conduct placed Erin in reasonable apprehension of bodily harm.

283.   Foley's actions caused Erin to fear retaliation in the future and there was a reasonable possibility that Foley could execute on a threat of retaliation.

284.   Foley's assaults on Erin caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

285.   Foley's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Erin's rights.

1   286.   Erin claims compensatory and punitive damages herein.

2   287.   One or more entities, including, but not limited to the USSS and/or the
3   USOPC, are legally responsible for damages arising out of Foley's sexual assault
4   against Erin.

5   288.   The USSS and/or the USOPC, including, but not limited to, their
6   officers, directors, representatives, employees, or agents, engaged in a cover up or
7   attempted a cover up of a previous instance or allegations of sexual assault by Foley
8   of such abuse.

9   289.   Newly enacted CCP 340.16, effective January 1, 2023, is the
10   governing California State Statute extending the statute of limitations and granting
11   revival of a plaintiff's claims seeking to recover damages suffered as a result of a
12   sexual assault that occurred on or after the plaintiff's 18th birthday when one or
13   more entities are legally responsible for damages and the entity or their agents
14   engaged in a cover up.

15   290.   The amount of damages sought herein exceeds the jurisdictional limits
16   of all other courts which would otherwise have jurisdiction.

17                          **TENTH CAUSE OF ACTION**
18                                    Assault
                    (*Plaintiff Rosey Fletcher Against Defendant Peter Foley*)
19
20   291.   Plaintiff Rosey re-alleges and incorporates by reference herein the
     allegations contained herein above in paragraphs 1–182, as though fully set forth
21   and brought in this cause of action.

22   292.   Foley intentionally attempted, threatened, and committed harmful and
23   offensive contacts against Rosey, including but not limited to inflicting sexual
24   abuse and physical abuse against Rosey.

25   293.   Foley's conduct placed Rosey in reasonable apprehension of bodily
26   harm.

27
28
                                        49
                                   **COMPLAINT**

294.   Foley's assaults on Rosey caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

295.   Foley's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Rosey's rights.

296.   Rosey claims compensatory and punitive damages herein.

297.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## ELEVENTH CAUSE OF ACTION
Assault
(*Plaintiff Erin O'Malley Against Defendant Peter Foley*)

298.   Plaintiff Erin re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–182, as though fully set forth and brought in this cause of action.

299.   Foley intentionally attempted, threatened, and committed harmful and offensive contacts against Erin.

300.   Foley's conduct placed Erin in reasonable apprehension of bodily harm.

301.   Foley's assaults on Erin caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

302.   Foley's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Erin's rights.

303.   Erin claims compensatory and punitive damages herein.

304.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TWELVETH CAUSE OF ACTION
Intentional Infliction of Emotional Distress
(*All Plaintiffs Against Defendant Peter Foley*)

305.   Plaintiffs re-allege and incorporate by reference herein the allegations contained herein above in paragraphs 1–182, as though fully set forth and brought in this cause of action.

306.   Foley's conduct was extreme and outrageous and intentionally caused severe emotional distress to Plaintiffs.

307.   Foley's conduct exceeded all possible bounds of decency.

308.   Foley acted with the intent and knowledge that Plaintiffs suffered emotional distress due to his coercive conduct.

309.   Foley's conduct caused Plaintiffs to suffer physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

310.   Foley's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiffs' rights.

311.   Plaintiffs claim compensatory and punitive damages herein.

312.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## THIRTEENTH CAUSE OF ACTION
Defamation
(*All Plaintiffs Against Defendant Peter Foley*)

313.   Plaintiffs re-allege and incorporate by reference herein the allegations contained herein above in paragraphs 1–182, as though fully set forth and brought in this cause of action.

314.   In February and March of 2022, and thereafter, Foley intentionally and maliciously released to the press his false statements about Plaintiffs in an

attempt to destroy Plaintiffs' reputation and cause them to lose all credibility in their efforts to help victims of Foley's sexual abuse.

315.  Specifically, on or about February 11, 2022, Foley made the statement that he "was totally surprised by the allegations" and that he "vehemently den[ies] the allegations."

316.  Moreover, speaking through his attorney and authorized agent, Foley issued additional false statements on or about March 20, 2022 to the media and public, stating that "any allegations of sexual misconduct being made against [Foley] are false."  And that "Mr. Foley has not engaged in any conduct that violates the SafeSport Code."

