Mitchell A. Kamin (Bar No. 202788)
Kevin Hoogstraten (Bar No. 333533)
mkamin@cov.com
khoogstraten@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749

Lindsey Barnhart (Bar No. 294995)
lbarnhart@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800

Attorneys for Defendant
UNITED STATES OLYMPIC
& PARALYMPIC COMMITTEE

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEY FLETCHER, ERIN O'MALLEY, AND CALLAN CHYTHLOOK-SIFSOF,<br><br>Plaintiffs,<br><br>vs.<br><br>PETER FOLEY, GALE "TIGER" SHAW III, UNITED STATES SKI & SNOWBOARD, AND UNITED STATES OLYMPIC AND PARALYMPIC COMMITTEE,<br><br>Defendants. | Civil Case No.: 2:23-cv-00803<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)(2) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  July 19, 2023<br>Time:  1:30 p.m.<br>Judge:  Hon. Sherilyn Peace Garnett<br>Courtroom:  5C |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that at 1:30 P.M. on July 19, 2023, or as soon thereafter as the matter may be heard before the Honorable Sherilyn Peace Garnett, presiding in the United States District Court for the Central District of California, located at First Street Courthouse, 350 West 1st Street, Courtroom 5C, Los Angeles, CA 90012, Defendant United States Olympic & Paralympic Committee (the "USOPC") will, and hereby does, move for an order dismissing each of Plaintiffs Rosey Fletcher, Erin O'Malley, and Callan Chythlook-Sifsof's (collectively, "Plaintiffs") causes of action against the USOPC.

The Court should dismiss the Complaint against the USOPC pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) because (1) the USOPC is not subject to personal jurisdiction in California; and (2) the causes of action brought against the USOPC, namely, the First (Racketeer Influenced and Corrupt Organizations Act ("RICO")), Second and Third (Sex Trafficking), Eighth and Ninth (Sexual Assault), Fifteenth (Negligent Supervision and Retention), and Sixteenth (Conspiracy to Sex Trafficking), lack sufficient allegations to plausibly state a claim against the USOPC.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on April 14, 2023.  The USOPC complied with the requirements of L.R. 7-3 and the USOPC and Plaintiffs thoroughly discussed the substance and potential resolution of the filed motion by videoconference.  This Motion is based on this Notice of Motion and Motion to Dismiss, the attached Memorandum of Points and Authorities in Support of the Motion to Dismiss, any additional briefing on this subject, and any such further evidence and argument as may be presented to the Court at or before the hearing on this matter.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

I.    INTRODUCTION ................................................................................... 1

II.   FACTUAL BACKGROUND.................................................................. 2

    A.    The USOPC's Role Under the Ted Stevens Amateur Sports Act. ...... 2

    B.    Plaintiffs' Allegations. ...................................................................... 4

III.  ARGUMENT.......................................................................................... 5

    A.    The Complaint Fails To Establish this Court's Personal Jurisdiction Over the USOPC. .......................................................................... 5

        1.    This Court Lacks General Personal Jurisdiction over the USOPC. ............................................................................... 6

        2.    This Court Lacks Specific Personal Jurisdiction over the USOPC. ............................................................................... 6

    B.    All Causes of Action Should be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6). ............................................................ 8

        1.    The Complaint Fails to State a Claim Under the RICO Act (Claim 1). ........................................................................... 9

            a)    No Plausible Injury to Business or Property. ................ 10

            b)    No Plausible RICO Enterprise....................................... 11

            c)    No Plausible Participation by the USOPC in the Alleged Enterprise....................................................... 12

            d)    No Pattern of Racketeering Activity by the USOPC. ... 13

        2.    The Complaint Fails to State a Claim Under the Sex Trafficking Act (Claims 2 and 3). ........................................... 16

        3.    The Complaint Fails to State a Conspiracy to Sex Trafficking Claim (Claim 16). ................................................. 18

i

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)(2) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

4.    The Complaint Fails to State a Sexual Assault Claim (Claims 8 and 9)........................................................................ 19

5.    The Complaint Fails to State a Negligent Supervision and Retention Claim (Claim 15)........................................... 20

a)    The Complaint Fails to Allege an Employer-Employee or Principal-Agent Relationship. ...................................... 21

b)    The Complaint Fails to Establish that the USOPC Owes a Legal Duty of Care to Plaintiffs. .................................. 23

IV.    CONCLUSION............................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahmadi Abhari v. Victory Park Cap. Advisors*,
   2020 WL 7346676 (C.D. Cal. Nov. 16, 2020) ............................................ 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................*passim*

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064 (9th Cir. 2017) ...................................................................... 7

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
   2020 WL 4368214 (N.D. Cal. July 30, 2020) ...................................... 16, 17

*Baker v. Bratton*,
   2008 WL 11409990 (C.D. Cal. 2008) .......................................................... 11

*Barenborg v. Sigma Alpha Epsilon Fraternity*,
   33 Cal. App. 5th 70 (2019) ........................................................................ 24

*Behagen v. Amateur Basketball Ass'n of the U.S.*,
   884 F.2d 524 (10th Cir. 1989) .................................................................... 23

*Berg v. First State Ins. Co.*,
   915 F.2d 460 (9th Cir. 1990) ................................................ 10, 14, 23, 24

*Boar, Inc. v. Cnty. of Nye*,
   499 F. App'x 713 (9th Cir. 2012) ................................................................ 9

*Brogdon v. Roman Cath. Archbishop of Los Angeles*,
   2021 WL 6802800 (D. Ariz. Dec. 10, 2021) .............................................. 11

*Brown v. USA Taekwondo*,
   11 Cal. 5th 204 (2021) .................................................................... 21, 24, 25

*Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*,
   788 F.2d 535 (9th Cir. 1986) ........................................................................ 8

*Canyon County v. Syngenta Seeds, Inc.*,
   519 F.3d 969 (9th Cir. 2008) ...................................................................... 10

*Castaneda v. Olsher*,
   41 Cal. 4th 1205 (2007) .............................................................................. 26

*Cormier v. Discover Bank*,
   2005 WL 2254069 (W.D. Wash. 2005), *aff'd*, 207 F. App'x 866 (9th Cir.
   2006) ............................................................................................................ 11

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ...................................................................................... 6

iii

*DeCrescenzo v. Church of Scientology Int'l*,
   2009 WL 10672400 (C.D. Cal. Nov. 5, 2009) ........................................................ 18

*Doan v. Singh*,
   617 F. App'x 684 (9th Cir. 2015) ................................................................ 12, 15

*Doe #1 v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021) .................................................................... 18

*Doe I v. Wal-Mart Stores, Inc.*,
   572 F.3d 677 (9th Cir. 2009) ..................................................................... 23

*Fleites v. MindGeek S.A.R.L.*,
   2022 WL 4456077 (C.D. Cal. July 29, 2022) ......................................... 19

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021) ............................................................................. 7

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*,
   905 F.3d 597 (9th Cir. 2018) ..................................................................... 7

*Gardner v. Starkist Co.*,
   418 F. Supp. 3d 443 (N.D. Cal. 2019) ................................................... 12

*Gemcap Lending I, LLC v. Crop USA Ins. Agency, Inc.*,
   2013 WL 12136535 (C.D. Cal. Oct. 10, 2013) ....................................... 7

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
   284 F.3d 1114 (9th Cir. 2002) ................................................................. 6

*Grijalva v. Kevin Mason, P.A.*,
   2019 WL 8221076 (C.D. Cal. Dec. 30, 2019) ....................................... 13

*Gross v. Waywell*,
   628 F. Supp. 2d 475 (S.D.N.Y. 2009) ..................................................... 9

*Hemi Grp., LLC v. N.Y.C.*,
   559 U.S. 1 (2010) ................................................................................... 11

*Hoatson v. New York Archdiocese*,
   2007 WL 431098 (S.D.N.Y. Feb. 8, 2007), *aff'd*, 280 F. App'x 88 (2d Cir.
   2008) ...................................................................................................... 12

