**DAUGHERTY LORDAN LLP**
MEGHAN E. McCORD, SB# 242281
 E-Mail: Meghan.McCord@daughertylordan.com
PAIGE T. RIVETT, SB# 348351
 E-Mail: Paige.Rivett@daughertylordan.com
550 S. Hope St., Suite 2400
Los Angeles, California 90071
Telephone: 213.423.6026

Attorneys for Defendant PETER FOLEY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEY FLETCHER, ERIN O'MALLEY, AND CALLAN CHYTHLOOK-SIFSOF, <br><br> Plaintiff, <br><br> vs. <br><br> PETER FOLEY, GALE "TIGER" SHAW III, AND UNITED STATES SKI & SNOWBOARD, AND UNITED STATES OLYMPIC AND PARALYMPIC COMMITTEE, <br><br> Defendants. | Case No. 2:23-cv-00803 SPG(JPRx) <br><br> [Hon. Sherilyn Peace Garnett] <br><br> **DEFENDANT PETER FOLEY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(2) AND 12(b)(6) AND JOINING DEFENDANT UNITED STATES SKI & SNOWBOARD'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> [*Filed concurrently with Declaration of Peter Foley; Defendant Peter Foley's Joinder in Defendant United States Ski & Snowboard's Notice of Motion and Motion to Dismiss First Amended Complaint; and [Proposed] Order Granting Defendant's Motion to Dismiss*] <br><br> Date:  October 25, 2023 <br> Time:  1:30 p.m. <br> Courtroom:  5C <br><br> Complaint Filed:  February 2, 2023 |

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 25, 2023 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 5C of the above-entitled court, located at 350 West 1st Street, Los Angeles, California 90012, Defendant PETER FOLEY ("Foley") will and hereby does move to dismiss Plaintiffs ROSEY FLETCHER, ERIN O'MALLEY, and CALLAN CHYTHLOOK-SIFSOF's (collectively "Plaintiffs") First Amended Complaint ("FAC") against Foley in its entirety with prejudice.  This Motion is made on the following grounds: (1) lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2); and (2) failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Foley hereby joins Defendant United States Ski & Snowboard's ("USSS") Notice of Motion and Motion to Dismiss Complaint; Memorandum of Points and Authorities in Support Thereof as to the following causes of action: Racketeer Influenced and Corrupt Organizations Act ("RICO"); Conspiracy to Sex Trafficking and Forced Labor; Sexual Assault under Section 340.16 of the California Code of Civil Procedure; and Intentional Infliction of Emotional Distress.

Foley hereby joins Defendants' Request for Judicial Notice filed by USSS.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on June 22, 2023.  The Parties thoroughly discussed the substance and potential resolution of the filed motion by videoconference.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the Declaration of Peter Foley, USSS Notice of Motion and Motion to Dismiss First Amended Complaint and Memorandum of Points and Authorities in Support Thereof, and Defendants' Request for Judicial Notice filed and served herewith and upon the papers, records, and pleadings on file herein.

/ / /

1

2   DATED:  June 30, 2023           Respectfully Submitted,

3                                     **DAUGHERTY LORDAN LLP**

4

5

6                             By:         *&#47;s&#47; Paige T. Rivett*

7                                    MEGHAN E. McCORD

8                                    PAIGE T. RIVETT
                                   Attorneys for Defendant Peter Foley

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT FOLEY'S NOTICE OF MOTION AND MOTION TO DISMISS FAC PURSUANT TO FRCP
12(B)(2) AND 12(B)(6)

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.      INTRODUCTION ................................................................................... 1

II.     STATEMENT OF FACTS ..................................................................... 2

        A.      Allegations Specific To Fletcher ............................................... 2

        B.      Allegations Specific To O'Malley .............................................. 3

        C.      Allegations Specific To Sifsof ................................................... 4

        D.      Allegations from 2022 Common To All Plaintiffs ..................... 5

III.    PLAINTIFFS' CLAIMS AGAINST FOLEY SHOULD BE
        DISMISSED FOR LACK OF PERSONAL JURISDICTION UNDER
        RULE 12(B)(2) ...................................................................................... 6

        A.      The Court Lacks General Jurisdiction Over Foley As He Is Not
                "At Home" In California ............................................................. 8

        B.      The Court Lacks Specific Jurisdiction Over Foley Because He
                Lacks Minimum Contacts with California and Plaintiffs' Claims
                Did Not Arise in California ........................................................ 9

                1.      Foley's alleged conduct was not expressly aimed at
                        California ......................................................................... 9

                2.      The alleged harm was not suffered in California. ........... 13

        C.      While No Personal Jurisdiction Exists, Nevertheless The
                Fiduciary Shield Doctrine Protects Foley Because Any Contact
                with California was Solely As Head Coach ................................ 14

IV.     THE COUNTS AGAINST FOLEY SHOULD BE DISMISSED FOR
        FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE
        GRANTED UNDER FRCP 12(B)(6). ...................................................... 15

        A.      California Law Does Not Apply To Plaintiff's Claims Because
                The Alleged Acts Did Not Occur In California ........................... 15

                1.      Plaintiffs Fail to Identify Any Facts that Revive Time-
                        Barred Claims Under Section 340.16. .............................. 16

                        (a)     Section 340.16 cannot revive Plaintiffs' claims
                                because they fail to plead their claims arose in
                                California or involved a then-citizen of California. ......... 17

                        (b)     Even if section 340.16 does apply, it does not revive
                                Plaintiffs' claims .............................................. 18

                                (i)     Fletcher's claims are not revived by section
                                        340.16. ..................................................... 18

1

(i)  O'Malley's claims are not revived by section 340.16. ...................................................19

(i)  Sifsof's claims are not revived by section 340.16. ...................................................20

B.  Even if California Law Does Apply, Counts Nine, Ten, and Fourteen Through Eighteen Are Inescapably Time Barred ...............20

  1.  Fletcher and O'Malley's claims for sexual battery, battery, and assault are time barred. .........................21

  2.  Plaintiffs' claims for intentional infliction of emotional distress and sexual harassment are time barred. .....................22

C.  Counts Two, Four, and Six Fail to State a Claim and Are Inescapably Time Barred. ......................................23

  1.  Section 1595 does not retroactively apply to Plaintiffs' claims. ..............................................23

    (a)  2003 amendments to section 1595. ...............................23

    (b)  2008 amendments to section 1595. ...............................24

  2.  Even if Section 1595 was retroactively applicable, Plaintiffs' claims would be time-barred. ....................25

D.  Plaintiff's claims are not tolled. ........................................25

E.  Plaintiffs Fail To State Facts Sufficient To Support A Claim For Defamation .....................................................27

  1.  Plaintiffs cannot make a prima facie claim for defamation. ........28

    (a)  Foley's statements do not amount to a publication because they cannot be understood as referring to Plaintiffs. ..............................................28

      (i)  The February 11 Statements cannot be understood as referring to Plaintiffs. .....................28

      (i)  The March 20 Statements cannot be understood as referring to Plaintiffs. .....................29

    (b)  General Denials of Misconduct are not tantamount to defamation. ................................................30

    (c)  Foley did not make a false statement of fact. ....................32

    (d)  Foley's statements do not injure or cause special damages. ....................................................33

  2.  Howard Jacobs' statements to the press are not defamatory because they were made in reply to adverse publicity. ..............34

2

1

V.      CONCLUSION ..................................................................................... 35

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abrahamson v. Berkley*,
  2016 WL 8673060 (E.D. Cal. Sept. 2, 2016) ......................................................12

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
  874 F.3d 1064 (9th Cir. 2017) ......................................................................11, 13

*Balzaga v. Fox News Network, LLC*,
  173 Cal.App.4th 1325 (2009) .........................................................................35

*Biancov. Warner*,
  562 F. Supp. 3d 526 (C.D. Cal. 2021) .............................................................26

*Brayton Purcell LLP v. Recordon & Recordon*,
  606 F.3d 1124 (9th Cir. 2010) ........................................................................10

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*,
  582 U.S. 255 (2017) .......................................................................................9

*Buelow v. Plaza Motors of Brooklyn, Inc.*,
  2017 WL 2813179 (E.D. Cal. June 29, 2017) ....................................................12

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)........................................................................................9

*Calder v. Jones*,
  465 U.S. 783 (1984).......................................................................................9

*Clemens v. McNamee*,
  615 F.2d 374 (5th Cir. 2010) ........................................................................12

*Cornell v. Berkeley Tennis Club*,
  18 CA5th 908  (2017) ....................................................................................27

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)........................................................................................8

*DeCrescenzo v. Churtch of Scientology Int'l*,
  2009 WL 10672400 (C.D. Cal. Nov. 5, 2009) ..................................................25

*Ditullio v. Boehm*,
  662 F.3d 1091 (9th Cir. 201) .........................................................................24

*Doe v. Marten*,
  49 Cal. App. 5th 1022 (2020) .........................................................................26

*Doe v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) ...........................................................................7

4

*Dole Food Co. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002) ........................................................... 9

*Douglas v. Noelle*,
    567 F.3d 1103 (9th Cir. 2009) ..........................................................21

*Esoimeme v. Wells Fargo Bank*,
    2011 WL 3875881 (E.D. Cal. Sept. 1, 2011) .......................................17

*Evans v. All. Funding*,
    2010 WL 11482495 (C.D. Cal. Dec. 13, 2010) ....................................25

*Evanston Police Pens. Fund v. McKesson Corp.*,
    411 F. Supp. 3d 580 (N.D. Cal. 2019) ................................................. 6

*Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*,
    907 F.2d 911 (9th Cir. 1990) ............................................................. 8

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995) ............................................................. 6

*Ferlauto v. Hamsher*,
    74 Cal.App.4th 1394 (1999) ..............................................................30

*G & G Prods. LLC v. Rusic*,
    902 F.3d 940 (9th Cir. 2018) .............................................................16

*Gardner v. Martino*,
    562 F.3d 981 (9th Cir. 2009) .............................................................30

