Caitlin C. Blanche (SBN 254109)
caitlin.blanche@klgates.com
**K&L Gates LLP**
1 Park Plaza, Twelfth Floor
Irvine, California 92614
Telephone: +1.949.253.0900
Facsimile: +1.949.253.0902

Desirée F. Moore (*admitted pro hac vice*)
desiree.moore@klgates.com
Abram I. Moore (*admitted pro hac vice*)
abe.moore@klgates.com
**K&L Gates LLP**
70 West Madison Street, Suite 3300
Chicago, Illinois 60602
Telephone: +1.312.372.1121
Facsimile: +1.312.345.9976

Attorneys for Defendant
UNITED STATES SKI &
SNOWBOARD

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEY FLETCHER, ERIN O'MALLEY, AND CALLAN CHYTHLOOK-SIFSOF, <br><br> Plaintiffs, <br><br> v. <br><br> PETER FOLEY, GALE "TIGER" SHAW III, UNITED STATES SKI & SNOWBOARD, AND UNITED STATES OLYMPIC AND PARALYMPIC COMMITTEE, <br><br> Defendants. | Case No. 2:23-cv-00803-SPG-JPR <br><br> [Assigned to The Honorable Sherilyn Peace Garnett] <br><br> **DEFENDANT UNITED STATES SKI & SNOWBOARD'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> *[Filed concurrently with Defendants' Request for Judicial Notice and [Proposed] Order Granting Defendant's Motion to Dismiss]* <br><br> **Date:** October 25, 2023 <br> **Time:** 1:30 p.m. <br> **Courtroom:** 5C <br><br> Complaint filed: February 2, 2023 |

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 25, 2023, or as soon thereafter as this matter may be heard, in Courtroom 5C of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, CA 90012, Defendant United States Ski & Snowboard ("USSS")[1] will, and hereby does, move the Court for an Order dismissing Plaintiffs Rosey Fletcher, Erin O'Malley, and Callan Chythlook-Sifsof's (collectively, "Plaintiffs") First Amended Complaint ("FAC") against USSS in its entirety and with prejudice. This Motion is made pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that this Court lacks personal jurisdiction over USSS and Plaintiffs fail to state a claim upon which relief can be granted.

This Motion is made following a conference of counsel pursuant to Local Rule 7-3 that took place on June 22, 2023. The Parties thoroughly discussed the substance and potential resolution of the filed Motion by videoconference on June 22, 2023.

The Motion is based on this Notice, the Memorandum of Points and Authorities attached hereto, the complete Court files and records in this action, and all matters that may be properly considered by the Court at the hearing on this Motion.


K&L GATES LLP

Dated: June 30, 2023                By:   /s/ Caitlin C. Blanche
                                          Caitlin C. Blanche
                                          Desirée F. Moore
                                          Abram I. Moore

                                          Attorneys for Defendant
                                          UNITED STATES SKI & SNOWBOARD

---

[1] The correct entity name for USSS, as filed with the Utah Secretary of State, is "United States Ski Association" with the fictitious name of "United States Ski and Snowboard Association."

i
NOTICE OF MOTION AND MOTION TO DISMISS FAC

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  ALLEGATIONS AND JURISDICTIONAL FACTS ........................................ 4

    A.   USSS Contacts with California .............................................................. 4

    B.   Factual Allegations in the FAC ............................................................. 5

        1.   Fletcher Allegations ................................................................... 5

        2.   O'Malley Allegations ................................................................. 5

        3.   Chythlook-Sifsof Allegations .................................................... 6

        4.   Allegations from 2022 Common to All Plaintiffs ...................... 7

III. DISMISSAL FOR LACK OF PERSONAL JURISDICTION UNDER RULE
    12(B)(2) ........................................................................................................... 9

    A.   This Court lacks general jurisdiction over USSS because it is not
        "essentially at home" in California. .................................................... 10

    B.   This Court also lacks specific jurisdiction over USSS because the alleged
        claims did not arise in California. ...................................................... 12

    C.   RICO's nationwide service provision does not confer jurisdiction over
        USSS. .................................................................................................. 13

IV.  ALL COUNTS SHOULD BE DISMISSED FOR FAILURE TO STATE A
    CLAIM AND/OR LACK OF STANDING UNDER RULE 12(B)(6). ..................... 16

    A.   Count One fails to state a claim against Defendants; Plaintiffs lack
        standing to bring a RICO claim; and any RICO claim is time-barred. ....... 17

        1.   Count One should be dismissed because Plaintiffs fail to state a
            RICO claim. ............................................................................. 17

            a.   Defendants are not alleged to have conducted or
                participated in the conduct of an enterprise. .......................... 17

                i.   Plaintiffs fail to state plausible facts showing the
                    existence of an enterprise. ................................................... 17

        1.   Plaintiffs fail to allege a common purpose. ............................. 18

        2.   Plaintiffs fail to allege the required structure, organization, and
            longevity to establish an enterprise. ....................................... 21

                ii.   Plaintiffs fail to allege that Defendants conducted or
                    participated in the conduct of the enterprise because
                    no Defendant allegedly exercised a managerial role. ........ 22

            b.   Plaintiffs also fail to allege a pattern of racketeering
                activity. .................................................................................. 23

i.   Plaintiffs fail to allege an indictable federal Forced Labor or Sex Trafficking violation under Sections 1589 or 1591. ....23

ii.   Plaintiffs fail to allege an indictable violation of the Mann Act. ......................................................................................25

iii.   Plaintiffs fail to allege a single indictable instance of mail or wire fraud. ....................................................................26

2.   Count One should also be dismissed because Plaintiffs lack standing to bring a RICO claim. .........................................28

a.   Plaintiffs fail to allege injury to their business or property. ...29

b.   Plaintiffs fail to allege that their injuries, even if sufficient, were caused by RICO violations. ........................................31

3.   Finally, Count One should be dismissed because Plaintiffs' RICO claim is time-barred. ...............................................32

B.   Counts Three, Five, Seven, and Eight fail to state a claim against Defendants and are time-barred. ........................................33

1.   Plaintiffs' Forced Labor/Sex Trafficking-related claims are based on alleged conduct that occurred prior to the enactment of the statutes at issue. ..............................................................33

a.   USSS cannot be liable under Section 1595's "venture liability" provision, because it was enacted in 2008, after the alleged "sex trafficking" conduct. ...............................34

b.   Defendants cannot be liable for conspiracy to commit sex trafficking (Count Eight), because a provision allowing for such liability was enacted after the alleged sex trafficking. .................................................................34

2.   Even if Section 1595 were retroactively applicable, Plaintiffs' claims would be time-barred. ...............................................35

3.   Plaintiffs fail to allege facts stating a claim for Forced Labor or Sex Trafficking, and therefore Counts Three, Five, and Seven should be dismissed. ..............................................................35

4.   Plaintiffs fail to state a claim for "conspiracy to sex trafficking and forced labor." ...............................................................37

C.   Counts Eleven, Twelve, and Thirteen fail to state a claim and do not revive time-barred claims. ........................................38

1.   Plaintiffs have failed to plead that their claims arose in California or involved a then-citizen of California, and therefore Section 340.16 cannot revive their claims. ...............................38

2.   Plaintiffs fail to allege facts sufficient to meet the elements necessary to revive their time-barred claims under Section 340.16. ..................................................................................40

NOTICE OF MOTION AND MOTION TO DISMISS FAC

|  |  |  | a. | Plaintiffs fail to allege that they were "sexually assaulted" under Section 340.16 because they do not allege that any acts occurred in California. | 41 |

|  |  |  | b. | Plaintiffs fail to state a claim under any legal theory so as to render USSS liable for damages arising out of any assault. | 41 |

|  |  |  | c. | Plaintiffs fail to allege any previous incident of sexual assault, much less that USSS covered up any such incident. | 42 |

D. Count Nineteen fails to state a claim and is time-barred. ........................... 43

    1. Fletcher and O'Malley fail to state claims for negligence against USSS. ........................... 44

    2. Chythlook-Sifsof fails to state a claim for negligence against USSS. ........................... 46

    3. Count Nineteen is time-barred. ........................... 48

E. Count Twenty names the wrong parties, fails to state a claim, and is time-barred. ........................... 48

    1. Improper parties should be dismissed. ........................... 49

    2. Plaintiffs fail to state a claim against USSS for negligent supervision or retention. ........................... 49

    3. Any negligent supervision or retention claims are time-barred. ........................... 50

F. Count Twenty-One fails to state a claim and is time-barred. ........................... 51

    1. Plaintiffs fail to state a claim for IIED against USSS. ........................... 51

    2. Any IIED claim is time-barred. ........................... 53

V. CONCLUSION ........................... 53

# TABLE OF AUTHORITIES
## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrahamson v. Berkley*,
   2016 WL 8673060 (E.D. Cal. Sept. 2, 2016) ..........................................................15

*Acro-Tech, Inc. v. Robert Jackson Fam. Tr.*,
   84 F. App'x 747 (9th Cir. 2003) ............................................................................21

*Adkins v. Collens*,
   444 P.3d 187 (Alaska 2019) ...................................................................................51

*Agric. Water v. Occidental Oil & Gas Corp.*,
   235 F. Supp. 3d 1132 (E.D. Cal. 2017) .....................................................18, 19, 22

*Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*,
   744 F.3d 595 (9th Cir. 2014) ...................................................................................6

*In re Apple Inc. v. Sec. Litig.*,
   2020 WL 2857397 (N.D. Cal. June 2, 2020) ...........................................................27

*Atias v. Phillips*,
   2018 WL 11355475 (C.D. Cal. Dec. 7, 2018) ....................................................29, 31

*Barantsevich v. VTB Bank*,
   954 F. Supp. 2d 972 (C.D. Cal. 2013) ...............................................................14, 16

*Battle v. Taylor James, LLC*,
   607 F. Supp. 3d 1025 (C.D. Cal. 2022) ..................................................................44

*Berg v. First State Ins. Co.*,
   915 F.2d 460 (9th Cir. 1990) ..................................................................................29

*Boy 1 v. Boy Scouts of Am.*,
   832 F. Supp. 2d 1282 (W.D. Wash. 2011) ..............................................................47

*Boy 7 v. Boy Scouts of Am.*,
   2011 WL 2415768 (E.D. Wash. June 13, 2011) ......................................................37

*Bridge v. Phoenix Bond & Indemn. Co.*,
   533 U.S. 639 (2008) ................................................................................................31

*Bristol-Myers Squibb Co. v. Super. Ct. of California*,
   582 U.S. 255 (2017) ................................................................................................12

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

*Brown v. USA Taekwondo*,
   11 Cal. 5th 204 (2021) ................................................................................45

*Buelow v. Plaza Motors of Brooklyn, Inc.*,
   2017 WL 2813179 (E.D. Cal. June 29, 2017) .............................................15

*Canyon County v. Syngenta Seeds, Inc.*,
   519 F.3d 969 (9th Cir. 2008) ..............................................................29, 31

*Chagby v. Target Corp.*,
   2008 WL 5686105 (C.D. Cal. Oct. 27, 2008) ............................................21

*Chaset v. Fleer/Skybox Intern., LP*,
   300 F.3d 1083 (9th Cir. 2002) ...................................................................30

*Colonial Van & Storage, Inc. v. Superior Court*,
   76 Cal. App. 5th 487 (Cal. App. Ct. 2022) .........................................51, 52

*Conway v. Circus Circus Casinos, Inc.*,
   8 P.3d 837 (Nev. 2000) ...............................................................................52

*Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010) .....................................................................5

*Crown Chevrolet v. Gen. Motors, LLC*,
   637 F. App'x 446 (9th Cir. 2016) ...............................................................32

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ............................................................................10, 14

*DeCrescenzo v. Church of Scientology Int'l*,
   2009 WL 10672400 (C.D. Cal. Nov. 5, 2009)............................................35

*Devine v. Great Divide Ins. Co.*,
   350 P.3d 782 (Ala. 2015) ............................................................................50

*Doan v. Singh*,
   617 F. App'x 684 (9th Cir. 2015) ...............................................................18

*Doe v. California Inst. of Tech.*,
   2019 WL 8645652 (C.D. Cal. Aug. 13, 2019)............................................53

*Dole Food Co. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002) ....................................................................12

*Dore v. City of Fairbanks*,
   31 P.3d 788 (Alaska 2001)..........................................................................44

*Dual Diagnosis Treatment Ctr., Inc. v. Centene Corp.*,
   2021 WL 4464204 (C.D. Cal. May 7, 2021) ..............................................28

vi

NOTICE OF MOTION AND MOTION TO DISMISS FAC

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ................................................................. 18

*Ellis v. J.P. Morgan Chase & Co.*,
  950 F. Supp. 2d 1062 (N.D. Cal. 2013) ................................................. 18

*Esoimeme v. Wells Fargo Bank*,
  2011 WL 3875881 (E.D. Cal. Sept. 1, 2011) ........................................ 39

*Estavilla v. Goodman Grp., LLC*,
  2022 WL 539192 (D. Mont. Feb. 23, 2022) ........................................... 37

*Evans v. All. Funding*,
  2010 WL 11482495 (C.D. Cal. Dec. 13, 2010) ...................................... 39

*Evans v. Arizona Cardinals Football Club, LLC*,
  231 F. Supp. 3d 342 (N.D. Cal. 2017) ................................................... 32

*Evans v. Arizona Cardinals Football Club, LLC*,
  761 F. App'x 701 (9th Cir. 2019) ..................................................... 32, 33

*Farrell v. U.S. Olympic & Paralympic Comm.*,
  567 F. Supp. 378 (N.D.N.Y. 2021) ........................................................ 11

*Fleites v. MindGeek S.A.R.L.*,
  2022 WL 4456077 (C.D. Cal. July 29, 2022) ........................................ 37

*Galindo v. City of San Mateo*,
  2016 WL 7116927 (N.D. Cal. Dec. 7, 2016) .......................................... 52

*Gomez v. Guthy-Renker, LLC*,
  2015 WL 4270042 (C.D. Cal. July 13, 2015) ........................................ 21

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ........................................................... 10, 12, 52

*Graves v. N. E. Servs., Inc.*,
  345 P.3d 619 (Utah 2015) ...................................................................... 45

*Grimmett v. Brown*,
  75 F.3d 506 (9th Cir. 1996) ................................................................... 17

*Guerrero v. Gates*,
  442 F.3d 697 (9th Cir. 2006) ................................................................. 39

*Hatch v. Davis*,
  102 P.3d 774 (Utah 2004) ...................................................................... 53

*Heflebower v. JPMorgan Chase Bank, NA*,
  2014 WL 897352 (E.D. Cal. Mar. 6, 2014) ........................................... 29

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)........................................................................................10, 12

*Helmer v. Bank of America, N.A.*,
   2013 WL 4546285 (E.D. Cal. Aug. 27, 2013) .......................................................52

*Hoffman v. Zenith Ins. Co.*,
   487 F. App'x 365 (9th Cir. 2012) ........................................................................32

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) .........................................................................23, 37

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945).............................................................................................9

*In re Jamster Mktg. Litig.*,
   2009 WL 1456632 (S.D. Cal. May 22, 2009)........................................................18

*Jaynes v. Trex Co., Inc.*,
   2010 WL 11636674 (D. Nev. June 10, 2010) .......................................................50

*Jensen v. United States Tennis Association*,
   2020 WL 6445117 (D. Kan. Oct. 30, 2020) ...................................................36, 50

