BOIES SCHILLER FLEXNER LLP
ALISON L. ANDERSON (SBN 275334)
alanderson@bsfllp.com
725 S Figueroa St, 31st Floor
Los Angeles, CA 90017
Tel: (213) 995-5720/ Fax: (213) 629-9022

SIGRID S. MCCAWLEY
smccawley@bsfllp.com
ALISHA MORICEAU
amoriceau@bsfllp.com
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL  33301
Tel: (954) 356-0011/ Fax: (954) 356-0022

KENYA K. DAVIS
kdavis@bsfllp.com
1401 New York Ave., NW
Washington, DC  20005
Tel: (202) 237-2727/ Fax: (202) 237-6131

*Attorneys for Plaintiffs Rosey Fletcher,*
*Erin O'Malley, and Callan Chythlook-Sifsof*

(Additional counsel listed on the following page)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEY FLETCHER, ERIN O'MALLEY, AND CALLAN CHYTHLOOK-SIFSOF<br><br>Plaintiffs,<br><br>v.<br><br>PETER FOLEY, UNITED STATES SKI AND SNOWBOARD, AND UNITED STATES OLYMPIC AND PARALYMPIC COMMITTEE,<br><br>Defendants. | Case No. 23-cv-00803-SPG-JPR<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT UNITED STATES OLYMPIC AND PARALYMPIC COMMITTEE'S MOTION TO DISMISS**<br><br><br>Date: October 25, 2023<br>Time: 1:30PM<br>Crtm: 5C<br>Judge: Hon. Sherilyn Peace Garnett |

1  Additional counsel for Plaintiffs:

2  ERICA N. SWEETING
    *esweeting@bsfllp.com*
3  55 Hudson Yards, 20th Floor
    New York, NY  10001
4  Tel: (212) 446-2300/ Fax: (212) 446-2350

5  MARIAH J. NOAH (SBN 339658)
    *mnoah@bsfllp.com*
6  44 Montgomery St, 41st Floor
    San Francisco, CA 94104
7  Tel: (415) 293-6800/ Fax: (415) 293-6899

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

LEGAL STANDARD .................................................................................... 3

ARGUMENT .................................................................................................. 3

   I.    This Court Has Personal Jurisdiction Over USOPC .................................. 4

        A.   USOPC's Contacts with California Meet And Surpass The "Minimum Contacts" Required For Specific Jurisdiction. ............... 4

        B.   Second, Plaintiffs' claims arise from USOPC's California conduct. 7

        C.   Third, USOPC does not meet its burden to show that jurisdiction would be unreasonable. ........................................................................ 8

        D.   This Court has General Jurisdiction Over USOPC Due to Its Continuous and Systematic Contact With California. ....................... 8

        E.   Jurisdictional Discovery is Appropriate. ......................................... 10

   II.   Plaintiffs Have More Than Sufficiently Alleged EACH OF Their Claims ...................................................................................................... 11

        A.   Plaintiffs Have Successfully Alleged Valid RICO Violations ........ 11

        B.   Plaintiffs Each Sustained Actionable Injuries to their Business and Property. ......................................................................................... 11

        C.   Plaintiffs Fully Alleged a RICO Enterprise and that USOPC Participated in it.............................................................................. 12

        D.   Defendants Engaged in a Pattern of Racketeering. ......................... 14

        E.   The FAC States an Undeniable Claim for TVPRA Beneficiary Liability. .......................................................................................... 15

           1.  Defendants Conspired to Commit Sex Trafficking Under the TVPRA. ................................................................................... 17

        F.   Plaintiffs Fully Allege Sexual Assault Claims. ............................... 19

           1.  Plaintiffs Properly Plead Sexual Assault Under §340.16 .......... 19

        G.   Plaintiffs Fully Allege a Negligence Claim. ................................... 21

H.  Plaintiffs' Fully Allege that USOPC Engaged in Negligent Supervision and Retention...............................................................27

I.  Plaintiffs Fully Allege Intentional Infliction of Emotional Distress. ...........................................................................................28

CONCLUSION ........................................................................................ 30

CERTIFICATE OF COMPLIANCE ....................................................... 32

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*AirWair Int'l Ltd. v. Schultz,*
  73 F. Supp. 3d 1225 (N.D. Cal. 2014)........................................................5

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...................................................................................3

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
  874 F.3d 1064 (9th Cir. 2017) ..................................................................5

*Boyle v. United States,*
  556 U.S. 938 (2009)..................................................................................13

*Brown v. USA Taekwondo,*
  11 Cal. 5th 204 (2021)...................................................................21, 22, 24

*Brown v. USA Taekwondo,*
  40 Cal. App. 5th 1077 (2019) .........................................................passim

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985).............................................................................6, 8

*C.B. v. Moreno Valley Unified Sch. Dist.,*
  544 F. Supp. 3d. 973 (C.D. Cal. 2021)...............................................29, 30

*Canyon Cnty. v. Syngenta Seeds, Inc.,*
  519 F.3d 969 (9th Cir. 2008) ..................................................................14

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014).....................................................................................9

*Diaz v. Gates,*
  420 F.3d 897 (9th Cir. 2005) ..................................................................12

*Doe 1 v. Deutsche Bank Aktiengesellschaft,*
  2023 WL 3167633 (S.D.N.Y. May 1, 2023) ..........................................27

*Doe v. Mindgeek USA Inc.,*
  558 F.Supp.3d 828 (C.D. Cal. 2021)......................................................16

*Does 1-6 v. Reddit, Inc.,*
  51 F.4th 1137 (9th Cir. 2022) .................................................................16

*Fleites v. MindGeek S.A.R.L.,*
  617 F. Supp. 3d 1146 (C.D. Cal. 2022)............................................12, 17

*Gemcap Lending I, LLC v. Crop USA Ins. Agency, Inc.,*
  2013 WL 12136535 (C.D. Cal. Oct. 10, 2013)..........................................9

*Goodyear Dunlop Tires v. Brown,*
  564 U.S. 915 (2011).....................................................................................9

*Guerrero v. Gates,*
  442 F.3d 697 (9th Cir. 2006) ..................................................................12

*Hughes v. Pair,*
  46 Cal. 4th 1035 (2009)...........................................................................28

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.,*
  865 F. Supp. 2d 1002 (C.D. Cal. 2011)..................................................13

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
  601 F. Supp. 3d 625 (C.D. Cal. 2022) ................................................................. 10

*In re ZF-TRW Airbag Control Units Prod.*,
  2022 WL 19425927 (C.D. Cal. Mar. 2, 2022 ...................................................... 10

*J.B. v. G6 Hosp., LLC*,
  2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ................................................... 16

*J.M. v. Choice Hotels Int'l, Inc.*,
  2022 WL 10626493 (E.D. Cal. Oct. 18, 2022) ................................................... 16

*Jones v. Billionaire Burgers, Inc.*,
  2023 WL 1107866 (C.D. Cal. Jan. 26, 2023) ....................................................... 3

*Kirsopp v. Yamaha Motor Co.*,
  2014 WL 12577429 (C.D. Cal. Aug. 27, 2014) ................................................... 7

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
  232 F.3d 979 (9th Cir. 2000) ............................................................................. 12

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ............................................................................. 3

*Marvix Photo, Inc. v. Brand Technologies, Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ............................................................................. 6

*Mehr v. FIFA*,
  115 F. Supp. 3d. 1035 (N.D. Cal. 2015) ............................................................. 7

*Mountain Copper Co. v. Welcome Growers Gin Co.*,
  197 Cal. App. 2d 253 (Ct. App. 1961) .............................................................. 27

*Norsoph v. Riverside Resort & Casino, Inc.*,
  2020 WL 641223 (D. Nev. Feb. 11, 2020) ....................................................... 19

*Parker v. Walker*,
  6 Cal. Rptr. 2d 908 (Cal. Ct. App. 1992) .......................................................... 11

*Pinkerton v. United States*,
  328 U.S. 640 (1946) ........................................................................................... 18

*Regents of Univ. of California v. Superior Ct.*,
  4 Cal. 5th 607 (2018) ............................................................................... 22, 24, 25

*Riot Games v. John Does 1-10*,
  2022 WL 18358951 (C.D.C.A. 2022) ................................................................. 6

*Rowland v. Christian*,
  69 Cal. 2d 108 (1968) ....................................................................................... 21

*RV Savvy Productions v. RV Masters*,
  2019 WL 5858192 (D. Or. 2019) ........................................................................ 6

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ............................................................................... 5

*Secci v. United Independant Taxi Drivers, Inc.*,
  8 Cal. App. 5th 846 (2017) ............................................................................... 28