317.  Foley released to the press his false statements with knowledge that his words would dilute, discredit, and neutralize Plaintiffs' public and private messages to Foley's sexual abuse victims.

318.  Using his role as a powerful figure in the snowboarding industry, Foley's statements were published in sports-related media and press for the malicious purpose of further keeping other survivors in the snowboarding industry silent and to destroy Plaintiffs' reputation, credibility, and efforts to use their experience to help others who previously suffered, currently are suffering, or continue to suffer at the hands of Foley.

319.  Foley, personally and through his attorney and authorized agent, Howard Jacobs, intentionally and maliciously made false and damaging statements of fact concerning Plaintiffs, as detailed above.

320.  The false statements made by Jacobs were all made by him as Foley's attorney and authorized agent and were made with direct and actual authority from Foley as the principal.

321.  The false statements that Foley made personally, and through his attorney and authorized agent Jacobs, not only called Plaintiffs' truthfulness and

integrity into question, but also exposed Plaintiffs to public hatred, contempt, ridicule, and disgrace.

322.   Foley made his false statements knowing full well that they were completely false.  Accordingly, he made his statements with actual and deliberate malice, the highest degree of awareness of falsity.

323.   Foley's false statements constitute libel, as he knew that they were going to be transmitted in writing and widely disseminated on the internet and in print.  Foley intended his false statements to be published by newspaper and other media outlets, and they were, in fact, published globally.

324.   Foley's false statements constitute libel per se inasmuch as they exposed Plaintiffs to public contempt, ridicule, aversion, and disgrace, and induced an evil opinion of Plaintiffs in the minds of right-thinking persons.

325.   Foley's false statements directly stated and also implied that in speaking out against sexual abuse Plaintiffs acted with fraud, dishonesty, and unfitness for the task.

326.   Foley's false statements directly and indirectly indicate that Plaintiffs lied about being sexually abused by Foley.   Foley's false statements were reasonably understood by many persons who read his statements as conveying that specific intention and meaning.

327.   Foley's false statements were reasonably understood by many persons who read those statements as making specific factual claims that Plaintiffs were lying about specific facts.

328.   As a result of Foley's campaign to spread false, discrediting and defamatory statements about Plaintiffs, Plaintiffs suffered substantial damages in an amount to be proven at trial.

329.   Foley's false statements have caused, and continue to cause, Plaintiffs economic damage, psychological pain and suffering, mental anguish and emotional distress, and other direct and consequential damages and losses.

330.   Foley's campaign to spread his false statements globally was unusual and particularly egregious conduct.  Foley sexually abused Plaintiffs, and then, in order to avoid having these crimes discovered, Foley wantonly and maliciously set out to falsely accuse, defame, and discredit Plaintiffs.  In so doing, Foley's efforts constituted a public wrong by deterring, damaging, and setting back Plaintiffs' efforts to help other victims of Foley's sexual abuse.  Accordingly, this is a case in which exemplary and punitive damages are appropriate.

331.   Punitive and exemplary damages are necessary in this case to deter Foley and others from wantonly and maliciously using a campaign of lies to discredit Plaintiffs and other victims of Foley's sexual abuse.

## **FOURTEENTH CAUSE OF ACTION**
California Civil Code § 51.9 – Sexual Harassment
(*All Plaintiffs Against Defendant Peter Foley*)

332.   Plaintiffs re-allege and incorporate by reference herein the allegations contained herein above in paragraphs 1–182, as though fully set forth and brought in this cause of action.

333.   Plaintiffs, who were athletes of the Team, were in business, service, or professional relationships with Foley, who coached the Team, had power over the athletic and operation sides of the USSS, was a powerful figure and source of access to opportunities across the snowboarding industry, and purported to be able to help Plaintiffs in their careers centered around snowboarding.

334.   Foley made sexual advances, solicitations, sexual requests, demands for sexual compliance by Plaintiffs, as well as engaged in other verbal, visual, or

physical conduct of a sexual nature or of a hostile nature based on Plaintiffs' gender, all of which were unwelcome and pervasive or severe.

335.   Foley intentionally, recklessly, and wantonly did acts which resulted in harmful and offensive contact with the intimate parts of Plaintiffs' persons.