*J.W. v. Watchtower Bible & Tract Soc'y of New York, Inc.*,
   29 Cal. App. 5th 1142 (2018) ................................................................ 22

*Jensen v. United States Tennis Ass'n*,
   2020 WL 6445117 (D. Kan. Oct. 30, 2020) ......................................... 18

*Keel v. Schwarzenegger*,
   2009 WL 1444644 (C.D. Cal. May 19, 2009) .................................... 13, 14

*Kelmar v. Bank of Am. Corp.*,
   2012 WL 12850425 (C.D. Cal. Oct. 26, 2012), *aff'd*, 599 F. App'x 806 (9th
   Cir. 2015) .............................................................................................. 13

iv

*Kirsopp v. Yamaha Motor Co.*,
   2014 WL 12577429 (C.D. Cal. Aug. 27, 2014) ........................................... 7

*Lacey v. Maricopa Cnty.*,
   693 F.3d 896 (9th Cir. 2012) ...................................................................... 19

*Lesnik v. Eisenmann SE*,
   374 F. Supp. 3d 923, 953 (N.D. Cal. 2019) ................................................ 17

*Martinez v. Aero Caribbean*,
   764 F.3d 1062 (9th Cir. 2014) ...................................................................... 6

*McGowan v. Weinstein*,
   505 F. Supp. 3d 1000 (C.D. Cal. 2020) ...................................................... 16

*McGowan v. Weinstein*,
   562 F. Supp. 3d 744, 755 (C.D. Cal. 2021) ................................................ 14

*Mehr v. Fed'n Internationale de Football Ass'n*,
   115 F. Supp. 3d 1035 (N.D. Cal. 2015) .................................................... 7, 8

*MSP Recovery Claims, Series LLC v. Avanir Pharms., Inc.*,
   2022 WL 17220647 ..................................................................................... 15

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018) ........................................................ 18

*Oldfield v. Athletic Cong.*,
   779 F.2d 505 (9th Cir. 1985) ........................................................................ 3

*Regents of Univ. of California v. Superior Ct.*,
   4 Cal. 5th 607 (2018) .............................................................................. 23, 25

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) .................................................................................... 12

*Ricchio v. McLean*,
   853 F.3d 553 (1st Cir. 2017) ....................................................................... 17

*S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
   483 U.S. 522 (1987) ...................................................................................... 3

*Shaw v. Nissan N. Am., Inc.*,
   220 F. Supp. 3d 1046 (C.D. Cal. 2016) ...................................................... 15

*Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*,
   17 F. Supp. 3d 207 (E.D.N.Y. 2014) ............................................................ 9

*Turner v. Cook*,
   362 F.3d 1219 (9th Cir. 2004) ..................................................................... 15

*UFCW & Emps. Benefit Tr. v. Sutter Health*,
   241 Cal. App. 4th 909 (2015) ...................................................................... 22

*United States v. Flucas*,
  22 F.4th 1149 (9th Cir.), *cert. denied*, 143 S. Ct. 320 (2022) ...................... 14

*In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*,
  2013 WL 12130034 (C.D. Cal. July 19, 2013) .......................................... 13

*Whitaker v. Tesla Motors, Inc.*,
  985 F.3d 1173 (9th Cir. 2021) .................................................................. 9

*White v. Seabrooks*,
  2022 WL 17224493 (C.D. Cal. Apr. 20, 2022) ........................................ 15

*Wolf Run Hollow, LLC v. Nat'l Car Rental Sys., Inc.*,
  2012 WL 12882660 (C.D. Cal. Dec. 18, 2012) .......................................... 6

*Z.V. v. Cnty. of Riverside*,
  238 Cal. App. 4th 889 (2015) .................................................................. 22

*Zimmerman v. Poly Prep Country Day Sch.*,
  888 F. Supp. 2d 317 (E.D.N.Y. 2012) ...................................................... 10

**Statutes**

18 U.S.C. § 1590 .............................................................................................. 14

18 U.S.C. § 1591 ........................................................................................ 14, 18

18 U.S.C. § 1594(c) ...................................................................................... 5, 19

18 U.S.C. § 1595(a) .......................................................................... 5, 16, 18, 19

18 U.S.C. § 1962(c) ............................................................................................ 5

18 U.S.C. § 1962(d) ............................................................................................ 9

18 U.S.C. § 1964(c) .......................................................................................... 10

18 U.S.C. § 2421 (Mann Act) .......................................................................... 14

22 U.S.C. § 220505(c)(5) ................................................................................. 22

28 U.S.C. § 1658 .............................................................................................. 18

Ted Stevens Amateur Sports Act of 1978, 36 U.S.C. §§ 220501, *et seq.* .............*passim*

Cal. Civ. Proc. Code § 335.1 ........................................................................... 21

Cal. Civ. Proc. Code § 340.16 ............................................................... 2, 20, 21

Cal. Civ. Proc. Code § 340.16(e)(2) ................................................................ 20

**Other Authorities**

124 Cong. Rec. S9821–22 (daily ed. June 26, 1978) (statement of Sen. Ted Stevens)...................................................................................................................3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case stems from allegations of sexual and emotional abuse and harassment perpetrated by Defendant Peter Foley ("Foley") against Plaintiffs, three snowboarding athletes who formerly trained with Defendant United States Ski & Snowboard ("USSS"). There is no debate that these allegations involve serious conduct or that the issue of sexual abuse should be addressed urgently in all contexts.   The Complaint, however, would impermissibly assign legal responsibility to the United States Olympic and Paralympic Committee ("USOPC") without alleging any facts suggesting that the USOPC knew of Foley's misconduct at the time, took any actions to cover it up or to discourage Plaintiffs from reporting it, or had any ability to control or address Foley's alleged actions.

As a threshold matter, the Complaint fails to establish that the USOPC is subject to personal jurisdiction in California.   It alleges no facts establishing that the USOPC, which is headquartered in Colorado, is "at home" in California, or that Plaintiffs' injuries arise out of or relate to the USOPC's alleged activities within the state.

The Complaint also fails to plausibly allege facts to support essential elements of each cause of action against the USOPC:

- **Count 1**.  Conclusory allegations that the USOPC participated in an enterprise aimed at covering up Foley's alleged misconduct fail to state a cause of action under the Racketeer Influenced and Corrupt Organizations ("RICO") Act. Indeed, the Complaint alleges absolutely no facts suggesting that the USOPC was aware of Foley's misconduct it occurred, took any actions to "cover up" Foley's misconduct, or was engaged in any "enterprise" to do the same.

- **Counts 2, 3, & 16**.  The Complaint does not—and could not—allege that the USOPC committed or knowingly benefitted from any of the horrific crimes Congress subsumed in the Trafficking Victims Protection Act ("Sex Trafficking Act"), let alone the specific ones alleged here: forced labor or sex

1

trafficking.  The Complaint's resort to conclusory allegations of knowledge simply cannot suffice to create liability.  Nor do the allegations suggest that the USOPC participated in a conspiracy to perpetrate these crimes.

- **Counts 8 & 9**.  The Complaint improperly relies upon California Code of Civil Procedure Section 340.16—which extends the state's statute of limitations for certain sexual crimes—because it does not describe any alleged sexual abuse that occurred in California or any actions taken by the USOPC in California.  Moreover, Section 340.16 merely revives certain types of claims that would otherwise be time-barred and does not provide a standalone cause of action.  The Complaint also improperly relies solely upon conclusory allegations for required elements of Section 340.16, including that the USOPC was involved in a cover-up of Plaintiffs' assault and that the USOPC is legally responsible for the damages arising out of Foley's sexual assault.