*GetFugu, Inc. v. Patton Boggs LLP*,
    220 Cal.App.4th 141 (2013) ........................................................30, 31

*Glob. Commodities Trading Grp.,Inc. v. Beneficio de Arroz Choloma, S.A.*,
    972 F.3d 1101 (9th Cir. 2020) ...........................................................14

*Gomes v. Fried*,
    136 Cal.App.3d 924 (Ct. App. 1982) .............................................33, 34

*Gregory v. McDonnell Douglas Corp.*,
    17 Cal.3d 596 (1976) .................................................................30, 32

*Grober v. Mako Products, Inc.*,
    686 F.3d 1335 (Fed. Cir. 2012) .........................................................14

*Guerrero v. Gates*,
    442 F.3d 697 (9th Cir. 2006) ........................................................25, 26

*Hatfield v. Halifax PLC*,
    564 F.3d 1177 (9th Cir. 2009) ...........................................................16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984).......................................................................... 8

5

*Hughes Aircraft Co. v. United States ex rel. Schumer*,
 520 U.S. 939 (1993) ...................................................................................... 24

*In re Western States Wholesale Natural Gas Antitrust Litig. v. Oneok, Inc.*,
 715 F.3d 716 (9th Cir. 2013) ......................................................................... 7

*Information Control v. Genesis One Computer Core*,
 611 F.2d 781 (9th Cir.1980) .................................................................... 30, 31

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement*,
 326 U.S. 310 (1945) ...................................................................................... 8

*J. McIntyre Machinery, Ltd. v. Nicastro*,
 564 U.S. 873 (2011) ...................................................................................... 9

*Johnson v. California*,
 207 F.3d 650 (9th Cir. 2000) ....................................................................... 21

*Jones v. Blanas*,
 393 F.3d 918 (9th Cir. 2004) ....................................................................... 20

*Kaelin v. Globe Communs. Corp.*,
 162 F.3d 1036 (9th Cir. 1998) ..................................................................... 35

*Keeton v. Hustler Magazine, Inc.*,
 465 U.S. 770 (1984) ...................................................................................... 14

*Kirsopp v. Yamaha Motor Co. Ltd.*,
 2014 WL 12577429 (C.D. Cal. Aug. 27, 2014) ........................................... 13

*Marvix Photo, Inc. v. Brand Techs., Inc.*,
 647 F.3d 1218 (9th Cir. 2011) ....................................................................... 7

*Morrill v. Scott Financial Corporation*,
 873 F.3d 1136 ............................................................................................. 10

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand*,
 6 Cal. 3d 176 (1971) .................................................................................... 21

*New York Times Co. v. Sullivan*,
 376 U.S. 254 (1964) ...................................................................................... 28

*Order of R. Telegraphers v. Railway Express Agency, Inc.*,
 321 U.S. 342 (1944) ...................................................................................... 16

*Ortega v. Pajaro Valley Unified Sch. Dist.*,
 64 Cal.App.4th 1023 (1998) ......................................................................... 26

*Owino v. CoreCivic, Inc.*,
 2018 WL 2193644 (S.D. Cal. May 14, 2018) .............................................. 24

*Panavision Int'l v. Toeppen*,
 141 F.3d 1316 (9th Cir. 1998) ....................................................................... 9

6

*Partington v. Bugliosi,*
    56 F.3d 1147 (9th Cir. 1995) ............................................................... 30

*Picot v. Weston,*
    780 F.3d 1206 ....................................................................................... 10

*Rain Design, Inc. v. Spinido, Inc.,*
    No. 17- cv-03681, 2018 WL 4904894 (N.D. Cal. Oct. 9, 2018) ............ 7

*Reader's Digest Assn. v. Superior Court,*
    37 Cal.3d 244 (1984) ........................................................................... 27

*Reed v. Gallagher,*
    248 Cal.App.4th 841 (2016) ................................................................. 32

*Ringler Assocs. Inc. v. Md. Cas. Co.,*
    80 Cal. App. 4th 1165 (2000) .............................................................. 28

*Rush v. Savchuk,*
    444 U.S. 320 (1980) ............................................................................. 10

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004) ................................................................. 9

*Sequeira v. Republic of Nicaragua,*
    No. CV 13-04332 DMG (FFMx), No. CV1304332DMGFFMX, 2013 WL
    12421731 (C.D. Cal. Nov. 18, 2013) ............................................. 11, 13

*Shaffer v. Heitner,*
    433 U.S. 186 (1977) ............................................................................... 8

*Smith v. Maldonado,*
    72 Cal. App. 4th 637 (1999) ................................................................ 32

*Soliman v. CVS RX Servs.,*
    570 F. App'x 710 (9th Cir. 2014) ........................................................ 21

*Swartz v. KMPG LLP,*
    476 F.3d 756 (9th Cir. 2007) ................................................................. 7

*Taus v. Loftus,*
    40 Cal.4th 683 (2007) .......................................................................... 27

*Taylor v. Portland Paramount Corp.,*
    383 F.2d 634 (9th Cir. 1967) ................................................................. 7

*W. Shield Investigations & Sec. Consultants v. Superior Court,*
    82 Cal. App. 4th 935 (2000) ................................................................ 21

*Walden v. Fiore,*
    571 U.S. 277 (2014) ........................................................................ 10, 11

*Washer v. Bank of Am. Nat'l Tr. & Sav. Asso.,*
    21 Cal. 2d 822 (1943) .......................................................................... 32

7

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) ............................................................. 7

*Yahoo! Inc. v. La Ligue Contre Le Racisme*,
    433 F.3d 1199 (9th Cir. 2006) ........................................................... 13

*ZL Techs., Inc. v. Does 1–7*,
    13 Cal. App. 5th 603 (2017) .............................................................. 32

**Statutes**

18 U.S.C. § 1591 .................................................................................... 23

18 U.S.C. § 1595 ............................................................................. 23, 24

Cal. Civ. Code § 1708.5 ........................................................................ 21

Cal. Civ. Code § 45 ............................................................................... 33

Cal. Civ. Code § 48a ............................................................................. 34

Cal. Code Civ. Proc. § 335.1 ................................................................ 20

Cal. Code Civ. Proc. § 410.10 ................................................................ 7

Cal. Code Civ. Proc. § 340.16 ........................................................ 16, 19

Cal. Code Civ. Proc. § 361 .............................................................. 16, 17

California Rules of Professional Conduct, Rule 3.6(c) ......................... 34

DEFENDANT FOLEY'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(B)(2)
AND 12(B)(6)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Upon review of the First Amended Complaint ("FAC") filed by Plaintiffs ROSEY FLETCHER ("Fletcher"), ERIN O'MALLEY ("O'Malley"), and CALLAN CHYTHLOOK-SIFSOF ("Sifsof") (collectively, "Plaintiffs") against Defendant PETER FOLEY ("Foley") it becomes even more apparent that the lawsuit filed by Plaintiffs fails as a matter of law and cannot be cured by amendment.  While Plaintiffs have provided limited additional facts and causes of action, none of the amendments to the Complaint have cured its fatal flaws.  Specifically, Plaintiffs fail to allege any new facts that will provide this Court with personal jurisdiction over Foley.

It remains true that this Court lacks personal jurisdiction over Foley as a matter of law.  Foley has not now, nor has he ever, lived in California.  Moreover, Plaintiffs' attempt to intentionally mislead this Court by using ambiguous language does not disguise the fact that their First Amended Complaint ("FAC") does not allege a single underlying act occurred in California.  As such, the court has neither general nor specific jurisdiction over Foley and, thus, he should be dismissed under Rule 12(b)(2).

Even if this court had jurisdiction over Foley, the FAC does not state a claim upon which relief can be granted.  As against Foley, Plaintiffs bring the present lawsuit for alleged violations of: Racketeer Influenced and Corrupt Organizations Act ("RICO"); Sex Trafficking and Forced Labor; Sexual Assault under Section 340.16; Conspiracy to Sex Trafficking and Forced Labor; Sexual Battery under Civil Code Section 1708.5; Battery; Assault; Intentional Infliction of Emotional Distress; Defamation; and Sexual Harassment.  Plaintiffs fail to state a claim under any of these counts, and their claims are time-barred.

Additionally, Plaintiffs' FAC fails to allege any facts occurred in California undermining their assertion that California law applies.  Therefore, Plaintiffs cannot

1

avail themselves of the extended statute of limitations period provided in California Code of Civil Procedure section 340.16 and their claims are not otherwise tolled. As a result, Plaintiffs' time to file suit expired *years* prior to February 2, 2023, when they filed their original Complaint.

Finally, Plaintiffs have not and cannot adequately plead a claim for defamation. The allegedly defamatory statements fail to identify Plaintiffs as their subject and cannot be understood to do so. Regardless, such statements were mere opinion expressed in an adversarial context and, thus, not defamatory. Lastly, Plaintiffs' FAC entirely fails to allege any special damages caused by Foley or his attorney's statements. The FAC makes no attempt to address the deficiencies as to this cause of action as outlined by Foley in his original Motion to Dismiss.

Foley joins Defendant United States Ski & Snowboard's Notice of Motion and Motion to Dismiss Plaintiffs' First Amended Complaint and the Memorandum of Points and Authorities in Support Thereof as to the following causes of action: RICO; Sex Trafficking and Forced Labor; Sexual Assault under Section 340.16; and Conspiracy to Sex Trafficking and Forced Labor.

## II.   STATEMENT OF FACTS

Plaintiffs include limited additional factual allegations in their FAC that do nothing to resolve the deficiencies in their claims.

Specifically, Plaintiffs allege no new facts as to Foley that could possibly impact jurisdiction. Rather, Plaintiffs continue to allege that Foley, a domiciliary of Oregon, served as head coach for the United States Snowboard Team ("Team") from 1994 through March 2022. (First Amended Complaint ("FAC") ¶ 14.) Plaintiffs were among the number of athletes Foley coached during that time. (*Id.* ¶ 71.)