*Jensen v. United States Tennis Association*,
   2021 WL 1226625 (D. Kan. Apr. 1, 2021) ..........................................................36

*Kashef v. BNP Paribas SA*,
   2021 WL 603290 (S.D.N.Y. Feb. 16, 2021) ........................................................47

*Keel v. Schwarzenegger*,
   2009 WL 1444644 (C.D. Cal. May 19, 2009) .....................................................29

*Kellman v. Whole Foods Mkt., Inc.*,
   313 F. Supp. 3d 1031 (N.D. Cal. 2018) ..............................................................11

*Kirsopp v. Yamaha Motor Co. Ltd.*,
   2014 WL 12577429 (C.D. Cal. Aug. 27, 2014) ..................................................13

*Krypt, Inc. v. Ropaar LLC*,
   2020 WL 32334 (N.D. Cal. Jan. 2, 2020) ...........................................................15

*Lackner v. North*,
   135 Cal. App. 4th 1188 (2006) ..........................................................................44

*Lilley v. JP Morgan Chase*,
   317 P.3d 470 (Utah 2013)..................................................................................48

*Linebaugh v. Gibson*,
   471 P.3d 835 (Utah Ct. App. 2020) ....................................................................51

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
    431 F.3d 353 (9th Cir. 2005) .......................................................................... 21

*Logistick, Inc. v. AB Airbags*,
    543 F. Supp. 3d 881 (S.D. Cal. 2021) ........................................................... 30

*Love v. Motion Indus.*,
    309 F. Supp. 2d 1128 (N.D. Cal. 2004) ......................................................... 49

*Maness v. Gordon*,
    325 P.3d 522 (Alaska 2014) ........................................................................... 53

*Mangeris v. Gordon*,
    580 P.2d 481 (Nev. 1978) ....................................................................... 44, 45

*Martinez v. Aero Caribbean*,
    764 F.3d 1062 (9th Cir. 2014) ....................................................................... 10

*Marvix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) .................................................................... 9, 10

*Nassi v. Hatsis*,
    525 P.3d 117 (Utah 2023) .............................................................................. 51

*Novak v. United States*,
    795 F.3d 1012 (9th Cir. 2015) ....................................................................... 16

*Oki Semiconductor Co. v. Wells Fargo Bank, N.A.*,
    298 F.3d 768 (9th Cir. 2002) ......................................................................... 31

*Olivero v. Lowe*,
    995 P.2d 1023 (Nev. 2000) ............................................................................ 51

*Owino v. CoreCivic, Inc.*,
    2018 WL 2193644 (S.D. Cal. May 14, 2018) ............................................... 34

*Powers-Barnhard v. Butler*,
    2020 WL 4925333 (N.D.N.Y. Aug. 21, 2020) .............................................. 11

*Prime Partners IPA of Temecula, Inc. v. Chaudhuri*,
    2012 WL 1669726 (C.D. Cal. May 14, 2012) ......................................... 17, 22

*Reasner v. State Dept. of Health & Soc. Servs., Office of Children's Servs.*,
    394 P.3d 610 (Alaska 2017) ..................................................................... 48, 50

*Retherford v. AT&T Comms. Of Mountain States, Inc.*,
    844 P.2d 949 (Utah 1992) .............................................................................. 50

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ....................................................................................... 22

ix

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

*Rupert v. Bond,*
 68 F. Supp. 3d 1142 (N.D. Cal. 2014) ...................................................................16

*Russo v. Shac, LLC,*
 498 P.3d 1289 (Nev. App. 2021) .........................................................................53

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union,*
 325 F. Supp. 3d 1088 (S.D. Cal. 2018).................................................................11

*Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.,*
 125 Nev. 818 (2009) ...........................................................................................46

*Sanford v. MemberWorks, Inc.,*
 625 F.3d 550 (9th Cir. 2010) ...............................................................................26

*Schwarzenegger v. Fred Martin Motor Co.,*
 374 F.3d 797 (9th Cir. 2004) ...............................................................................12

*Shaw v. Nissan N. Am., Inc.,*
 220 F. Supp. 3d 1046 (C.D. Cal. 2016) ................................................................18

*Shuvalova v. Cunningham,*
 2012 WL 1940767 (N.D. Cal. May 29, 2012) .......................................................24

*Smith by Smith v. Cryolab Health Ben. Plan,*
 1993 WL 33856 (9th Cir. Feb. 11, 1993) .............................................................29

*Solis v. City of Fresno,*
 2012 WL 868681 (E.D. Cal. Mar. 13, 2012) ........................................................36

*In re Sona Nanotech, Inc. Sec. Litig.,*
 562 F. Supp. 3d 715 (C.D. Cal. 2021) ..................................................................28

*Sosa v. DIRECTV, Inc.,*
 437 F.3d 923 (9th Cir. 2006) ...............................................................................28

*Swartz v. KMPG LLP,*
 476 F.3d 756 (9th Cir. 2007) .................................................................................9

*Turner v. Cook,*
 362 F.3d 1219 (9th Cir. 2004) .............................................................................23

*United States v. Flucas,*
 22 F.4th 1149 (9th Cir. 2022) ..............................................................................26

*United States v. Sayakom,*
 186 F.3d 928 (9th Cir. 1999) ...............................................................................27

*Wagh v. Metris Direct Servs., Inc.,*
 348 F.3d 1102 (9th Cir. 2004) .............................................................................17

x

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

*Walden v. Fiore,*
    571 U.S. 277 (2014) ............................................................................... 12

*Wassmann v. S. Orange County Comm. College Dist.,*
    24 Cal. App. 5th 825 (2018) ................................................................. 53

*In re Western States Wholesale Natural Gas Antitrust Litig. v. Oneok, Inc.,*
    715 F.3d 716 (9th Cir. 2013) ................................................................... 9

*Wong v. Jing,*
    189 Cal. App. 4th 1354 (2010) .............................................................. 51

*Woxberg v United States,*
    329 F.2d 284 (9th Cir. 1964) ................................................................. 24

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
    433 F.3d 1199 (9th Cir. 2006) (en banc) .............................................. 15

*Young v. Actions Semiconductor Co., Ltd.,*
    386 Fed. App'x 623 (9th Cir. 2010) ................................................ 13, 15

*Young v. Salt Lake City Sch. Dist.,*
    52 P.3d 1230 (Utah 2002) ................................................................ 44, 47

*Z.V. v. Cnty. of Riverside,*
    238 Cal.App.4th 889 (Cal. Ct. App. 2015) ........................................... 49

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.,*
    601 F. Supp. 3d 625 (C.D. Cal. 2022) .................................................. 13

*In re ZF-TRW,*
    601 F. Supp. ........................................................................................... 14

**Statutes**

18 U.S.C. § 1589 ................................................................................. *passim*

18 U.S.C. § 1591 ................................................................................. *passim*

18 U.S.C. § 1594 ............................................................................... 33, 37

18 U.S.C. § 1595 ................................................................................. *passim*

18 U.S.C. §§ 1961 ............................................................................. 17, 23

18 U.S.C. § 1962(c) .................................................................................. 22

18 U.S.C. § 1965 ............................................................................... 13, 14

18 U.S.C. § 2421 ............................................................................... 23, 26

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

36 U.S.C. § 220541 ............................................................................................7, 9

Cal. Civ. Proc. Code § 340.16(e)(2) ........................................................... *passim*

Cal. Civ. Proc. Code § 355.1 ............................................................................48, 50

Cal. Civ. Proc. Code § 1235.040(c) .......................................................................41

Cal. Penal Code § 27 ..............................................................................................41

Nev. Rev. Stat. Ann. § 11.190 .........................................................................48, 50

Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of
2017, Pub. L. No.115-126, 132 Stat. 318 .......................................................7

**Other Authorities**

Fed. R. Civ. P. 9(b) .......................................................................26, 27, 28, 37

Fed. R. Civ. P. 12(b)(2).............................................................................2, 9, 16

Fed. R. Civ. P. 12(B)(6) ................................................................................16, 28

Fed. R. Civ. P. 44.1 ..............................................................................................48

Restatement (Second) of Torts................................................................44, 46

Restatement (Second) of Torts § 315 (1965) ........................................................44

Restatement (Second) of Torts § 320 (1965) ........................................................46

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION[2]

USSS is the national governing body ("NGB") that oversees seven disciplines of ski and snowboard sports in the Olympic movement. Based in Park City, Utah, USSS supports nearly 200 elite skiers and snowboarders and tens of thousands of young ski and snowboard athletes nationwide. USSS is a woman-led, non-profit organization. Its Chief Executive Officer, Chief Financial and Administrative Officer, Chief of Sport, Chief Revenue and Philanthropic Officer, and General Counsel (among others) are all women. With this leadership team, USSS has focused on transparency and accountability, and has prioritized the health, safety, and wellbeing of athletes above all.

In this regard, USSS takes the allegations levied against it in this lawsuit extremely seriously, and supports any athlete who bravely comes forward to share allegations of sexual misconduct and abuse. Still, contrary to what Plaintiffs would have this Court believe, USSS is not, and has never been or participated in, a criminal enterprise. It is not and has never been a front for a sex trafficking operation. It does not and has never condoned, allowed, or otherwise permitted any USSS personnel to engage in harassing or otherwise improper conduct. To the contrary, as soon as USSS was made aware—in 2022—of allegations of decades-old misconduct, it:

- immediately reported those allegations to the United States Center for

---

[2] At the eleventh hour (well into the day on the very day this Motion was due to be filed), Plaintiffs voluntarily dismissed Gale "Tiger" Shaw III from this lawsuit. In doing so, Plaintiffs have implicitly (if not expressly) acknowledged that the claims against Shaw, USSS's former CEO, were frivolous. The same is true for the claims against his employer, USSS. It is plain that USSS is not at home in California and none of the alleged conduct took place in California; therefore, California is not the proper jurisdiction for this lawsuit. Plaintiffs also fail to allege any plausible facts in support of their various claims and causes of action, and the statute of limitations has long expired on any such claims in any event. Rather than re-assess the merits of this lawsuit in good faith upon receiving Defendants' original motions to dismiss, Plaintiffs inexplicably doubled-down. The FAC is a failed attempt at a second bite at the apple, and has forced all parties to expend resources needlessly. The FAC should be dismissed with prejudice.

SafeSport ("SafeSport") as required by law;

- suspended and then terminated Foley for employment-related infractions;
- reinforced that athletes who experience sexual misconduct should report directly to SafeSport; and
- proactively solicited feedback, concerns, and complaints from any and all current and former USSS athletes in the aftermath.

That vigorous response to the reporting of decades-old allegations was met, unfortunately, with this meritless lawsuit. It should be dismissed.

This Court lacks personal jurisdiction over USSS, a Utah nonprofit corporation. USSS has nationwide operations and is not "at home" in California. Likewise, **none** of the complained-of conduct is alleged to have occurred in California. Thus, the Court has neither general nor specific jurisdiction over USSS, and USSS should be dismissed under Rule 12(b)(2).

Even if USSS was subject to personal jurisdiction, Plaintiffs fail to state a claim. As against USSS, Plaintiffs allege violations of: Racketeer Influenced and Corrupt Organizations Act ("RICO"); Sex Trafficking and Forced Labor; Conspiracy to Sex Trafficking and Forced Labor; Sexual Assault under Section 340.16 of the California Code of Civil Procedure ("Section 340.16"); Negligence; Negligent Supervision and Retention; and Intentional Infliction of Emotional Distress ("IIED"). Plaintiffs fail to state a claim under any of these counts, and all of their claims, based upon alleged conduct between 1994 and 2005, are time-barred.

Count One fails to allege facts sufficient to meet a single RICO element. Plaintiffs fail to allege the existence of an enterprise because there are no facts demonstrating that the alleged participants shared a common purpose or the required structure and longevity. Even if an enterprise were alleged, Plaintiffs fail to allege that USSS or the other Defendants exercised a managerial role in the enterprise. Plaintiffs also fail to identify a single predicate act of racketeering, much less the required pattern. Plaintiffs hope to rely upon purported violations of federal laws prohibiting

sex trafficking, transporting women for prostitution, and wire and mail fraud, but they fall far short of describing even a single incident of indictable conduct for any of those predicate acts.

Plaintiffs also lack standing to bring a RICO claim. Plaintiffs allege emotional injuries that do not constitute "injury to business or property" as contemplated under RICO and do not allege that any of their injuries were caused by a RICO predicate act.

Counts Three, Five, Seven, and Eight are all claims brought pursuant to a federal statutory scheme prohibiting sex trafficking and forced labor. However, the statutory provisions creating these causes of action were enacted after the alleged misconduct and are not retroactive; therefore, each of these counts fails to state a claim. Even if applied retroactively, Plaintiffs fail to state a claim for sex trafficking or forced labor (or conspiracy to commit either) because they do not allege facts sufficient to show a single predicate act of coercing a Plaintiff to perform work or engage in a commercial sex act—and they certainly do not plead facts supporting that USSS knowingly participated in a venture to financially benefit from any such conduct.

Plaintiffs also attempt to bring claims against USSS under recently-enacted revisions to Section 340.16 (Counts Eleven, Twelve, and Thirteen). However, they do not allege that they were sexually assaulted in California. Thus, they fail to plead facts sufficient to show that Section 340.16 applies. Further, to leverage Section 340.16, Plaintiffs must demonstrate that USSS is legally responsible for damages arising out of their alleged assaults and that USSS engaged in a concerted effort to hide evidence of a prior assault. Plaintiffs make no such allegations.

Plaintiffs assert claims for negligence (Count Nineteen) and negligent supervision (Count Twenty) against all Defendants for purportedly failing to prevent third-party actions. These counts are similarly time-barred and fail to state a claim under any applicable law because Plaintiffs do not allege facts showing that USSS owed a legal duty to prevent unforeseeable incidents or that it breached any such duty.

Finally, Plaintiffs' claim for IIED (Count Twenty-One) is similarly time-barred and fails to state a claim because Plaintiffs do not allege any extreme and outrageous or intentional conduct by USSS that resulted in Plaintiffs' emotional distress. Finally, none of Plaintiffs' time-barred claims are rescued by any equitable tolling theory.

In short, while USSS has sought to continuously fortify its athletes-first culture, and has demonstrated it is committed to doing so with vigor, Plaintiffs fail entirely to allege any wrongdoing against USSS. The Complaint should be dismissed with prejudice and without leave to amend.

## II.   ALLEGATIONS AND JURISDICTIONAL FACTS

### A.   USSS Contacts with California

USSS's principal place of business and headquarters are in Park City, Utah. (Decl. of Brooke McAffee ("McAffee Decl.") ¶ 2.) USSS supports tens of thousands of athletes and nearly two hundred employees in all of its regions and divisions, which span all 50 states. (*Id.* ¶ 3.) California residents make up a small portion of those individuals. (*Id.*) Specifically, of USSS's 185 employees, only six are located in California. (*Id.* ¶ 4.) All six of those employees work remotely, and most of those employees spend the majority of their time travelling nationally and globally with the team for training and competitions. (*Id.*) Likewise, of the 38,873 athletes in the elite and developmental programs who are USSS members, only 2,914 (7.5%) reside in California. (*Id.* ¶ 5.) The other 35,959 reside across the nation, spanning all 50 states. (*Id.*)

Only nine of the 89 competitions that USSS has held since 2019 took place in California. (*Id.* ¶ 6.) The remaining 80 competitions occurred in states across the nation. (*Id.*) For the upcoming 2023-2024 season, only three of the 28 competitions that USSS plans to hold will occur in California. (*Id.*)

**B.     Factual Allegations in the FAC[3]**

As set forth more fully below, each Plaintiff alleges that she was the victim of sexual misconduct at some point prior to 2006 (notably, Chythlook-Sifsof does not allege that she was the victim of sexual misconduct by Foley or any other Defendant). Plaintiffs also allege that they jointly reported these incidents to USSS for the first time in 2022.