*Shields v. FINA*,
  419 F. Supp. 3d 1188 (N.D.C.A. 2019) .............................................................. 6

*Sinatra v. Nat'l Enquirer, Inc.,*
    854 F.2d 1191 (9th Cir. 1988) ......................................................... 8

*Skout, Inc. v. Jen Processing, Ltd.,*
    2015 WL 224930 (N.D.C.A. 2015) ................................................. 6

*Wolf Run Hollow v. National Car Rental System,*
    2012 WL 12882660 (C.D. Cal. Dec. 18, 2012) ............................. 9

**Statutes**

15 U.S.C. § 1595 ................................................................................ 18

18 U.S.C. §1590 ................................................................................ 14

18 U.S.C. §1591 ................................................................................ 15

18 U.S.C. §1594 ................................................................................ 17

18 U.S.C. §1961 ................................................................................ 14

18 USC §1594 .................................................................................... 17

18 USC §1595 .................................................................................... 17

36 U.S.C. § 220521 ............................................................................. 2

36 U.S.C. § 220522 ............................................................................. 2

**Other Authorities**

*Abolish Trafficking Reauthorization Act of 2022*, P.L. 117-347, 136 Stat. 6199 (Jan. 5, 2023) ........................................................................................... 19

*Rico Trends: From Gangsters to Class Actions*, 65 S.C. L. Rev. 213, 222-23 (2013) ...... 11

Plaintiffs Rosey Fletcher, Erin O'Malley, and Callan Chythlook-Sifsof (together, "Plaintiffs"), by and through their undersigned attorneys, submit this response to Defendant United States Olympic and Paralympic Committee's ("USOPC") Motion to Dismiss (ECF No. 80). In support thereof, Plaintiffs submit:

## **INTRODUCTION**[1]

On August 8, 2023, SafeSport—United States Olympic and Paralympic Committee's ("USOPC") own internal investigator—finally found that Defendant Peter Foley sexually abused athletes and suspended him for 10 years plus 5 years probation, ending his coaching career.[2] Simultaneously, SafeSport suspended USSS Board member, Lisa Kosglow, for obstructing that investigation. These actions come decades after Rosey, Erin, and Callan's sexual abuse and approximately two years after their bravery of coming forward publicly. It took years to remove Defendant Peter Foley—a sexual predator that victimized young women that he controlled—despite the constant red flags, United States Ski and Snowboard (USSS) and USOPC executives' awareness, and the victims' attempts to report Foley's abuse.

Defendant Foley would not have been able to operate in this fashion, but for the facilitation of his abuse by USSS and USOPC. Through these entities and their personnel, Foley gained access to young female elite athletes. Penalizing Foley now with a suspension does not absolve them from their utter failure to protect athletes from sexual abuse at the time they were suffering, nor does it shield them from taking responsibility for their continued efforts to silence them when they reported. Indeed, USOPC, through its new CEO, has now admitted that they "recognize [their] role in failing to protect their athletes, and are sorry for the profound hurt they have endured" when it comes to the

---

[1] For a full recitation of the background, Plaintiffs direct the Court to the detailed facts in Plaintiffs' Opposition to USSS's motion to dismiss at ECF No. 88.

[2] Although SafeSport finished its investigation by January 2023, the report was not released until August, after Plaintiffs filed their First Amended Complaint (FAC). *See*, ECF No. 53 at ¶199. SafeSport's report inherently contains facts and findings that could have informed Plaintiffs in considering additional factual allegations.

1   Olympic    gymnasts    sexually    abused    by    Larry    Nassar.    *See*

2   https://www.nytimes.com/2021/12/13/sports/olympics/nassar-abuse-gymnasts-

3   settlement.html. While Foley is not Nassar, USSS and USOPC's duty to protect its

4   athletes from sexual abuse extends to Plaintiffs just the same.

5          While USOPC attempts to distance itself from the National Governing Bodies

6   (NGBs) for each sport, it holds significant authority over NGBs. The goal of USSS, as

7   an NGB, is to get athletes and coaches to the Olympics. USOPC opens or closes that

8   door, determining who represents the U.S. at the Olympics. USOPC provides sustaining

9   funding to USSS and other NGBs and certifies which organizations qualify as NGBs.

10  *See* FAC ¶44. As USOPC noted in its motion ("Mot."),

11          USOPC's fundamental statutory role with respect to the NGBs (apart from
12          selecting which organizations to certify as NGBs) is to ensure that (1) the
            NGB's procedures for selecting the Olympic, Paralympic, Pan-American,
13          and Parapan American athletes are fair and provide individuals with an
            equal opportunity to participate in those games, and (2) the NGBs have
14          policies in place concerning, for example, athlete safety and governance.

15

16  ECF No. 80 at 3–4 (citing 36 U.S.C. §§ 220521(a), 220522(8) & (15), 220505(d).

17  Here, USOPC certified USSS as an NGB, but failed to ensure USSS had fair, transparent

18  procedures for selecting athletes for the Olympics. Procedures that provided equal

19  opportunity were not viable when the U.S. Olympic Snowboarding Team's head coach

20  was sexually abusing some of the athletes chosen. USOPC failed to ensure USSS had

21  effective policies for athlete safety where athletes were being sexually abused by their

22  head coach and minor athletes raped by adult leaders while traveling away from their

23  families.

24          Instead, USSS and USOPC repeatedly showed athletes are commodities—

25  "medals and money" as a former executive put it—a phrase uttered at every meeting.

26  FAC ¶41. This desire to win and profit overshadowed USOPC's and USSS's mission

27

28

1  statements, which tout protecting, supporting, and leading athletes, coaches, and Olympic

2  teams. When it comes to sexual abuse, their actions and inactions expose their true

3  mission. *Id.* ¶¶32–33. Through its agents and employees, communications with USSS,

4  and Alan Ashley, USOPC was aware of Foley's offensive conduct that was pervasive

5  throughout his time as the head coach of the Snowboarding teams. To feign ignorance

6  in an environment where the USOPC is privy to an athlete's weight, height, muscle

7  composition, family background, diet—intimate details that it has to have to make

8  assessments about the ability of that athlete to compete on the behalf of the United States

9  around the world at the highest level of sport—is unbelievable.

10      For the reasons below, Defendant USOPC should be held accountable for its

11  actions and the suffering Plaintiffs endured; and thus, its Motion to Dismiss should be

12  denied.

13                          **LEGAL STANDARD**

14      "To survive a motion to dismiss, a complaint must contain sufficient factual

15  matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

16  *Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss, courts must "accept

17  factual allegations in the complaint as true and construe the pleadings in the light most

18  favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519

19  F.3d 1025, 1031 (9th Cir. 2008). This includes "drawing all reasonable inferences in

20  favor of the plaintiff. *Jones v. Billionaire Burgers, Inc.*, 2023 WL 1107866, at *6 (C.D.

21  Cal. Jan. 26, 2023). Federal Rule of Civil Procedure 8(a)(2) only requires that a complaint

22  contain "a short and plain statement of the claim showing that the pleader is entitled to

23  relief." *Iqbal*, 556 U.S. at 678. "[D]etailed factual allegations" are not required. *Id.*

24                          **ARGUMENT**

25      Because (A) this Court has personal jurisdiction over Plaintiffs' claims and over

26  Defendants; and (B) Plaintiffs have successfully pleaded valid causes of action upon

27  which relief can be granted, the Court should deny all of Defendants' motions to dismiss,

28

including USOPC's.

## I.   THIS COURT HAS PERSONAL JURISDICTION OVER USOPC

This Court's jurisdiction over USOPC is clear, certain, and unambiguous based upon the allegations within the First Amended Complaint (FAC). Defendant USOPC argues that the Court lacks personal jurisdiction over it. For efficiency's sake, the legal background analyzing personal jurisdiction is contained in one response: Plaintiffs' Opposition to USSS's Motion to Dismiss, ECF No. 88.

The Court has specific jurisdiction over USOPC because it purposefully availed itself of the forum, Plaintiffs' claims arise from USOPC's California-related conduct, and the exercise of jurisdiction is reasonable. As a result, USOPC has the minimum contacts required with California to render jurisdiction fair and just. While it's only necessary that the Court have jurisdiction over Defendant through a single method, specific jurisdiction, there are two additional bases for the Court's jurisdiction. The Court also has general jurisdiction over USOPC on the basis that USOPC's presence in California is "continuous and systematic."

The specific USOPC conduct in California has clearly been asserted.  While Foley's abuses and USOPC's negligence in addressing the conduct certainly extends beyond just California—to include offenses in Fiji, Switzerland, Nevada and many more locations—none of these instances negate the strong tie to the state of California.  Even if just in the one instance of Fletcher attending the training camp in California at 19, USOPC had protocols in place to have, for instance, a female chaperone or a policy that prohibited coaches from entering an athlete's hotel room, the assault she suffered would have possibly been avoided.