336.   Foley used his authority, the trust inherent in his and Plaintiffs' respective positions, and their unequal power dynamic to coerce and exploit Plaintiffs physically, psychologically, and/or emotionally through force, manipulation, emotional abuse, intimidation, and retaliation. These acts were done for Foley's sexual gratification.

337.   Because of Foley's uniquely powerful role in the snowboarding industry and within the USSS, Plaintiffs could not easily end their professional relationships with Foley.

338.   Foley's conduct was so egregious as to fundamentally and permanently alter the condition of the professional relationship between Plaintiffs and Foley.

339.   Plaintiffs have suffered economic loss or disadvantage and/or personal injury, including but not limited to, emotional distress as a result of Foley's conduct.

340.   As a result of Foley's unlawful conduct, Plaintiffs are entitled to actual damages and exemplary damages pursuant to California Civil Code section 52, subdivision (b), in an amount to be awarded at trial.

### FIFTEENTH CAUSE OF ACTION
Negligent Supervision and Retention
(*All Plaintiffs Against Defendants USSS, USOPC, and Gale "Tiger" Shaw*)

341.   Plaintiffs re-allege and incorporate by reference herein the allegations contained herein above in paragraphs 1–182, as though fully set forth and brought in this cause of action.

342.   At all times material, Foley was employed by the USSS (under the control and authority of the USOPC).   Shaw served as an executive of the USSS from 2013 to 2022.

343.   Foley was unfit or incompetent to work directly with Plaintiffs and posed a particular risk of sexually harassing, assaulting, and or mentally abusing them.

344.   The USSS, the USOPC, and Shaw knew or should have known not only that Foley was unfit or incompetent to work directly with women and posed a particular risk of sexually harassing, assaulting, and or mentally abusing them, but also that this unfitness created a particular risk to Plaintiffs.

345.   Foley's unfitness and particular risk to Plaintiffs and women in the snowboarding  industry harmed Plaintiffs.

346.   The USSS, the USOPC, and Shaw knew or should have known that Foley had previously engaged and was continuing to engage in unlawful sexual conduct with athletes, and had committed felonies, for his own personal sexual gratification.

347.   The USSS, the USOPC, and Shaw knew or should have known that it was foreseeable that Foley was engaging, or would engage in illicit sexual activities with Plaintiffs and others under the cloak of the authority, confidence, and trust, bestowed upon him through the USSS, the USOPC, and Shaw.

348.   At no time during the alleged period did the USSS, the USOPC, or Shaw have in place a reasonable system or procedure to investigate, supervise and monitor the Team's coaches or staff, including Foley, to prevent sexual and verbal abuse, pre-sexual grooming, sexual harassment, or the molestation of children and young adults, nor did they implement a system or procedure to oversee or monitor conduct towards athletes in their care.

349.   Even though the USSS, the USOPC, and Shaw knew or should have known of these sexually illicit activities by Foley, they failed to use reasonable care in supervising Foley and did nothing to reasonably investigate, supervise or monitor Foley to ensure the safety of the athletes in their care.

350.   The USSS, the USOPC, and Shaw's negligence in supervising and or retaining Foley was a substantial factor in causing harm to Plaintiffs.

351.   As a result of the above-described conduct, Plaintiffs have expended significant costs on therapy and suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to their reputations and careers.

352.   Plaintiffs claim compensatory and punitive damages herein.

353.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## SIXTEENTH CAUSE OF ACTION

Violation of 18 U.S.C. §§ 1594(c),  1595(a) – Conspiracy to Sex Trafficking

(*All Plaintiffs Against All Defendants*)

354.   Plaintiffs re-allege and incorporate by reference herein the allegations contained herein above in paragraphs 1–182, as though fully set forth and brought in this cause of action.

355.   Defendants conspired and acted in concert with one another to commit unlawful acts under 18 U.S.C. § 1591 against Plaintiffs and others, in violation of 18 U.S.C. § 1594(c).  Each Defendant shared the same conspiratorial objective, which was to: (1) benefit from the abuse Foley inflicted on Plaintiffs using force and coercion to make Plaintiffs engage in sex acts for commercial gain and advantage; (2) prevent (or attempt to prevent) the reporting, prosecution, or

disclosure of Foley's sexual abuse, sexual assault, mental abuse, and exploitive or retaliatory behavior; and (3) cover up Foley's sexual abuse, sexual assault, mental abuse, and exploitive or retaliatory behavior.