- **Count 15**.  The facts alleged do not plausibly establish that the USOPC owed Plaintiffs a legal duty of care or that Foley was an agent of the USOPC, as required for negligent supervision and retention claims.  USSS is required by law to maintain independence from the USOPC in its day-to-day activities, such as hiring and supervision of employees like Foley. As the California Supreme Court has squarely held in an analogous case concerning the sport of taekwondo, the USOPC lacked the ability to control Foley's actions and cannot be held liable for his alleged abuses.

For these reasons and as described more fully below, the Court should dismiss all causes of action alleged against the USOPC.

## II.   FACTUAL BACKGROUND

### A.   The USOPC's Role Under the Ted Stevens Amateur Sports Act.

The USOPC is a nonprofit organization that Congress chartered under the Ted Stevens Amateur Sports Act of 1978 ("ASA").  Congress's goal in creating the USOPC

2

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)(2) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

was "to correct the disorganization and the serious factional disputes that seemed to plague amateur sports in the United States." *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 544 (1987). Before the ASA, there was no official process for selecting athletes to represent the United States in the Olympic, Paralympic, Pan-American, and Parapan American Games. Rival sports organizations vied with each other over whose athletes would compete, with no official requirements regarding fairness or equal opportunity. *See Oldfield v. Athletic Cong.*, 779 F.2d 505, 506 (9th Cir. 1985). Rather than consolidating all Olympic sports organizations into a single, monolithic entity (as many countries do by creating a "Sports Ministry"), Congress chose to leave intact the pre-existing network of private sports organizations. *See* 124 Cong. Rec. S9821–22 (daily ed. June 26, 1978) (statement of Sen. Ted Stevens) (explaining that the sports organizations would remain autonomous in the governance of their sport). The ASA empowers the USOPC to certify a single "National Governing Body" ("NGB") for each sport. Defendant USSS is one of more than fifty such NGBs. 36 U.S.C. § 220521.

The ASA requires each NGB to be independent from the USOPC, and to demonstrate "that it is autonomous in the governance of its sport . . . in that it (A) independently decides and controls all matters central to governance; (B) does not delegate decision-making and control of matters central to governance; and (C) is free from outside restraint." 36 U.S.C. § 220522(5). The USOPC's fundamental statutory role with respect to the NGBs (apart from selecting which organizations to certify as NGBs) is to ensure that (1) the NGBs' procedures for selecting the Olympic, Paralympic, Pan-American, and Parapan American athletes are fair and provide individuals with an equal opportunity to participate in those games, and (2) the NGBs have policies in place concerning, for example, athlete safety and governance. *See* 36 U.S.C. §§ 220521(a), 220522(8) & (15), 220505(d). The USOPC can also ensure that NGBs meet eligibility criteria and provide financial assistance to NGBs in support of sport and athlete programs. 36 U.S.C. § 220505.

The USOPC does not have member athletes: NGBs are responsible for the training and selection of Olympic and Paralympic team members and coaches.  36 U.S.C. § 220504(a).

Defendant USSS is the NGB for skiing and snowboarding and interfaces directly with its athletes and coaches.  Compl. ¶ 26.  It is a completely independent organization from the USOPC and, as required by the ASA, has its own bylaws, directors, officers, and employees.  *See* 36 U.S.C. § 220522(3), (5), (9), (12).

**B.     Plaintiffs' Allegations.**

Plaintiffs are three former snowboarders who trained and competed with Foley during their careers.  Rosey Fletcher was a member of USSS from at least 1998 until 2006.  *Id.* ¶¶ 60, 64–67, 70.  Erin O'Malley was a member of USSS from 1995 until 2003.  *Id.* ¶¶ 78, 81–90.  Callan Chythlook-Sifsof was a member of USSS from at least 2005 until 2014.  *Id.* ¶¶ 97, 100–06.  Defendant Peter Foley was named as the first head coach of the United States Snowboard Team in 1994.  Compl. ¶¶ 26–27.

The Complaint alleges that Foley sexually abused and harassed Plaintiffs during the time they were members of USSS.  *Id.* ¶¶ 64–67, 81, 85, 100–101, 104, 106.  The Complaint, however, does not state where, or the dates on which, the alleged abuse occurred—details that are critical to establish, among other things, personal jurisdiction.  The Complaint also contains no factual allegations describing any involvement by the USOPC in the alleged abuse, nor any relevant USOPC activities in the State of California.  The Complaint's only allegations specific to the USOPC are:

- "USSS and USOPC conduct substantial business throughout this district, including, but not limited to sponsoring training camps, overseeing local ski and snowboard organizations, [and] evaluating athletes."  *Id.* ¶ 23.

- References to conduct occurring at "USSS- and USOPC-sponsored competitions."  *Id.* ¶¶ 29, 64, 81, 100, 125, 127, 212–13, 223–24.

4

- "Alan Ashley, a former executive with USOPC, willfully endeavored to prevent athletes from continuing to report in order to protect claims against Foley's misconduct." *Id.* ¶ 170.[1]
- "USOPC 'temporarily suspended' Foley during the Olympics following [one of the Plaintiffs' social media] post." *Id.* ¶ 56.
- "Foley's predatory behavior was constant and well known to . . . the USOPC. *Id.* ¶ 8; *see also id.* ¶¶ 9 ("Foley's abuse was reported to executives of the USSS and the USOPC on numerous occasions"), 49 ("[T]he USOPC knew of Foley's sexual conduct, abuse of power, and controlling behavior"), 130 ("[T]he USOPC . . . knew about the unlawful behavior").

Based on these allegations, the Complaint alleges four categories of claims against the USOPC: one federal claim for violation of 18 U.S.C. §§ 1962(c), 1964(c) ("RICO Act"); three federal claims pursuant to 18 U.S.C. §§ 1591(a), 1595(a) and/or 18 U.S.C. §§ 1594(c), 1595(a) ("Sex Trafficking Act"); one negligence-based claim under California law; and two sexual assault claims under California law.

## III. ARGUMENT

### A. The Complaint Fails To Establish this Court's Personal Jurisdiction Over the USOPC.

The Complaint fails to demonstrate personal jurisdiction over the USOPC. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) ("Plaintiff[] bear[s] the burden of showing that jurisdiction is proper."). Where, as here, a personal jurisdiction challenge is based on written materials rather than an evidentiary hearing, the plaintiff must make "a

---

[1] During the April 14, 2023 conference of counsel held pursuant to L.R. 7-3, counsel for the USOPC asked Plaintiffs' counsel for the factual basis for the Complaint's allegation regarding Alan Ashley. *See* Declaration of Kevin Hoogstraten ("Hoogstraten Decl.") at ¶ 4. Counsel for Plaintiffs indicated that the basis for the allegation was that Mr. Ashley's job title at the USOPC at the time placed him in a presumed "sphere of knowledge." *Id.* Plaintiffs' counsel did not state any specific instances of Ashley attempting to prevent an athlete from reporting claims against Foley, or provide any information as to how Ashley would have come to possess actual knowledge of Foley's alleged misconduct. *Id.* ¶ 5.

5

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)(2) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

prima facie showing of facts supporting jurisdiction through its pleadings and affidavits to avoid dismissal." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1119 (9th Cir. 2002). The Complaint fails to make the requisite prima facie showing of either general or specific jurisdiction over the USOPC.

1. <u>This Court Lacks General Personal Jurisdiction over the USOPC.</u>

For corporate defendants, general jurisdiction exists only where the corporation is "fairly regarded as at home"—*i.e.*, where the corporation is incorporated or where its principal place of business is located. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quotation marks omitted). The USOPC is not incorporated in any state and has "its principal place of business and headquarters in Colorado Springs, Colorado." Compl. ¶ 20. Accordingly, the USOPC is neither "at home" nor subject to general personal jurisdiction in California. *See Daimler*, 571 U.S. at 139 n.20.