### A.   Allegations Specific To Fletcher

Fletcher, a domiciliary of Alaska, made her debut at a FIS event for the Team on December 6, 1996 and had her final recorded race for the Team on March 26,

2006.[1]

Fletcher alleges Foley sexually assaulted her in the Spring of 1994 when she was 19 years old.  (FAC ¶ 85.)  Fletcher had attended a training camp in Mammoth Mountain and "[h]aving driven *from* California, all the athletes and coaches were sharing a room before their flights the next day out of Reno, Nevada." (*Id.* (emphasis added).)  By her own admission, no alleged incident took place in California.  Fletcher alleges she felt Foley sneak up behind her and he "reached his left arm over [her] and put his fingers inside her" without her consent. (*Id*. ¶ 86.)

Additionally, Fletcher alleges that at a postrace event at the World Championship in San Candido, Italy in 1997, Foley forcibly kissed her without her consent. (*Id.* ¶ 87.)

Fletcher did not pursue legal remedies until March 2022, nearly *thirty years* after these alleged incidents, as a result of Foley's supposed "continued influence on [her] career after she left the Team." (*See Id.* ¶ 179.)  However, she fails to provide any facts to indicate any influence whatsoever.

### B.  Allegations Specific To O'Malley

O'Malley, a domiciliary of California, competed for the Team from 1995 to 2003.  (*Id*. ¶¶ 14, 96.)

O'Malley alleges that "[o]ne evening after a competition," Foley groped her and forcibly kissed her in an elevator.  (*Id*. ¶ 103.)  Fletcher and USSS personnel were allegedly present in the elevator.  (*Id.*)  Fletcher and O'Malley allegedly "ran out and down the hallway as Foley chased them to their room" after the elevator doors opened.  (*Id*. ¶ 104.)  Once in the room, they allegedly "pleaded with Foley to

---

[1]See https://www.fis-ski.com/DB/general/athlete-biography.html?sectorcode=SB&competitorid=17509&type=result. As set forth more fully in Defendants' Request for Judicial Notice, Defendants request that the Court take judicial notice of the records maintained and published by the International Ski and Snowboard Federation ("FIS").

leave them alone" and O'Malley hid on the side of the bed.  (*Id*. ¶¶ 105-106.)  Foley left the room when Plaintiffs requested he do so.  (*Id*. ¶ 107.)  O'Malley does not allege that this incident occurred in California.

O'Malley "believed there was no one she could report Foley's behaviors to" and did not report the alleged misconduct until March of 2022.  (*Id*. ¶ 111.)  Additionally, O'Malley alleges that she did not report the alleged misconduct prior to March 2022, at minimum *twenty years* after the alleged incident, as a result of Foley's supposed "continued influence on [her] career after she left the Team."  (*Id*. ¶ 112.)  However, she fails to provide any facts to indicate any influence whatsoever.

### C.   Allegations Specific To Sifsof

Sifsof, a domiciliary of Alaska, competed for the Team from 2005 to 2014. (*Id*. ¶¶ 15, 114).

Sifsof alleges that she was sexually assaulted by a Czech coach on an opposing team at the Junior World Championship in 2005. (*Id*. ¶¶ 126-130.)  She does not allege that she, or anyone else, reported the 2005 incident prior to the filing of the present action.

Sifsof further alleges she was "subjected to" inappropriate conduct including sexually explicit and racially discriminatory remarks.  (*Id*. ¶ 123.)  Foley allegedly "would not punish or correct individuals on the Team" who displayed such conduct. (*Id*. ¶ 121.)  Foley allegedly "joined in: laughing, making similar comments, and revealing sex stories of his own." (*Id*. ¶ 122.)  Sifsof alleges "[she] made formal complaints to [then USSS CEO] Shaw that she had personal knowledge of multiple counts of Foley's misconduct," but she does not identify the allegedly reported misconduct. (*Id*. ¶ 176.)

Sifsof alleges that Shaw "became aware" that Foley allegedly "pressur[ed] young female athletes to take nude and sexually suggestive photos" (*id*. ¶ 216) and that, when she reported to Shaw, who became USSS CEO in 2014 (*id*. ¶ 17), he

4

allegedly had a duty "to report sexual misconduct under the SafeSport Act" (*id.* ¶ 176).  The Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017, Pub. L. No.115-126, 132 Stat. 318 ("SafeSport Act") was enacted in 2018.[2]  (*Id.* ¶ 171.)  Thus, at the earliest, Sifsof reported Foley's alleged photographs to Shaw in 2018.  Notably, Foley is not alleged to have photographed any of the Plaintiffs.

Sifsof further alleges that "between 2020 and 2022," she again reported that Foley was "taking nude photos of young women on the Team and within the USSS organization without their consent, to Abbi Nyberg." (*Id.* ¶ 177.) Sometime later, she allegedly reported the same thing to Jeffery Archibald, an assistant coach.  (*Id.* ¶ 178.)  No conduct other than the photographs is alleged to have been reported prior to 2022.

Sifsof ultimately publicly reported "Foley's behavior and the toxic culture in an Instagram post in February of 2022."  (*Id.* ¶ 144.)

Sifsof claims she delayed reporting as a "direct and proximate result of Foley's intimidation and the affirmative steps that he, the Foley Sexual Abuse and Cover Up Enterprise, the USSS, and the USOPC took in order to prevent [her] from reporting Foley's misconduct." (*Id.* ¶ 121.)  Sifsof alleges that she did not report the misconduct sooner due to "Foley's continued influence on [her] career after she left the Team" in 2014 because she wanted to coach.  (*Id.* ¶ 115, 145.)  However, she fails to provide any facts to support this conclusory statement whatsoever.

### D.    Allegations from 2022 Common To All Plaintiffs

Following Callan Sifsof's Instagram post in early February 2022 "expos[ing] Foley's sexual misconduct, including reports of Foley having taken nude photos of female athletes for decades, making sexually explicit comments, and other abuse"

---

[2] Plaintiffs allege that the SafeSport Code was "established" in 2017, but the legislation creating the United States Center for Safe Sport was enacted in February 2018. 36 U.S.C. § 220541.

(*Id*. ¶ 144) and Plaintiffs' complaint to the United States Center for SafeSport, Foley stated to the press on February 11, 2022, that he "'was totally surprised by the allegations' and that he 'vehemently den[ies] the allegations.'" (*Id*. ¶ 238.)

Additionally, Plaintiffs allege that on March 20, 2022, Foley stated to ESPN, through his attorney Howard Jacobs ("Jacobs") "that 'any allegations of sexual misconduct being made against [Foley] are false.' and that 'Mr. Foley has not engaged in any conduct that violates the SafeSport Code.'" (*Id*. ¶ 240.)  The statement, in full as quoted by ESPN is as follows: "Any allegations of sexual misconduct being made against him are false. […] Mr. Foley has not engaged in any conduct that violates the SafeSport Code, and he will cooperate with the U.S. Center for SafeSport when and if they contact him."[3]

## III.   PLAINTIFFS' CLAIMS AGAINST FOLEY SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(B)(2)

Plaintiffs' FAC does not and cannot cure the jurisdictional deficiencies in the original Complaint as identified by Defendants in the prior Motions to Dismiss. Foley is not "at home" in California and lacks the necessary minimum contacts with California to be subjected to this court's personal jurisdiction.  Furthermore, Plaintiffs do not state a single act alleged to have occurred in California.  In addition, Foley joins USSS' Motion as to the Court's lack of personal jurisdiction

---

[3] *See* https://www.espn.com/olympics/snowboarding/story/_/id/33564119/women-detail-new-sexual-assault-misconduct-allegations-ex-us-snowboard-coach-peter-foley ("ESPN Article"). This article, specifically referenced in the FAC is properly considered on a motion to dismiss.  *See Fecht v. Price Co*., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) ("[D]ocuments whose contents are alleged in a complaint and whose authority no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.") (internal quotations and citation omitted); *Evanston Police Pens. Fund v. McKesson Corp*., 411 F. Supp. 3d 580, 592-93 (N.D. Cal. 2019) (finding news articles identified in complaint to be incorporated by reference and considering their contents on Rule 12(b)(6) motion).

under RICO's nationwide service provision.

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re Western States Wholesale Natural Gas Antitrust Litig. v. Oneok, Inc.*, 715 F.3d 716, 741 (9th Cir. 2013).  In determining whether jurisdiction exists, the court may consider evidence introduced by declaration or affidavit.  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), abrogated on other grounds by *Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017).  "[M]ere allegations of the complaint, when contradicted by affidavits, are [not] enough to confer personal jurisdiction of a nonresident defendant."  *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967).  Moreover, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden."  *Swartz v. KMPG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (citations omitted); *see Rain Design, Inc. v. Spinido, Inc.*, No. 17- cv-03681, 2018 WL 4904894, *2 (N.D. Cal. Oct. 9, 2018) ("[C]onclusory allegations are not sufficient to demonstrate that the Court has personal jurisdiction over Defendants.").

"Where … no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits."  *Marvix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citations omitted).  California's long-arm statute allows a court to "exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."  Cal. Code Civ. Proc. § 410.10

In the absence of a defendant's consent, physical presence, or domicile in a forum state, a court can exercise personal jurisdiction over the defendant only where a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. State of Wash., Office of Unemployment*

7

*Compensation & Placement*, 326 U.S. 310, 316 (1945).  To comply with the minimum contacts standard, a plaintiff must show that either "general" or "specific" jurisdiction over the defendant exists.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).  The Ninth Circuit considers "[o]nly contacts occurring prior to the event causing the litigation" in assessing minimum contacts. *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990).

### A.   The Court Lacks General Jurisdiction Over Foley As He Is Not "At Home" In California

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction within a particular state.  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  A court has general jurisdiction over a defendant only where the defendant's contacts within the forum state are "so continuous and systematic as to render [the defendant] essentially at home in the forum state."  *Id.* at 137-39.  An individual is "at home" in the state where they are domiciled, where they reside with an intent to remain indefinitely.  *Id*. at 137.  Here, there is no dispute that Foley is not at home in California.  (FAC ¶ 16.)