**1.  Fletcher Allegations**

Fletcher, an Alaska resident, competed for the USSS team as a snowboarder in the 1998, 2002, and 2006 Winter Olympics. (FAC ¶¶ 13, 80.) According to International Ski and Snowboard Federation ("FIS") records posted on the FIS website, she last competed in a FIS event on March 26, 2006.[4]

Fletcher alleges that Foley sexually assaulted her after a training camp during the **Spring 1994** season. (FAC ¶ 85.) This incident did **not** occur in California. (*Id.* (explaining that the incident occurred in Nevada after the athletes and coaches had driven from California).) She also alleges that, in **1997**, Foley forcibly kissed her "as she was exiting a postrace event" in San Candido, Italy. (*Id.* ¶ 87.) By Fletcher's own admission, no incident took place in California.

Fletcher does not allege that she (or anyone else) reported these incidents to anyone at USSS until **March 2022**, nearly **30 years** after the incidents allegedly occurred. (*Id.* ¶ 179.)

**2.  O'Malley Allegations**

O'Malley is a former snowboarder who competed for the USSS team between **1995 and 2003**. (*Id.* ¶ 96.)

O'Malley alleges that, "[o]ne evening after a competition," Foley "grop[ed]"

---

[3] While USSS **strongly refutes** the allegations made in the FAC, USSS must assume any allegations of fact in the FAC are true for purposes of this Motion only. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010).

[4] *See* Defs.' Req. for Judicial Notice, Ex. A.

her and forcibly tried to kiss her "inside of an elevator" with Fletcher present.[5] (*Id.* at ¶ 103.) She alleges "[u]pon information and belief" that USSS personnel was also present during the incident, but no USSS personnel are identified and no facts are alleged upon which the purported belief is premised. (*Id.*) O'Malley does not allege that the incident took place in California.

O'Malley "did not report the assault until **March of 2022**," conservatively twenty years after the alleged incident occurred. (*Id.* ¶ 112.) There is no allegation that anyone reported the incident to USSS prior to March 2022.

### 3. Chythlook-Sifsof Allegations

Chythlook-Sifsof, an Alaska resident, was a professional snowboarder who competed with the USSS Team "from **2005 until 2014**." (*Id.* ¶¶ 15, 114.)

Chythlook-Sifsof alleges that she was sexually assaulted in Switzerland in **2005** by a coach from an opposing team—not a USSS coach—while she was attending a party with other athletes and coaches after a World Championship event. (*Id.* ¶¶ 126, 129.) At the party, she was allegedly given "significant quantities of alcohol by adults entrusted with her care." (FAC ¶ 129) She does not allege that anyone from USSS gave her alcohol or was present at the party. Chythlook-Sifsof alleges that there was a "strict prohibition on underage drinking at Junior World events" (*id.* ¶ 133), but that Abbi Nyberg (a program manager with the team) "knew of the excessive drinking" and "failed to implement any safeguards" to protect athletes.[6] (FAC ¶¶ 132-133.) Chythlook-Sifsof does not allege that she, or anyone else, ever reported the 2005 Switzerland incident to USSS prior to the filing of the instant action.

Chythlook-Sifsof also alleges that "[she] made formal complaints to [then

---

[5] O'Malley is the only plaintiff who cannot identify the year in which she was allegedly assaulted. It was allegedly sometime between 1995 and 2003.

[6] She also alleges that Nyberg "explicitly told [Chythlook-Sifsof] that she could drink alcohol." This allegation should be disregarded as it is directly contrary to the first Complaint, which alleged that Nyberg gave Chythlook-Sifsof "verbal 'cautions' not to drink" (*See* Compl. ¶ 12). *See Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding.").

USSS CEO] Shaw that she had personal knowledge of multiple counts of Foley's misconduct," but she does not identify the alleged reported misconduct. (*Id.* ¶ 176.) She alleges that Shaw "became aware" that Foley "pressur[ed] young female athletes to take nude and sexually suggestive photos . . . ." (*id.* ¶ 216) and that, when she reported to Shaw (who became USSS CEO in **2014** (*id.* ¶ 17)), he allegedly had a duty "to report sexual misconduct under the SafeSport Act" (*id.* ¶ 176). The Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017, Pub. L. No.115-126, 132 Stat. 318 ("SafeSport Act") was enacted in **2018.**[7] (*Id.* ¶ 171.) Thus, at the earliest, Chythlook-Sifsof reported Foley's alleged photographs to Shaw in 2018. Foley is not alleged to have photographed any of the Plaintiffs.

Chythlook-Sifsof alleges that "**between 2020 and 2022**," she again reported that Foley was "taking nude photos of young women on the Team and within the USSS organization without their consent, to Abbi Nyberg." (*Id.* ¶ 177.) Sometime later, she allegedly reported the same thing to Jeffery Archibald, an assistant coach. (*Id.* ¶ 178.) No conduct other than the photographs is alleged to have been reported prior to 2022.

### 4. Allegations from 2022 Common to All Plaintiffs

Plaintiffs allege that USSS did not "have in place a reasonable system or procedure to" prevent sexual misconduct, even though it "had the authority and ability to do so." (*Id.* ¶ 42.) They allege that if unnamed athletes "refused to provide the sexual services demanded on command" by Foley "and/or agree[d] to cover up abuse of other athletes," then USSS would "bench, suspend, or kick them off Team USA." (*Id.* ¶ 52.) No facts are alleged in support of this conclusion. Plaintiffs further allege that Foley would bring young female athletes to bars and nightclubs and look at them while Jeremy Forster, a USSS Director and Foley's direct supervisor, was present. (*Id.*

---

[7] Plaintiffs allege that the SafeSport Code was "established" in 2017, but the legislation creating the United States Center for Safe Sport was enacted in February 2018. 36 U.S.C. § 220541.

¶ 75.) Plaintiffs do not allege that any Plaintiff was ever benched, suspended, or kicked off the Team for failing to provide sexual services or for covering up any abuse, nor does it allege that Foley ever brought any of them to a bar or nightclub.

In **February 2022**, Chythlook-Sifsof "spoke out in an Instagram post" about Foley. (*Id.* ¶ 149.) That same month, Lisa Kosglow (a former USSS team member and then-board member) allegedly called Fletcher and said only that "Foley asked [her] if she would reach out to [Fletcher] on his behalf." (*Id.* ¶ 184.) Kosglow also allegedly called O'Malley and said that Foley "was so devastated as a result of the abuse reports." (*Id.* ¶ 185.)

Plaintiffs allege that "[i]n March 2022, [Plaintiffs] reported Foley's conduct to the current General Counsel for the USSS, Allison Pitt," that she did not report to SafeSport,[8] and that she provided Plaintiffs with "false information about SafeSport and SafeSport's process." (*Id.* ¶ 179.) Pitt is alleged to have made two false statements: (1) that Plaintiffs "could not report to SafeSport if they wished to remain anonymous"; and (2) that Plaintiffs "would be required to confront Foley face-to-face if they reported to SafeSport . . . ." (*Id.*) These are the only purportedly false statements allegedly made by any USSS employee (or anyone else) at any time.

Plaintiffs allegedly then reported to USSS CEO Sophie Goldschmidt, who allegedly confirmed "that Pitt was 'transparent that the process may take time'" and that the process can be "extensive and challenging." (*Id.* ¶¶ 182-83.)

Notwithstanding Pitt's and Goldschmidt's alleged statements, "in March 2022, Plaintiffs . . . filed formal complaints with SafeSport against Foley." (*Id.* ¶ 186.) Plaintiffs allege that SafeSport's investigations of their complaints "remain ongoing." (*Id.* ¶ 193.)

---

[8] Reporting to SafeSport is confidential, so it is unclear how Plaintiffs' counsel purports to have conducted a reasonable investigation into the factual basis for this demonstrably false allegation. SafeSport Code for the U.S. Olympic and Paralympic Movement ("SafeSport Code") § X.G. ("Unless necessary to the Center's investigation or resolution of a matter, the Center does not disclose a Third-Party Reporter's personally identifying information.").

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

USSS terminated Foley in **March 2022**, the same month that Plaintiffs reported his alleged misconduct to USSS. (*Id.* ¶ 190.)[9]

## III.   DISMISSAL FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(B)(2)

This Court lacks personal jurisdiction over USSS, and the FAC does not (and cannot) cure the jurisdictional deficiencies identified by Defendants in the original Complaint. No Defendant is at home in California, and no acts are alleged to have occurred in California. The FAC should therefore be dismissed with prejudice.

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re Western States Wholesale Natural Gas Antitrust Litig. v. Oneok, Inc.*, 715 F.3d 716, 741 (9th Cir. 2013). "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KMPG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (citations omitted).

"Where . . . no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Marvix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). California courts may exercise jurisdiction on any basis that is consistent with the Constitution of the state or of the United States. Cal. Civ. Proc. Code. § 410.10. Accordingly, a court's exercise of jurisdiction must comply with the requirements of due process, and nonresident defendants must have "minimum contacts" with California "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). To comply with this minimum

---

[9] Plaintiffs complain that Foley's termination was not "because of the accusations of sexual abuse." (*Id.*) Under the Code, SafeSport has exclusive jurisdiction over allegations of sexual misconduct in the Olympic movement, and NGBs are expressly prohibited from acting on accusations of sexual abuse. *See* Code § II ("NGBs . . . are prohibited from interfering in, attempting to interfere in, or influencing the outcome of the Center's investigations.").

contacts standard, a plaintiff must show that either "general" or "specific" jurisdiction over the defendant exists. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).

A.      **This Court lacks general jurisdiction over USSS because it is not "essentially at home" in California.**

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction within a particular state. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Indeed, only contacts so continuous and systematic as to render the defendant "essentially at home" in the forum state will establish general jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The "paradigm" forums in which a corporation will be considered "at home" are: (1) its place of incorporation; and (2) its principal place of business. *Daimler*, 571 U.S. at 137. Here, California is neither USSS's principal place of business nor its place of incorporation. (FAC ¶ 18.)

The Ninth Circuit has emphasized "the demanding nature of the standard for general personal jurisdiction over a corporation" and has recognized that general jurisdiction in any state other than the corporation's principal place of business or place of incorporation will only exist in "exceptional cases." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014). Courts considering whether a case is "exceptional" examine the "[l]ongevity, continuity, volume, [and] economic impact" of the defendant's contacts with the forum state, as well as its "physical presence[ ] and integration into the state's regulatory or economic markets." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011). This requires "an appraisal of a corporation's activities **in their entirety, nationwide and worldwide**" because a "corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 571 U.S. at 139 n.20 (emphasis added). "Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id.*

Because NGBs like USSS have a nationwide and global reach, federal courts have declined to exercise general jurisdiction over them outside of their states of incorporation or principal place of business. *See Farrell v. U.S. Olympic & Paralympic Comm.*, 567 F. Supp. 378, 387-86 (N.D.N.Y. 2021) (no general jurisdiction over United States Speedskating in New York based on members and memberships in New York and sponsoring numerous events there); *Powers-Barnhard v. Butler*, 2020 WL 4925333, at *4-5 (N.D.N.Y. Aug. 21, 2020) (no personal jurisdiction over USA Volleyball despite its regional volleyball associations in New York because of the scope of its national and global contacts).

Here, USSS is a national organization with continuous and systematic contacts across all 50 states. Fewer than 5% of USSS employees live in California; only 8% of USSS's athletic members reside in California; only 10% of USSS's recent nationwide competitions were located in California; and only three of the 28 competitions that USSS plans to hold this upcoming season will be in California. (McAffee Decl. ¶¶ 4-6.) Plaintiffs allege that USSS athletes and staff attend various events in California. (FAC ¶ 19.) These routine touchpoints do not amount to an "exceptional circumstance" that would somehow render USSS "at home" in California, particularly given USSS's significant contacts elsewhere. Courts have rejected general jurisdiction on significantly more.[10] *See, e.g.*, *Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031, 1045-46 (N.D. Cal. 2018) (finding "employees in California, store operations in California, [product sales] in California, and dictating operations in California" insufficient to establish general personal jurisdiction); *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 325 F. Supp. 3d 1088, 1097 (S.D. Cal. 2018) (case not exceptional where defendant credit union had members in California because members existed in all 50 states, and more members resided outside of

---

[10] Plaintiffs also allege that USSS has an "official training site" in California. (FAC ¶ 19.) This is false. (McAffee Decl. ¶ 7.) Even if true, this does not render USSS "at home" in California or otherwise make California an appropriate venue for this lawsuit.

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

California than within California). Accordingly, this Court lacks general jurisdiction over USSS.

**B.      This Court also lacks specific jurisdiction over USSS because the alleged claims did not arise in California.**

Specific jurisdiction exists when a case "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414 n.8. This inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Specific jurisdiction extends only to "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Super. Ct. of California*, 582 U.S. 255, 264 (2017).

To establish specific jurisdiction over a defendant, Plaintiffs must satisfy the following three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof . . . ; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citation omitted). This three-part test fails here.

Plaintiffs fail to allege that **a single act** giving rise to any of Plaintiffs' claims occurred in California. Moreover, Plaintiffs do not allege any conduct by Defendants that was aimed at California or likely to cause harm in California because none of the Plaintiffs had any alleged connection to California at the time of the events alleged in the FAC. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783 (1984)) (minimum contacts requires intentional conduct

**12**

aimed at the forum state causing harm likely to be suffered in the forum state). Thus, Plaintiffs fail to allege that USSS either purposefully availed itself or directed any conduct towards California.

Plaintiffs' conclusory allegation that there was "a pervasive culture of abuse" at certain training and media events in California sponsored by USSS, *see* FAC ¶¶ 19, 26, without any facts in support and without any ties to the conduct complained of in the FAC, does not satisfy Plaintiffs' burden of establishing jurisdiction in California. *See Kirsopp v. Yamaha Motor Co. Ltd.*, 2014 WL 12577429, at *6 (C.D. Cal. Aug. 27, 2014) (dismissing complaint for lack of jurisdiction where plaintiff's allegations regarding defendant's "connections to California [were] conclusory and unsupported by facts"). In short, the FAC strains but fails to cure the plain jurisdictional defects of the original Complaint; these cannot be cured as it is undisputed that none of the events complained of are alleged to have occurred in California.[11]

## C.   RICO's nationwide service provision does not confer jurisdiction over USSS.

Count One, Plaintiffs' attempted RICO claim, fails in substance as set forth more fully below and therefore cannot confer personal jurisdiction over USSS. *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625, 697 (C.D. Cal. 2022) (plaintiff cannot rely upon RICO's nationwide service provision to confer jurisdiction without first stating a claim under RICO).