### A.   USOPC's Contacts with California Meet And Surpass The "Minimum Contacts" Required For Specific Jurisdiction.

Under the Ninth Circuit's three-part test for specific jurisdiction, USOPC meets each and every showing. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064,

1068 (9th Cir. 2017).

First, while USOPC need only meet the purposeful availment *or* purposeful direction tests—or some combination of the two as the *Yahoo!* court explained—USOPC meets both. USOPC purposefully availed itself of the privilege of doing business in California by recruiting, fundraising, engaging in contract negotiations with California municipal and private entities, incorporation of, at least, one business association.[3] USOPC has hosted past Olympic games and is in the process of preparing to host future Olympic games in Los Angeles. USOPC also owns and maintains an official training center in Chula Vista, California.

USOPC also purposefully directed these actions, as well as the actions discussed below in relation to the conduct that serves as the basis for the causes of actions in the FAC. FAC ¶¶ 157, 158, 159, 165. *AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1233 (N.D. Cal. 2014) (Noting that the "threshold of what constitutes an intentional act is relatively low.") As part of the showing for purposeful direction, Plaintiffs also unquestionably suffered harm in California. USOPC views this case as a handful of discrete moments of sexual assault and abuse. To believe Plaintiffs only suffered harm during specific penetrations or lewd acts is to wholly misunderstand sexual assault and the impact a middle-aged head-coach's actions have on young women (and minors) who

---

[3] While the facts surrounding USOPC's purposeful availment of California laws to incorporate subsidiary ventures are not within the FAC the Court "may consider extrinsic evidence" when evaluating a motion to dismiss on jurisdictional grounds. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see also* United States Olympic Committee, Amended and Restated Articles of Incorporation of Los Angeles 2024 Exploratory Committee (2018), p. 4, https://bizfileonline.sos.ca.gov/api/report/GetImageByNum/221092159222167078057103144198060044207207088039 (USOPC confirming partnership in formation of California legal entity), and United States Olympic Committee, Memorandum of Understanding Between the City of Los Angeles, Los Angeles 2024 Exploratory Committee, and the United States Olympic Committee Regarding the Los Angeles Organizing Committee of the 2028 Olympic and Paralympic Games (2017), https://clkrep.lacity.org/onlinecontracts/2017/C-129859_c_8-16-17.pdf (USOPC contracting with City of Los Angeles), and United States Olympic Committee, Host City Contract (2017), https://clkrep.lacity.org/onlinecontracts/2017/C-130124_c_9-29-17.pdf (USOPC required to form organizing committee legal entity at ¶ 3.1).

1   have focused their lives on getting to the Olympics. Plaintiffs suffered harm whenever
2   they were around Foley and subject to the environment of abuse he created, including
3   every Olympic training and competition led by their abuser.

4       Further, courts have given general guidance on what contacts allow for specific
5   jurisdiction. "[T]he forum State does not exceed its powers . . . if it asserts personal
6   jurisdiction over a corporation that delivers its products into the stream of commerce with
7   the expectation that they will be purchased by consumers in the forum State and those
8   products subsequently injure forum consumers." *Burger King Corp. v. Rudzewicz*, 471
9   U.S. 462, 473 (1985) (citations omitted). Further, the "maintenance of a passive website
10  alone cannot satisfy the express aiming prong"; only operating "a passive website in
11  conjunction with 'something more'—conduct directly targeting the forum—is
12  sufficient." *Marvix Photo, Inc. v. Brand Technologies, Inc*., 647 F.3d 1218, 1229 (9th
13  Cir. 2011). Courts consider multiple factors when determining if a defendant has done
14  "something more," including: "the interactivity of defendant's website, the geographic
15  scope of the defendant's commercial ambitions, and whether the defendant individually
16  targeted a plaintiff known to be a forum resident." *RV Savvy Productions v. RV Masters*,
17  2019 WL 5858192 *5 (D. Or. 2019).

18      Defendant USOPC's contacts with California are far greater than other defendants
19  that California federal courts have found to have sufficient contacts supporting personal
20  jurisdiction. *See Shields v. FINA,* 419 F. Supp. 3d 1188, 1207 (N.D.C.A. 2019)
21  ("Plaintiffs have made a prima facie showing that Defendant purposefully directed its
22  anticompetitive conduct at the [forum] by knowingly interfering with USA Swimming
23  and ISL's plans to host a competition in the United States"); *Riot Games v. John Does 1-*
24  *10,* 2022 WL 18358951 *2 (C.D.C.A. 2022) (finding sufficient contacts with California
25  where defendants sent emails, chats, and texts to California residents); *Skout, Inc. v. Jen*
26  *Processing, Ltd.*, 2015 WL 224930 *3 (N.D.C.A. 2015) (citing *Yahoo!* to support a
27  finding of sufficient contacts where a Defendant company's activity that was directed
28

toward California was spamming California website users with unwanted chat messages).

Plaintiffs' allegations demonstrate that USOPC purposefully availed itself of the privilege of doing business in California and purposefully directed actions at California, or some combination of the two, meeting the first prong of the three-part test for specific jurisdiction.

**B.   Second, Plaintiffs' claims arise from USOPC's California conduct.**

USOPC, in support for its argument against specific jurisdiction, directs the Court's attention to *Ford Motor Co.*—a case in which the Supreme Court ruled against the defendant, determined specific jurisdiction was appropriate, and reiterated "[n]one of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). USOPC also relies upon *Kirsopp v. Yamaha Motor Co.*, that Court only held there was no causal link sufficient to support specific jurisdiction because "Yamaha Japan's foray into the U.S. market sixty years ago does not support jurisdiction today." *Kirsopp v. Yamaha Motor Co.*, 2014 WL 12577429, at *6 (C.D. Cal. Aug. 27, 2014).  Unlike *Yamaha*, USOPC's California contacts existed when the conduct at-issue occurred and are ongoing.

Beyond *Ford Motor Co.* and *Yamaha*, USOPC invokes *Mehr v. FIFA*, where the court declined personal jurisdiction over a foreign, Swiss organization. 115 F. Supp. 3d 1035 (N.D. Cal. 2015). In *Mehr*, Switzerland-based FIFA had a complete absence of California facilities and California employees. *Mehr* at 1048. Unlike *Mehr*, here, USOPC operates and maintains several facilities throughout, FAC ¶22, and retains employees within, California.[4] USOPC's cases, cited in support, fall flat.

---

[4] It is a reasonable inference that USOPC retains employees in several capacities given the complexity and size of its 155-acre facility located in southern California.

"But for" USOPC's involvement in the cover-up and its failures to protect its California athletes and athletes that attending trainings and competitions in California, Plaintiffs would not have been injured.  Further, even if just in the one instance of Rosey attending the training camp in California at 19, USOPC had protocols in place to have, for instance, a female chaperone or a policy that prohibited coaches from entering an athlete's hotel room, the assault she suffered would have possibly been avoided.  But for Rosey attending that training camp in California, her assault would not have happened.

**C.    Third, USOPC does not meet its burden to show that jurisdiction would be unreasonable.**

Indeed, applying the *Burger King* factors, a finding of jurisdiction over USOPC in California is eminently reasonable.  Here, Defendant fails to meet its burden establishing otherwise, as: (1) USOPC' extensive contacts with California show USOPC purposefully interjected itself into California; (2) given that USOPC has employees, athletes, training camps, and more in California, the burden on USOPC defending in the forum is low; (3) there is little conflict with the sovereignty of USOPC's state as sovereignty concerns weigh more heavily when the defendants have no United States-based relationships, *see Sinatra v. Nat'l Enquirer, Inc*., 854 F.2d 1191, 1199 (9th Cir. 1988) and each of the defendants are domiciled in different states; (4) California has a strong interest in adjudicating sexual abuse and misconduct inflicted in conjunction with USOPC's California conduct and has shown that interest in passing the new California look-back statute for sexual abuse; (5) California is the most efficient jurisdiction as there are many California state law claims; (6) litigating this matter in California is important given the state's look-back statute and the state causes of action; and (7) no alternative forum exists where all Plaintiff's causes of action could be heard.  Therefore, USOPC cannot meet its burden of showing the exercise of jurisdiction to be unreasonable; thus, this Court should exercise jurisdiction over USOPC.