356.   Defendants' conspiratorial scheme was carried out by the commission of the wrongful and overt acts set forth above, including, but not limited to: (1) recruiting and grooming female athletes for Foley; (2) knowingly recruiting and enticing Plaintiffs to engage in sexual acts with Foley based on coercion, fear, and the false hope that doing so and remaining quiet about it would aid their professional careers; and (3) knowingly benefiting from the abuse Foley inflicted on Plaintiffs using force and coercion to make Plaintiffs engage in sex acts for commercial gain and advantage.

357.   Defendants participation in the furtherance of Foley's illegal sex abuse and sex trafficking plan and/or purpose was intentional and/or willful and, therefore, Defendants intentionally and/or willfully caused Plaintiffs' commission of sex acts in Defendants' affirmative acts supporting Foley.

358.   Defendants knew that their acts and conduct supporting and facilitating Foley would lead to commercial sex acts by Plaintiffs.

359.   Defendants through their affirmative acts provided substantial support to Foley forcing and/or coercing Plaintiffs to engage in commercial sex acts.

360.   At all relevant times, Defendants' conduct was willful and done with legal malice and knowledge that it was wrongful.

361.   Defendants' conduct have caused Plaintiffs serious harm, including, without limitation, physical, psychological, financial, and reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

## SEVENTEENTH CAUSE OF ACTION

Negligence

(*Plaintiff Callan Chythlook-Sifsof against Defendant USSS*)

362.   Plaintiff Callan re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–182, as though fully set forth and brought in this cause of action.

363.   Defendant USSS breached the duty of care owed to Callan and was negligent in the following ways:

    a.    Failing to protect Callan from sexual harassment and assault while travelling on behalf of the USSS Team;

    b.    Failing to employ or retain suitable staff to whom it entrusted the care of their young, female athletes;

    c.    Failing to institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent inappropriate sexual conducted directed to their female athletes;

    d.    Failing to investigate complaints of sexual assault and harassment;

    e.    Failing to notify Callan of the history of inappropriate sexual misconduct during travel for competitions;

    f.    Failing to detect athletes' and coaches' inappropriate behavior to Callan;

    g.    Failing to exercise control over athletes and coaches and/or intervene on Callan's behalf;

    h.    Failing to implement and/or enforce proper policies and procedures for the protection of their female athletes thereby fostering a culture of inappropriate coach-athlete relationships;

**COMPLAINT**

i.     Failing to exercise reasonable care in monitoring and precluding underage alcohol consumption during competition travel;

j.     Failing to intervene to prevent the escalation of inappropriate conduct towards Callan by coaches and athletes; and

k.     Failing to exercise reasonable care to detect when actions or behavior of a coach are detrimental to athletes' wellbeing or their general safety.

364.   As a direct and proximate result of the foregoing negligence of USSS, Callan was sexually harassed and sexually assaulted by a coach from a competing team, causing her bodily injury and resulting pain and suffering, mental anguish, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing, and Callan will suffer the losses in the future.

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendants, awarding compensatory, consequential, exemplary, punitive, and treble damages in an amount to be determined at trial; costs of suit; attorneys' fees; and such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Dated: February 2, 2023        Respectfully submitted,

                                   **BOIES SCHILLER FLEXNER LLP**

                               By: */s/ Alison L. Anderson*
                                 Alison L. Anderson
                                 *alanderson@bsfllp.com*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

California Bar No. 275334
725 S Figueroa St, 31st Floor
Los Angeles, CA 90017
Telephone: (213) 995-5720
Facsimile:  (213) 629-9022

Sigrid S. McCawley*
*smccawley@bsfllp.com*
Florida Bar No. 129305
Alisha Moriceau*
*amoriceau@bsfllp.com*
Florida Bar No. 1011395
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL  33301
Telephone: (954) 356-0011
Facsimile:  (954) 356-0022

Kenya K. Davis*
*kdavis@bsfllp.com*
Washington DC Bar No. 502305
1401 New York Ave., NW
Washington, DC  20005
Telephone:  (202) 237-2727
Facsimile:   (202) 237-6131

Erica N. Sweeting*
*esweeting@bsfllp.com*
New York Bar No. 5517768
55 Hudson Yards, 20th Floor
New York, NY  10001
Telephone: (212) 446-2300
Facsimile:  (212) 446-2350

*Application to appear *pro hac
vice* forthcoming

*Attorneys for Plaintiffs*