The Complaint's vague allegation, even if true, that "USSS and USOPC conduct substantial business throughout this district, including, but not limited to sponsoring training camps, overseeing local ski and snowboard organizations, [and] evaluating athletes," Compl. ¶¶ 22–23, does not meet the high bar for general jurisdiction. Indeed, even a "substantial, continuous, and systematic course of business" in the forum state is insufficient to establish general personal jurisdiction. *Daimler*, 571 U.S. at 136–38 (quotation marks omitted); *see also Wolf Run Hollow, LLC v. Nat'l Car Rental Sys., Inc.*, 2012 WL 12882660, at *3 (C.D. Cal. Dec. 18, 2012) (allegation that defendant "conduct[s] business in the State of California" was "too vague and conclusory" to establish personal jurisdiction); *Gemcap Lending I, LLC v. Crop USA Ins. Agency, Inc.*, 2013 WL 12136535, at *3 (C.D. Cal. Oct. 10, 2013) (no jurisdiction when complaint only alleged "conclusory allegations" that the defendants "have done, and are doing, business" in California).

2. <u>This Court Lacks Specific Personal Jurisdiction over the USOPC.</u>

The Complaint also fails to establish this Court's specific personal jurisdiction over the USOPC, which requires a showing that: (1) the USOPC purposefully directed activities

6

towards California; (2) the claims arise out of or relate to those forum-related activities; and (3) the exercise of jurisdiction is "reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).

The Complaint lacks a single specific allegation describing any USOPC activity directed toward California, much less any description of harm that arose out of or relates to forum-related activities. Thus, the Complaint offers no plausible basis to conclude that the Complaint's causes of actions "arise out of or relate to" contacts between the USOPC and the State of California, and specific personal jurisdiction is therefore lacking.[2] *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021); *see Kirsopp v. Yamaha Motor Co.*, 2014 WL 12577429, at *6 (C.D. Cal. Aug. 27, 2014) (no specific personal jurisdiction where allegations were "conclusory and unsupported by facts.").

*Mehr v. Fed'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035 (N.D. Cal. 2015) provides a helpful illustration. There, seven soccer players brought suit against FIFA, U.S. Soccer, and other soccer associations alleging that defendants failed to adopt and enforce rules that would reduce the risk of injuries resulting from concussions. *Id.* at 1043–44. FIFA, which has its principal place in Zurich, Switzerland, moved to dismiss for lack of personal jurisdiction. *Id.* at 1047–48. Plaintiffs argued that jurisdiction in California was appropriate because FIFA required its members, including U.S. Soccer and local teams, to "follow FIFA's rules and the Laws of the Game" in California, and because California had the largest concentration of youth soccer players in the United States. The

---

[2] Given the Complaint's failure to establish the first two prongs of the specific jurisdiction test, the Court need not consider whether the exercise of personal jurisdiction over the USOPC in California is "reasonable." In any event, such exercise would not be reasonable under the multi-factor test articulated by the Ninth Circuit: (1) the state has no significant interest in adjudicating the dispute, (2) maintaining the suit in California does not minimize burdens or achieve any efficiency gains, (3) the Complaint has not alleged any conduct that occurred in California; (4) the Complaint does not make any specific allegations that the USOPC purposefully interjected itself into California's affairs, and (5) two of the Plaintiffs are not California residents. *See Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018).

7

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)(2) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

court, however, held there was no specific jurisdiction over FIFA where the organization "[did] not stage or organize any continental, national, regional, or local soccer matches in California," and plaintiff did not allege any soccer-related injuries from the California events where FIFA was one of multiple organizers.  *Id.*  Because this Complaint lacks even the types of allegations found insufficient in *Mehr* and has not alleged any connection between USOPC actions in California and Plaintiffs' injuries, it must be dismissed.[3]

**B.     All Causes of Action Should be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6).**

The Complaint falls far short of alleging "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" against the USOPC.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  The facts alleged must "raise a right to relief above a speculative level."  *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (quoting *Twombly*, 550 U.S. at 555–56).

Rather than meet that standard, the Complaint is comprised of "labels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked

---

[3] In subsequent correspondence after the parties' L.R. 7-3 conference, Plaintiffs claimed that jurisdiction exists "under 18 USC 1965 considering USOPC's national contacts." Hoogstraten Decl. Ex. 1.  The Complaint itself does not assert jurisdiction under Section 1965 and does not mention Section 1965 at all.  Furthermore, for a court to exercise personal jurisdiction under Section 1965 (RICO's jurisdiction statute), "the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy **and** the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986) (emphasis added) Here, due to the Complaint's failure to plead the location in which the alleged abuse actually took place, Plaintiffs plainly cannot meet their burden of showing that no other district would have personal jurisdiction.  "Merely naming persons in a RICO complaint does not, in itself, make them subject to section 1965(b)'s nationwide service provisions." *Id.*

assertion[s] devoid of further factual enhancement," which are insufficient to state a claim.[4] *See Iqbal*, 556 U.S. at 678.

      1.    <u>The Complaint Fails to State a Claim Under the RICO Act (Claim 1).</u>

The federal RICO statute makes it unlawful for a "person" to participate, or conspire to participate, in a "pattern of racketeering activity" through an enterprise engaged in or affecting interstate commerce. 18 U.S.C. §§ 1962(c), (d). The Ninth Circuit has cautioned that "RICO was intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Boar, Inc. v. Cnty. of Nye*, 499 F. App'x 713, 715 (9th Cir. 2012) (quoting *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992)). "Indeed, although civil RICO may be a 'potent weapon,' plaintiffs wielding RICO almost always miss the mark." *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 220 (E.D.N.Y. 2014).[5]

The Complaint fails in its attempt to shoehorn personal injury claims into the type of organized crime conspiracy that the RICO Act was intended to address. The RICO allegations, *see* Compl. ¶¶ 155–76, 183–208, are a textbook example of the "formulaic recitation of the elements of a cause of action" and "naked assertion[s] devoid of further factual enhancement" that are insufficient to satisfy the *Iqbal* pleading standard. *See Iqbal*, 556 U.S. at 678. Specifically, there are not facts sufficient to plausibly establish the critical elements of injury to business or property, the existence of an enterprise, or a pattern of racketeering activity.

---

[4] In addition to failing to plead any specific allegations regarding the USOPC's conduct, the Complaint lacks factual allegations sufficient to allow the USOPC (or the Court) to determine which state's law governs Plaintiffs' common law claims. Should Plaintiffs be given an opportunity to amend their Complaint, the USOPC reserves all rights to argue that the laws of a state other than California apply here.

[5] For example, one district court recounted that "a survey of 145 appellate decisions nationwide rendered from 1999 to 2001 in connection with RICO civil actions" found that RICO plaintiffs only had a "final success rate of a mere two percent." *Gross v. Waywell*, 628 F. Supp. 2d 475, 479 (S.D.N.Y. 2009) (citing Pamela H. Bucy, *Private Justice*, 76 S. Cal. L. Rev. 1, 22 (2002)).

*a)*     *No Plausible Injury to Business or Property.*

Standing is a critical element under the RICO Act, but the Complaint has not plausibly alleged (i) injury to Plaintiffs' "business or property" that resulted in "concrete financial loss," that (ii) occurred by reason of the RICO violation.  18 U.S.C. § 1964(c); *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008).  Rather, the Complaint claims Plaintiffs have (1) "suffered direct interference with promised work and severe damage to their professional and business interests," (2) "were denied participation in select competitions" and "lost revenue from select partnerships with sponsors," and (3) suffered various forms of emotional distress, including "an eating disorder," "fear and anxiety," feeling "fearful, distressed, anxious, degraded, and depressed," and "anxiety and depression."  Compl. ¶¶ 199–203, 205–06.  These allegations are insufficient to establish injury to "business or property," as required to state a RICO claim.

First, "personal injury, including emotional distress, is not compensable under section 1964(c) of RICO."  *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990); *see also Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 329 (E.D.N.Y. 2012) (holding that "[t]he overwhelming weight of authority" interprets business and property "to exclude the economic consequences of personal injuries").  The Complaint's allegations of emotional distress therefore cannot establish standing under RICO.