Alternatively, a court may exercise quasi in rem jurisdiction over a defendant where the defendant owns property in the forum state.  *Shaffer v. Heitner*, 433 U.S. 186, 199-200 (1977).  However, property ownership alone, where it is not the basis of a plaintiff's cause of action, is not enough to support a court exercising jurisdiction over the defendant.  *Id.* at 203-204, 209.  Here, Foley neither owns property in California, nor is property the basis of the present lawsuit. (Foley Decl. ¶ 6.)

By Plaintiffs' own admission, Foley resides in Oregon, where he intends to remain indefinitely as evidenced by his long residency in the state.  (Foley Decl. ¶ 4; FAC ¶ 16.)  Foley does not now, nor has he ever, lived in California.  (Foley Decl. ¶ 5.)  Moreover, Foley does not own property in California.  (*Id*. ¶ 6.)  Therefore,

Foley is not "at home" in California, nor may this Court exercise quasi in rem jurisdiction over him.  This Court lacks general jurisdiction over Foley and Plaintiffs make no allegation in their FAC that challenges the court's lack of general jurisdiction.

**B.**     **The Court Lacks Specific Jurisdiction Over Foley Because He Lacks Minimum Contacts with California and Plaintiffs' Claims Did Not Arise in California**

Specific personal jurisdiction exists where a defendant has (1) certain minimum contacts with the forum state, (2) the controversy arises out of those contacts, and (3) the exercise of jurisdiction is reasonable.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985).  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255, 264 (2017).  Generally, minimum contacts are assessed using the purposeful availment standard.  *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011).  However, where a plaintiff's claims arise out of intentional tort, courts apply the effects test laid out in *Calder v. Jones*, 465 U.S. 783 (1984).  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998).  Under the effects test, minimum contacts exist where a defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

**1.**     **Foley's alleged conduct was not expressly aimed at California**

The Ninth Circuit has "emphasized that 'something more' than mere foreseeability [is required] in order to justify the assertion of personal jurisdiction … and that 'something more' means conduct expressly aimed at the forum."  *Brayton*

9

*Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010) (citations omitted).

It is well-established that a plaintiff's residence in a forum state alone does not grant that state's courts jurisdiction over the defendant.  Minimum contacts assess the relationship between the defendant and the forum state.  *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  "[T]he plaintiff cannot be the only link between the defendant and the forum.  These same principles apply when intentional torts are involved." *Id.* ("however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated'" (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).).

A defendant's transitory presence will not support jurisdiction unless it was meaningful enough to create a substantial connection with the forum state.  *Picot v. Weston*, 780 F.3d 1206, 1213 (holding that minimum contacts were not established where defendant engaged in two, two-week long trips in the forum state); *see also Morrill v. Scott Financial Corporation*, 873 F.3d 1136 ("physical entry that is merely incidental to an out-of-state transaction does not satisfy the constitutional minimum contacts requirement.")

Plaintiffs have not presented any facts supporting a finding that Foley established sufficient contacts with California to subject himself to personal jurisdiction. Plaintiffs make no attempt to cure this deficiency in their FAC.  Foley cannot be subjected to the state's personal jurisdiction merely because O'Malley is currently domiciled in California (FAC ¶ 14).  *See Walden*, 571 U.S. at 291 (the Court unanimously decided that where a defendant's tortious conduct occurred entirely in Georgia, "the mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction").  There must be something more.  *See Id.* at 286-291 (although the defendant committed an intentional tort against a known resident of Nevada, the defendant's conduct was not aimed at the forum state, Nevada, simply because the plaintiff lived there).

Moreover, Plaintiffs Fletcher and Sifsof do not reside in California; rather, both reside and are domiciled in the State of Alaska (FAC ¶¶ 13, 15). *See Sequeira v. Republic of Nicaragua*, No. CV 13-04332 DMG (FFMx), No. CV1304332DMGFFMX, 2013 WL 12421731, at *5 (C.D. Cal. Nov. 18, 2013) (plaintiff did not satisfy the effects test where the plaintiff lived and work outside of California during the relevant time period). Again, the court must look at a defendant's contacts with the forum State, "not to the defendant's knowledge of a plaintiff's connections to a forum." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) (citing *Walden*, 571 U.S. at 287-88.); *see Walden*, 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."). Plaintiffs, in their FAC, still do not allege any connection between Foley, the alleged harm, and California.

Furthermore, Plaintiffs' FAC cannot satisfy the second requirement of the "effects" test. *Sequeira*, 2013 WL at *5 (finding that the plaintiff "[did] not allege sufficient facts to satisfy the second requirement of the 'effects' test" because the plaintiff "[did] not allege that he had a 'substantial, ongoing connection' to California"). Plaintiffs largely fail to allege where any of the conduct occurred, and the FAC does not make any meaningful mention of any substantial or ongoing connection to California beyond a vague statement that Defendants do business in California and the "lawsuit arises out of and relates to their contacts with California." (FAC ¶ 26.) The FAC does not elaborate on these "contacts with California" and does not allege a single bad act that occurred in the state.

Plaintiff's FAC does not and cannot cure the glaring jurisdictional deficiency identified by Defendants in their original Complaint: they do not allege that any wrongdoing occurred in California. In their FAC, Plaintiffs include intentionally vague language to mislead the Court into finding that alleged wrongdoing did occur

11

in California.  Plaintiffs allege that Fletcher's alleged assault took "when she was invited to and attended a Mammoth Mountain training camp in California during the 1994 season." (*Id.* ¶ 85.)  Plaintiffs then admit that the alleged incident actually took place **in Nevada**, after the athletes and coaches had "driven *from* California." (*Id.* (emphasis added).)  (FAC ¶ 85.)  This purposefully unclear language cannot disguise the fact that Plaintiffs do not allege a single new fact that allegedly occurred in California.  Moreover, there is no question that the athletes and coaches stayed in a hotel in Nevada the evening before taking a flight out of Reno, Nevada (Foley Decl. ¶ 10.)

That Fletcher and Foley were in California before the alleged sexual assault is a red herring and does not tether Foley or his alleged conduct to California in any meaningful way.  *See Abrahamson v. Berkley*, 2016 WL 8673060, at *8 (E.D. Cal. Sept. 2, 2016) (the court did not find minimum contacts where plaintiff did not identify where the tortious conduct "actually" occurred, and therefore conduct could not be determined to have been "expressly aimed at California"); *Buelow v. Plaza Motors of Brooklyn, Inc.*, 2017 WL 2813179, at *4-5 (E.D. Cal. June 29, 2017) (The court lacked jurisdiction where the only connection to California was Plaintiff's intent to relocate to the state and the allegedly wrongful conduct occurred in New York).

Additionally, while the FAC again fails to allege where Foley's defamatory statements were made, even if they were made in California, they are insufficient to establish that Foley's conduct was expressly aimed at California.  *See Clemens v. McNamee*, 615 F.2d 374, 380 (5th Cir. 2010) (petition for writ of certiorari denied) (finding that defamatory statements made in New York to a national publication about a Texas Resident was insufficient to satisfy the "expressly aimed" requirement).  Like *Clemens*, the allegedly defamatory statements here were made to the press, particularly to ESPN, a national publication and were allegedly about Plaintiffs who are residents of Alaska and California.  (*See* FAC ¶¶ 191 fn. 8, 13-

12

15.)  Therefore, the defamatory statements allegedly made by Foley are not "expressly aimed" at California and are not enough to give California courts specific jurisdiction over him.

For the foregoing reasons, Plaintiffs' FAC fails to make any allegation that Foley's conduct was expressly aimed at California.  Accordingly, Foley does not have sufficient minimum contacts and the Court lacks personal jurisdiction over him.  *See Kirsopp v. Yamaha Motor Co. Ltd.*, 2014 WL 12577429, at *6 (C.D. Cal. Aug. 27, 2014) (dismissing complaint for lack of jurisdiction where plaintiff's allegations regarding defendant's "connections to California [were] conclusory and unsupported by facts").

## 2.   The alleged harm was not suffered in California.

Plaintiffs' Complaint fails to satisfy the final prong of the effects test, that the conduct caused harm defendant knew was "likely to be suffered in the forum state." *Axiom Foods Inc*., 874 F.3d at 1069. While the brunt of the harm need not occur in the forum state, some harm must be suffered there. *See Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (The Ninth Circuit requires that "a jurisdictionally sufficient amount of harm is suffered in the forum state").

In *Sequeira v. Republic of Nicaragua*, the Central District found that the third prong of the effects test, aimed at foreseeable harm, was not met because the plaintiff did "not allege any harm was suffered in California." *Sequeira*, 2013 WL at *5.

Like in *Sequeira*, Plaintiffs here do not allege any harm was suffered in California.  As discussed above, Plaintiffs include misleading language as to where Fletcher was allegedly sexually assaulted by Foley; however, a careful reading of the language clearly demonstrates that the alleged assault occurred in Nevada *after* they had left California.  (FAC ¶ 85.)

Fletcher additionally alleges that Foley forcibly kissed her "as she was exiting a postrace event" in San Candido, Italy and approached her "at a postrace event in

13

Turin, Italy." (*Id.* ¶¶ 87, 90.)  O'Malley alleges Foley groped her and tried to forcibly kiss her "after a competition" at an unspecified location. (*Id.* ¶ 103.) Finally, Sifsof does not allege any conduct undertaken by Foley occurred in California or that any harm was suffered in the State.  Rather, the only location where Sifsof's alleged harm occurred was in Zermatt, Switzerland, at the hands of a non-Defendant. (*Id.* ¶¶ 126-130.)  Plaintiffs' FAC makes no connection between the harm and California.

For the foregoing reasons, Plaintiffs' FAC fails to cure the deficiencies identified in their original Complaint and does not make any allegation that any harm was suffered in California.  Accordingly, Foley does not have sufficient minimum contacts with California and the Court lacks personal jurisdiction over him.