Even if Plaintiffs had stated a RICO claim, this Court would not have jurisdiction over USSS. The RICO statute provides that "[a]ny civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). "In other words, a civil RICO

---

[11] Exercising specific jurisdiction would also be unreasonable here. *See, e.g., Young v. Actions Semiconductor Co., Ltd.*, 386 Fed. App'x 623, 628 (9th Cir. 2010) (listing reasonableness factors).

action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 989 (C.D. Cal. 2013) (quoting *FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1099 (D.C. Cir. 2008)). Once personal jurisdiction is established over one defendant, the district court may exercise jurisdiction over other defendants only if it "is shown that the ends of justice require that other parties residing in any other district be brought before the court." 18 U.S.C. § 1965(b). This requires that a plaintiff show that "there is no other district in which a court will have personal jurisdiction over the alleged co-conspirators," and "the facts show a single nationwide RICO conspiracy exists." *In re ZF-TRW*, 601 F. Supp. at 696-97.

Here, RICO's nationwide service provision is inapplicable because Plaintiffs fail to plead that personal jurisdiction exists over **any** of the Defendants. As explained above, general jurisdiction does not exist over USSS because it is not "at home" in California. Nor are any other Defendants: USOPC's principal place of business and headquarters are in Colorado (FAC ¶ 20) and it engages in continuous and systematic activity in nearly every state. (*See* USOPC Motion to Dismiss, filed concurrently herewith.) Defendant Foley is domiciled in Oregon. (FAC ¶ 16.); *see Daimler*, 571 U.S. at 137.

Likewise, specific jurisdiction is lacking over all Defendants because Plaintiffs do not allege a single action by any Defendant that occurred in California. USSS engaged in no conduct in California. The allegations that USOPC has occasionally "selected Los Angeles as its chosen United States candidate city to nominate as host for Olympic games," and has chosen California athletes to be members of the Team, *see* FAC ¶¶ 21-24, do not establish specific jurisdiction over USOPC. None of Plaintiffs' claims relate in any way to USOPC's choice of host city, its designation of training sites, or any of the unidentified California athletes; USOPC likewise did not avail itself of California's jurisdiction over this suit by engaging in unrelated recruiting and training activities in California. Put simply, the Court does not have

specific jurisdiction over USOPC because none of the events underlying Plaintiffs'
claims are alleged to have occurred in California.

The FAC's misleading allegation about Fletcher's alleged assault taking place
after having "driven from California" into Nevada likewise does not establish
jurisdiction over Foley or any one else.[12] (FAC ¶ 85.) "In tort cases, [courts] typically
inquire whether a defendant 'purposefully direct[s] his activities' at the forum state,
applying an 'effects' test that focuses on the forum in which the defendant's actions
were felt, whether or not the actions themselves occurred within the forum." *Yahoo!
Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.
2006) (en banc) (citation omitted). Here, Plaintiffs allege that Foley's conduct was
directed at a nonresident of California and took place outside of California. The fact
that certain of the parties were in California *before* the alleged sexual assault occurred
does not "tether" Foley or his conduct "to California in any meaningful way"—and
particularly where Plaintiffs admit the alleged conduct was directed at Nevada. *See
Abrahamson v. Berkley*, 2016 WL 8673060, at *8 (E.D. Cal. Sept. 2, 2016) (declining
to find conduct "expressly aimed at California" where there was no allegation
identifying where tortious conduct "actually" occurred); *see also Krypt, Inc. v. Ropaar
LLC*, 2020 WL 32334, at *8-9 (N.D. Cal. Jan. 2, 2020) (in trade secret
misappropriation action, mere fact that defendant's employee previously worked for
California-based plaintiff and occasionally "provided services in California" *before*
allegedly tortious conduct occurred "[did] not suffice to support personal jurisdiction
over [defendant] in California"); *Buelow v. Plaza Motors of Brooklyn, Inc.*, 2017 WL
2813179, at *4-5 (E.D. Cal. June 29, 2017) (personal jurisdiction lacking where

---

[12] Plaintiffs intentionally mislead the Court by alleging that Fletcher was sexually
assaulted "when she was invited to and attended a Mammoth Mountain training camp
in California during the 1994 season." (FAC ¶ 85.) Plaintiffs then admit that the
alleged incident actually took place *in Nevada*, after the athletes and coaches had
"driven *from* California." (*Id.* (emphasis added).) The allegation is intentionally
unclear—and highlights the frivolous nature of Plaintiffs' choice of forum. Any
plaintiff with a valid jurisdictional argument would have no need to attempt to
manufacture jurisdiction with poor wordsmithing and mischaracterization of facts.

1   allegedly wrongful conduct occurred in New York and only connection to California
2   was knowledge that plaintiff was "relocating to California"). Accordingly, this Court
3   lacks jurisdiction over Foley.

4        Further, "[a] plaintiff seeking to exercise jurisdiction pursuant to RICO's 'ends
5   of justice' provision faces a high hurdle. It is the plaintiff's burden to affirmatively
6   show that no other district could exercise jurisdiction over all the alleged co-
7   conspirators." *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1162 (N.D. Cal. 2014). Plaintiff
8   has not met that burden here—Plaintiffs fail to state why the acts alleged in the FAC
9   do not establish jurisdiction over all Defendants in some other District. *See*
10  *Barantsevich*, 954 F. Supp. at 989-90 (dismissing complaint for lack of RICO
11  jurisdiction where plaintiff failed to describe "defendants' contacts with other
12  districts" and made only "a cursory reference to the fact that nationwide service is
13  available under RICO").

14       In sum, Plaintiffs have twice failed to plead jurisdiction over USSS. This Court
15  lacks both general and specific personal jurisdiction over USSS, as well as personal
16  jurisdiction under RICO. Accordingly, Plaintiffs' FAC should be dismissed against
17  USSS under Rule 12(b)(2) with prejudice and without leave to amend.

18  **IV.    ALL COUNTS SHOULD BE DISMISSED FOR FAILURE TO STATE A**
19  **CLAIM AND/OR LACK OF STANDING UNDER RULE 12(B)(6).**

20       Each Count against USSS (Counts One, Three, Five, Seven, Eight, Eleven,
21  Twelve, Thirteen, Nineteen, Twenty, and Twenty-One) should be dismissed because
22  Plaintiffs fail to state a claim under Rule 12(b)(6). Count One should also be
23  dismissed under Rule 12(b)(6) because Plaintiffs lack standing to bring a civil RICO
24  claim.

25       Because Plaintiffs have already amended their complaint once as of right and
26  cannot cure its defects through additional factual allegations, leave to amend should
27  be denied. *Novak v. United States*, 795 F.3d 1012, 1021 (9th Cir. 2015).

28

---

**16**

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

**A.      Count One fails to state a claim against Defendants; Plaintiffs lack standing to bring a RICO claim; and any RICO claim is time-barred.**

Plaintiffs fail to state a RICO claim because they fail to plead facts sufficient to meet a single element of such a claim. Further, Plaintiffs lack standing to bring a RICO claim because they have not alleged an injury to business or property proximately caused by a predicate act.

**1.      Count One should be dismissed because Plaintiffs fail to state a RICO claim.**

"[C]ourts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Wagh v. Metris Direct Servs., Inc.*, 348 F.3d 1102, 1008-09 (9th Cir. 2004). To state a RICO claim, a plaintiff must plead facts demonstrating that defendants: (1) conducted or participated in the conduct of an enterprise (2) through a pattern of racketeering activity (known as "predicate acts") (3) causing injury to the plaintiff's "business or property." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996). Each of these requirements "must be established as to each individual defendant." *Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, 2012 WL 1669726, at *11 (C.D. Cal. May 14, 2012). Plaintiffs fail to plausibly allege these required elements as to any, much less each, Defendant.

**a.      Defendants are not alleged to have conducted or participated in the conduct of an enterprise.**

Plaintiffs have failed to alleged facts showing the existence of an enterprise, much less that each Defendant participated in the conduct of such an enterprise.

**i.      Plaintiffs fail to state plausible facts showing the existence of an enterprise.**

An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To show the existence of a RICO enterprise, Plaintiffs must plead that the enterprise has (a) a common purpose, (b) a structure or

organization, and (c) longevity necessary to accomplish the purpose. *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Plaintiffs fail to allege each element.

### 1.  Plaintiffs fail to allege a common purpose.

Courts in this circuit have repeatedly dismissed RICO claims that fail to allege how individual defendants actively participated or worked with the other defendants to engage in a common purpose. *See, e.g.*, *Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1089 (N.D. Cal. 2013) (dismissing RICO claim because there were no factual allegations showing the enterprise members "associated together with [the d]efendants for [an] alleged common purpose").

Simply alleging that defendants shared a common purpose, without setting forth plausible facts showing the existence of the common purpose and that each defendant committed acts toward the purpose, including that they worked in an "indispensable and integrated manner," is insufficient to state a claim. *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009); *see also Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1056 (C.D. Cal. 2016) ("While Plaintiffs repeatedly state that [defendants] shared a common fraudulent purpose, they have not adequately alleged plausible facts that satisfy the common purpose requirement."); *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1175 (E.D. Cal. 2017) (plaintiffs are required to allege "facts indicating that all the named defendants acted with the same purpose in mind"). A complaint fails to adequately allege a "common purpose" absent allegations demonstrating "what exactly each individual did, when they did it, [and] how they functioned together as a continuing unit." *Doan v. Singh,* 617 F. App'x 684, 686 (9th Cir. 2015).

Here, Plaintiffs have not identified any single "common purpose" among Defendants. Instead, Plaintiffs allege various purported "purposes," each presumably

intended to capture the purpose of an alleged participant in the enterprise.[13] This is insufficient—a single common purpose for all participants must be identified. *Occidental Oil & Gas Corp.*, 235 F. Supp. 3d at 1175.

Even assuming a Court might construe the allegations in the FAC as alleging a "common purpose" of something like "covering up Foley's sexual misconduct," Plaintiffs fail to allege any plausible facts showing that Defendants (and the other alleged enterprise participants) shared such a purpose. Stripped of conclusory allegations, the FAC does not include a single fact that suggests that any person ever took any action to cover up Foley's alleged misconduct.

As to each of the so-called participants in the "enterprise" (*see* FAC ¶ 244, listing participants):

**USOPC.** Plaintiffs allege only that Alan Ashley, a former USOPC executive, "knew or should have known about Foley's sexual abuse" simply because Ashley had previously worked for USSS and knew Foley. (FAC ¶¶ 222-224.) There is no allegation that any of Foley's alleged conduct was ever reported to Ashley, either while he was employed with USSS or after he joined USOPC in 2010 (years after the alleged incidents involving Plaintiff and Foley). Nor are there any facts alleged showing that Ashley actively covered up any of Foley's alleged conduct, much less acted in concert with other members of the "enterprise" to cover up any of Foley's alleged acts. The required allegations regarding how he/USOPC functioned with the other Defendants as a common unit (or even communicated with the other Defendants) are entirely absent.

**Shaw and Abbi Nyberg.** Plaintiffs allege that Shaw, who became USSS CEO in 2014, at least ten years after the alleged Foley incidents underlying the FAC, became aware of nude photographs "yet failed to meet his reporting obligations." (FAC ¶¶ 17, 216.) They similarly allege that Nyberg learned of unspecified "sexual abuse and

---

[13] For a wide-ranging and wide-array of so-called "common purposes," see FAC paragraphs: 200, 201, 206, 207, 215, and 246.

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

harassment of Foley and other male athletes" at some point before she took on a program manager role at USSS. (*Id*. ¶ 220.) These two alleged participants in the "enterprise" are alleged only to have **known about** some misconduct (but not the misconduct at issue in the FAC) at some unspecified time. They are not alleged to have done anything at all toward the common purpose of covering up Foley's alleged conduct.[14]

*Sophie Goldschmidt and Alison Pitt*. Plaintiffs allege that Goldschmidt and Pitt, two USSS executives, learned about Foley's misconduct from Plaintiffs in March 2022, decades after the alleged incidents occurred. They allegedly described to Plaintiffs the SafeSport reporting process immediately before Plaintiffs actually reported the matter to SafeSport in March 2022. (FAC ¶¶ 179-183.) This does not plausibly support that Goldschmidt or Pitt covered up any sexual misconduct.

*Lisa Kosglow*. Plaintiffs allege only that Kosglow called Fletcher and asked her "what was going on" and told O'Malley that Foley was "devastated" by the 2022 abuse reports. (FAC ¶ 218.) These allegations do not plausibly lead to the conclusion that Kosglow did anything to cover up sexual misconduct.

*USSS.* Plaintiffs do not allege facts showing that USSS knew about Foley's alleged misconduct at any time, or that USSS functioned with the other participants as a common unit to cover up any such conduct. The only relevant allegation involving USSS states that Jeremey Forster, USSS's former Director of U.S. Snowboard, attended outings with Foley and Ashley, where Foley would bring female athletes and watch young women dance. (FAC ¶ 75.) This allegation does not state that Forster was aware of Foley's misconduct, that he communicated with anyone about Foley's actions, or that he took any affirmative actions to cover up any alleged abuse.

---

[14] Plaintiffs also alleges that Nyberg was Chythlook-Sifsof's chaperone at the competition after which she was allegedly assaulted. (FAC ¶ 129.) However, Plaintiffs do not allege that Nyberg knew about the alleged assault, nor that Nyberg did anything to cover up this incident or how it would relate to any common purpose to cover up *Foley*'s misconduct.

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

*Foley*. While Plaintiffs allege sexual misconduct by Foley, they do not allege any facts that demonstrate that he took any action to cover up the misconduct. Thus, they have not alleged that he shared that common purpose with anyone.

Without alleging any facts to show that the alleged participants shared a common purpose, no enterprise has been alleged, and Count One must be dismissed for failure to state a claim.

**2.  Plaintiffs fail to allege the required structure, organization, and longevity to establish an enterprise.**

Plaintiffs allege no structure or organization between USOPC on the one hand, and USSS and/or the other participants on the other as relevant to the conduct of an enterprise. The routine working relationship alleged in the complaint is insufficient to show the necessary structure or organization. *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015) (collecting cases holding that allegations of routine relationships are insufficient to show the required structure and organization). Without USOPC, the remaining "organization" is simply USSS and its former officers and employees, which cannot constitute a cognizable enterprise. *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) ("To be sure, if the 'enterprise' consisted only of [a corporation] and its employees, the pleading would fail for lack of distinctiveness."); *Chagby v. Target Corp.*, 2008 WL 5686105, at *2 (C.D. Cal. Oct. 27, 2008) ("[A]n enterprise consisting only of a corporation and its employees fails for lack of distinctiveness because the person (the corporation) and the enterprise are the same."). Simply adding USOPC as an alleged participant alongside USSS is insufficient to allege structure or organization. *Acro-Tech, Inc. v. Robert Jackson Fam. Tr.*, 84 F. App'x 747, 749 (9th Cir. 2003) ("Including two corporations in the enterprise does not per se satisfy the requirement that the enterprise be a separate entity apart from the pattern of racketeering activity in which it engages.").

Plaintiffs also fail to allege the adequate longevity to plead the existence of an

enterprise. Instead, they allege incidents of assault by Foley in the 1990s or early 2000s, then some alleged reporting of incidents roughly fifteen to twenty years later, shortly before Foley was terminated. No facts are alleged showing that a continuing unit existed throughout the relevant time period, and thus no enterprise has been alleged. *Occidental Oil & Gas Corp.*, 235 F. Supp. 3d at 1176 (longevity, or continuing unit, element not met where plaintiff failed to "plead facts showing that defendants acted jointly over a period of time, [instead] alleging only isolated incidents each involving some but not all of the named defendants").