**D.    This Court has General Jurisdiction Over USOPC Due to Its Continuous and Systematic Contact With California.**

"A court may assert general jurisdiction over foreign (sister-state or foreign country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires v. Brown*, 564 U.S. 915 (2011); *Daimler AG v. Bauman*, 571 U.S. 117, 137, 139 n.19 (2014). "Factors to consider when determining whether a state has general jurisdiction over a corporate defendant are: (1) the defendant's principal place of business or state of incorporation; (2) whether the defendant makes sales, solicits, or engages in business in the state; (3) whether the defendant serves the state's markets; (4) whether the defendant designates an agent for service of process in the state; and (5) whether the defendant holds a license to conduct business within the state." *Gemcap Lending I, LLC v. Crop USA Ins. Agency, Inc.*, 2013 WL 12136535, at *3 (C.D. Cal. Oct. 10, 2013).

In arguing that this Court does not have general jurisdiction over it, USOPC cites to generic language from three cases whose facts do not support its argument. In *Wolf Run Hollow v. National Car Rental System*, the plaintiffs did not even assert general jurisdiction and, for specific jurisdiction, made no attempts to connect the defendants' California contacts to the defendants conduct at issue, including a failure to allege the individuals involved in the conduct ever stepped foot in California. 2012 WL 12882660, at *2 (C.D. Cal. Dec. 18, 2012). In *Gemcap Lending*, the plaintiff only made a conclusory allegation that the defendant was doing business in California but did not even allege "what that business might be." 2013 WL 12136535, at *3.

USOPC, in a sleight of hand, attacks Plaintiffs allegations regarding its relationship with California generally—i.e., that USOPC conducting business to host Olympic games in Los Angeles and having official training sites in California—as irrelevant to specific jurisdiction while simultaneously ignoring these facts when it comes to general jurisdiction and instead arguing that Plaintiffs only made conclusory statements about USOPC doing business in California. *See* Mot. 16.

There can be no question USOPC's contacts with California justify general jurisdiction. USOPC's contacts are certainly continuous because on three separate occasions, USOPC has vetted, nominated, and awarded the Olympic games to Los Angeles. FAC ¶21. The undertaking of the selection of an Olympic games host city is certainly systematic because USOPC's efforts require significant, thorough, and deliberate coordination across several levels of government. FAC ¶21. USOPC also completed the same process in northern California when it awarded the state with the 1960 Winter Olympics. *Id.*

In addition, USOPC invests money in Olympic facilities it staffs throughout California while also providing equipment and underwriting athletic training costs. FAC ¶¶21, 22. USOPC directly owns and operates an Olympic training facility in Chula Vista, California. The several Olympic trials held throughout California are further indicia of this Court's general jurisdiction. FAC ¶22. Given the strength of these contacts, it is no surprise that many U.S. Olympic athletes are Californians. FAC ¶24. General jurisdiction is definite. This Court has several bases for exercising jurisdiction over USOPC.[5]

### E. Jurisdictional Discovery is Appropriate.

Despite the above, should the Court doubt whether Plaintiffs have sufficiently alleged that this Court has jurisdiction over USOPC, Plaintiffs request that they be permitted to take focused, jurisdictional discovery. *See In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625, 730 (C.D. Cal. 2022), opinion clarified sub nom. *In re ZF-TRW Airbag Control Units Prod.*, 2022 WL 19425927 (C.D. Cal. Mar. 2, 2022) (granting such a request). "Jurisdictional discovery is 'appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more

---

[5] In addition to specific jurisdiction and general jurisdiction, Plaintiffs refer the Court to the civil RICO basis for jurisdiction and equitable tolling arguments contained in Plaintiffs' Opposition to Defendant USSS's Motion to Dismiss ECF No. 88.

satisfactory showing of the facts is necessary.'" *Id.* (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)).

## II.   PLAINTIFFS HAVE MORE THAN SUFFICIENTLY ALLEGED EACH OF THEIR CLAIMS

### A. Plaintiffs Have Successfully Alleged Valid RICO Violations

While USOPC begins its argument trying to argue that civil RICO is reserved for criminal issues, the truth is that sexual assaults, making false promises for money, and moving people across state lines for labor trafficking are serious and often criminal matters. Supporting individuals who engage in such conduct make an organization liable under RICO.[6]

### B. Plaintiffs Each Sustained Actionable Injuries to their Business and Property.

USOPC posits that the FAC fails to allege injury resulting in "concrete financial loss" that "occurred by reason of the RICO violation." Mot. 11. There are at least three bases for the Court to reject USOPC's argument.

*First*, while Plaintiffs seek physical and emotional distress damages with respect to their sex-trafficking and tort-related claims, their damages under RICO against the USOPC were in large part due to the Enterprise precluding them from seeking legal recourse against Enterprise members. *See Parker v. Walker*, 6 Cal. Rptr. 2d 908, 912 (Cal. Ct. App. 1992) ("A cause of action to recover money in damages, as well as money recovered in damages, is a … form of personal property."). *Second*, USOPC advances that "absent more detailed allegations" of the "specific sponsorships, contracts or other business interests that were harmed as a result of the alleged RICO violations," Plaintiffs'

---

[6] USOPC's reliance on a 21-year-old study to show that RICO claims are rarely successful is misguided. This decades' old study examining only a two-year history of appellate decisions is not persuasive. In fact, the very article USOPC cites was updated in 2013, noting "the success rate for RICO plaintiffs had dramatically increased to 17%." Pamela Bucy Pierson, *Rico Trends: From Gangsters to Class Actions*, 65 S.C. L. Rev. 213, 222-23 (2013).

1   RICO claims must fail. Mot. 11-12 (emphasis added).  Again, USOPC overstates the
2   level of specificity required for a complaint to survive a motion to dismiss.  As alleged,
3   the Enterprise directly precluded Plaintiffs ability to maintain business relationships with
4   sponsors—a relationship critical to the performance and livelihood of professional
5   snowboarders. *See* FAC ¶¶ 10, 64, 65, 209, 231(b), 258, 260, 261.  Even still, courts
6   within this Circuit have found reputational harm cognizable. *See Fleites v. MindGeek*
7   *S.A.R.L.*, 617 F. Supp. 3d 1146, 1163 (C.D. Cal. 2022) (acknowledging that the "damage
8   to [plaintiff's] reputation—may be cognizable under Ninth Circuit case law, which seems
9   to recognize a broad category of what might be deemed a property interest") (citing *Diaz*
10  *v. Gates*, 420 F.3d 897 (9th Cir. 2005)).

11          Contrary to USOPC's contentions, nothing more is required at this stage.  *See also*
12  *Diaz v. Gates*, 420 F.3d 897, 900-01 (9th Cir. 2005) (finding that "interference with
13  prospective business relations" is an "injury to business or property within the meaning
14  of RICO"); *Guerrero v. Gates*, 442 F.3d 697, 707 (9th Cir. 2006) (finding under *Diaz*,
15  allegations that plaintiff was "unable to pursue gainful employment …. amount[] to
16  intentional interference with contract and interference with prospective business
17  relations, which are torts under California law that constitute injury to business or
18  property under RICO.").  Even if more detail is required—which it is not—Plaintiffs have
19  not had the benefit of discovery and expert examination in order to specify the breadth of
20  their losses.  *See Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 991 (9th Cir.
21  2000) ("Whether experts will be able to measure the [damages] remains to be seen; in
22  deciding a Rule 12(b)(6) motion we are dealing only with the complaint's allegations,
23  which in this instance do not make the claim speculative.").

### C. Plaintiffs Fully Alleged a RICO Enterprise and that USOPC Participated in it.

25          Next, USOPC's argument that Plaintiffs have failed to allege "facts showing
26  defendants acted together or towards a common purpose," both understates the

allegations as well as overstates the legal requirement. Mot. 13. Under 18 U.S.C. §1961(4), an "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *See Odom v. Microsoft Corp.*, 486 F.3d 541, 548 (9th Cir. 2007) ("As is evident from the text, this definition is not very demanding."). This definition includes what is known as an "association-in-fact" enterprise, which requires "three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1032 (C.D. Cal. 2011) (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)).

USOPC suggests that Plaintiffs' enterprise allegation is a single "bald claim" that the Enterprise is "an ongoing organization that functions as a continuing unit." Mot. at 12. This willfully ignores the detailed allegations throughout the complaint regarding each of the members of the Enterprise and their individual involvement. *See* ECF No. 88 at 29–32. Contrary to USOPC's claim, Plaintiffs have articulated the common purpose of the Enterprise: to enable and cover up Foley's sexual abuse. In doing so, members of the enterprise took specific actions (such as "recruit[ing] women and girls to participate in the sport") and had specific motivations (such as "keep[ing] Foley as coach and earn[ing] more Olympic medals"). FAC ¶207.