In addition, the Complaint's conclusory allegations regarding lost professional and business interests fail to establish standing.  In *Baker v. Bratton*, 2008 WL 11409990, at *1 (C.D. Cal. 2008), the court dismissed a RICO claim because plaintiff's "boilerplate assertions" regarding lost "employment and employment prospects" were insufficient to allege injury to business or property.  The court faulted plaintiff for failing to describe what "employment prospects" he was prevented from exploiting as a result of the alleged RICO violation.  *Id.*  Here too, the Complaint fails to identify specific sponsorships, contracts, or other business interests that were harmed as a result of the alleged RICO violations.  *See, e.g.*, Compl. ¶¶ 199, 202, 203.  Absent more detailed factual allegations, the Complaint

cannot plausibly establish that Plaintiffs lost professional or business opportunities as a result of the alleged racketeering activity.  *See Brogdon v. Roman Cath. Archbishop of Los Angeles*, 2021 WL 6802800, at *10 (D. Ariz. Dec. 10, 2021) (holding that plaintiffs failed to allege an injury to business or property where plaintiffs merely "group[ed] themselves together and sa[id] the words 'lost employment'"), *report and recommendation adopted*, 2022 WL 326343 (D. Ariz. Feb. 3, 2022); *Cormier v. Discover Bank*, 2005 WL 2254069, at *2 (W.D. Wash. 2005) ("vague allegations" that plaintiffs were "deprived of business opportunities and . . . damaged in [their] business enterprises" are inadequate to plead injury under RICO), *aff'd*, 207 F. App'x 866 (9th Cir. 2006).[6]

### b)   No Plausible RICO Enterprise.

The Complaint also fails to plead the existence of an "enterprise" within the meaning the RICO Act.  To do so, a "complaint must describe a group of persons associated together for a common purpose of engaging in a course of conduct[] . . . [and] must provide both evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit.  Importantly, [t]he enterprise is not the pattern of racketeering activity; it is an entity separate and apart from the pattern of activity in which it engages."  *Doan v. Singh*, 617 F. App'x 684, 685–86 (9th Cir. 2015) (internal citations and quotation marks omitted).

The Complaint's bald claim "The Foley Sexual Abuse and Cover-Up Enterprise is an ongoing organization that functions as a continuing unit" does not satisfy the *Doan* standard.  Compl. ¶ 185.  Conclusory RICO allegations such as these, which do not allege facts showing defendants acted together or towards a common purpose, are routinely dismissed by California district courts.  *See, e.g.*, *Ahmadi Abhari v. Victory Park Cap.*

---

[6] In part as a result of the Complaint's failure to adequately plead injury to business or property, the Complaint also does not plausibly allege the required element of causation. *See Hemi Grp., LLC v. N.Y.C.*, 559 U.S. 1, 9 (2010) (holding that there must be some "direct relation between the injury asserted and the injurious conduct alleged").  This constitutes yet another ground for dismissal of the RICO claim.

*Advisors*, 2020 WL 7346676, at *5 (C.D. Cal. Nov. 16, 2020) (holding plaintiffs failed to allege a RICO enterprise where complaint "fail[ed] to specify the role of each defendant separately"); *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019) (holding plaintiffs failed to allege a RICO enterprise where plaintiffs did not "plausibly allege facts" showing defendants "committed acts towards [the] alleged common purpose"); *see also Hoatson v. New York Archdiocese*, 2007 WL 431098, at *3 (S.D.N.Y. Feb. 8, 2007) (dismissing RICO claim brought by a Catholic Church abuse survivor because plaintiff's "wholly conclusory allegations" failed to allege the existence of an enterprise), *aff'd*, 280 F. App'x 88 (2d Cir. 2008). The fact that the Complaint fails to allege any facts establishing that Foley and USSS "associated together" with the USOPC to create a RICO enterprise alone requires dismissal of the RICO cause of action.

c) *No Plausible Participation by the USOPC in the Alleged Enterprise.*

Similarly, beyond a handful of vague statements that "Defendants have conducted and participated in the affairs of the Foley Sexual Abuse and Cover Up Enterprise," *see, e.g.*, Compl. ¶¶ 184, 188, 197, the Complaint fails to allege any facts establishing that the USOPC acted on behalf of the (non-existent) enterprise, rather than in its own interest, or directed the enterprise's affairs. *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). In determining whether a defendant participated in the "conduct" of a RICO enterprise, "[r]elevant considerations include whether the defendant occup[ies] a position in the 'chain of command' . . . through which the affairs of the enterprise are conducted, whether the defendant knowingly implement[ed] the decisions of upper management, and whether the defendant's participation was 'vital' to the mission's success." *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 2013 WL 12130034, at *12 (C.D. Cal. July 19, 2013) (internal quotation marks omitted) (citing *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008)).

12

The Complaint makes no attempt to assert facts in support of these considerations, apart from the vague allegation that a former USOPC executive "willfully endeavored to prevent athletes from continuing to report in order to protect claims against Foley's misconduct." Compl. ¶ 170. For starters, this allegation is implausible given the Complaint's lack of any factual allegations regarding, for example, when and how this USOPC executive purportedly learned of Foley's alleged misconduct or actions the executive took to prevent athletes from reporting. In any event, Paragraph 170 is insufficient to plausibly allege that the USOPC acted on behalf of the purported enterprise or directed the enterprise's affairs under the *Iqbal* standard, which requires something more than "naked assertion[s] devoid of further factual enhancement." *See Iqbal*, 556 U.S. at 678; *Grijalva v. Kevin Mason, P.A.*, 2019 WL 8221076, at *3 (C.D. Cal. Dec. 30, 2019) (dismissing RICO claim given lack of "allegations suggesting that [the defendant] in any way directed the affairs of the alleged enterprise or did anything more than perform services for it"); *Kelmar v. Bank of Am. Corp.*, 2012 WL 12850425, at *7 (C.D. Cal. Oct. 26, 2012) (dismissing RICO claim where "conclusory allegation fail[ed] to show how Defendants directed the affairs of the alleged enterprise"), *aff'd*, 599 F. App'x 806 (9th Cir. 2015).

### d) *No Pattern of Racketeering Activity by the USOPC.*

The Complaint also fails to allege the requisite predicate acts and pattern of racketeering activity which "must be established as to each individual defendant." *Keel v. Schwarzenegger*, 2009 WL 1444644, at *6 (C.D. Cal. May 19, 2009) (quoting *United States v. Persico*, 832 F.2d 705, 714 (2nd Cir. 1987)). "The focus of § 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise[.]" *Id.*

*First*, the Complaint fails to plausibly allege that the USOPC committed the predicate acts of: (1) 18 U.S.C. §§ 1590, 1591 (sex trafficking); (2) 18 U.S.C. § 2421 (Mann Act); and (3) mail and wire fraud. Compl. ¶ 188. As discussed *infra* at Section III.B.2, the Complaint's allegations fail to plausibly state a violation of 18 U.S.C. § 1591

13

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)(2) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

by the USOPC.  And to the extent the Complaint purports to allege a violation of 18 U.S.C. § 1590 as a predicate act by the USOPC, *see* Compl. ¶ 188, any such allegation fails for the same reasons as the allegation with respect to Section 1591.