**C.** <u>**While No Personal Jurisdiction Exists, Nevertheless The Fiduciary Shield Doctrine Protects Foley Because Any Contact with California was Solely As Head Coach.**</u>

This Court does not have personal jurisdiction over USSS, but even if it did, this Court cannot exercise personal jurisdiction over Foley based solely on this Court's possible jurisdiction over his former employer, USSS.  "[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him." *Glob. Commodities Trading Grp.,Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1109 (9th Cir. 2020) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)).  Under the fiduciary shield doctrine, a nonresident individual cannot be subjected to personal jurisdiction of a court based solely upon acts in the forum state undertaken in his corporate capacity. *Grober v. Mako Products, Inc.*, 686 F.3d 1335, 1347 (Fed. Cir. 2012).

This Court cannot exercise personal jurisdiction over USSS. (See USSS Motion to Dismiss, filed concurrently herewith.)  Moreover, as described hereinabove, Foley does not have sufficient minimum contacts with California to

14

individually subject him to the Court's personal jurisdiction and Plaintiffs do not allege that any bad acts by Foley occurred in California.  Foley's nominal contact with California occurred only in his capacity as the head coach for the United States Snowboard Team when he was in the state for training camps or competitions. (Foley Decl. ¶¶ 9, 11.)  Therefore, Foley cannot be subjected to personal jurisdiction in this Court based solely on acts undertaken as a coach in California.  Foley may avail himself of the fiduciary shield doctrine.

Taken together, this Court's lack of both general and specific jurisdiction and the fiduciary shield doctrine compel a finding that this Court does not have personal jurisdiction over Defendant Foley.  Plaintiffs' FAC wholly fails to cure any deficiencies identified by Defendants in their original Complaint.  Accordingly, Plaintiffs' Complaint against Foley should be dismissed with prejudice in its entirety under Rule 12(b)(2).

## IV. THE COUNTS AGAINST FOLEY SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED UNDER FRCP 12(B)(6).

Each Count against Foley (Counts One, Two, Four, Six, Eight through Eighteen, Twenty-One, and Twenty-Two) should be dismissed because Plaintiffs fail to state a claim under Rule 12(b)(6) and/or lack standing under Rule 12(b)(1). Foley joins USSS' Motion as to Count One, Eight, Eleven, Twelve, Thirteen, and Twenty-One.

### A. California Law Does Not Apply To Plaintiff's Claims Because The Alleged Acts Did Not Occur In California

Plaintiffs claim their action is timely and bring Counts Eleven, Twelve, and Thirteen under California Civil Code Section 340.16 ("Section 340.16") and further bring counts Nine and Ten for Sexual Battery under Civil Code Section 1708.5 and Fourteen for Sexual Harassment under California Civil Code Section 51.9 ("Section 51.9") under California statutory law.

California's borrowing statute controls the applicable statute of limitation in the present action.  California <u>Code of Civil Procedure</u> section 361 "prevents non-residents from prosecuting an action in a California court where such action would be barred under the statute of limitations of the jurisdiction whose law would otherwise govern."  *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1189 (9th Cir. 2009) (citing Cal Code Civ. Proc. § 361).  "[A]s a matter of policy, there is no sound reason why an obligee should be entitled to recover in the forum if his action has been fully barred by the law of the state in which it arose."  *G & G Prods. LLC v. Rusic*, 902 F.3d 940, 947 (9th Cir. 2018) (internal quotations omitted).  It is against public policy for Plaintiffs to bring their claims under California law because the alleged acts did not occur in the state and Plaintiffs do not allege that they were then-residents of California.  *See Order of R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 349 (1944) ("even if one has a just claim, it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.").

## 1.  <u>Plaintiffs Fail to Identify Any Facts that Revive Time-Barred Claims Under Section 340.16.</u>

Plaintiffs allege no new facts in their FAC that can possibly demonstrate that (1) Section 340.16 applies to their claims, (2) that it revives them, and (3) if it did revive them, the limitations period has not expired.   Therefore, Counts Eleven, Twelve, and Thirteen should be dismissed[4] and the extended statute of limitations cannot be extended to Plaintiffs other claims.  California <u>Code of Civil Procedure</u> section 340.16 provides:

> (a) In any civil action for recovery of damages suffered as a result of sexual assault, where the assault occurred on or

---

[4] Foley joins USSS' Motion as to Count Eleven, Twelve, and Thirteen. (See Notice of Joinder, filed concurrently herewith.)

after the plaintiff's 18th birthday, the time for commencement of the action shall be the later of the following:

(1) Within 10 years from the date of the last act, attempted act, or assault with the intent to commit an act, of sexual assault against the plaintiff.

(2) Within three years from the date the plaintiff discovers or reasonably should have discovered that an injury or illness resulted from an act, attempted act, or assault with the intent to commit an act, of sexual assault against the plaintiff.

(b)(3) This section applies to any action described in subdivision (a) that is based upon conduct that occurred on or after January 1, 2009 …

(a)   <u>Section 340.16 cannot revive Plaintiffs' claims because they fail to plead their claims arose in California or involved a then-citizen of California.</u>

Plaintiffs must plead facts demonstrating that Section 340.16 applies to their claims in order to bring Counts Eleven, Twelve, and Thirteen under this section and use it to extend the statute of limitations of their other claims. *See Esoimeme v. Wells Fargo Bank*, 2011 WL 3875881, at *12 (E.D. Cal. Sept. 1, 2011) (dismissing plaintiff's claim without leave to amend where plaintiff failed to allege "any facts to show that any of the cited statutes apply"). Plaintiffs fail to do so.

Under the California borrowing statute, "when a cause of action has arisen in another State, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in this State, except in favor of one who has been a citizen of this State, and who has held the cause of action from the time it accrued." Cal. Civ. Proc. Code § 361. Therefore, where a non-California citizen's action arose in another state, it cannot be revived by section 340.16. Thus, as a threshold issue, Plaintiffs must allege their citizenship at the time of the alleged incidents as well as the time and place of the incidents.

17

Here, Plaintiffs do not plead that their claims arose in California. In their 97-page Complaint, Plaintiffs fail to allege a single act that occurred in California. Rather, as discussed herein above, Plaintiffs use intentionally vague language in an attempt to mislead the Court into concluding that a bad act allegedly occurred in California. (FAC ¶ 85.)

Moreover, Plaintiffs do not plead that their claims involve a then-citizen of California. Plaintiffs Sifsof and Fletcher are not citizens of California. (FAC ¶¶ 13, 15.) Because Plaintiffs Sifsof and Fletcher are non-residents attempting to prosecute an action arising in another state in California court, they may not avail themselves of the extended statute of limitations provided for in Section 340.16, under which they claim their action is timely.[5]   Moreover, none of the Plaintiffs allege that they were California citizens at the time of their alleged incidents with Foley. Therefore, Counts Eleven, Twelve, and Thirteen should be dismissed.

(b) <u>Even if section 340.16 does apply, it does not revive Plaintiffs' claims.</u>

Even if Plaintiffs did adequately plead the threshold issues of citizenship and incidents occurring in California, which they do not, as stated above, Section 340.16 revives claims "based upon conduct that occurred on or after January 1, 2009." Because each of Plaintiffs' 340.16 claims are based upon conduct that occurred *prior to* January 1, 2009, their claims are decidedly not revived under Section 340.16. Even if this court somehow finds that Section 340.16 applies to and revives each of the Plaintiffs claims, the extended ten-year statute of limitations period has expired as to each Plaintiff's claims.

(i) *Fletcher's claims are not revived by section 340.16.*

Fletcher alleges she was sexually assaulted during the Spring 1994 season.

---

[5] Foley joins USSS' Motion as to the inapplicability of Section 340.16. (See Notice of Joinder, filed concurrently herewith.)

18

(FAC ¶ 85.)  Therefore, Fletcher's claims categorically cannot be revived under Section 340.16 because they occurred over a decade prior to January 1, 2009.

Even if Fletcher's claim was revived under section 340.16, Fletcher's claim was filed outside the applicable statute of limitations.  The ten-year limitations period would have expired ten-years after Fletcher's alleged sexual assault: Spring 2004.  (*See* (FAC ¶ 85.)  Plaintiffs did not file this lawsuit until February 2, 2023. Therefore, even if Fletcher's claims are revived under Section 340.16, they fall approximately *nineteen years* outside of the statute of limitations set forth in Section 340.16(a)(1).

Therefore, because the statute of limitations in section 340.16 does not apply, Plaintiff is barred from bringing Count Eleven under this section and from availing herself of the extended statute of limitations for her other claims.  As discussed hereinbelow, the applicable statute of limitations for Fletcher's other claims has expired.

### (i)   O'Malley's claims are not revived by section 340.16.

As discussed hereinabove, the conduct underlying O'Malley's claims occurred during her time competing for the Team and, therefore, could not have accrued after her retirement in 2003.  (FAC ¶ 96.)  Because O'Malley's claims are based upon conduct that occurred at the latest in 2003, her claims are categorically not based upon conduct occurring on or after January 1, 2009.  Therefore, O'Malley's claims cannot be revived under section 340.16.

Even if they are revived by section 340.16, the ten-year statute of limitations for O'Malley's claims would begin to run upon accrual which, as discussed above, occurred no later than 2003.  (FAC ¶ 96.)  Therefore, the 10-year limitations period would have expired in 2013, approximately *ten years before* Plaintiffs filed the present lawsuit on February 2, 2023.

Therefore, because the statute of limitations in section 340.16 does not apply,

Plaintiff is barred from bringing Count Twelve under this section and from availing herself of the extended statute of limitations for her other claims.  As discussed hereinbelow, the applicable statute of limitations for O'Malley's other claims has expired.

> (i)     *Sifsof's claims are not revived by section 340.16.*

The only sexual assault alleged by Sifsof occurred in 2005.  (FAC ¶ 126.)  Therefore, despite now alleging this cause of action in the FAC, Sifsof's claims categorically cannot be revived under Section 340.16 because they occurred prior to January 1, 2009.