> ### ii.   Plaintiffs fail to allege that Defendants conducted or participated in the conduct of the enterprise because no Defendant allegedly exercised a managerial role.

The Supreme Court has significantly limited the reach of 18 U.S.C. § 1962(c) by holding that liability for "conducting" or "participating in the conduct of" the affairs of an enterprise is limited to persons who exercise a managerial role. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). Further, Plaintiffs cannot "indiscriminately lump" Defendants together and must instead allege facts showing how they each participated in the management of the enterprise. *Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, 2012 WL 1669726, at *11 (C.D. Cal. May 14, 2012) (allegations that "defendants" together engaged in conduct are insufficient).

Even if Plaintiffs had alleged some acts by Defendants in furtherance of the so-called common purpose asserted in the FAC (they did not), Plaintiffs have failed to allege facts showing that any Defendant exercised a managerial role in the enterprise. Further, Plaintiffs' allegations regarding Defendants' participation in the alleged enterprise are precisely the type of "indiscriminate lumping" rejected by courts. The core allegations are listed in paragraph 231 of the FAC, where Plaintiffs allege that "Foley and other Members" of the enterprise engaged in a laundry list of conduct. Plaintiffs wholly fail to identify who purportedly did what when, much less describe how each Defendant exercised a managerial role in the enterprise.

1   Absent factual allegations showing a common purpose and a managerial role

2   played by each Defendant in an "enterprise," Plaintiffs' RICO claim fails as a matter

3   of law.

4   **b.  Plaintiffs also fail to allege a pattern of racketeering activity.**

5   Even if Plaintiffs had alleged that Defendants participated in an enterprise, they

6   have failed to allege a pattern of racketeering activity. To allege racketeering activity,

7   Plaintiffs must plead facts sufficient to show violations of the specific criminal codes

8   set forth in 18 U.S.C. §§ 1961(1) and 1961(5), known as "predicate acts." "To show a

9   pattern under RICO, Plaintiffs must prove that there are a sufficient number of

10  predicate acts" indictable as criminal conduct. *Howard v. Am. Online Inc.*, 208 F.3d

11  741, 748 (9th Cir. 2000). While two predicate acts within ten years by each defendant

12  are required to state a RICO claim, two are not necessarily sufficient—a pattern

13  requires proof that the racketeering predicates are related and that they amount to or

14  pose a threat of continued criminal activity. *Turner v. Cook,* 362 F.3d 1219, 1229 (9th

15  Cir. 2004).

16  Plaintiffs allege three types of predicate acts: (i) sex trafficking and forced labor

17  in violation of 18 U.S.C. §§ 1589, 1590 and 1591; (ii) "transporting female athletes

18  for the purposes of . . . sexual abuse, sexually illicit photography, and other immoral

19  purposes in violation of 18 U.S.C. § 2421" (the "Mann Act"); and (iii) "multiple

20  instances of mail and wire fraud." (FAC ¶ 247.) Plaintiffs fail to allege facts plausibly

21  showing a single indictable predicate act by any Defendant, much less the minimum

22  of two predicate acts for each Defendant or an ongoing pattern.

23  **i.  Plaintiffs fail to allege an indictable federal Forced Labor or**

24  **Sex Trafficking violation under Sections 1589 or 1591.**

25  Plaintiffs fail to allege that USSS or any other Defendant committed forced

26  labor or sex trafficking. Section 1589, prohibiting forced labor, creates criminal

27  liability for whoever "knowingly provides or obtains the labor or services of a person

28  by . . . means of force . . . serious harm or threats of harm . . . abuse or threatened

abuse of law or legal process; or . . . by means of any scheme" to make the victim believe that she would suffer harm if she did not perform such labor service. 18 U.S.C. § 1589. Section 1591(a), prohibiting sex trafficking, creates criminal liability for whoever "knowingly . . . recruits, entices, harbors, transports, provides, [or] obtains . . . by any means a person" "knowing that force, fraud, or coercion . . . will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591. These statutes also create liability for whoever "benefits, financially or by receiving anything of value, from participation in a venture which has engaged" in such conduct. 18 U.S.C. §§ 1589, 1591.

First, Sections 1589 and 1591 were enacted on October 28, 2000, and therefore apply only to conduct that allegedly occurred after that date. *See Woxberg v United States*, 329 F.2d 284, 293 (9th Cir. 1964) (Ex Post Facto clause prohibits retroactive application of federal statute to punish acts that had not been federal crimes before statute's enactment). Thus, the alleged assault of Fletcher in 1994 cannot constitute a predicate act under these sections.

Second, as for the remaining Plaintiffs, none of the alleged conduct could be considered "forced labor" under Section 1589 or a "commercial sex act" as defined in Section 1591(e)(3)—that is, "any sex act on account of which anything of value is given to or received by any person."

Chythlook-Sifsof alleges that she was assaulted by a non-defendant third party in Switzerland in 2005 and did not report the incident until March 2022. She does not allege that she performed any labor or that anything of value was given or received in exchange for that assault and therefore it cannot be considered forced labor or a commercial sex act. *See Shuvalova v. Cunningham*, 2012 WL 1940767, at *1-2 (N.D. Cal. May 29, 2012) (allegations that defendant would "forcibly grab, kiss, and fondle" plaintiff and enter her room without permission did not state a forced labor claim).

O'Malley alleges that she was forcibly kissed and groped in an elevator at some unspecified time prior to her 2003 retirement. O'Malley also does not allege facts

NOTICE OF MOTION AND MOTION TO DISMISS FAC

showing that anything of value was given or received on account of this incident aside from conclusory allegations and no facts are alleged in support of these conclusions. (FAC ¶ 294.) O'Malley alleges only that Foley tried to kiss and grope her in an elevator, and she resisted and ran away. These allegations do not constitute forced labor or a commercial sex act.

Because no post-2000 "forced labor" or "commercial sex acts" are alleged, no violation of Section 1591, and thus no predicate act under Section 1591, is alleged.

Third, even if forced labor or a commercial sex act had been alleged, USSS is not alleged to have violated Sections 1589 or 1591 because Plaintiffs have not alleged facts showing that USSS knowingly benefited from participation in a venture that engaged in forced labor or sex trafficking.[15] This provision was not added to Section 1591 until 2003 or to Section 1589 until 2008, and thus it can apply only to post-2003 conduct (i.e. years after the incidents alleged by Fletcher and O'Malley). In any event, Plaintiffs fail to allege facts showing that USSS even **knew** about the incidents between Foley and either Fletcher or O'Malley until March 2022, much less that USSS knowingly assisted, supported, or facilitated any forced commercial sex act.

Because Plaintiffs fail to allege facts sufficient to support a criminal indictment of any Defendant for violating Sections 1589 or 1591, not a single "sex trafficking" or "forced labor" predicate act has been alleged that could contribute toward a pattern of racketeering.

## ii. Plaintiffs fail to allege an indictable violation of the Mann Act.

In order to plead a violation of the Mann Act, Plaintiffs must allege facts plausibly showing that a defendant "knowingly transport[ed] any individual in interstate or foreign commerce . . . with intent that such individual engage in

---

[15] While Plaintiffs conclusorily allege that certain USSS personnel benefitted "from Foley's standing as a coach" (FAC ¶¶ 216, 219), this is a far cry from any allegation that USSS benefited from sex trafficking or forced labor.

prostitution, or in any sexual activity for which any person can be charged with a criminal offense . . . ." 18 U.S.C. § 2421. The "intent" element requires a showing that the criminal sexual activity was "a dominant, significant, or motivating purpose" of the transportation. *United States v. Flucas*, 22 F.4th 1149, 1154 (9th Cir. 2022). There are no facts alleged whatsoever that remotely suggest that any Defendant engaged in such criminal conduct.

The only allegation that potentially relates to a Mann Act violation is that "Foley and other Members of the [alleged enterprise] also arranged for the women and girls to travel to meet Foley on occasion at training camps and other competitions." (FAC ¶ 230.) First, Plaintiffs fail to allege which Defendant purportedly made such arrangements. Second, there is no allegation that any Defendant knew that any alleged criminal sexual conduct would occur as a result of the travel, much less that the travel arrangements were made with the "dominant, significant, or motivating purpose" that athletes would be criminally sexually assaulted. Not a single Mann Act predicate act is alleged that could contribute toward a pattern of racketeering.

### iii. Plaintiffs fail to allege a single indictable instance of mail or wire fraud.

To allege mail or wire fraud, the plaintiff must allege the defendant: (1) formed a scheme to defraud; (2) used the United States mails or wires to carry out the scheme; and (3) had the specific intent to defraud. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010). To survive dismissal under Rule 9(b), the plaintiff must allege "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id*. Plaintiffs fail to do this.

The only purportedly "false" statements alleged in the Complaint (apart from Foley's denial of Plaintiffs' allegations in 2022) were those allegedly made by USSS General Counsel Alison Pitt regarding the SafeSport Code in a phone call with Plaintiffs in March 2022. (FAC ¶ 179.) Plaintiffs allege that Pitt told them "that [Plaintiffs] could not report to SafeSport if they wished to remain anonymous" and

that "they would be required to confront Foley face-to-face if they reported to SafeSport." *Id*.[16]

First, while Plaintiffs allege that these statements are false, the alleged statements are certainly in line with the guidance set forth in the SafeSport Code, including that Claimants identify themselves and testify. According to the SafeSport Code, "an anonymous report may limit the Office's ability to investigate and respond to a complaint" (Code § X.F) and "the Center may not be able to proceed with an investigation or resolution of a matter if a Claimant requests anonymity" (Code § XI.I.4). Further, once Plaintiffs identified themselves to Pitt, who is a mandatory reporter under the SafeSport Code, they could no longer expect anonymity in any event. (*See* Code § X.F.1.b. (mandatory reporters have the specific obligation to report "personally identifying information of a potential Claimant to the extent known at the time of the report").) Finally, the Code states that "full cooperation and participation in the resolution process is important," and "[w]here a Claimant declines or is otherwise unable to participate in an investigation or hearing, the Center's ability to resolve the allegations may be limited," and the Center may administratively close a matter where a Claimant "elects not to participate in the resolution process." (Code §§ XI.H.1, XI.I.1.)

Second, even if Pitt had misrepresented what the SafeSport Code requires, as alleged, this would not be a proper basis for a criminal mail or wire fraud indictment. "It is well established . . . that misrepresentations of the law are not actionable as

---

[16] Plaintiffs also allege that Goldschmidt "falsely reiterated [to O'Malley] that reporting to SafeSport is an 'extensive and challenging process' (as Kosglow warned)." (FAC ¶ 219.) First, Kosglow is not alleged to have said any such thing. Second, using the adjectives "extensive" or "challenging" do not constitute indictable criminal fraud. *See United States v. Sayakom*, 186 F.3d 928, 940 (9th Cir. 1999) (expressions of honestly held opinions are not chargeable as fraud); *In re Apple Inc. v. Sec. Litig.*, 2020 WL 2857397, at *8 (N.D. Cal. June 2, 2020) ("Qualitative buzzwords . . . cannot form the basis of a false or misleading statement."). Plaintiffs fail to allege facts showing these adjectives are inaccurate, and they could have, at any time, simply reviewed the SafeSport Code themselves to determine whether or not they agreed with these alleged opinions.

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

fraud, including under the mail and wire fraud statutes, because statements of the law are considered merely opinions and may not be relied upon absent special circumstances." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006) (citing *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004)); *Dual Diagnosis Treatment Ctr., Inc. v. Centene Corp.*, 2021 WL 4464204, at *5 (C.D. Cal. May 7, 2021) (predicate act of wire fraud cannot be based upon allegedly false statements regarding the operation of health insurance policies or the governing law). Indeed, Plaintiffs need only search the Internet for "SafeSport Code" and they could have easily read for themselves exactly what the Code states about anonymous reporting and participation by a Claimant.[17]

Third, Plaintiffs fail to allege facts that would plausibly show that the other alleged participants in the RICO enterprise were involved in any "scheme to defraud" Plaintiffs regarding the requirements of the SafeSport Code. Plaintiffs allege that the "scheme" was somehow "to deceive Plaintiffs, . . . authorities, such as SafeSport, and the public about Foley's sexual misconduct." (FAC ¶ 253.) But no false statement to SafeSport or the public is alleged. Plaintiffs have failed to allege a single indictable predicate act of mail or wire fraud.

In summary, not a single predicate act has been alleged, much less a pattern (and a minimum of eight crimes—two by each Defendant) that would support a RICO claim. Therefore, Count One should be dismissed under Rule 12(b)(6).

## 2. Count One should also be dismissed because Plaintiffs lack standing to bring a RICO claim.

Plaintiffs lack standing to bring a RICO claim because they have failed to allege

---

[17] Even if Pitt misrepresented SafeSport requirements, Plaintiffs do not plausibly allege that Pitt knew her representations were false when made, or intentionally misrepresented the requirements. When pleading fraud, "[a] plaintiff cannot rely on generalizations devoid of any specific statements of intent or deliberate recklessness." *In re Sona Nanotech, Inc. Sec. Litig.*, 562 F. Supp. 3d 715, 727 (C.D. Cal. 2021) (Rule 9(b) requires "far more" than "a general inference that [d]efendants knew . . . statements were incorrect based on an apparent possession of contradictory information").

that any RICO violation proximately caused them to suffer injury to a business or property interest. Section 1964(c) identifies four elements to establish standing for a civil RICO claim: (1) the plaintiff must be a "person" (2) who sustains injury (3) to its "business or property" (4) "by reason of" a defendant's violation of Section 1962.1. "Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO." *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008) (quoting *Diaz v. Gates,* 420 F.3d 897, 900 (9th Cir. 2005) (en banc). Further, to establish standing, a plaintiff must establish that the injury was proximately caused by a RICO violation. *Id.*

### a. Plaintiffs fail to allege injury to their business or property.

Personal injuries, emotional distress, or the pecuniary losses flowing therefrom are not RICO injuries. *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990); *Heflebower v. JPMorgan Chase Bank, NA*, 2014 WL 897352, at *7 (E.D. Cal. Mar. 6, 2014) (allegation that plaintiff "suffered emotional distress and loss of time (his property), and consequent injury to his business affairs" was insufficient to allege RICO injury); *Smith by Smith v. Cryolab Health Ben. Plan*, 1993 WL 33856, at *1 (9th Cir. Feb. 11, 1993) ("Allowing claims for pecuniary losses connected to personal injuries would be tantamount to allowing personal injury claims to proceed in federal court under RICO.").

Nor is the loss of a prospective economic advantage an injury sufficient to support a RICO claim. *Atias v. Phillips*, 2018 WL 11355475, at *4 (C.D. Cal. Dec. 7, 2018) ("Plaintiffs do not have protectable 'business or property' interests in potentially beneficial future relationships with prospective clients"); *Keel v. Schwarzenegger*, 2009 WL 1444644, at *6 (C.D. Cal. May 19, 2009) (plaintiff's alleged loss of employment opportunities was prospective and speculative and "[t]he alleged injury of 'lost business opportunities' does not constitute a RICO injury"). Further, any "expectancy interest" of winning something of value is insufficient to

confer RICO standing. *Chaset v. Fleer/Skybox Intern., LP*, 300 F.3d 1083, 1087 (9th Cir. 2002) (purchasers of trading card packs, where the packs had the potential to contain a special prize card, did not have standing to pursue RICO claim).