Plaintiffs have also alleged USOPC's participation in the Enterprise in part through its executive, Alan Ashley. Ashley became a high-ranking executive at USOPC in 2010, after having spent sixteen seasons with USSS, including as Vice-President. FAC ¶222-23. Ashley was close friends with Foley and attended social outings where "Foley would creepily watch young women, Team female athletes included, as they danced, frothing over them, and making crude comments about their bodies to their peers." *Id.* ¶75. As such, when Ashley was a powerful executive at USOPC, he "knew or should

-13-

have known about Foley's sexual abuse and had direct knowledge of the major red flags including the toxic culture, the sharing of rooms, and the hyper sexualized environment that included older men and young female athletes." *Id.* ¶223. As he did with Larry Nassar who sexually assaulted hundreds of victims, Ashley willfully failed to act on his knowledge regarding Foley's misconduct, thereby enabling and covering up his continued sexual abuse. *See id.* ¶225.

### D. Defendants Engaged in a Pattern of Racketeering.

Plaintiffs must demonstrate "[a] 'pattern of racketeering activity," which "requires at least two predicate acts of racketeering activity, as defined in 18 U.S.C. §1961(1), within a period of ten years." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008).

Defendant USOPC argues that Plaintiffs have not made their showing on the predicate acts. Mot. 14. Many of their arguments are addressed below in relation to claims based on the same predicate acts, with the exception of the ones we address here.  First, Defendants engaged in multiple instances of obtaining victims for the purpose of committing or conspiring to commit sex trafficking in violation of 18 U.S.C. §§1590, 1591, committed by USOPC and the Enterprise. In particular, Plaintiffs have alleged instances of recruiting, enticing, transporting, and providing Plaintiffs to Foley; the use of fraud, coercion and deceit to accomplish or attempt to accomplish the sex trafficking; the sex trafficking affected interstate or foreign commerce where the nature of the sport required athletes, coaches, and other Enterprise members to travel domestically and internationally (such as Switzerland); and the Foley sexual assaults and harassment were used as a means to coerce and control the athletes for the benefit of USSS and other members of the Enterprise to profit from the success of athletes.  Additionally, athletes appear in marketing campaigns that directly benefit USOPC.  The success of the athletes and the effort they put forth to win, result in a boom to USOPC every 4 years and for all the time in between.

Further, USSS's argument related to the Mann Act violations is that Plaintiff has not made the showing that the "purpose of the transportation" was for Foley to sexually abuse the Plaintiffs. *Id.* at 22. To be clear, the law does not require that the *sole* purpose of the transportation be criminal sexual activity. It cannot be denied that Plaintiff was transported to a location where neither her parents nor any other adult that would stop Foley from assaulting her was present. It is not a coincidence that Foleys sexual abuse of the Plaintiffs took place when traveling with the Team. Thus, one of the motivating purposes of the transportation in California was to engage in the criminal sexual activity. As to mail and wire fraud, it is a beyond reasonable inference that these athletes were lied to and that the Defendants made false promises to them—about their safety, fairness to compete, purpose for their travel, etc.—when getting Plaintiff to spend their money in traveling and supplies that benefitted USOPC, USSS, and Foley's success at the Olympics.

Here, the racketeering activity, which includes sexual abuse, sex trafficking, and a pervasive toxic sexually charged culture, even before discovery we know that Foley assaulted Lindsey in December of 2008 and Rosey was assaulted in 1994 and again in 1997. This represents a pattern and practice of the Defendant asserting his power and influence to gain unfettered access to women who are less than half his age. We have since learned that Foley has admitted to travelling with young female athletes to Fiji. Independently, we have learned that while on that trip, with athletes that he was responsible for evaluating and coaching, he took photographs when those athletes were not fully clothed.

**E. The FAC States an Undeniable Claim for TVPRA Beneficiary Liability.**

Under 18 U.S.C. §§1591(a), defendants are liable for sex trafficking if they "(1) knowingly benefited financially or by receiving anything of value (2) by participating in the sex trafficking venture (3) that [the defendants] knew or should have known was a

1  violation of the TVPRA." *J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *8 (N.D. Cal.
2  Aug. 20, 2020). Unlike §1591(a), defendants criminally liable under §1595(a) need only
3  have *constructive knowledge* that the venture in which they participated was engaging in
4  sex trafficking. *See Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1141 (9th Cir. 2022)
5  (emphasis added). Plaintiffs have adequately alleged facts supporting each element.

6      In particular, the FAC is replete with allegations supporting a finding of
7  constructive knowledge from the allegations related to Ashley discussed above as well
8  as the history and culture of underage drinking [FAC ¶¶129, 132], sharing bedrooms with
9  male and female coaches and athletes [FAC ¶¶60–61, 73, 163, 231(f)], and sexually
10 charged environment [FAC ¶¶78, 78, 122, 160–64].

11     "Participation in a venture" under §1595 includes "a showing of a continuous
12 business relationship between the trafficker and the [defendant] such that it would appear
13 that the trafficker and the [defendant] have established a pattern of conduct or could be
14 said to have a tacit agreement." *J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *9 (N.D.
15 Cal. Aug. 20, 2020); s*ee also J.M. v. Choice Hotels Int'l, Inc.*, 2022 WL 10626493, at *4
16 (E.D. Cal. Oct. 18, 2022) (finding the "participation in a venture" element satisfied by
17 proof that a hotel franchisor directly rented rooms to plaintiff's sex traffickers through
18 their control of the hotel booking and payment system). The allegations in the FAC
19 support a finding that USOPC gave Foley the opportunity to traffic young athletes who
20 trusted him and sought guidance from him, and legal precedence supports this
21 conclusion. *See Doe v. Mindgeek USA Inc.*, 558 F.Supp.3d 828, 838 (C.D. Cal. 2021)
22 (finding "sufficient facts to make it plausible that Defendants were aware of [violations
23 of TVPRA]" where Plaintiff alleged that Defendants "reviewed, approved, and uploaded
24 [violative content]," and failed to adequately monitor its platform).

25     Moreover, Plaintiffs have adequately alleged that USOPC benefitted from its
26 participation in the sex-trafficking venture from the retention of award-winning athletes
27 and keeping a successful head-coach of the U.S. Snowboarding Team. (*See* FAC ¶38
28

1  (Winter Olympics generated $7.2 Billion between 2017 and 2021); ¶¶48-54 (generating

2  power imbalance where USOPC becomes the monopsony on Olympic athlete labor)).

3  Indeed, Plaintiffs collectively have ranked within the top 3 in over 57 FIS-qualifying

4  races where USOPC directly benefitted in money and accolades when Plaintiffs

5  continued in the sport—despite its history, culture, and propensity for permitting a

6  sexually violent and harassing environment.

### 1.    Defendants Conspired to Commit Sex Trafficking Under the TVPRA.

9  Likewise, Plaintiffs have adequately alleged a conspiracy to commit sex

10  trafficking under 18 USC §§1594(c), 1595(a). Under 18 U.S.C. §1594, "anyone who

11  conspires with another to violate section 1951" is criminally liable for conspiracy to

12  commit sex trafficking. To prove the existence of a conspiracy, plaintiffs must show a

13  "meeting of the minds in an unlawful arrangement." The agreement does not need to be

14  an agreement to engage in sex trafficking but can be an agreement to financially benefit

15  from sex trafficking. *Fleites*, 617 F. Supp. 3d at 1163. Such an agreement can be inferred

16  based on the knowledge and conduct of the parties. *Id.* ("Visa's agreement to financially

17  benefit from child porn can be inferred from its decision to continue to recognize

18  MindGeek as a merchant despite allegedly knowing that MindGeek monetized a

19  substantial amount of child porn on its websites."). In viewing the relationship between

20  the parties as alleged in the FAC, there is a strong inference that USOPC knew, and clear

21  indication that USOPC should have known, of Foley's predatory behavior.  The FAC

22  alleges precisely such a conspiracy in detail:  Alan Ashley, former Vice President of

23  USSS and Chief of Sport Performance for USOPC was tasked with providing resources

24  to NGBs (including USSS), athletes, and coaches (FAC ¶221-23, 224); Ashley was a

25  social friend to Foley for over a decade and personally witnessed him invite young female

26  athletes he coached to bars and nightclubs and make crude comments on their bodies to

their peers. FAC ¶75.  Indeed, even after elevating to a position with USOPC—and still within the contractual confines of SafeSport's duty to report—never reported any of Foley's sexual misconduct.  FAC ¶¶175, 221, 221-23.