The Complaint also fails to plausibly allege a violation of the Mann Act by the USOPC, which criminalizes "knowingly transport[ing] any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity."  To establish the requisite intent, Plaintiffs must allege that a "dominant, significant, or motivating purpose of the transportation . . . was to engage in criminal sexual activity."  *United States v. Flucas*, 22 F.4th 1149, 1150 (9th Cir.), *cert. denied*, 143 S. Ct. 320 (2022).  Here, the Complaint alleges (without any factual support) that "Defendants" engaged in "multiple instances of transporting female athletes for the purposes of . . . sexual abuse, sexually illicit photography, and other immoral purposes."  Compl. ¶ 188.  However, the Complaint does not allege that any of these "immoral purposes" were the "dominant, significant, or motivating purpose" of transporting the athletes.  Nor can it, in light of the admission that the transportation was of the athletes to "various competitions and snowboarding events."  *Id.* ¶ 191.  And importantly, there are no specific allegations that the *USOPC* engaged in the transportation of athletes at all.  *See McGowan v. Weinstein*, 562 F. Supp. 3d 744, 755 (C.D. Cal. 2021) (dismissing RICO claim where the defendant's "role in th[e] episode [was] entirely unclear").

Last, the Complaint fails to satisfy Rule 9(b)'s heightened pleading standards for fraud-based predicate acts.  *Doan*, 617 F. App'x at 685.  "[A]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged" and "Plaintiff must detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme.  A plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud."  *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1053 (C.D. Cal. 2016) (internal quotation marks

14

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)(2) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

and citations omitted).  But the Complaint does exactly that.  *See* Compl. ¶¶ 189, 191–94.
There are no allegations that specifically describe any purported mail or wire fraud by the
USOPC, so the claim must be dismissed.  *See MSP Recovery Claims, Series LLC v. Avanir
Pharms., Inc.*, 2022 WL 17220647, at *7 (granting motion to dismiss RICO claim where
allegations did not "describe the time, place, and substance of Defendant's
misrepresentations"); *White v. Seabrooks*, 2022 WL 17224493, at *7 (C.D. Cal. Apr. 20,
2022) (granting motion to dismiss RICO claim where complaint lacked "factual allegations
detailing the occasions" of the predicate acts).

*Second*, "[i]n order to constitute a 'pattern,' there must be at least two acts of
racketeering activity within ten years of one another."  *Turner v. Cook*, 362 F.3d 1219,
1229 (9th Cir. 2004).  Given the failure to plead a single predicate act or even identify
when any of the alleged misconduct took place, the Complaint necessarily fails to establish
a *pattern* of racketeering activity by the USOPC.

Finally, Plaintiffs cannot plausibly allege any threat of continued criminal activity
by the alleged enterprise, as required to establish a pattern of racketeering activity.  *See id.*
The Complaint alleges that Foley was terminated as head coach by USSS in March 2022
when Plaintiffs' claims came to light.  Compl. ¶¶ 27, 151.  Given that the alleged enterprise
supposedly centered around preventing "the reporting, prosecution, or disclosure of
Foley's sexual abuse, sexual assault, mental abuse, and exploitive or retaliatory behavior,"
*see, e.g.*, *id.* ¶¶ 155–56, 163–64, 187, and acted to "develop the Team, and to recruit women
and girls to participate in the sport and to engage in illegal sexual activity *with Foley*," *id.*
¶ 162 (emphasis added), it would be impossible for the enterprise's purported goals to be
pursued now that Plaintiffs' allegations are public and Foley is no longer coach.  *See
McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1014 (C.D. Cal. 2020) (finding no pattern
of racketeering where "[n]either of Defendants' purported goals—keeping [a defendant's]
misconduct secret from the public or obtaining a copy of [a memoir detailing his

misconduct] before it was published—could be pursued anew" after [the defendant] had been convicted and incarcerated for the same misconduct).

> 2. <u>The Complaint Fails to State a Claim Under the Sex Trafficking Act (Claims 2 and 3).</u>

Like the RICO cause of action, the Complaint seeks to take advantage of a federal statute that has no application to any claim against the USOPC, particularly where it does not – and cannot – plausibly allege that the USOPC knew or should have known of any purported trafficking activity.

The Sex Trafficking Act is a federal statute which provides victims of certain slavery and sex-related crimes with civil causes of action against not only the perpetrators, but also persons who "knowingly benefit" from participation in the criminal venture.  18 U.S.C. § 1595(a).  Congress set a high bar for "beneficiary actions" such as the one brought here against the USOPC: Plaintiffs "must allege facts from which the Court can reasonably infer that [the USOPC] (1) 'knowingly benefit[ted] financially or by receiving anything of value'; (2) from participation in a venture; (3) they 'knew or should have known has engaged in' sex trafficking. *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *4 (N.D. Cal. July 30, 2020).  None of these three elements are satisfied by the Complaint's conclusory allegations, and particularly not the third element of knowledge. The Sex Trafficking Act allows for beneficiary liability only upon a showing that defendant, specifically, knew or should have known of the sex trafficking.  Accordingly, the Complaint cannot impute knowledge through the USOPC's relationship with USSS or through Foley's relationship with USSS.

Due to this requirement of specific knowledge, courts allow "beneficiary" actions to proceed only when plaintiffs plead specific facts as to each element.  *See Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (motion to dismiss sex trafficking claim denied based on allegations that motel owners "enthusiastically expressed [their] intent" for guest to traffic victim during parking-lot discussion and that owners witnessed the guest forcing

16

the victim into his room); *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 953 (N.D. Cal. 2019) (motion to dismiss labor trafficking claim denied based on allegations that Tesla knew that equipment manufacturer's employees lacked necessary state construction licenses and knew from Tesla's jobsite records that equipment manufacturer's employees were working extreme hours).

Here, in contrast, the Complaint merely recites legal conclusions ("Foley's predatory behavior was constant and well known to . . . the USOPC," Compl. ¶ 8; "[T]he USOPC . . . knew about the unlawful behavior," Compl. ¶ 130), and claims, with no factual elaboration whatsoever, that a former USOPC employee "willfully endeavored to prevent athletes from continuing to report in order to protect claims against Foley's misconduct." Compl. ¶ 170. There are no facts alleged to make the Paragraph 170 allegation plausible, such as when, where, or how the former USOPC employee supposedly acted, and no non-conclusory allegations that the USOPC was aware or should have been aware of any sex trafficking by Foley. Even with more specific facts than pleaded here, the court in *B.M. v. Wyndham* dismissed the beneficiary action, holding that allegations of constant male visitors supported the idea that "staff at the franchisee hotels" should have known of plaintiff's trafficking, but "[t]he Complaint fail[ed] to allege facts as to *how*" the *franchisor* should have known. *See B.M.*, 2020 WL 4368214 at *6,

The Eleventh Circuit also recently dismissed a Section 1595(a) claim despite allegations that hotel franchisors trained employees at hotels where prostitution allegedly occurred, investigated sex trafficking allegations at the relevant hotels, and read online hotel reviews mentioning prostitution. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021). The court held that those allegations failed to "suggest that the *franchisors* participated in an alleged common undertaking or enterprise with the Does' sex traffickers." *Id.* (emphasis added). And another court dismissed sex trafficking claims against an NGB on the ground that the supporting allegations were conclusory. *See Jensen v. United States Tennis Ass'n*, 2020 WL 6445117, at *5 (D. Kan. Oct. 30, 2020) (complaint

17

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)(2) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

stated that "sexual abuse within USO[P]C-controlled sports" was well-known but failed to "plausibly suggest that plaintiff notified USTA about Coach Haultain's conduct or that USTA witnessed Coach Haultain's conduct."); *see also Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) ("conclusory allegations" that co-founder of Harvey Weinstein's company "'facilitated' and 'pa[id] for' Harvey's travel [and] that he 'knowingly benefited from' Harvey's violation of Section 1591" did not sufficiently establish knowledge or participation in Weinstein's alleged abuse at film festival).

In addition to lacking the requisite facts to support such a claim against the USOPC, the Complaint's sex trafficking claims are time barred. The two Plaintiffs who allege such claims last competed in snowboarding in 2003 and 2006. *See* Compl. ¶¶ 60, 78. Therefore, the "'catch-all' four-year statute of limitations for any claim brought under a federal statute enacted after December 1, 1990 which does not supply its own statute of limitations," described in 28 U.S.C. § 1658, would apply to those claims. *DeCrescenzo v. Church of Scientology Int'l*, 2009 WL 10672400, at *1 (C.D. Cal. Nov. 5, 2009); *see* 18 U.S.C. § 1595(c) (amended Dec. 23, 2008); Pub. L. 110-457, Title II, § 221(2) (Dec. 23, 2008). The claims therefore expired years before this lawsuit was filed.