Even if this Court finds that Sifsof's claims are revived under Section 340.16, her claims accrued in 2005.  (FAC ¶ 126.)  The ten-year limitations period would have expired in 2015, ten-years after Sifsof's alleged sexual assault; approximately *eight years before* Plaintiffs filed the present lawsuit on February 2, 2023.

Therefore, because the statute of limitations in section 340.16 does not apply, Plaintiff is barred from bringing Count Thirteen under this section and from availing herself of the extended statute of limitations for her other claims.  As discussed hereinbelow, the applicable statute of limitations for Sifsof's other claims has expired.

## B.     <u>Even if California Law Does Apply, Counts Nine, Ten, and Fourteen Through Eighteen Are Inescapably Time Barred</u>

Plaintiffs' Ninth, Tenth, and Fourteenth Through Eighteenth causes of action, if subject to California law at all, are subject to the statute of limitations set forth in Cal. Code Civ. Proc. § 335.1 ("Section 335.1"). Section 335.1 sets forth a limitation period of two years for actions "for assault, battery, or injury to […] an individual caused by the wrongful act or neglect of another."[6]

---

[6] *See Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (applying Section 335.1 to assault and battery claims); *see also Soliman v. CVS RX Servs.*, 570 F. App'x 710, (footnote continued)

In tort actions, the statute of limitations period begins to run once claims accrue, or "upon the occurrence of the last element essential to the cause of action." *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 187 (1971). Claims accrue under federal law when "the plaintiff knows or should know of the injury that is the basis of the cause of action." *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (citing *Johnson v. California*, 207 F.3d 650, 653 (9th Cir. 2000)).

### 1.   <u>Fletcher and O'Malley's claims for sexual battery, battery, and assault are time barred.</u>

Plaintiffs do not and cannot allege any new facts that will bring these causes of action within the proper statute of limitations period.  In fact, in Plaintiffs' attempt to provide a more detailed Complaint, they more clearly identify dates of the alleged conduct that create an even larger gap between the expiration of the applicable statute of limitations and when Plaintiffs brought the present lawsuit.

**Fletcher:** All conduct alleged by Fletcher occurred during her time competing for the Team: Fletcher alleges Foley digitally penetrated her without her consent in the Spring of 1994 (FAC ¶ 85); that he forcibly kissed her in 1997 (*Id.* ¶ 87); and that in 2006 he whispered in her ear that he remembered how she was breathing (*Id.* ¶ 90.)

At the latest, Fletcher's sexual battery claim accrued in 1994 at the time Foley allegedly digitally penetrated her (*Id.* ¶ 85).  Cal. Civ. Code § 1708.5 (defines sexual battery as an act that causes "offensive contact with an intimate part of another," meaning contact with "the sexual organ, anus, groin, or buttocks of any person, or

---

711 (9th Cir. 2014) (applying Section 335.1 to intentional infliction of emotional distress claims); *see also W. Shield Investigations & Sec. Consultants v. Superior Court*, 82 Cal. App. 4th 935, 953 (2000) (applying a personal injury statute of limitations to Section 59 claims because the Unruh Act merely codified existing common law.).

DEFENDANT FOLEY'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(B)(2) AND 12(B)(6)

the breast of a female").  Under the two-year statute of limitations, Fletcher's time to file an action for sexual battery would have expired in Spring 1996, approximately *twenty-seven years before* Plaintiffs filed suit on February 2, 2023.

At the latest, Fletcher's battery claim accrued in 1997 when Foley allegedly forcibly kissed her (FAC ¶ 87).  Under the two-year statute of limitations, Fletcher's time to file an action for battery would have expired in 1999, approximately *twenty-four years before* Plaintiffs filed suit on February 2, 2023.

At the latest, Fletcher's assault claim accrued in 2006 when Foley allegedly whispered in her ear that he remembered how she was breathing. (*Id.* ¶ 90.)  Under the two-year statute of limitations, Fletcher's time to file an action for assault would have expired in 2008, approximately *fifteen years before* Plaintiffs filed suit on February 2, 2023.

**O'Malley:** Similarly, all conduct alleged by O'Malley occurred during her time competing for the Team: O'Malley alleges Foley groped her and tried to forcibly kiss her "after a competition" on an unspecified date.  (*Id.* ¶ 103.)  By Plaintiffs own admission, O'Malley retired in 2003. (*Id.* ¶ 96.)

At the latest, O'Malley's claims for sexual battery, battery, and assault accrued in 2003 when she retired from the Team.  Under the two-year statute of limitations, O'Malley's time to file each of the aforementioned actions would have expired in 2005, approximately *eighteen years before* Plaintiffs filed suit on February 2, 2023.

### 2. <u>Plaintiffs' claims for intentional infliction of emotional distress and sexual harassment are time barred.</u>

All conduct alleged by each Plaintiff occurred during their time competing for the Team: Fletcher last competed for the Team in 2006 (Defendants' Request for Judicial Notice); O'Malley retired from the team in 2003 (FAC ¶ 96); and Sifsof competed for the Team until 2014 (*Id.* ¶ 114).  Therefore, at the latest, Plaintiffs' claims accrued when they left the Team: 2006, 2003, and 2014 respectively.

Under the two-year statute of limitations, Fletcher's time to file a claim for intentional infliction of emotional distress and sexual harassment would have expired at the latest in 2008, approximately *fifteen years before* Plaintiffs filed suit on February 2, 2023; O'Malley's claims would have expired in 2005, approximately *eighteen years before* Plaintiffs filed suit; and Sifsof's claims would have expired in 2016, approximately *seven years before* Plaintiffs filed suit.

## C. <u>Counts Two, Four, and Six Fail to State a Claim and Are Inescapably Time Barred.</u>

Plaintiffs' attempt to cure the deficiencies identified in their original Complaint through merely alleging individual causes of action against Foley is unsuccessful; Plaintiffs allege no new facts that can cure these deficiencies. In Counts Two, Four, and Six, each Plaintiff alleges that Foley is liable for "Sex Trafficking and Forced Labor" under 18 U.S.C. § 1595, which creates a civil remedy for criminal violations of 18 U.S.C. § 1591(a) (sex trafficking). Each of these counts should be dismissed because the alleged acts occurred before Congress created a civil remedy for the alleged conduct and because Plaintiffs have failed to allege facts sufficient to state a claim. Moreover, each count is inescapably time-barred.

### 1. <u>Section 1595 does not retroactively apply to Plaintiffs' claims.</u>

Today, section 1595(a) permits victims to sue perpetrators of sex trafficking crimes as well as those who knowingly benefitted from participating in a sex trafficking venture, or "venture liability." However, this statutory scheme was enacted *after* the alleged conduct for which Plaintiffs hope to hold Defendants liable and it is not retroactive.

#### (a) <u>2003 amendments to section 1595.</u>

Congress did not add a civil remedy to Section 1595 until December 19, 2003. The 2003 amendment created a civil cause of action for "[a]n individual who

23

is a victim of a violation of section 1589, 1590, or 1591" against the perpetrator of that crime.  18 U.S.C. § 1595 (Effective: December 19, 2003).  Section 1595(a) cannot be applied retroactively to support a civil cause of action for misconduct that allegedly occurred prior to December 19, 2003.  *Ditullio v. Boehm*, 662 F.3d 1091, 1099 (9th Cir. 201) (holding that the TVPA cannot be applied retroactively to conduct before December 19, 2003); *see Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 950 (1993) (the presumption against the retroactive application of legislation, including amendments creating a private cause of action, is well established).

Foley cannot be liable under Section 1595(a)'s civil cause of action provision which was not enacted until December 19, 2003, after O'Malley had retired (FAC ¶ 96), and years after any misconduct by Foley against Fletcher is alleged (*id.* ¶¶ 85, 87).  Sifsof does not allege any sex act perpetrated by Foley and thus could not bring a claim under the 2003 statute.

(b)   2008 amendments to section 1595.

Moreover, Congress did not add a civil remedy permitting victims to sue for "venture liability," until December 23, 2008.  The 2008 amendment created a civil cause of action against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter."  18 U.S.C. § 1595 (Effective: December 23, 2008 to May 14, 2018).  Section 1595(a) cannot be applied retroactively to a "venture liability" cause of action for misconduct allegedly occurring prior to December 23, 2008.  *Owino v. CoreCivic, Inc.*, 2018 WL 2193644, at *12 (S.D. Cal. May 14, 2018) (the "financial benefit" provision added to Section 1595 in 2008 does not apply retroactively).

Foley cannot be held liable under Section 1595(a)'s venture liability provision because it was enacted years after Fletcher and O'Malley had retired (FAC ¶ 96; Defendants' Request for Judicial Notice) from competition and years after Sifsof

was allegedly assaulted in 2005 (FAC ¶¶ 126-130); thus, long after any of the alleged sex trafficking conduct could have taken place.  Therefore, each of Plaintiffs' sex trafficking claims are not revived.

## 2. Even if Section 1595 was retroactively applicable, Plaintiffs' claims would be time-barred.

The statute of limitations for claims under 1595 that arose after 2003 is four years.  *See DeCrescenzo v. Churtch of Scientology Int'l*, 2009 WL 10672400, at \*1 (C.D. Cal. Nov. 5, 2009) (stating that a four-year statute of limitations applied when Section 1595 was enacted in 2003 and that the 2008 amendment did not revive a Section 1595 claim that was time-barred at the time of enactment).  The statute of limitations for claims under 1595 that arose after 2008 is currently ten years.  18 U.S.C. § 1595(c).  Therefore, *at the latest*, a timely Section 1595 claim must be based on alleged sex-trafficking conduct that occurred *after* February 2, 2013 (ten years prior to Plaintiffs' filing the original Complaint).  Plaintiffs fail to allege any conduct that could be considered a commercial sex act occurred after February 2, 2013.  Furthermore, as discussed below, Plaintiffs fail to allege facts demonstrating that any limitations period is tolled by equitable estoppel.