The nature of the Plaintiffs' alleged injuries cannot confer standing. Fletcher alleges purely personal injuries such as being "fearful," "anxious," and "depressed." (FAC ¶ 261.) O'Malley also alleges fear and anxiety, disordered eating, and has been "forced into an early retirement" due to injury that was exacerbated by emotional distress. She alleges she has thus lost "the opportunity to continue competing as a snowboarder." (FAC ¶¶ 259-260.)

Chythlook-Sifsof also alleges personal injuries, including "anxiety and depression" and exacerbation of her addiction because of "not being believed" (though she does not allege she reported her assault to anyone and was not believed). (FAC ¶ 262-265.) She also alleges that she "would still be coaching and benefitting from the lucrative contracts she received as a coach" and has "lost opportunities to complete [sic] at a level consistent her [sic] superior skill and status." (*Id.* ¶¶ 262, 264.) However, there is no allegation that any Defendant prevented her from competing or coaching (in any way, much less via a predicate act). In other words, any pecuniary losses flow from her emotional injuries. Further, any potential pecuniary gain that Plaintiffs may have obtained from participating in competitions would be a mere "expectancy interest" and therefore not recoverable. *See Chaset*, 300 F.3d at 1087.

Finally, while Plaintiffs make the conclusory allegation that "Defendants interfered with Plaintiffs' current and prospective relations with current and forthcoming business contracts as a result of Foley's conduct," this threadbare allegation is insufficient. *Logistick, Inc. v. AB Airbags*, 543 F. Supp. 3d 881, 887 (S.D. Cal. 2021) (allegations of interference with business relations "must do more than conclusorily allege the existence of business relationships with which the defendant interfered"). Plaintiffs do not allege that they lost any contractual rights or other

NOTICE OF MOTION AND MOTION TO DISMISS FAC

business or property interest as a result of a predicate act. Thus, they have not alleged any injury to business or property, and their civil RICO claim fails. *See Atias*, 2018 WL 11355475, at *4.

> **b.  Plaintiffs fail to allege that their injuries, even if sufficient, were caused by RICO violations.**

Plaintiffs also fail to allege facts establishing that any of these injuries, even if sufficiently pleaded, were proximately caused by the alleged RICO violations (*i.e.*, by Sex Trafficking, Mann Act, or mail or wire fraud violations). Instead, Fletcher and O'Malley allege generally that their injuries (all emotional-distress-related) were caused by "**Foley's assault** and Defendants' RICO violations," without specifying which injuries were caused by "Foley's assault" (alone, not a RICO violation) and which were caused by an alleged RICO violation (and **which** RICO violation, specifically). (FAC ¶¶ 259, 261(emphasis added).) This is insufficient to show proximate causation. *See Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 981 (9th Cir. 2008) ("Where the [RICO] violation is not itself the immediate cause of the plaintiff's injury, proximate cause may be lacking."); *Oki Semiconductor Co. v. Wells Fargo Bank, N.A.*, 298 F.3d 768, 774 (9th Cir. 2002) (upholding dismissal of RICO claim where allegations failed to show that RICO violation was a substantial factor in causing alleged loss).

Further, as to the purported mail and wire fraud violation, specifically, Plaintiffs **cannot** allege that any conduct caused them to suffer injury. As set forth above, the only allegedly false statements were those by Pitt in March 2022 purportedly discouraging Plaintiffs from reporting to SafeSport. However, Plaintiffs also allege that they **did** report to the Center **that same month**. (FAC ¶ 186.) That is, there is no allegation that any Plaintiff relied on the allegedly false statements, and the statements are not otherwise alleged to have caused any injury. *See Bridge v. Phoenix Bond & Indemn. Co.*, 533 U.S. 639, 658 (2008) (a RICO plaintiff who alleges mail or wire fraud typically "will not be able to establish even but-for causation if no one relied on

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

the misrepresentation"); *Hoffman v. Zenith Ins. Co.*, 487 F. App'x 365 (9th Cir. 2012) ("Although proximate cause, not reliance, is the essential element of statutory standing under RICO, proving reliance is necessary where it is integral to Plaintiffs' theory of causation.").

Plaintiffs lack RICO standing, and Count One must be dismissed.

### 3. Finally, Count One should be dismissed because Plaintiffs' RICO claim is time-barred.

The statute of limitations for a civil RICO claim is four years from the date when the plaintiff knows or should know that she has been injured. *Crown Chevrolet v. Gen. Motors, LLC*, 637 F. App'x 446 (9th Cir. 2016). When an athlete claims pecuniary injury due to a truncated playing career, her RICO claims begin to run at the end of her career, at the latest. *Evans v. Arizona Cardinals Football Club, LLC*, 761 F. App'x 701, 703 (9th Cir. 2019) ("In this case, plaintiffs knew of their injury—that their careers had been 'cut short'—as soon as their careers ended due to physical injuries.").[18] In *Evans,* football players brought a RICO claim against certain National Football League teams alleging injuries arising from predicate acts that took place during their careers. *Id*. The Court of Appeals for the Ninth Circuit found that the claims were time-barred, explaining:

> Here, plaintiffs knew, or should have known, of their primary business injury—that their careers had been "cut short"—when their respective playing careers ended. . . . The possibility that plaintiffs may have discovered their allegedly diminished post-NFL business prospects after 2004 does not render plaintiffs' RICO claim timely.

*Id.*[19]

---

[18] The *Evans* court did not find that diminished post-NFL prospects or a shortened career qualify as injuries to business or property, and the district court expressly declined to make any such finding. *Evans v. Arizona Cardinals Football Club, LLC*, 231 F. Supp. 3d 342, 347–48 (N.D. Cal. 2017).

[19] The district court explained the alleged injuries further: "plaintiffs knew or should have known that both shortened NFL careers and career-ending injuries would diminish their post-NFL prospects . . . . When plaintiffs sustained injuries that prematurely ended their NFL careers, they had, at minimum, constructive knowledge of the alleged injury to their post-NFL prospects because they 'had enough

32

Like the NFL plaintiffs in *Evans*, Plaintiffs knew, or should have known, of their alleged business injuries (either being denied participation in competitions before their retirement, or lost business opportunities after their retirements) when their respective ski and snowboard careers ended. For Fletcher, this was 1995. For O'Malley, this was 2003. For Chythlook-Sifsof, this was 2014. Thus, the statute of limitations on each Plaintiff's RICO claim expired, at the latest, in 1999, 2007, and 2018, respectively. Because Plaintiffs' RICO claims were filed on February 2, 2023, they are time-barred and should be dismissed with prejudice.

**B.    Counts Three, Five, Seven, and Eight fail to state a claim against Defendants and are time-barred.**

In Counts Three, Five, and Seven, Fletcher, O'Malley, and Chythlook-Sifsof allege that USSS and Foley are liable for "Forced Labor" and "Sex Trafficking" under 18 U.S.C. § 1595, which creates a civil remedy for criminal violations of Sections 1589 (forced labor) and 1591(a) (sex trafficking). In Count Eight, all Plaintiffs allege that all Defendants are civilly liable under Section 1595 for a criminal violation of 18 U.S.C. § 1594 (conspiracy to sex trafficking and forced labor). Each of these counts should be dismissed because the alleged acts occurred before Congress created a civil remedy for the alleged conduct and because Plaintiffs have failed to allege facts sufficient to state a claim. Further, the claims are time-barred.

**1.    Plaintiffs' Forced Labor/Sex Trafficking-related claims are based on alleged conduct that occurred prior to the enactment of the statutes at issue.**

Today, Section 1595(a) permits victims to sue not just perpetrators of sex trafficking crimes, but also those who knowingly benefitted from participating in a sex trafficking venture (known as "venture liability"). However, this statutory scheme was enacted **after** the alleged conduct for which Plaintiffs hope to hold Defendants liable.

_____

information to warrant an investigation which, if reasonably diligent, would have led to discovery of the [injury].'" *Evans*, 231 F. Supp. at 347-48.

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

No "venture liability" cause of action (as alleged against USSS) existed until 2008. And no "conspiracy to commit sex trafficking and forced labor" (as alleged against all Defendants) existed until 2008.

> **a. USSS cannot be liable under Section 1595's "venture liability" provision, because it was enacted in 2008, after the alleged "sex trafficking" conduct.**

Congress did not add the concept of venture liability to Section 1595(a) until December 23, 2008. The 2008 amendment created a civil cause of action against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595 (Effective: December 23, 2008 to May 28, 2015.) Section 1595(a) cannot be applied retroactively to support a "venture liability" civil cause of action for misconduct that allegedly occurred prior to December 23, 2008. *Owino v. CoreCivic, Inc*., 2018 WL 2193644, at *12 (S.D. Cal. May 14, 2018) (the "financial benefit" provision added to Section 1595 in 2008 does not apply retroactively).

USSS cannot be liable under Section 1595(a)'s venture liability provision, which was not enacted until the end of 2008, years after Fletcher and O'Malley stopped competing and years after the alleged assault of Chythlook-Sifsof, and thus long after any of the alleged "sex trafficking" or "forced labor" could have taken place.

> **b. Defendants cannot be liable for conspiracy to commit sex trafficking (Count Eight), because a provision allowing for such liability was enacted after the alleged sex trafficking.**

In December 2008, Congress enacted Section 1594(c), which created liability for conspiring to violate Sections 1589 and 1591. Any civil claim under Section 1595(a) based upon a violation of Section 1594(c) can only apply to conduct that took place after December 23, 2008. Count Eight, for "Conspiracy to Sex Trafficking and

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

Forced Labor" under Section 1594(c) must be dismissed because that section was not enacted until 2008, years after the alleged incidents occurred.

### 2. Even if Section 1595 were retroactively applicable, Plaintiffs' claims would be time-barred.

The statute of limitations for claims under Section 1595 is currently ten years.[20] 18 U.S.C. § 1595(c). A timely Section 1595 claim would have to be based on alleged sex-trafficking conduct that occurred after February 2, 2013 (i.e., ten years prior to when Plaintiffs filed their Complaint). No such conduct (*i.e.*, nothing that could be considered a forced labor or commercial sex act) is alleged to have occurred after February 2, 2013. Plaintiffs also fail to allege facts demonstrating that any limitations period is tolled by equitable estoppel.

### 3. Plaintiffs fail to allege facts stating a claim for Forced Labor or Sex Trafficking, and therefore Counts Three, Five, and Seven should be dismissed.

Even if Plaintiffs' "Sex Trafficking" or "Forced Labor" claims against USSS were timely and based upon conduct that occurred after the "venture liability" provision was added to Section 1595, Counts Three, Five, and Seven would still fail to state a claim. As of 2008, Section 1595(a) creates a civil cause of action "against the perpetrator []or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of" Section 1591, the criminal sex trafficking provision. 18 U.S.C. § 1595(a).

First, as set forth in Section IV.A.1.b.i above, no such violation of Section 1589

---

[20] In 2008, the limitations period under Section 1595 was changed from four years to ten years. *See DeCrescenzo v. Church of Scientology Int'l*, 2009 WL 10672400, at *1 (C.D. Cal. Nov. 5, 2009) (stating that a four-year statute of limitations applied when Section 1595 was enacted in 2003). If a Section 1595 claim was time-barred when the 2008 amendment was enacted, then the amendment did not revive it. *Id.* Therefore, any Section 1595 claim that was based on conduct before 2004 was time-barred four years after it arose.

(criminal forced labor) or Section 1591 (criminal sex trafficking) is alleged.
Therefore, Counts Three, Five, and Seven should be dismissed. *See* 18 U.S.C.
§ 1595(a) (creating a civil action only for individuals "who [are] victim[s] of a
violation" of the chapter's criminal provisions).

Second, while Plaintiffs recite the elements of such a claim (FAC ¶¶ 283, 308, 333), they have not plausibly alleged facts showing that USSS knew or recklessly disregarded the alleged fact that they were abused by Foley. *Jensen v. United States Tennis Association*, 2020 WL 6445117 (D. Kan. Oct. 30, 2020) (dismissing "venture liability" claim against NGB for failure to allege facts showing that it had knowledge of abuse by coach). In *Jensen*, an athlete sought to bring a Section 1595 "venture liability" claim against NGB United States Tennis Association for abuse suffered at the hands of a coach, but the court held:

> . . . plaintiff was required to, but did not, plausibly allege facts showing that USTA knew or recklessly disregarded the fact that Coach Haultain was abusing plaintiff. In her complaint, plaintiff did not allege that she ever notified USTA about Coach Haultain's conduct and did not allege that anyone employed by USTA witnessed Coach Haultain's conduct or otherwise had any reason to know about Coach Haultain's conduct. Plaintiff did not even allege that USTA generally was aware of sexual abuse occurring within USTA or occurring at USTA-sanctioned tournaments or that USTA was aware that Coach Haultain abused any other athletes.

*Jensen v. United States Tennis Association*, 2021 WL 1226625, at *1 (D. Kan. Apr. 1, 2021). The same is true here. Plaintiffs do not allege that they ever notified USSS about what had allegedly happened to them (prior to March 2022) or that anyone at USSS witnessed or was informed of any sexual abuse by Foley.[21] Absent such

---

[21] While O'Malley alleges "[u]pon information and belief" that USSS personnel was also present in an elevator when Foley forcibly kissed her, Plaintiffs (two of whom were allegedly in the elevator) do not identify the name or position of the alleged individual or any other facts supporting this allegation. Further, this conclusory allegation on "information and belief" is insufficient to survive a motion to dismiss. *Solis v. City of Fresno*, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012) ("In the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim.").

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

allegations, USSS cannot be held liable for knowingly participating in a sex trafficking venture.

### 4. Plaintiffs fail to state a claim for "conspiracy to sex trafficking and forced labor."

Finally, there are no facts alleged that would support a Section 1595 claim against any Defendant for "conspiracy to commit sex trafficking and forced labor" under Section 1594(c). Plaintiffs have failed to allege any underlying violation, as set forth above. Therefore, their conspiracy claims fail. *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO."); *Estavilla v. Goodman Grp., LLC*, 2022 WL 539192, at *16 (D. Mont. Feb. 23, 2022) (plaintiff failed to state a claim for conspiracy under Section 1594 because she failed to state a claim for violation of the predicate offense).

Further, in order to state a claim for conspiracy, a defendant must allege facts sufficient to show that defendants acted in concert to commit an unlawful act, the principal element of which is an agreement, or meeting of the minds, between the parties to inflict an injury upon another. *Fleites v. MindGeek S.A.R.L.*, 2022 WL 4456077, at *10 (C.D. Cal. July 29, 2022) (quoting *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1020 (9th Cir. 1985)) ("[T]o allege a conspiracy to violate section 1591(a)(2), Plaintiff must allege facts supporting a conclusion that [defendants] had a 'unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement.'"). Where a plaintiff alleges that defendants conspired to cover up incidents of sexual abuse, the conspiracy "involves fraud" and is subject to the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. *Boy 7 v. Boy Scouts of Am.*, 2011 WL 2415768, at *4 (E.D. Wash. June 13, 2011).

Here, no facts are alleged that plausibly show that Defendants agreed to a forced labor or sex trafficking scheme that injured Plaintiffs. The abuse is not alleged

to have been reported to USSS until decades after it allegedly occurred. And no abuse was ever allegedly reported to USOPC. In short, no facts are alleged that would plausibly suggest that any Defendants agreed to engage in a scheme to force Plaintiffs to engage in commercial sex acts.