Moreover, decades of direct criticism of USOPC's monopolistic structure and history of public outcries and subsequent USOPC apologies *should have* informed USOPC of the sexual misconduct happening under its nose.  *See* FAC ¶46 (USOPC executive Malia Arrington declined the opportunity to publish a handbook regarding sexual abuse of athletes for fear the "handbook will increase the risk of liability"); ¶50-51 (USOPC fostered a culture of fear amongst young athletes that warranted a public apology in 2017); ¶53 (public white paper detailing how USOPC's monopolistic structure is the root cause of "sexual, physical, emotional, and financial abuse" suffered by Olympic-hopeful athletes); ¶55 (criticism of how USOPC's structure of having "people at higher levels who really, really want to win" aggravates a system "that is not great for protecting children."); ¶¶157, 225 (terminating USOPC executive Ashley after 2018 Ropes & Gray Report detailed his role in ignoring reports of sexual abuse as early as 2015 by Olympic doctor Larry Nassar).

Assuming these allegations are true, as required, once USOPC agreed with USSS and Foley to further his sex-trafficking venture in violation of the TVPRA, it became liable for Foley's actions in furtherance of the conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 647 (1946) (finding a party may, by virtue of being a party to a conspiracy, be held responsible for the actions of his "partner[s] in crime"). The same holds true here, where Foley coercively trafficked Plaintiffs and knew that he was trafficking them.  Thus, USOPC is properly subject to a civil claim for TVPRA conspiracy.

USOPC also claims that it "cannot be held liable as an alleged financial beneficiary under 15 U.S.C. § 1595(a) . . . [which] was amended on December 23, 2008 to create a civil cause of action." Mot. 20.  Just earlier this year, Congress affirmed that liability for attempt or conspiracy has *always been* a part of the statute when it passed the

-18-

*Abolish Trafficking Reauthorization Act of 2022*, P.L. 117-347, 136 Stat. 6199 (Jan. 5, 2023), which added a "technical and clarifying update to [the] civil remedy" provision in Section 1595. *Id.* § 102. Because Congress viewed this amendment as a "clarifying" amendment, it applies to this case even though it was passed after this lawsuit was filed. *Norsoph v. Riverside Resort & Casino, Inc.*, 2020 WL 641223, at *9 (D. Nev. Feb. 11, 2020) ("Clarifying legislation is not subject to any presumption against retroactivity and is applied to all cases pending as of the date of its enactment.") (cleaned up).

### F.  Plaintiffs Fully Allege Sexual Assault Claims.

This action is timely under the Act, which amended California Code of Civil Procedure Section 340, extending the statute of limitations and opening revival windows for adult survivors of sexual assault and related claims. §340.16 (adult victims); *see also* §340.1 (minor victims).  The Act is discussed in Plaintiff's Response to Defendant USSS' Motion to Dismiss so for efficiency sake, Plaintiffs do not repeat the background law again here. *See* ECF 88 at 20–21. As with USSS, because of USOPC's active attempts to cover up Foley's abuse, at least as far back as Rosey's sexual assault in 1994, and the ongoing trauma Plaintiffs suffered, Plaintiffs did not reasonably discover their injuries resulted from the abuse until recently.  Accessing the civil justice system allows victim-survivors an opportunity to seek accountability for the years of suffering caused by their abuse and a chance to take back the power they lost as a result of the sexual assault.

### 1.  Plaintiffs Properly Plead Sexual Assault Under §340.16

Under the "cover up" provision, the Act provides that Plaintiffs must allege: (1) that they were "sexually assaulted"; (2) that "[o]ne or more entities are legally responsible for damages arising out of the sexual assault"; and (3) that "[t]he entity or entities, including, but not limited to, their officers, directors, representatives, employees, or agents, engaged in a cover up or attempted a cover up of a previous instance or allegations of sexual assault by an alleged perpetrator of such abuse." §340.16(e)(2)(A)–(C). USOPC, devoting only one page, does not engage with the Act, other than to argue it "is

not 'legally responsible'" and that Plaintiffs do "not identify any 'previous instance or allegations of sexual assault.'" Mot. 23.

<u>Plaintiffs alleged all three elements</u>. *First*, Plaintiffs were all sexually assaulted— *undisputed*. *Second*, USOPC is legally responsible for damages stemming from the sexual assault, as USOPC is an *undisputed* entity under the Act. *See* Mot. 5. "Legally responsible means that the entity or entities are liable under any theory of liability established by statute or common law, including, but not limited to, negligence, intentional torts, and vicarious liability." §340.16(e)(4)(C). Plaintiffs demonstrate USOPC is legally responsible through negligence and vicarious liability. *See* FAC ¶¶375, 386, 397.

Particularly, that "USOPC. . . breached [its] duty of care" by, *inter alia*, "[f]ailing to protect Plaintiffs from sexual harassment and assault while travelling on behalf of USSS Team; [f]ailing to employ or retain suitable staff to whom it entrusted the care of their young, female athletes; [f]ailing to institute and enforce appropriate policies. . ." and "[f]ailing to investigate complaints of sexual assault and harassment." FAC ¶453. Additionally, Plaintiffs allege that "[a]s a direct and proximate result of the foregoing negligence of USOPC [], Plaintiffs were sexually harassed and sexually assaulted by Foley, other athletes, and USSS- and USOPC-approved coaches at various USSS- and USOPC-sponsored competitions." FAC ¶454. Because of USOPC's actions or inactions, Plaintiffs suffered "bodily injuries, pain and suffering, mental anguish, and loss of capacity for the enjoyment of life." *Id.* It follows that, not only have Plaintiffs properly stated claims rendering USOPC liable for damages arising from their assaults, but it is indeed liable.

*Third*, Plaintiffs sufficiently allege USOPC, including its employees, officers, directors, representatives, or agents "engaged in cover up or attempted a cover up of a previous instance or allegations of sexual assault by an alleged perpetrator of such abuse" as required by subsection (e). While the statute requires "a previous instance of sexual

1   assault" nothing in the statute requires that the previous instance not be that of the

2   plaintiff's own alleged abuse. Here, Plaintiffs allege that USSS, USOPC, and the

3   members of the Foley Sexual Abuse and Cover Up Enterprise ("the Enterprise") engaged

4   in efforts to cover up their abuse, including but not limited to Foley's first abuse of Rosey

5   in 1994. Moreover, Plaintiffs have alleged that Foley's misconduct was flagrant and

6   given that he was coaching years before Rosey's first sexual abuse it is a reasonable

7   inference that there are other victims.

8       Thus, as one of the entities responsible for the "cover up," USOPC is "legally

9   responsible" for damages arising out of Plaintiffs' injuries. And for the reasons explained

10  in Plaintiffs' Response to USSS's Motion to Dismiss, this also results in all related actions

11  being timely. *See* ECF 88 at 26.

12  **G. Plaintiffs Fully Allege a Negligence Claim.**

13      Plaintiffs properly state a claim for negligence. USOPC relies on *Brown v. USA*

14  *Taekwondo*, 11 Cal. 5th 204, 209 (2021) to say it cannot owe a duty to Plaintiffs. The

15  Court should reject these specious arguments as they ignore the differences in Plaintiffs

16  pleading to the pleading in *Brown*.

17      The Court of Appeal in *Brown* found that USA Taekwondo ("USAT"), but not

18  USOPC, had a special relationship with a coach who sexually abused the plaintiffs and,

19  thus, owed plaintiffs a duty to protect them from the coach's exploitation. *Brown v. USA*

20  *Taekwondo*, 40 Cal. App. 5th 1077, 1101 (2019) as modified on denial of reh'g (Nov. 6,

21  2019), aff'd, 11 Cal. 5th 204, 483 P.3d 159 (2021). The California Supreme Court later

22  affirmed the lower court's legal methodology—of using the factors outlined in *Rowland*

23  *v. Christian*, 69 Cal. 2d 108 (1968) ("*Rowland* Factors") as considerations to limit

24  liability and not as independent sources of liability—explicitly without affirming the

25  court's application of that factual test. *Brown*, 11 Cal. 5th 204 at 213 fn. 4. ("We express

26  no view on the merits of the Court of Appeal's application of the special relationship test

27

28

to either USAT or USOC. These fact-dependent issues fall outside the scope of the only question presented for our review.").

The pleadings in *Brown* are distinguishable from Plaintiffs' pleading here.  The plaintiffs in *Brown* only alleged USOPC had sufficient control over the abusive coach through USOPC's control over USAT. *Brown*, 40 Cal. App. 5th at 1102. Here, the FAC alleges much more than that. The FAC alleges that USOPC had direct control over placing and enforcing bans on Foley's participation in USOPC sponsored events. FAC ¶446. The FAC also alleges that USOPC had direct control over the conditions in which athletes traveled and participated in USOPC competitions, trainings, and events. *Id.* ¶¶36–37, 39.[7] Additionally, USOPC exerted its direct power and control over coaches and athletes when it enacted sweeping anti-doping regulations. *Id.* ¶43. This kind of direct control goes beyond what was alleged in *Brown* and sufficiently alleges control over Foley and dependance in the USOPC by Plaintiffs so as to establish special relationships and a duty to protect.