3.   The Complaint Fails to State a Conspiracy to Sex Trafficking Claim (Claim 16).

The claim for conspiracy to sex trafficking under 18 U.S.C. § 1594(c) and 18 U.S.C. § 1595(a) suffers from the same fundamental defects as the Complaint's underlying sex trafficking claims, and should likewise be dismissed.

Moreover, the Complaint does not allege the foundational facts showing a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012). Indeed, it says nothing to suggest the USOPC was aware that Foley intended to traffic women, or how the USOPC became aware. In stark contrast to its detailed allegations surrounding USSS employees' interactions with Plaintiffs, Compl. ¶¶ 138–46, 165–69, the Complaint

again pins its theory of USOPC liability on a single, speculative, and wholly unsupported statement that a former USOPC executive "willfully endeavored to prevent athletes from continuing to report in order to protect claims against Foley's misconduct," Compl. ¶ 170.

The law requires far more for a conspiracy claim.  In *Fleites v. MindGeek S.A.R.L.*, for example, plaintiff brought a Section 1594(c) conspiracy claim against Visa and alleged that Visa knew that the website it processed financial transactions for contained illegal content.  2022 WL 4456077 (C.D. Cal. July 29, 2022).  The *Fleites* court let that claim proceed only because the plaintiff alleged that Visa knew of the content "from its own due diligence and discussions and negotiations with [website], PayPal's decision to cease doing business with [website], communications from advocates with which Visa interacted, and from the New York Times article." *Id.* at *10.  The Complaint does not, and cannot, contain similarly detailed allegations against the USOPC.

In addition, the conspiracy claim—which is also brought pursuant to Section 1595(a)—is time-barred for the same reasons discussed above.  *See supra* Section III.B.3.

### 4.   The Complaint Fails to State a Sexual Assault Claim (Claims 8 and 9).

Recently amended California Code of Civil Procedure Section 340.16 revives claims that would otherwise be barred solely because the applicable statute of limitations has or had expired, under certain circumstances.  As an initial matter, the Complaint provides no clear basis for Plaintiffs' implicit assertion that California law governs their sexual assault claims, as it does not identify any alleged sexual abuse or misconduct that occurred in California or any actions taken by the USOPC in California.  As a result, the Complaint lacks any indication that Plaintiffs may properly avail themselves of Section 340.16.

In addition, Section 340.16 does not provide a cause of action.  The statute provides: "This subdivision *revives claims* brought by a plaintiff . . . "  Cal. Civ. Proc. Code § 340.16(e)(2) (emphasis added).  Thus, Section 340.16 merely extends the statute of

limitations for claims that would otherwise be time barred, but does not create standalone causes of action.

To the extent Counts 8 and 9 are construed to allege that the common law claims asserted against the USOPC—*i.e.*, Count 15, *see infra* Section III.B.5—are revived by Section 340.16, the Complaint fails to plausibly allege the revival prerequisites of Section 340.16 under *Iqbal*. Section 340.16 applies only if (A) the plaintiff was sexually assaulted, as defined in Sections 243.4, 261, 264.1, 286, 287, or 289 of the California Penal Code; (B) one or more entities are legally responsible for damages arising out of the sexual assault; and (C) the entity or entities, including, but not limited to, their officers, directors, representatives, employees, or agents, engaged in a cover up or attempted a cover up of a previous instance or allegations of sexual assault by an alleged perpetrator of such abuse. Cal. Civ. Proc. Code § 340.16(e)(2). First, as detailed *infra* at Section III.B.5, the USOPC is not "legally responsible" for damages arising out of Foley's alleged sexual assault. Second, the Complaint does not allege facts sufficient to plausibly establish the USOPC's participation in any "cover up." The Complaint simply recites the statutory language of Section 340.16 in alleging that "[t]he USSS and/or the USOPC, including but not limited to, their officers, directors, representatives, employees, or agents, engaged in a cover up or attempted a cover up of a previous instance or allegations of sexual assault by Foley." Compl. ¶ 277. And Paragraph 170's allegation that a former USOPC executive "willfully endeavored to prevent athletes from continuing to report in order to protect claims against Foley's misconduct" is a "naked assertion devoid of further factual enhancement" and insufficient to state a claim. *See Iqbal*, 556 U.S. at 678.

5.   The Complaint Fails to State a Negligent Supervision and Retention Claim (Claim 15).

Plaintiffs' claim for negligent supervision and retention fails at the threshold: Foley was not employed by or an agent of the USOPC, and the Complaint does not state

20

otherwise.[7]   The Complaint also fails to allege a legally sufficient basis for attributing a legal duty of care to the USOPC, which is a fundamental prerequisite for all negligence-based causes of action.   The California Court of Appeal and Supreme Court recently addressed this precise issue in a case involving the relationship between the USOPC and another NGB.   *See Brown*, 40 Cal. App. 5th 1077.   In *Brown*, the Supreme Court upheld a sustained demurrer to plaintiffs' negligence claims against the USOPC on the ground that the USOPC had no legal duty of care toward the plaintiff-athletes.   The Complaint offers even fewer allegations of duty than the ones held insufficient in *Brown*, and *Brown* compels dismissal of this claim.

> a)   *The Complaint Fails to Allege an Employer-Employee or Principal-Agent Relationship.*

Negligent supervision and retention are "theor[ies] of direct liability—not vicarious liability," and "[t]he neglect pleaded is that of the employer itself."   *J.W. v. Watchtower Bible & Tract Soc'y of New York, Inc.*, 29 Cal. App. 5th 1142, 1163 (2018).   Accordingly, a necessary element of the claim is that the defendant actually be in a supervisory position over the person who allegedly caused harm, either as employer or principal.   *See Z.V. v. Cnty. of Riverside*, 238 Cal. App. 4th 889, 902 (2015) ("To establish negligent supervision, a plaintiff must show that a person *in a supervisorial position over the actor* had prior knowledge of the actor's propensity to do the bad act.") (emphasis added).   Furthermore, to establish an agency relationship, Plaintiffs must show either that "[t]he principal [] in some manner indicate[d] that the agent is to act for him" or that "the principal intentionally, or by want of ordinary care, cause[d] a third person to believe another to be his agent."   *UFCW & Emps. Benefit Tr. v. Sutter Health*, 241 Cal. App. 4th 909, 931 (2015) (quoting Cal. Civ. Code §§ 2298, 2300).

---

[7] In addition, the claim is time-barred.   As detailed above, Section 340.16 does not apply to revive the negligent supervision and retention claim, and that claim expired years ago. *See* Cal. Civ. Proc. Code § 335.1 (two-year statute of limitation for bodily injury caused by the negligence of another).

The Complaint simply alleges: "At all times material, Foley was employed by the USSS (under the control and authority of the USOPC)." Compl. ¶ 342. The Complaint makes no attempt at supporting or explaining this conclusory and boilerplate allegation. There are no plausible factual allegations to conclude that the USOPC exercised consistent supervisory power over Foley, and no allegations of action taken *by the USOPC* to indicate authority over Foley or cause Plaintiffs to believe that it has control over Foley.[8] The Complaint's conclusory allegation is insufficient to meet the *Iqbal* pleading standard and should be disregarded. *See Iqbal*, 556 U.S. at 678; *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) (rejecting as conclusory plaintiffs' "general statement that Wal–Mart exercised control over their day-to-day employment").