## D. Plaintiff's claims are not tolled.

Plaintiffs continue to erroneously allege their claims are tolled.  Plaintiffs must plead facts demonstrating that their claims are tolled.  *See Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006) (to survive dismissal of a time-barred claim, plaintiff must allege facts showing equitable estoppel); *see also Evans v. All. Funding*, 2010 WL 11482495, at \*15 (C.D. Cal. Dec. 13, 2010) (to survive dismissal on limitations grounds, plaintiff must allege specific facts supporting equitable tolling).  Plaintiffs fail to do so here.

Equitable estoppel "halts the statute of limitations when there is active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time."  *Guerrero*, 442

25

F.3d at 706 (internal quotations omitted).  Equitable estoppel applies to statutes of limitations where a "defendant's act or omission actually and reasonably induced the plaintiff to refrain from filing a timely suit."  *Doe v. Marten*, 49 Cal. App. 5th 1022, 1028 (2020).  The act or omission "must involve a misrepresentation or nondisclosure of a material fact bearing on the necessity of bringing a timely suit. *Id.*  In cases of sexual abuse, a defendant is estopped from raising the statute of limitations defense if "the defendant engages in 'unconscionable acts' such as threats, intimidation, coercion, or misrepresentations that deter the plaintiff from filing a claim." *Biancov. Warner*, 562 F. Supp. 3d 526, 533 (C.D. Cal. 2021) (citing *Ortega v. Pajaro Valley Unified Sch. Dist.*, 64 Cal.App.4th 1023, 1048 (1998)).

Plaintiffs ask the court to significantly toll their claims to allow them to bring suit outside of the proper limitations period despite not alleging any facts to suggest that Foley should be estopped from raising a statute of limitations defense.  At minimum, from the dates of each Plaintiff's retirement, Plaintiffs ask that this court toll Fletcher's claims by approximately *seventeen years*, O'Malley's claims by approximately *twenty years*, and Sifsof's claims by approximately *eight years.*

Plaintiffs did not report Foley's alleged misconduct until 2022 when each Plaintiff brought a SafeSport claim.  (FAC ¶¶ 94, 112, 144.)  Each Plaintiff claims she did not previously report the alleged misconduct "as a direct and proximate result of the [sic] Foley's manipulation and intimidation, the affirmative steps that he took during the abuse to keep her silent, and the affirmative steps the Foley Sexual Abuse and Cover Up Enterprise, the USSS, and the USOPC took in order to turn a blind eye to red flags of Foley's abuse and manipulation and to prevent [her] from reporting Foley's misconduct."  (*Id.* ¶¶ 94, 112; *See Id.* ¶ 145.)

The only language Plaintiffs add to their FAC is that Foley had "continued influence over [her] career after she left the Team" which allegedly further deterred them from pursuing legal remedies.  (*Id.* ¶ 94, 112, 145.)  However, Plaintiffs fail to plead any specific facts demonstrating that Foley had any continued influence or

26

1    that he at any point engaged in unconscionable acts that would toll their limitations

2    period for years if not decades.  They fail to do so because no such facts exist.

3         Moreover, Plaintiffs make no factual allegation that Foley failed to disclose or

4    misrepresented a material fact.  Additionally, no specific threats or other efforts to

5    silence Plaintiffs are alleged.  In fact, Plaintiffs fail to allege any conduct by Foley

6    other than the primary conduct for which they hope to hold him liable—Foley

7    allegedly sexually assaulting and forcibly kissing Fletcher (*Id.* ¶¶ 85-87); Foley

8    allegedly groping and forcibly kissing O'Malley (*Id.* ¶¶ 103-107); and Foley

9    allegedly subjecting Sifsof to sexually explicit and discriminatory remarks (*Id.* ¶¶

10   118-122).  Even if Plaintiff were to argue that there does not need to be a factual

11   misrepresentation, and outrageous conduct is enough, Plaintiff's complaint fails to

12   allege any outrageous conduct by Foley beyond the primary conduct of the

13   Complaint.

14        Without a misrepresentation or nondisclosure of material fact and without the

15   conduct alleged above and beyond the primary conduct described herein above,

16   Plaintiff's claims cannot be tolled.

17   **E.**      **Plaintiffs Fail To State Facts Sufficient To Support A Claim For**

18            **Defamation**

19        In their FAC, Plaintiffs' make no attempt to cure the deficiencies identified by

20   Foley.  In fact, their defamation cause of action is practically and functionally

21   identical.

22        In order to survive a motion to dismiss, Plaintiffs must be able to make a

23   prima facie case of defamation. A prima facie case of defamation "involves (a) a

24   publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a

25   natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal.4th

26   683, 720 (2007); *Cornell v. Berkeley Tennis Club*, 18 CA5th 908, 946 (2017).

27   Where the defamed person is a public figure, they must show actual malice.

28   *Reader's Digest Assn. v. Superior Court*, 37 Cal.3d 244, 256 (1984); *New York*

27

1  *Times Co. v. Sullivan*, 376 U.S. 254, 285–286 (1964).

2      Plaintiffs allege two sets of defamatory statements. The first statements were

3  made on February 11, 2022, by Foley "to the media and public" that he "was totally

4  surprised by the allegations" and "vehemently den[ies] the allegations" (hereinafter

5  "February 11 Statements"). (FAC ¶ 238.) The second set of allegedly defamatory

6  statements were made by Jacobs, Foley's attorney, on March 20, 2022, and state, in

7  full, "[a]ny allegations of sexual misconduct being made against him are false. Mr.

8  Foley has not engaged in any conduct that violates the SafeSport Code, and he will

9  cooperate with the U.S. Center for SafeSport when and if they contact him"

10  (hereinafter "March 20 Statements"). (ESPN Article.)

11          **1.    Plaintiffs cannot make a prima facie claim for defamation.**

12              (a)    Foley's statements do not amount to a publication because

13                     they cannot be understood as referring to Plaintiffs.

14      A "publication" for purposes of a prima facie case of defamation is a

15  "communication to some third person who understands both the defamatory

16  meaning of the statement and its application to the person to whom reference is

17  made." *Ringler Assocs. Inc. v. Md. Cas. Co.*, 80 Cal. App. 4th 1165, 1179 (2000).

18                  (i)    *The February 11 Statements cannot be understood*

19                         *as referring to Plaintiffs.*

20      Fletcher and O'Malley cannot make out a prima facie case of defamation as to

21  the February 11 Statements. The February 11 Statements cannot possibly be

22  understood as referring to Fletcher and O'Malley because they do not directly name

23  either Plaintiff and were made before either Plaintiff made any allegations against

24  Foley. O'Malley "did not report the assault until March of 2022," when she

25  reported to SafeSport. (FAC ¶ 112.) Fletcher "did not pursue legal remedies until

26  now," referring to the present case. (*Id*. ¶ 274.) Therefore, Foley's February 11

27  statements cannot possibly be understood by a third party to be referring to Fletcher

28  and O'Malley because they had not yet made any allegations against Foley.

Therefore, Foley's February 11 statements cannot constitute defamation as to them.

Additionally, the February 11 Statements cannot be understood as referring to Sifsof.  The Instagram post, not quoted in the Complaint, contains a variety of allegation against multiple actors for multiple bad acts.  Neither of Foley's February 11 Statement names Sifsof, nor do they make any mention of the bad acts alleged by her.  The Statements do not, as Plaintiffs claim, "directly stat[e]" that Plaintiffs "acted with fraud, dishonesty, and unfitness for the task." (*Id*. ¶ 488.)  They cannot possibly be understood "as making specific factual claims that Plaintiffs were lying about specific facts." (*Id*. ¶ 490.)  A general denial is not enough to amount to a claim for defamation.  The Statements do not comment on Sifsof or the facts underlying her allegations, they instead state Foley's reaction to the allegations and that he denies the characterizations of the allegations Sifsof made in her Instagram allegations.

>    *(i)*  *The March 20 Statements cannot be understood as referring to Plaintiffs.*

The second statements Plaintiffs allege were defamatory were made before Fletcher brought her claims against Foley.  (ESPN Article.)  The very ESPN article Plaintiffs rely on for their defamation claim does not mention Fletcher by name.  In fact, Fletcher, at the time of the March 20 Statements, "spoke on the condition her name not be used." (*Id*.)  Therefore, the March 20 Statements cannot constitute defamation as to Fletcher.

For the same reasons the February 11 Statements cannot be understood as referring to Sifsof, the March 20 Statements cannot be understood as referring to Sifsof or O'Malley.  The March 20 Statements vaguely deny the characterization of misconduct or that Foley engaged in conduct that would have violated the SafeSport code.  Again, the Statements make no mention of Plaintiffs, or the facts underlying their allegations.  Therefore, neither set of statements can be understood as referring to Plaintiffs.

(b)   General Denials of Misconduct are not tantamount to defamation.

Statements of opinion are not generally actionable as defamation. *Ferlauto v. Hamsher,* 74 Cal.App.4th 1394, 1401 (1999); *Gregory v. McDonnell Douglas Corp*., 17 Cal.3d 596, 601 (1976); *Information Control v. Genesis One Computer Core*, 611 F.2d 781, 784 (9th Cir.1980); *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal.App.4th 141, 156 (2013); *see also Gardner v. Martino*, 562 F.3d 981, 987 (9th Cir. 2009) (citing *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995)). In determining whether a particular statement is factual or opinion-based, courts in California look to the totality of the circumstances, analyzing both the language of the statement itself, to determine whether the words are understood in a defamatory sense and the context in which the statement was made. *Id*.

Part of the totality of the circumstances used in evaluating the language in question is whether the statements were made by participants in an adversarial setting. *Ferlauto v. Hamsher*, 74 Cal.App.4th 1394, 1401 (1999). "[W]here potentially defamatory statements are published in a ... setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion." *Gregory*, 17 Cal.3d at 601. "[S]ince such [labor] disputes, realistically considered, normally involve considerable differences of opinion and vehement adherence to one side or the other, a necessarily broad area of discussion without civil responsibility in damages is an indispensable concomitant of the controversy.'" *Id*. at 602; *see also Information Control*, 611 F.2d at 784 (disparaging comments by business litigants generally understood not as statements of fact but as predictable opinion of the other side's motive.)

In *Ferlauto*, the defendant and defendant's attorney published written statements regarding plaintiff's lawsuit, describing plaintiff's lawsuit as "stupid,"

"laughed at," "a joke," "spurious," and "frivolous." *Ferlauto*, 74 Cal.App.4th at 1401.  The court found that such statements were nothing more than the "predictable opinion" of one side of the lawsuit and, thus, not defamatory.  *Id.*; *see also GetFugu, Inc.*, 220 Cal.App.4th at 156 (holding that defendant's attorney's tweet describing plaintiff's lawsuit as "frivolous" was an unactionable statement of opinion because it was "predictable" in the context of litigation); *Information Control Corp. v. Genesis One Computer Corp.* (9th Cir. 1980) 611 F.2d 781 (holding that statement of defendant's counsel that plaintiff corporation acted to avoid paying its obligations was nonactionable opinion.)

As in *Ferauto* and *GetFugu*, both the February 11 and March 20 statements cannot be considered defamatory in nature because they were predictable statements of opinion made in an adversarial context.  As discussed herein above, at the time the February 11 and March 20 statements were made, Sifsof had previously reported Foley's alleged misconduct to SafeSport.

As alleged in the FAC, on February 11, Foley stated he "was totally surprised by the allegations."  (FAC ¶ 238.)  This statement is nothing more than Foley's subjective reaction to the allegations made against him.  Second, Foley stated that he "vehemently den[ies] the allegations."  (*Id.*)  Again, this statement is a general denial of allegations against him without specific reference to any underlying facts or individuals.  Within the adversarial context created by Sifsof's allegations to SafeSport, Plaintiffs cannot establish that either of these statements, both of which are "predictable opinions" from Foley's side of an ongoing dispute, are defamatory in any sense.

The same applies to the March 20 statements by Jacobs.  As described above, Jacobs's March 20, 2022 statement in full, was: "[a]ny allegations of sexual misconduct being made against him are false.  Mr. Foley has not engaged in any conduct that violates the SafeSport Code, and he will cooperate with the U.S. Center for SafeSport when and if they contact him."  Similar to Foley's February 11

31

statements and the statements in *Ferlauto* and *GetFugu*, the March 20 Statements are predictable opinions made in an adversarial context. Regardless of whether it comes from Foley or his attorney, a general denial of misconduct that does not comment on Plaintiffs or the facts underlying their reports is not defamatory. Plaintiffs do not and cannot offer any facts to suggest that either Foley or Jacobs' words had any particular tenor that could be reasonably considered defamatory in nature. The totality of circumstances clearly illustrate that these statements are unactionable. Thus, Plaintiffs' defamation claim must be dismissed.

(c)    Foley did not make a false statement of fact.

Courts consider the totality of the circumstances in assessing the falsity of a statement. *Reed v. Gallagher*, 248 Cal.App.4th 841, 856 (2016). The totality of the circumstances includes words used, the context of the publication, its nature and content, and audience knowledge and understanding, to determine whether or not there is a provably false factual assertion. *ZL Techs., Inc. v. Does 1–7*, 13 Cal. App. 5th 603, 624-25 (2017). Only false statements of fact, not of opinion, are actionable under defamation; opinions enjoy First Amendment protections. *Gregory*, 17 Cal.3d at 601.

Where the statements are "of ambiguous meaning, or innocent on their face and defamatory only in the light of extrinsic circumstances, the plaintiff must plead and prove that as used, the words had a particular meaning, or 'innuendo' which makes them defamatory." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999). Where the statements are ambiguous, "the plaintiff must also allege the extrinsic circumstances which show the third person reasonably understood it in its derogatory sense." *Id.* at 646. "Because, by definition, an accurate and unambiguous statement of true facts cannot under any circumstances convey a defamatory meaning, no innuendo can make such a statement defamatory as a matter of law." *Id.* at 650 (citing *Washer v. Bank of Am. Nat'l Tr. & Sav. Asso.*, 21 Cal. 2d 822, 828 (1943).).

1    Neither February 11 Statement can be considered a false statement of fact.

2    The first statement was that Foley "was totally surprised by the allegations."  (FAC

3    ¶ 238.) That Foley was "surprised" cannot be understood as a fact.  It is Foley's

4    subjective reaction to allegations that came out before Plaintiffs Fletcher and

5    O'Malley made any allegations of their own against Foley.  Secondly, that Foley

6    "vehemently den[ies] the allegations" (*Id*.) is a statement that is innocent on its face

7    as it merely expresses Foley's position in response to the allegations made against

8    him at that time.

9    Similarly, the March 20 Statements are innocent on their face. As described

10   above, the March 20 Statements are general denials of misconduct that do not

11   comment on Plaintiffs or the facts underlying their reports, the Statements

12   specifically deny misconduct or conduct that would have violated the SafeSport

13   code.  Plaintiffs offer no facts that suggest the words had a particular innuendo that

14   made them defamatory.  Therefore, the March 20 Statements cannot be understood

15   to be a publication.

16                    (d)    Foley's statements do not injure or cause special damages.

17   The FAC continues to fail to state any special damages suffered by Plaintiffs

18   as a result of Foley's allegedly defamatory statements.  "Special damages" is

19   defined as "all damages that plaintiff alleges and proves that he or she has suffered

20   in respect to his or her property, business, trade, profession, or occupation, including

21   the amounts of money the plaintiff alleges and proves he or she has expended as a

22   result of the alleged libel, and no other."  Cal. Civ. Code § 45(d)(2).  Special

23   damages are narrowly defined "to encompass only economic loss." *Gomes v. Fried*,

24   136 Cal.App.3d 924, 939 (Ct. App. 1982).  Federal Rule of Civil Procedure 9(g)

25   requires that special damages "be specifically stated."

26   Plaintiffs do not allege any special damages.  Rather, the FAC makes a vague,

27   conclusory statement that "Foley's false statements have caused, and continue to

28   cause, Plaintiffs economic damage, psychological pain and suffering, mental

33

anguish and emotional distress, and other direct and consequential damages and loss." (FAC ¶ 492 (emphasis added.) Plaintiffs fail to specifically state *any* special damages as required by the Federal Rules of Civil Procedure and the California Civil Code. *See Gomes*, 136 Cal.App.3d at 939 (defining "general damages" as "damages for loss of reputation, shame, mortification, and hurt feelings"); *see also* Cal. Civ. Code § 48a (defining general damages separately from special damages.). In fact, Plaintiffs fail to state any damages resulting from Foley's allegedly defamatory statements apart from the above quoted boilerplate damages statement.

Furthermore, even if special damages were adequately plead, which they are not, the February 11 Statements could not possibly have had a tendency to injure Plaintiffs or cause them special harm because they were made before Plaintiffs Fletcher and O'Malley made any allegations against Foley. Moreover, the March 20 Statements were made while Fletcher was still anonymous.

The March 20 statements are general statements of denial that deny Plaintiffs' characterizations of the events as misconduct. A general statement denying misconduct that does not mention Plaintiffs cannot be understood as having a tendency to impact their property, business, trade, profession, or occupation and Plaintiffs do not claim that they do. Therefore, neither the February 11 nor the March 20 Statements can amount to a prima facie claim for defamation.

### 2. <u>Howard Jacobs' statements to the press are not defamatory because they were made in reply to adverse publicity.</u>

A lawyer has a general right of reply in exception to the general rule's prohibition. Under the California Rules of Professional Conduct, Rule 3.6(c), "a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client." Such a statement "shall be limited to such information as is necessary to mitigate the recent adverse publicity." *Id*.

Here, the publicity was not initiated by Jacobs or Foley. Rather, it was

34

1   initiated by Callan Sifsof's February 2022 social media post on Instagram

2   "expos[ing] Foley's sexual misconduct, including reports of Foley having taken

3   naked photos of female athletes and employees for decades, making sexual explicit

4   comments, and other abuse." (FAC ¶ 235.)  Jacobs' statements were made

5   approximately one month thereafter on March 20, 2022 (*Id.* at ¶ 129) and after

6   USSS released a statement on March 20, 2022 that "Foley was terminated by the

7   organization after reports surfaced of his contribution to a 'toxic culture among the

8   team in the workplace where certain athletes were favored over others.'" (*Id.* ¶ 190.)

9        A statement alleged to be defamatory must be taken as a whole.  *See Balzaga*

10  *v. Fox News Network, LLC*, 173 Cal.App.4th 1325, 1338 (2009) (quoting *Kaelin v.*

11  *Globe Communs. Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998)) ("[A] defamatory

12  meaning must be found, if at all, in a reading of the publication as a whole."

13  "Defamation actions cannot be based on snippets taken out of context.").  The

14  March 11 Statements merely state Foley's denial of misconduct and his willingness

15  to cooperate with SafeSport in their investigation.  The allegedly defamatory

16  statements are in response to recent publicity of his suspension pending an

17  investigation by SafeSport into the allegations against him.  (*See* FAC ¶ 199.)

18  **V.**    **CONCLUSION**

19       For all of the foregoing reasons, Plaintiff's First Amended Complaint should

20  be dismissed in its entirety and with prejudice.

21  DATED:  June 30, 2023          Respectfully Submitted,

22                             **DAUGHERTY LORDAN LLP**

23

24

25                       By:      */s/ Paige T. Rivett*

26                           MEGHAN E. McCORD

27                           PAIGE T. RIVETT

                         Attorneys for Defendant Peter Foley

28

1

## **CERTIFICATE OF COMPLIANCE**

2           The undersigned, counsel of record for Defendant United States Ski &

3   Snowboard, certifies that this brief contains 35 pages, which complies with the page

4   count set by court order dated June 28, 2023.

5
    DATED:  June 30, 2023              **DAUGHERTY LORDAN LLP**
6

7

8                                   By:     */s/ Paige T. Rivett*
                                         _____
9                                        MEGHAN E. McCORD
                                         PAIGE T. RIVETT
10                                       Attorneys for Defendant Peter Foley

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT FOLEY'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(B)(2)
AND 12(B)(6)