### C.   Counts Eleven, Twelve, and Thirteen fail to state a claim and do not revive time-barred claims.

Plaintiffs purport to bring claims under provisions recently added to Section 340.16 of the California Code of Civil Procedure ("Section 340.16"). Effective January 1, 2023, Section 340.16 revives certain time-barred claims arising from sexual assault committed in California, including claims against entities that (1) are legally responsible for damages arising from the sexual assault; and (2) engaged in a concerted effort to hide evidence of prior sexual assaults. Cal. Civ. Proc. Code § 340.16(e).

The time-barred claims against USSS alleged by Plaintiffs do not meet the requirements for revival under Section 340.16. First, Plaintiffs cannot take advantage of the newly enacted revisions to Section 340.16 because they fail to allege that any of the conduct at issue took place in California. Second, Plaintiffs fail to allege facts demonstrating that USSS is legally responsible for damages arising from Foley's alleged assaults. Third, Plaintiffs fail to allege facts showing that there was some incident of sexual assault (by Foley or anyone else) that preceded their own alleged assaults, much less that USSS knew about any such incident and engaged in a concerted effort to hide evidence about it.

### 1.   Plaintiffs have failed to plead that their claims arose in California or involved a then-citizen of California, and therefore Section 340.16 cannot revive their claims.

Section 340.16 is not an invitation for any plaintiff who has been sexually assaulted anywhere in the world to file an otherwise time-barred sexual abuse claim in California. In order to take advantage of the extraordinary relief available under this

38

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

California statute, Plaintiffs must plead facts demonstrating that it applies to their claims. This is true for two reasons. First, when a plaintiff alleges that her otherwise time-barred claim should proceed past dismissal under any theory, she must plead facts demonstrating that the theory is applicable. *See Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006) (to survive dismissal of a time-barred claim, plaintiff must allege facts showing equitable estoppel); *Evans v. All. Funding*, 2010 WL 11482495, at *15 (C.D. Cal. Dec. 13, 2010) (to survive dismissal on limitations grounds, plaintiff must allege specific facts supporting equitable tolling). Second, these Plaintiffs bring affirmative claims under Section 340.16, and therefore they bear the burden of pleading facts showing that the statute applies to their claims. *See Esoimeme v. Wells Fargo Bank*, 2011 WL 3875881, at *12 (E.D. Cal. Sept. 1, 2011) (dismissing plaintiff's claim without leave to amend where plaintiff failed to allege "any facts to show that any of the cited statutes apply"). Because Plaintiffs have failed to plead facts demonstrating that their claims arose in California or to a then-citizen of California, their Section 340.16 claims must be dismissed.

Section 340.16 does not revive claims unless they arose in California or the claimant is a then-citizen of California. On its face, Section 340.16(e) applies **only** to a "claim seeking to recover damages suffered as a result of a sexual assault . . . **that would otherwise be barred** before January 1, 2023, solely **because the applicable statute of limitations has or had expired**." Cal. Civ. Proc. Code § 340.16(e)(1). Thus, Plaintiffs must plead facts from which the applicable statute of limitations may be determined. California's borrowing statute controls the applicable statute of limitations:

> **When a cause of action has arisen in another State**, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, **an action thereon shall not be maintained against him in this State,** except in favor of one who has been a citizen of this State, and who has held the cause of action from the time it accrued.

*Id.* § 361. In short, where a non-California citizen's action arose in another state, and would be time-barred in that state, it cannot be revived by Section 340.16. Therefore, as a threshold issue, Plaintiffs must allege their citizenship at the time of the alleged incidents and the time and place of the incidents.

Here, none of the Plaintiffs allege that they were California citizens at the time of their alleged incidents with Foley. Further, as set forth in Section IV.B.2, all of their claims against USSS would be time-barred in the jurisdictions in which they allegedly arose. Therefore, they have failed to state claims under Section 340.16, and Counts Eleven, Twelve, and Thirteen should be dismissed.

### 2. Plaintiffs fail to allege facts sufficient to meet the elements necessary to revive their time-barred claims under Section 340.16.

Even if Section 340.16 could apply to these Plaintiffs' claims under the borrowing statute, Plaintiffs have failed to state a claim against USSS under this Section. To revive a time-barred claim against an entity like USSS under 340.16, a plaintiff must allege:

(A) The plaintiff was sexually assaulted.

(B) One or more entities are legally responsible for damages arising out of the sexual assault.

(C) The entity or entities . . . engaged in a cover up or attempted a cover up of a previous instance or allegations of sexual assault by an alleged perpetrator of such abuse.

Cal. Civ. Proc. Code § 340.16(e)(2).

In effect, the first two elements describe the type of claim that can be revived, while the third describes the conduct that will revive the claim. Plaintiffs do not plead facts sufficient to meet any of these three elements.

**a. Plaintiffs fail to allege that they were "sexually assaulted" under Section 340.16 because they do not allege that any acts occurred in California.**

First, Plaintiffs cannot allege that they were "sexually assaulted," as defined in Section 340.16, because no acts are alleged to have occurred in California. Cal. Civ. Proc. Code § 340.16(e)(2)(A). The definition of "sexual assault" in Section 340.16 means one of a list of crimes punishable under the California Penal Code. *Id.* § 340.16(b)(1) ("As used in this section, 'sexual assault' means any of the crimes described in Section 243.4, 261, 262, 264.1, 286, 287, or 289, or former Section 288a, of the Penal Code, assault with the intent to commit any of those crimes, or an attempt to commit any of those crimes.")[22] Because "sexual assault" as used in Section 340.16 applies only to criminal conduct under the California Penal Code, it is limited to crimes committed "in whole or in part . . . **within this state**." Cal. Penal Code § 27 (persons "liable to punishment under the laws of this state" include "persons who commit, in whole or in part, any crime within this state," with some inapplicable exceptions). Because Plaintiffs do not allege that Foley assaulted them, in whole or in part, within California, each has failed to allege that she was "sexually assaulted" under Section 340.16. Indeed, this is another backstop against an influx of Section 340.16 litigation over decades-old incidents, like these, with no connection to California.

**b. Plaintiffs fail to state a claim under any legal theory so as to render USSS liable for damages arising out of any assault.**

Plaintiffs also fail to allege facts showing that "[o]ne or more entities are legally responsible for damages arising out of the sexual assault." Cal. Civ. Proc. Code

---

[22] "Section" means "a section of" the Code of Civil Procedure. Cal. Civ. Proc. Code § 1235.040(c). Therefore, this definition of "sexual assault" "as used in this section" applies throughout Section 340.16, including in Section 340.16(e).

§ 340.16(e)(2)(B).[23] Instead, Plaintiffs allege only in conclusory fashion that USSS is "legally responsible for damages arising out of Foley's sexual assault," without explaining why that might be the case. (FAC ¶¶ 375, 386, 397.) Further, as set forth *infra* and *supra*, Plaintiffs have failed to state a claim against USSS under any legal theory, and have therefore failed to meet the second element for revival under Section 340.16. Therefore, Counts Eleven, Twelve, and Thirteen should be dismissed.

### c. Plaintiffs fail to allege any previous incident of sexual assault, much less that USSS covered up any such incident.

Finally, even assuming the first two elements had been adequately pleaded, Plaintiffs fail to allege facts plausibly showing that USSS "engaged in a cover up or attempted a cover up of a previous instance or allegations of sexual assault by an alleged perpetrator of such abuse." Cal. Civ. Proc. Code § 340.16(e)(2)(C). "Cover up" means "a concerted effort to hide evidence relating to a sexual assault that incentivizes individuals to remain silent or prevents information relating to a sexual assault from becoming public or being disclosed to the plaintiff, including, but not limited to, the use of nondisclosure agreements or confidentiality agreements." *Id.* § 340.16(e)(4)(A). As evidenced by the legislative history of this definition, "cover up" does **not** mean simply disregarding information relating to a sexual assault. (AB 2777, 04.30.22, proposing the following amendment, which was adopted: "'Cover up' means a ~~deliberate~~ ***concerted*** effort to hide ~~or disregard information~~ ***evidence*** relating to a sexual assault . . .").

Thus, the pleading requirement is twofold. A Section 340.16 plaintiff must allege facts showing: (1) that there was an instance (or alleged instance) of sexual assault that pre-dated the plaintiff's sexual assault; and (2) that the defendant entity engaged in a concerted effort to hide evidence of that assault, which involved more

---

[23] "'Legally responsible' means that the entity or entities are liable under any theory of liability established by statute or common law, including, but not limited to, negligence, intentional torts, and vicarious liability." *Id.* § 340.16(e)(4)(C).

than disregarding information.

Plaintiffs have failed to allege a prior instance of sexual assault that pre-dated their own alleged assaults. Therefore, neither Plaintiff has alleged that there was a "previous instance" of sexual assault, and the first element of a "cover up" is not met. Further, there is no allegation that USSS engaged in a concerted effort to hide evidence about **any** incident of sexual assault. By Plaintiffs' own admission, the first alleged reporting to USSS about any misconduct by Foley occurred when Chythlook-Sifsof claims to have reported some unspecified "misconduct" sometime after SafeSport was created in 2018. (FAC ¶¶ 176-177.) There is no allegation that USSS engaged in a concerted effort to hide evidence about whatever Chythlook-Sifsof reported. At most, USSS is alleged to have done nothing, which is insufficient to meet the definition of a "cover up" under Section 340.16. Further, Chythlook-Sifsof's alleged reporting was more than fifteen years after O'Malley retired and at least twenty-three years after Fletcher was allegedly assaulted. Therefore, even if USSS had "covered up" whatever Chylook-Sifsof allegedly reported, any such cover up did not occur prior to the assaults alleged by Fletcher and O'Malley and therefore cannot be a "cover up" of a "previous incident" as required under Section 340.16.

Because Plaintiffs have failed to plead facts sufficient to meet a single element of Section 340.16, they cannot use the statute to revive time-barred claims.

### D.    Count Nineteen fails to state a claim and is time-barred.

In Count Nineteen, for negligence, Plaintiffs allege that USSS is liable for failing to detect and prevent the assaults alleged in the FAC. Plaintiffs allege that USSS had a special relationship with Foley and owed athletes a duty to protect them from his abuse. In addition, Chythlook-Sifsof alleges that USSS is liable for her sexual assault at the hands of a coach from an opposing team in Switzerland in 2005. These allegations fail to state a claim and are time-barred under any potentially-applicable statute of limitations.

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

1

### 1. Fletcher and O'Malley fail to state claims for negligence against USSS.

2

3      Fletcher alleges that Foley sexually assaulted her after a training camp during

4  the Spring 1994 season. (FAC ¶ 85.) O'Malley alleges that sometime between 1995

5  and 2003, Foley groped and forcibly tried to kiss her one evening after a competition.

6  (FAC ¶¶ 96, 103.) Neither Fletcher nor O'Malley allege that they reported these

7  incidents to any USSS official before March 2022. Under any potentially-applicable

8  law, these allegations fail to state a claim for negligence against USSS.

9      Multiple states potentially have an interest in Plaintiffs' negligence claim;

10  accordingly, this Court must first determine what state's laws govern. California uses

11  the "governmental interest" choice-of-law analysis, which requires: (1) determining

12  whether the states have different laws; (b) if so, examining whether each jurisdiction

13  has an interest in applying its own law; and (c) evaluate and compare the nature and

14  strength of each jurisdiction's interest. *Battle v. Taylor James, LLC*, 607 F. Supp. 3d

15  1025, 1043 (C.D. Cal. 2022). Here, the states with potential interest in this claim are

16  Utah (where USSS is located), Alaska (where Fletcher resides), California (where

17  O'Malley resides) and Nevada (where Fletcher alleges she was assaulted). Fletcher

18  and O'Malley fail to state a claim regardless of which law applies, so no further

19  choice-of-law analysis is necessary.

20      In all four of these states, courts follow the guidance of the Restatement

21  (Second) of Torts with respect to whether a defendant has a duty to protect a victim

22  from third-party harm. *Lackner v. North*, 135 Cal. App. 4th 1188, 1206 (2006); *Young*

23  *v. Salt Lake City Sch. Dist.*, 52 P.3d 1230, 1233 (Utah 2002); *Dore v. City of*

24  *Fairbanks,* 31 P.3d 788, 793 (Alaska 2001); *Mangeris v. Gordon*, 580 P.2d 481, 483

25  (Nev. 1978). Under the Restatement, a defendant generally owes no such duty, absent

26  a special relationship between the defendant and either the third party or the victim.

27  Restatement (Second) of Torts § 315 (1965).

28      A special relationship may exist between an employer and an employee that

**44**

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

requires the employer to "exercise reasonable care in preventing an employee from acting outside the scope of employment in 'intentionally harming others.'" *Graves v. N. E. Servs., Inc.*, 345 P.3d 619, 627 (Utah 2015) (citing Restatement (Second) of Torts § 317 (1965)). However, such a duty is imposed only where "the employer knows or has reason to know that he has the ability to control the employee and knows or should know of the necessity and opportunity for exercising such control." *Id.* In other words, no duty arises where the employer is unaware of the need to control the employee.

Here, Plaintiffs fail to allege that USSS had a duty to protect third parties from Foley because they do not allege that USSS knew or had any reason to know of Foley's misconduct prior to the alleged assaults. While Plaintiffs conclusorily allege that USSS was aware of a "culture of abuse," they do not allege facts supporting that conclusion or that any USSS official was aware of any specific instance of sexual assault or misconduct that would have put USSS on notice of the need to take protective measures with respect to Foley.[24] Further, neither Fletcher nor O'Malley allegedly reported any incident until March 2022 (decades after any misconduct occurred). Absent allegations explaining why USSS should have foreseen that Foley would commit sexual assault, USSS had no duty to take any affirmative steps to prevent such assault. *See Mangeris*, 580 P.2d at 403 (no duty to protect third parties where a reasonable person would not have foreseen a risk that third party would murder victim "at a remote time and distant location").

Similarly, even if USSS had a special relationship with Fletcher and O'Malley, the unforeseeability of Foley's conduct precludes a claim for negligence against USSS. *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 219 (2021) ("[E]ven when two parties may be in a special relationship, the unforeseeability of the kind of harm

---

[24] While O'Malley alleges "on information and belief" that USSS was present during O'Malley's alleged assault, this allegation is insufficient for the reasons stated in footnote 20 above.

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

suffered by the plaintiff or other policy factors may counsel against establishing an affirmative duty for one party to protect the other."); *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 824 (2009) (an affirmative duty to aid arises only where a special relationship exists and "**the harm created by the defendant's conduct is foreseeable**" (emphasis added)). As Foley's conduct was never reported to USSS prior to the alleged incidents, USSS had no reason to foresee the alleged harm inflicted on Fletcher and O'Malley by Foley. Therefore, Fletcher and O'Malley fail to state a claim for negligence against USSS.

### 2. Chythlook-Sifsof fails to state a claim for negligence against USSS.

Chythlook-Sifsof alleges that, while in Switzerland in 2005, she attended a competition and then joined other athletes to celebrate after the events. (FAC ¶ 128.) She does not allege where the post-event celebration took place, that anyone from USSS was present at the post-event celebration, or even that anyone from USSS knew that she attended this celebration. Chythlook-Sifsof alleges that she was sexually assaulted by a coach from an opposing team at this event. (*Id.* ¶ 130.) She does not allege any facts suggesting that she was in the custody of USSS at the time of the assault or that the event somehow tied to USSS. Under any potentially-applicable law, this fails to state a claim for negligence against USSS.

Under California's "governmental interest" choice-of-law analysis, the states with potential interests in this claim are Utah (where USSS is located), Alaska (where Chythlook-Sifsof resides), and Switzerland (where the alleged attack occurred). Chythlook-Sifsof fails to state a claim regardless of which law applies.

As stated above, courts in Alaska and Utah follow the guidance of the Restatement (Second) of Torts with respect to whether a special relationship exists requiring a defendant to protect a victim from third-party harm. Under the Restatement, a special relationship can exist between a minor and a school or other entity exercising custody over the minor. Restatement (Second) of Torts § 320 (1965).

A defendant had no such duty unless it exercised custody "at the moment [the minor] was injured." *Young*, 52 P.3d at 1233; *see also Boy 1 v. Boy Scouts of Am*., 832 F. Supp. 2d 1282, 1289 (W.D. Wash. 2011) (dismissing negligence claim because plaintiff failed to allege facts establishing that he was in defendant's custody at the time he was abused). Further, even where such "special relationship" exists, the defendant does not owe a duty to protect against "a sudden attack from a third person which he has no reason to anticipate." Restatement § 320, comment e.

Chythlook-Sifsof fails to allege facts sufficient to show that USSS had a duty to prevent the assault that she allegedly suffered, or that USSS breached that duty. She does not allege that she was participating in any USSS activity, under the supervision of any USSS employees, or on any USSS-controlled property at the time of her assault, and thus there are no facts alleged that would suggest that she was in USSS custody at the time. Therefore, USSS had no duty of care to protect her against third-party intentional torts at the time. Further, there is no allegation that USSS breached any such duty. Chythlook-Sifsof does not identify the perpetrator of her assault, much less facts showing that USSS knew the perpetrator or should have foreseen that the perpetrator may attack an athlete. The only facts alleged are that she was in Switzerland for an event, went out in the evening after the event with other athletes, was given alcohol by unidentified adults, and was assaulted. (FAC ¶¶ 126-130.) This is insufficient to state a claim.

Under Swiss law, to establish a claim for secondary tort liability (i.e. liability for an act of a main perpetrator), a plaintiff must allege: "(1) a main perpetrator committed an illicit act, (2) the accomplice consciously assisted the perpetrator and knew or should have known that he was contributing to an illicit act, and (3) their culpable cooperation was the natural and adequate cause of the plaintiff's harm or loss." *Kashef v. BNP Paribas SA*, , 2021 WL 603290, at *2 (S.D.N.Y. Feb. 16, 2021). Here, Chythlook-Sifsof alleges that the "main perpetrator," the foreign coach, committed a wrongful act. However, she does not allege facts sufficient to show that

USSS "consciously assisted" that coach in his assault or that it in any way contributed to the assault, much less that it "knew or should have known" that it was contributing. Chythlook does not specify what USSS did that contributed to her attack or what USSS should have done to prevent it. Thus, she has also failed to state a claim against USSS under Swiss law.

### 3. Count Nineteen is time-barred.

Under any analysis of applicable law, Plaintiffs' negligence claims are time-barred. The limitations period in California, Alaska, and Nevada is two years. *e* Cal. Civ. Proc. Code § 355.1; *Reasner v. State Dept. of Health & Soc. Servs., Office of Children's Servs.*, 394 P.3d 610, 614 (Alaska 2017); Nev. Rev. Stat. Ann. § 11.190. In Utah, the limitations period is four years. *Lilley v. JP Morgan Chase*, 317 P.3d 470, 474 (Utah 2013). Finally, Switzerland imposes a three-year limitations period for personal injury claims from the date on which an injured party becomes aware of the damage and identity of the injuring party (with a ten-year statute of repose). Swiss Code of Obligations Part Five, Art. 60.[25] The alleged assaults by Foley occurred decades ago, and Fletcher and O'Malley knew of the assaults when they occurred. Similarly, Cynthlook-Syfsof's alleged assault took place well outside of any applicable statute of limitations. Therefore, any negligence claims based upon those assaults are time-barred (and are not rescued by an equitable estoppel theory or California's Section 340.16).

### E. Count Twenty names the wrong parties, fails to state a claim, and is time-barred.

While Count Twenty, for negligent supervision or retention, is brought by all Plaintiffs against USSS and USOPC, the only potentially-appropriate parties are Foley's employer and those purportedly injured by him (*i.e.*, USSS on the one hand,

---

[25] *See* https://www.fedlex.admin.ch/eli/cc/27/317_321_377/en#art_60. Under Rule 44.1 of the Federal Rules of Civil Procedure, the Court may consider any relevant material or source in determining foreign law.

and Fletcher and O'Malley on the other). Further, as between these Parties, under Utah law (or any other law Plaintiffs may argue applies), Count Fifteen is time-barred and Plaintiffs fail to state a claim.

### 1. Improper parties should be dismissed.

The proper parties in a negligent supervision claim are (a) the employer and (b) the Plaintiffs allegedly injured by the purportedly negligently-supervised employee. *See Love v. Motion Indus.*, 309 F. Supp. 2d 1128, 1138 (N.D. Cal. 2004) (negligent supervision requires a showing that an employer's breach of legal duty to use due care proximately caused plaintiff's damages). Thus, the only even potentially appropriate parties to this negligent supervision claim are Fletcher (a California resident) and O'Malley (an Alaska resident), as Plaintiffs who were allegedly injured by Foley, and USSS (a Utah corporation), as Foley's alleged employer. Chythlook-Sifsof does not allege that she was assaulted by Foley and thus is an improper Plaintiff in a claim that Foley was negligently supervised. USOPC is not alleged to have employed Foley and is thus an improper Defendant. Each of these improper Parties should be dismissed.

### 2. Plaintiffs fail to state a claim against USSS for negligent supervision or retention.

Under California's "governmental interest" choice-of-law analysis, the states with potential interests in this claim are California (where Fletcher resides), Alaska (where O'Malley resides), Utah (where USSS resides), and Nevada (where Fletcher alleges wrongful conduct occurred).

The laws of California, Alaska, Utah, and Nevada do not differ materially when it comes to negligent supervision. As is particularly relevant here, in order to state a claim for negligent supervision of an employee who committed an intentional tort in any of these states, a plaintiff must first plead facts showing that the employer had prior knowledge that the employee posed a foreseeable risk of harm. *See Z.V. v. Cnty. of Riverside*, 238 Cal.App.4th 889, 902 (Cal. Ct. App. 2015) (to establish negligent supervision in California, "a plaintiff must show that a person in a supervisorial

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

position over the actor had prior knowledge of the actor's propensity to do the bad act"); *Jensen*, 2014 WL 7246948, at *6 (in Utah, a plaintiff must allege facts sufficient to show that the employer knew or had reason to know that the employer posed a foreseeable risk of harm); *Devine v. Great Divide Ins. Co*., 350 P.3d 782, 792 (Ala. 2015) (negligent supervision claim is cognizable only if the employer "had foreknowledge of [the employee's] propensity for violence and his animosity toward [the victim] or . . . [the employer] knew that [the employee] was reasonably likely to assault [the victim]"); *Jaynes v. Trex Co., Inc.*, 2010 WL 11636674, at *4 (D. Nev. June 10, 2010) ("Under Nevada law, . . . [n]egligent supervision occurs when an employer fails to anticipate foreseeable employee misconduct or fails to take reasonable precautions to protect third parties.").

Here, no facts are alleged that would plausibly lead to the conclusion that USSS knew (or had reason to know) that Foley was likely to sexually assault either Fletcher or O'Malley. The first alleged reporting to anyone at USSS of *any* misconduct by Foley was in 2018 (the photographs), at the earliest, many years after these Plaintiffs were allegedly assaulted. And, Foley is not alleged to have engaged in any sexual misconduct (whether reported or unreported) *prior* to the alleged assaults on Plaintiffs. This is dispositive of Plaintiffs' claims for negligent supervision and retention.

Moreover, Plaintiff improperly attempts to lump Defendants together rather than plead individualized facts to state a claim against each Defendant. (*See, e.g.*, FAC ¶¶ 460-464.) Count Twenty fails for this additional reason.

### 3. Any negligent supervision or retention claims are time-barred.

Under any analysis of applicable state law, Plaintiffs' negligent supervision or retention claims are time-barred. The Utah limitations period for negligent supervision is four years. *Retherford v. AT&T Comms. Of Mountain States, Inc.*, 844 P.2d 949, 977 (Utah 1992). The limitations period in California, Alaska, and Nevada is two years. *See* Cal. Civ. Proc. Code § 355.1; *Reasner*, 394 P.3d at 614; Nev. Rev. Stat. Ann. § 11.190. The alleged negligent supervision occurred decades ago, and Plaintiffs

knew of USSS's purported negligence when the alleged assaults occurred. Therefore, any negligent supervision claims based upon those assaults are time-barred.

**F.    Count Twenty-One fails to state a claim and is time-barred.**

Count Twenty-One, for IIED, fails to state a claim and is time-barred.

**1.  Plaintiffs fail to state a claim for IIED against USSS.**

Plaintiffs allege that USSS engaged in extreme and outrageous conduct and intentionally caused Plaintiffs emotional distress. Plaintiffs fail to articulate any facts in support of how USSS did so and do not allege a single required element against USSS specifically. (FAC ¶¶ 469-471.) Instead, the allegations impermissibly attempt to lump all defendants together in conclusory fashion and fail to allege the essential elements of extreme and outrageous conduct and intent. Therefore, Count Twenty-One fails.

Under California's "governmental interest" choice-of-law analysis, the states with potential interests in this claim are California, Alaska, Utah, and Nevada. Each state's laws governing IIED claims are substantially similar—each state requires a plaintiff to show: (1) extreme and outrageous conduct by the defendant; (2) intent to cause emotional distress; (3) severe emotional distress; and (4) causation. *Wong v. Jing*, 189 Cal. App. 4th 1354, 1376 (2010); *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000); *Linebaugh v. Gibson*, 471 P.3d 835, 849 (Utah Ct. App. 2020); *Adkins v. Collens*, 444 P.3d 187, 202 n.50 (Alaska 2019). Plaintiffs' IIED claim fails regardless of which law applies.

First, Plaintiffs fail to allege any extreme or outrageous conduct by USSS. "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. The defendant must have engaged in conduct intended to inflict injury or engaged in with the realization that injury will result." *Colonial Van & Storage, Inc. v. Superior Court*, 76 Cal. App. 5th 487, 506 (Cal. App. Ct. 2022); *see also Nassi v. Hatsis*, 525 P.3d 117, 125 (Utah 2023) ("[T]he conduct at issue must be more than unreasonable, unkind, or unfair, and it must evoke outrage or

revulsion.").

Plaintiffs wholly fail to identify any such "extreme and outrageous" conduct by USSS. At best, Plaintiffs allege that USSS failed to take affirmative steps to control the conduct of others. This does not amount to extreme or outrageous conduct, particularly where USSS had no knowledge of any alleged conduct by Foley until decades after the incidents allegedly occurred. *Colonial Van & Storage, Inc.*, 76 Cal. App. 5th at 506 (IIED claim for failure to act failed as a matter of law where defendant did not know nor reasonably should have known that third party actor was prone to violence); *Brown*, 40 Cal. App. 5th at 1109 (USA Taekwondo's failure to adopt policies and procedures to prevent sexual abuse of athletes was not extreme and outrageous where sexual abuse was not disclosed to USA Taekwondo until after offending coach had stopped coaching athletes); *Conway v. Circus Circus Casinos, Inc.*, 8 P.3d 837, 840-41 (Nev. 2000) (finding IIED claim insufficiently pled where plaintiff alleged that defendant merely knew of a dangerous condition but failed to correct it).

Second, Plaintiffs fail to allege that USSS engaged in any conduct with the intent to cause emotional distress. Indeed, Plaintiffs do not allege a single intentional act by USSS that resulted in any in Plaintiffs' alleged injuries—Plaintiffs only allege that USSS *failed* to act. Even if this were true, Plaintiffs do not plausibly allege that USSS abstained from acting with the intent to cause emotional distress to its own athletes. Without a plausible allegation of intent, this claim fails. *See Helmer v. Bank of America, N.A.*, 2013 WL 4546285, at *7 (E.D. Cal. Aug. 27, 2013) (dismissing complaint for failure to allege intent to cause emotional distress); *Galindo v. City of San Mateo*, 2016 WL 7116927, at *9 (N.D. Cal. Dec. 7, 2016) (same).

In the absence of any plausible intentional conduct by USSS, Plaintiffs impermissibly attempt to lump all defendants together without identifying what each (or any) Defendant did wrong. For example, Plaintiffs allege in boilerplate fashion that "Defendants" engaged in extreme and outrageous conduct and merely recites the

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**

elements of the claim. (FAC ¶¶ 469-475.) This is insufficient, and Courts in this District have rejected similar attempts to lump conduct of various defendants together when pleading an IIED claim. *See, e.g.*, *Doe v. California Inst. of Tech.*, 2019 WL 8645652, at *4 (C.D. Cal. Aug. 13, 2019) (dismissing IIED claim against two defendants where complaint constituted impermissible "form of shotgun and group pleading" that grouped all defendants together without identifying what each defendant did wrong).

Accordingly, Plaintiffs' IIED claim should be dismissed.

### 2.  Any IIED claim is time-barred.

Plaintiffs' claim for IIED is time-barred under any potentially applicable statute of limitations. The limitations period for IIED in California, Alaska, and Nevada is two years. *Wassmann v. S. Orange County Comm. College Dist.*, 24 Cal. App. 5th 825, 852-53 (2018); *Maness v. Gordon*, 325 P.3d 522, 525 n.11 (Alaska 2014); *Russo v. Shac, LLC*, 498 P.3d 1289 (Nev. App. 2021). Utah's limitations period is four years. *Hatch v. Davis*, 102 P.3d 774, 784 (Utah 2004). The events underlying Plaintiffs' claim occurred decades ago, and Plaintiffs were aware of those events when they occurred. Therefore, Plaintiffs' IIED claim is time-barred (and indeed, this pattern throughout the FAC of attempting to revive decades-old claims borders on frivolity).

## V.   CONCLUSION

For all of the foregoing reasons, Plaintiffs' FAC should be dismissed in its entirety and with prejudice.

Respectfully submitted,

K&L GATES LLP

Dated:  June 30, 2023

By:   /s/ Caitlin C. Blanche
Caitlin C. Blanche
Desirée F. Moore
Abram I. Moore

Attorneys for Defendant
UNITED STATES SKI & SNOWBOARD

53

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2    The undersigned, counsel of record for Defendant United States Ski &

3  Snowboard, certifies that this brief contains 17,996 words, which complies with the

4  word limit set by court order dated June 28, 2023.

5

6                                      Respectfully submitted,

7

8                                      K&L GATES LLP

   Dated:  June 30, 2023              By:  /s/ Caitlin C. Blanche
9                                           Caitlin C. Blanche
                                            Desirée F. Moore
10                                          Abram I. Moore

11                                          Attorneys for Defendant
                                            UNITED STATES SKI & SNOWBOARD
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**