While, generally, one owes no duty to prevent or warn of dangerous conduct engaged in by third-parties, an exception exists where the defendant has a special relationship with either the dangerous third party or the victim-plaintiff. *Regents of Univ. of California v. Superior Ct.*, 4 Cal. 5th 607, 619 (2018) (holding that a university had a special relationship with students and, thus, had a duty of care to protect them from foreseeable harm during curricular activities). A special relationship exists where the plaintiff relies and depends on the defendant such that they have a right to expect the defendant's protection. *Regents*, 4 Cal. 5th at 619. In *Regents*, the California Supreme

---

[7] USOPC also had direct control and say over evaluating Olympic athletes.  FAC ¶41 ("Indeed, the USOC's focus on athletic and monetary success was such that a former USOC executive recalled that the words 'money and medals' were probably uttered at every staff meeting, typically more than once, with the effect of marginalizing other topics such as athlete programming. As a result, the USOC evaluated athletes much like a professional sports organization or any other company evaluating assets and examined the return in athletic success on its monetary investments.") (citing the R&G Report).

Court discussed the common hallmarks of a special relationship, explaining that, "[g]enerally, the relationship has an aspect of dependency in which one party relies to some degree on the other for protection." *Id.* at 620. The Court further explained, "[t]he corollary of dependence in a special relationship is control. Whereas one party is dependent, the other has superior control over the means of protection..." and that "a typical setting for the recognition of a special relationship is where the plaintiff is particularly vulnerable and dependent upon the defendant who, correspondingly, has some control over the plaintiff's welfare." *Id.* at 621. Lastly, the Court noted that "many special relationships especially benefit the party charged with a duty of care." *Id.* Applying these considerations, the *Regents* Court held that a university had a special relationship with its students because university students were "dependent on their college communities to provide structure, guidance, and a safe learning environment" and that universities "have superior control over the environment and the ability to protect students." *Id.* at 625.

Here, USOPC had both (1) a special relationship with its Team athletes and (2) a special relationship with Foley, the head coach that they paid via USSS, licensed to coach, and supervised.

First, USOPC had a special relationship with the Plaintiffs, their Olympic athletes. Here, as USOPC noted in its motion, "USOPC's fundamental statutory role with respect to the NGBs (apart from selecting which organizations to certify as NGBs) is to ensure that (1) the NGB's **procedures for selecting the Olympic,** Paralympic, Pan-American, and Parapan American **athletes are fair** and provide individuals with an equal opportunity to participate in those games, and (2) the **NGBs have policies in place concerning, for example, athlete safety** and governance." Mot. at 3–4 (citing 36 U.S.C. §§ 220521(a), 220522(8) & (15), 220505(d) (emphasis added). Having these statutory obligations alone support a special relationship but the FAC alleges more.

The FAC alleges that young female snowboarders were vulnerable and reliant

upon coaches and staff who had outsized control over the athletes lives and wellbeing. FAC ¶2 ("[a]thletes, especially elite athletes, are uniquely vulnerable to abuse because, among other things, athletes want and need the approval of their coaches."); *id.* ("[c]oaches are the gatekeepers to an athlete's success and have tremendous power over an athlete's future. Founding coaches of a sport, as is Foley to snowboarding, yield a level of power that can be career ending for an athlete if they do not comply with the coach's demands."); *id.* ¶51 ("The vulnerability of young athletes aspiring to be Olympians has been widely documented. . .USOPC fosters a culture of fear in which child athletes are conditioned to never question adults. If we didn't weigh what they wanted, eat what they wanted, look the way they wanted, then they could take our spot away…. We were kids. That's all we knew. We didn't know it could be any different."). USOPC also reaped significant benefit from the hard work and talent of athletes competing for the Team. *Id.* ¶¶41, 48–55. These athletes, thus, had a right to expect protection from USOPC.

Second, USOPC had a special relationship with Foley, the head coach that they paid via USSS, licensed to coach, and supervised. The duty to protect from dangerous third parties will also arise where a defendant has a special relationship with that dangerous third party.  USOPC had the power to make the only decision that mattered to Peter Foley as a coach of the U.S. Snowboarding Team and that is whether or not he coached the Team in the Olympics.  It is beyond a reasonable inference that if USOPC had barred Foley from the Olympics that USSS would have looked for a new head coach of the U.S. Snowboarding Team.

Where a special relationship is found, a court can limit that duty only if, applying the *Rowland* factors, it determines that public policy weighs against holding the defendant culpable. *See Brown v. USA Taekwondo*, 11 Cal. 5th 204, 209 (2021). The *Rowland* factors fall into two general categories. The first, concerning "foreseeability and the related concepts of certainty and the connection between plaintiff and defendant." *Regents*, 4 Cal. 5th at 629. The second considers, "public policy concerns of moral blame,

-24-

1    preventing future harm, burden, and insurance availability." *Id.* Ultimately, "[t]he policy

2    analysis evaluates whether certain kinds of plaintiffs or injuries should be excluded from

3    relief." *Id.* Here, neither group counsels in favor of excluding athletes from relief for

4    sexual abuse.

5         Plaintiffs' abuse—and sexual abuse of athletes in Olympic sports—was and is

6    foreseeable. First, Foleys specific behavior known and foreseeable, especially given the

7    well-known toxic culture and lack of proper boundaries enforced within USSS. FAC

8    ¶¶75, 175, 221–23. Further, USOPC has been aware of sexual abuse of athletes

9    competing in Olympic sports for decades—including, notably, the Larry Nassar scandal

10    which made international news and prompted USOPC itself to commission an

11    independent investigation into its organizational failures. *See* FAC at ¶ 44. In 2011,

12    NGBs also suggested that USOPC publish a handbook with training on avoiding and

13    addressing sexual abuse, known to be rampant across sports, but USOPC attempted to

14    block its publication for fear of increasing the perception that it might be liable for such

15    abuse. *See id.* at ¶ 46. Incredibly, despite decades of known reports of abuse, USOPC still

16    argues that abuse in Olympic sports is unforeseeable. USOPC wants to have it both ways,

17    claiming that it is at the forefront of athlete safety with SafeSport, yet maintaining shock

18    that any athletes have suffered abuse in its programs.

19         Moreover, under the guidance of moral blame, Plaintiffs urge the Court to consider

20    the strong possibility of future harm and aim to prevent it. In finding that the *Rowland*

21    factors did not counsel in favor of limiting USAT's duty to protect athletes from sexual

22    abuse by their coach, the *Brown* court explained that, "[w]e also consider the policy of

23    preventing future harm, which is ordinarily served, in tort law, by imposing the costs of

24    negligent conduct upon those responsible. The policy question is whether that

25    consideration is outweighed, for a category of negligent conduct, by laws or mores

26    indicating approval of the conduct or by the undesirable consequences of allowing

27    potential liability." *Brown*, 40 Cal. App. 5th at 1100 (citing *Regents*, 4 Cal.5th at 632

28

-25-

["finding of duty served policy of preventing future harm because imposing a duty would create incentives that '[o]n the whole ... avert violent episodes']) (internal quotation marks omitted). USOPC fails to identify any "laws or mores" that approve allowing the systematic failures to protect athletes endemic to Olympic sports to continue, or undesirable consequences of imposing liability sufficient to outweigh the prevention of future harm. *See id.*

As explained by the *Brown* court, "the societal goal of safeguarding youth athletes from sexual abuse weighs in favor of imposing a duty on USAT to implement and enforce policies and procedures to protect the athletes. USAT is in the best position to take steps to protect youth athletes who attend Olympic taekwondo competitions alone with their coaches." *Brown*, 40 Cal. App. 5th at 1100. Like USAT, USSS has the power and ability to implement and enforce policies to protect athletes from the type of abuse suffered by Plaintiffs. USOPC argues that imposing liability would be too burdensome for it, because it would have to continually monitor coaches across each sport. *See* Mot. 27–28. USOPC ignores, however, that it can and *has* implemented nationwide safety procedures when it wanted to—e.g., it's strict and comprehensive policies surrounding drug use. *See* FAC ¶43. The burden on USOPC of implementing common sense safety procedures, including more closely training coaches and NGBs on identifying, addressing, and preventing sexual abuse of athletes, does not outweigh the massive social benefit of preventing abuse that's clearly endemic to Olympic sports. USOPC has been aware of this conduct, through executives like Ashley and others, for decades. *See Mountain Copper Co. v. Welcome Growers Gin Co.*, 197 Cal. App. 2d 253, 256 (Ct. App.

1961) ("Knowledge acquired by an agent while acting within the course and scope of his employment is chargeable to his principal, his employer.").[8]

### H. Plaintiffs' Fully Allege that USOPC Engaged in Negligent Supervision and Retention.

Plaintiffs' claims for negligent supervision and retention are properly maintained. Contrary to USOPC's assertions otherwise, Foley was an agent of USOPC, as pled. *See* Mot. 28. Specifically, Plaintiffs plead that USOPC had the responsibility to "oversee and discipline the coaches under its control," which it did when, "USOPC 'temporarily suspended' Foley during the Olympics following [Callan's] post." FAC ¶¶47, 151; *see also id.* at ¶37 (USOPC had power to determine which coaches could attend the Olympics); *id.* at ¶39 (USOPC controlled and granted funding for athletes and coaches travel to USOPC sponsored events).

USOPC ignores Plaintiffs' factual allegations of its direct control over Foley, addressing them only in a footnote and attempting to cast USOPC's control to discipline Foley as a merely temporary power in response to reports of misconduct. Mot. 25, fn. 8. That USOPC has the power to respond to misconduct after reports of misconduct are filed does not negate the plausibly pled facts that USOPC had, at any time, the power to suspend Foley in response to a such a report, the power to grant Foley access to USOPC sponsored events and facilities, and controlled funding for athletes and coaches at the same events and facilities. *See* FAC ¶¶47, 37, 39, 151.

California courts have upheld findings of agency relationships, even where there

---

[8] USOPC is additionally negligent because it knowingly placed Plaintiffs in foreseeably dangerous situations—like alcohol fueled and sexually charged parties and co-ed hotel beds—with Foley and other bad actors, thus, exposing them to the risk of the exact abuse they suffered. *See Doe 1 v. Deutsche Bank Aktiengesellschaft*, No. 22-CV-10018 (JSR), 2023 WL 3167633, at *16 (S.D.N.Y. May 1, 2023) (citing Restatement (Third) of Torts: Phys. & Emot. Harm § 19 (2010)) ("The conduct of a defendant can lack reasonable care insofar as it foreseeably combines with or permits the improper conduct of the plaintiff or a third party. . . . If the third party's misconduct is among the risks making the defendant's conduct negligent, then ordinarily plaintiff's harm will be within the defendant's scope of liability.").

is no strict employee-employer relationship, where there is similar evidence of the principal's control over the agent. *See Secci v. United Independant Taxi Drivers, Inc.*, 8 Cal. App. 5th 846, 862 (2017) (finding substantial evidence that Taxi company controlled non-employee drivers, including requiring drivers to follow company policies, maintaining the power to discipline and fire drivers, and providing a training manual).[9] Here, Plaintiffs' well pled allegations support a claim the Foley was USOPC's agent and, thus, support the FAC's claims for negligent supervision and retention.

## I.  Plaintiffs Fully Allege Intentional Infliction of Emotional Distress.

USOPC also challenges the adequacy of Plaintiffs' claims against them for intentional infliction of emotional distress ("IIED"). USOPC argues that (1) its conduct was not extreme and outrageous, and (2) USOPC had no knowledge of Foley's abuse. Both points are contrary to the clear facts pled in the FAC.

The elements of IIED are (1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). USOPC's conduct in facilitating and concealing Defendants' trafficking, along with the overt cover-up of Foley's sexual abuse, was extreme and outrageous, and caused Plaintiffs severe emotional distress.

USOPC argues that its behavior was not outrageous because it was not "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Mot. 29. However, in a complaint nearing almost 500 paragraphs, there is an extensive outline of extreme and outrageous conduct that caused Plaintiffs emotional distress—namely, the efforts to further a long running sex-trafficking scheme and assistance in covering it up. Outrageous behavior is also that which: "(1) abuses a relation or position which gives

---

[9] USOPC recognized that training manuals can be evidence of an agency relationship when it actively attempted to block the publication of a training handbook aimed at preventing sexual abuse of athletes because, "there is [] a perception that publishing the handbook will increase the risk of liability." *See* FAC ¶46.

1   him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to
2   injuries through mental distress; or (3) acts intentionally or unreasonably with the
3   recognition that the acts are likely to result in illness through mental distress." *C.B. v.*
4   *Moreno Valley Unified Sch. Dist.*, 544 F. Supp. 3d. 973, 995 (C.D. Cal. 2021). The FAC
5   is replete with well-plead allegations that USSS used its tremendous power to abuse and
6   assert control over athletes.

7        Specifically, Plaintiffs plead that athletes are in a vulnerable position because,
8   "[a]thletes, especially elite athletes, are uniquely vulnerable to abuse because, among
9   other things, athletes want and need the approval of their coaches." FAC ¶2. Further,
10  Plaintiffs plead that, "[c]oaches are the gatekeepers to an athlete's success and have
11  tremendous power over an athlete's future. Founding coaches of a sport, as is Foley to
12  snowboarding, yield a level of power that can be career ending for an athlete if they do
13  not comply with the coach's demands." *Id.* Plaintiffs plead that Foley's power was
14  extensive and extended into USSS operations and the broader snowboarding community.
15  *Id.* ¶¶59–67. Additionally, "[t]he vulnerability of young athletes aspiring to be Olympians
16  has been widely documented" by other Olympic athletes, one of whom Plaintiffs quote,
17  explaining that "USOPC fosters a culture of fear in which child athletes are conditioned
18  to never question adults. If we didn't weigh what they wanted, eat what they wanted, look
19  the way they wanted, then they could take our spot away…. We were kids. That's all we
20  knew. We didn't know it could be any different." *Id.* ¶51. As Plaintiffs' have pled, "Foley
21  abused his position of power in the snowboarding community to garner loyalty and trust
22  while instilling fear and intimidation" and that, "Foley did so all while USSS and USOPC
23  shielded him, disregarded allegations, and failed to protect the female athletes of their
24  organizations." *Id.* ¶11. This abuse of power against vulnerable athletes was extreme and
25  outrageous. *C.B.*, 544 F. Supp. 3d. at 994–95 (finding that a school resource officer knew
26  or should have known that a young student with disabilities was vulnerable to his excess
27  power).

28

Further, the Court of Appeal in *Brown* recognized that, "[t]o the extent USAT did not protect plaintiffs from [the coach] after learning [of abuse allegations], that could potentially support a claim against USAT for the [IIED]." *Brown*, 40 Cal. App. 5th at 1109. As noted above, USOPC was aware of Foley's perversions and misconduct for decades and, yet, allowed him to continue coaching and exercising near plenary power over athletes' careers. *See* § H, *supra*. Despite knowledge of Foley's perversions, USOPC continued to facilitate Foley's access to young vulnerable athletes in an environment ripe for abuse. These acts were *at least* acts taken "unreasonably with the recognition that the acts are likely to result in illness through mental distress." *See C.B.*, 544 F. Supp. 3d. at 994.

## **CONCLUSION**

For the foregoing reasons, Defendant USOPC's Motion to Dismiss Plaintiffs' First Amended Complaint should be denied.

Dated: August 25, 2023            Respectfully submitted,

                                  **BOIES SCHILLER FLEXNER LLP**

                                  By: */s/ Alison L. Anderson*
                                      Alison L. Anderson
                                      *alanderson@bsfllp.com*
                                      California Bar No. 275334
                                      725 S Figueroa St, 31st Floor
                                      Los Angeles, CA 90017
                                      Telephone: (213) 995-5720
                                      Facsimile: (213) 629-9022

                                      Sigrid S. McCawley
                                      *smccawley@bsfllp.com*
                                      Florida Bar No. 129305
                                      Alisha Moriceau
                                      *amoriceau@bsfllp.com*
                                      Florida Bar No. 1011395
                                      401 E. Las Olas Blvd., Suite 1200

Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Kenya K. Davis
*kdavis@bsfllp.com*
Washington DC Bar No. 502305
1401 New York Ave., NW
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile:  (202) 237-6131

Erica N. Sweeting
*esweeting@bsfllp.com*
New York Bar No. 5517768
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

Mariah J. Noah
*mnoah@bsfllp.com*
California Bar No. 339658
44 Montgomery St, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Rosey Fletcher, Erin O'Malley, and Callan Chythlook-Sifsof, certifies that this brief contains 30 pages, which complies with the page limit set by the Court's June 28, 2023 Order.

*/s/ Alison L. Anderson*
Alison L. Anderson

OPPOSITION TO DEF. USOPC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 23-cv-00803-SPG-JPR