Nor is there any basis for ascribing supervisory power over *Foley* to the USOPC through some sort of indirect theory of agency between the USOPC and *USSS*. USSS is not an "affiliate" through which the USOPC operates; it is a completely independent organization, with its own bylaws, directors, officers, and employees. *See* 36 U.S.C. § 220522(3), (5), (9), (12). In order to maintain its status as the NGB for the sports of skiing and snowboarding under the ASA, USSS must demonstrate that it is independent, autonomous, and free from outside restraint in its governance of the sports. *See* 36 U.S.C. § 220522(5); *see also Behagen v. Amateur Basketball Ass'n of the U.S.*, 884 F.2d 524, 528 (10th Cir. 1989) (describing the "monolithic control exerted by an NGB over its amateur

---

[8] Paragraph 56 of the Complaint states that "USOPC 'temporarily suspended' Foley during the Olympics," without referencing the source of the language in quotation marks. To the extent the USOPC disciplined Foley, it could do so only pursuant to its power to "facilitate . . . the resolution of conflicts or disputes . . . that arise in connection with [athletes and coaches'] eligibility for and participation in the Olympic Games." 22 U.S.C. § 220505(c)(5). In other words, the USOPC has only limited temporal authority to resolve disputes once they have arisen, and not the continual, direct authority to oversee coaches. Consistent with this division of authority, Plaintiffs rightly note that it was SafeSport that, in March 2022 (after the Olympics had ended), "temporarily suspended Foley pending its investigation." Compl. ¶ 148. Plaintiffs also accurately acknowledge SafeSport as the "independent entity" established by statute "to investigate reports of abuse and to protect athletes," possesses "the exclusive jurisdiction to investigate and resolve allegations that a Participant engaged in . . . 1. Sexual Misconduct." Compl. ¶¶ 133, 135.

sport [as] a direct result of the congressional intent expressed in the Amateur Sports Act"). In light of these statutory requirements, Plaintiffs cannot plausibly allege that USSS's governance and hiring decisions are made "under the control and authority of the USOPC."

> b)    *The Complaint Fails to Establish that the USOPC Owes a Legal Duty of Care to Plaintiffs.*

"In general, each person has a duty to act with reasonable care under the circumstances," but "one owes no duty to control the conduct of another, nor to warn those endangered by such conduct." *Regents of Univ. of California v. Superior Ct.*, 4 Cal. 5th 607, 619 (2018). The general absence of a legal duty of care is subject to limited exception, and a two-part analysis: *first*, a court must find that a duty exists based on the presence of a "special relationship": the defendant either (1) "has a special relationship with the foreseeably dangerous person that entails an ability to control that person's conduct", or (2) "has a special relationship with the potential victim that gives the victim a right to expect protection." *Id.* at 644. *Second*, if a court finds that a "special relationship" exists, "the court must consult the factors described in *Rowland* [*v. Christian*, 69 Cal. 2d 108 (1968)] to determine whether relevant policy considerations counsel limiting that duty." *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 209 (2021). Here, the Complaint fails at both steps.

*First*, no "special relationship" exists between the USOPC, Foley, and Plaintiffs. As described above, the USOPC has no principal-agent or employer-employee relationship with Foley. The USOPC's ability to certify NGBs and to ensure that NGBs meet eligibility criteria are irrelevant to this determination, since NGBs such as USSS are statutorily required to remain "autonomous in the governance of [their] sport" and "not delegate decision-making and control of matters central to governance." 36 U.S.C. § 220522(5). Absent any power to control Foley's behavior and any and all other "matters central to [ski and snowboard] governance," the USOPC cannot be in a "special relationship" with Foley. *See Barenborg v. Sigma Alpha Epsilon Fraternity*, 33 Cal. App. 5th 70, 80 (2019) ("Absent an ability to monitor the day-to-day operations of local chapters, the authority to discipline

23

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)(2) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

generally will not afford a national fraternity sufficient ability to prevent the harm and thus will not place it in a unique position to protect against the risk of harm."). And similarly, athletes are not in a "special relationship" with the USOPC. That relationship properly exists between the athletes and USSS, as the entity charged with remaining "autonomous in the governance of its sport." 36 U.S.C. § 220522(5).

The California Court of Appeal, in a decision affirmed by the Supreme Court, has already considered these very issues and came to the same conclusion. In *Brown*, taekwondo athletes sued USA Taekwondo ("USAT") and the USOPC for sexual abuse committed by a USAT coach, Marc Gitelman, at events allegedly sponsored by the USOPC. *Brown*, 40 Cal. App. 5th at 1084. The *Brown* plaintiffs brought a negligence claim against the USOPC based on the USOPC's alleged sponsorship of events, the USOPC's authority to certify or decertify NGBs, and the USOPC's requirement that NGBs adopt safe sport programs. The trial court sustained the USOPC's demurrer to a negligence claim and the Court of Appeal upheld the decision, finding that "[t]he[] allegations show USO[P]C had the ability to regulate USAT's conduct, but they do not establish that USO[P]C had the ability to control Gitelman's conduct, or USO[P]C was in the best position to protect plaintiffs from Gitelman's sexual abuse." *Id.* at 1102. The Court also held that "[t]he fact USO[P]C was aware generally of coaches sexually abusing athletes in Olympic sports, including taekwondo . . . does not mean USO[P]C had the ability to control Gitelman's conduct," and "an allegation plaintiffs were abused at taekwondo events 'sanctioned' by USO[P]C . . . does not establish a special relationship between USO[P]C and plaintiffs." *Id.* In other words, after evaluating allegations that were significantly more detailed than the bare-bones Complaint at issue here, the Court concluded that the USOPC's "indirect control" of a NGB coach through its regulation of the NGB was simply "too remote to create a special relationship." *Id.* Here, there is no reason to depart from the *Brown* holding. This lack of a special relationship ends the inquiry. *See id.* at 1103.

*Second*, even if a "special relationship" were found to exist, the *Rowland* factors counsel against ascribing a duty of care to the USOPC. "The *Rowland* factors fall into two categories. The first group involves foreseeability and the related concepts of certainty and the connection between plaintiff and defendant. The second embraces the public policy concerns of moral blame, preventing future harm, burden, and insurance availability. The policy analysis evaluates whether certain kinds of plaintiffs or injuries should be excluded from relief." *Regents*, 4 Cal. 5th at 629.

In this case, both groups of factors cut against assigning liability. Even if a "special relationship" were found between the USOPC and Foley, there remains only a tenuous connection between the USOPC and NGB athletes and coaches. Given that only the NGBs regularly interact with, and regulate, the individual members of their sport, NGBs are in a "unique position to protect youth athletes" by establishing codes of conduct and regulations around competitions and coach-athlete interactions. *Brown*, 40 Cal. App. 5th at 1095. The USOPC lacks the necessary relationships to prevent such conduct, and creating a duty of care for the USOPC would not satisfy the two core purposes behind assigning tort liability: behavior regulation and harm prevention. Moreover, that duty would come at significant cost to the USOPC, which would have to continuously monitor coaches and athletes from more than fifty NGBs. This would not only require an immense expenditure of resources and risk ineffectiveness, but also would contravene the amateur sports framework created by Congress. *See Castaneda v. Olsher*, 41 Cal. 4th 1205, 1213 (2007) ("Foreseeability and the extent of the burden to the defendant are ordinarily the crucial considerations.").

## IV.  CONCLUSION

The USOPC respectfully requests that the Court dismiss the Complaint.

DATED:  April 24, 2023

COVINGTON & BURLING LLP

By:  */s/ Mitchell A. Kamin*

Mitchell A. Kamin
*Lead Trial Counsel for USOPC*

**L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Defendant United States Olympic and Paralympic Committee, certifies that this brief does not exceed 25 pages and therefore complies with the page limit set by the Court's standing order for newly assigned civil cases, entered in this case on February 28, 2023.


DATED:  April 24, 2023                          */s/ Mitchell A. Kamin*

                                                          Mitchell A. Kamin

26

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)(2) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF