Lindsey Barnhart (Bar No. 294995)
lbarnhart@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800

Kevin Hoogstraten (Bar No. 333533)
khoogstraten@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749

Attorneys for Defendant
UNITED STATES OLYMPIC
& PARALYMPIC COMMITTEE

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEY FLETCHER, ERIN O'MALLEY, AND CALLAN CHYTHLOOK-SIFSOF, <br><br> Plaintiffs, <br><br> vs. <br><br> PETER FOLEY, GALE "TIGER" SHAW III, UNITED STATES SKI & SNOWBOARD, AND UNITED STATES OLYMPIC AND PARALYMPIC COMMITTEE, <br><br> Defendants. | Civil Case No.: 2:23-cv-00803 <br><br> **DEFENDANT UNITED STATES OLYMPIC AND PARALMPIC COMMITTEE'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(b)(2) AND 12(b)(6)** <br><br> Hearing Date:  October 25, 2023 <br> Time:  1:30 p.m. <br> Judge:  Hon. Sherilyn Peace Garnett <br> Courtroom:  5C |

## TABLE OF CONTENTS

I.   ARGUMENT ........................................................................................... 1

    A.   **The USOPC Is Not Subject to Personal Jurisdiction in California.**
    ........................................................................................................ 1

        1.   This Court Lacks Specific Personal Jurisdiction over the USOPC. ...................................................................................... 1

        2.   This Court Lacks General Personal Jurisdiction over the USOPC. ...................................................................................... 3

        3.   RICO's Nationwide Service Provision Does Not Confer Jurisdiction Over the USOPC. .................................................. 4

        4.   Jurisdictional Discovery Is Not Warranted. ............................... 5

    B.   **The Court Should Dismiss All Causes of Action Pursuant to Federal Rule of Civil Procedure 12(b)(6).** ......................................... 5

        1.   The FAC Fails to State a Claim Under the RICO Act (Claim 1). ........................................................................................... 6

        2.   The FAC Fails to State a Claim Under the Trafficking Victims Protection Act (Claims 3, 5, and 7). .......................................... 9

        3.   The FAC Fails to State a Conspiracy to Sex Trafficking and Forced Labor Claim (Claim 8). ................................................. 11

        4.   The FAC Fails to State a Sexual Assault Claim (Claims 11, 12, 13). ........................................................................................... 11

        5.   The FAC Fails to State a Claim for Negligence or Negligent Supervision (Claims 19, 20). .................................................... 12

        6.   The FAC Fails to State an Intentional Infliction of Emotional Distress Claim (Claim 21). ..................................................... 15

II.  CONCLUSION .................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron v. Aguirre*,
  2007 WL 959083 (S.D. Cal. Mar. 8, 2007) .........................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................1, 7

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
  874 F.3d 1064 (9th Cir. 2017) ...........................................................................1

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
  2020 WL 4368214 (N.D. Cal. July 30, 2020) .........................................................9

*Barantsevich v. VTB Bank*,
  954 F. Supp. 2d 972 (C.D. Cal. 2013) .................................................................4

*Barenborg v. Sigma Alpha Epsilon Fraternity*,
  33 Cal. App. 5th 70 (2019) ...........................................................................13

*Berg v. First State Ins. Co.*,
  915 F.2d 460 (9th Cir. 1990) ......................................................................4, 6, 8

*Brown v. USA Taekwondo*,
  40 Cal. App. 5th 1077 (2019), *aff'd*, 11 Cal. 5th 204 (2021) .................12, 14, 15

*Cahen v. Toyota Motor Corp.*,
  147 F. Supp. 3d 955 (N.D. Cal. 2015) .................................................................4

*Caldrone v. Circle K Stores, Inc.*,
  2021 WL 6496746 (C.D. Cal. Aug. 2, 2021) .........................................................4

*CAO Lighting, Inc. v. Signify N.V.*,
  628 F. Supp. 3d 996 (C.D. Cal. 2022) .................................................................5

*Cobb v. JPMorgan Chase Bank, N.A.*,
  2012 WL 5335309 (N.D. Cal. Oct. 26, 2012) .........................................................7

*Corcoran v. CVS Health Corp.*,
  169 F. Supp. 3d 970 (N.D. Cal. 2016).................................................................4

*Core-Vent Corp. v. Nobel Indus. AB*,
   11 F.3d 1482 (9th Cir. 1993) ...................................................................3

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)...................................................................................3

*Delfino v. Agilent Techs., Inc.*,
   145 Cal. App. 4th 790 (2006) ................................................................12

*Diaz v. Gates*,
   420 F.3d 897 (9th Cir. 2005) ...................................................................7

*Doan v. Singh*,
   617 F. App'x 684 (9th Cir. 2015) ...........................................................8

*Doe v. Geller*,
   533 F. Supp. 2d 996 (N.D. Cal. 2008) ....................................................3

*Doe v. Mindgeek USA Inc.*,
   558 F. Supp. 3d 828 (C.D. Cal. 2021) ..................................................10

*Doe v. Piraino*,
   2023 WL 5310556 (M.D. Tenn. Aug. 17, 2023) ..................................10

*Grotius v. Riverside Cnty.*,
   2011 WL 2560245 (C.D. Cal. May 25, 2011) .........................................7

*Guerrero v. Gates*,
   442 F.3d 697 (9th Cir. 2006) ...................................................................7

*Handsome Music, LLC v. Etoro USA LLC*,
   2020 WL 8455111 (C.D. Cal. Dec. 17, 2020) .........................................3

*Harper v. Cherry*,
   2021 WL 2168958 (C.D. Cal. Apr. 22, 2021) .........................................6

*Hughes v. Pair*,
   46 Cal. 4th 1035 (2009) .........................................................................15

*J. B. v. G6 Hosp., LLC*,
   2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ......................................10

*J.M. v. Choice Hotels Int'l, Inc.*,
   2022 WL 10626493 (E.D. Cal. Oct. 18, 2022)..................................10, 11

*Jensen v. U.S. Tennis Ass'n*,
    2020 WL 6445117 (D. Kan. Oct. 30, 2020) .................................................................9, 11

*Kellytoy Worldwide, Inc. v. Jay at Play Int'l Hong Kong Ltd.*,
    2019 WL 8064196 (C.D. Cal. Dec. 5, 2019) ...............................................................5

*Margaret W. v. Kelley R.*,
    139 Cal. App. 4th 141 (2006) ...............................................................9

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) ...............................................................3

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ...............................................................5

*Riot Games, Inc. v. John Does 1-10*,
    2022 WL 18358951 (C.D. Cal. Feb. 2, 2022) ...............................................................2

*Shaw v. Nissan N. Am., Inc.*,
    220 F. Supp. 3d 1046 (C.D. Cal. 2016) ...............................................................8

*Skout, Inc v. Jen Processing, Ltd*,
    2015 WL 224930 (N.D. Cal. Jan. 15, 2015)...............................................................2

*Smith v. Nerium Int'l, LLC*,
    2018 WL 6444898 (C.D. Cal. Nov. 7, 2018) ...............................................................5

*Steinborn v. Himmel*,
    9 A.D.3d 531 (N.Y. App. Div. 2004) ...............................................................9

*United States v. Flucas*,
    22 F.4th 1149 (9th Cir. 2022) ...............................................................9

*Vernon Aviation, LLC v. Lone Sky Aero Advisors, LLC*,
    2022 WL 17371080 (C.D. Cal. Sept. 9, 2022) (Garnett, J.)...............................................................6

*Walden v. Fiore*,
    571 U.S. 277 (2014).................................................................2

*Young v. Schultz*,
    2023 WL 1784758 (N.D. Cal. Feb. 6, 2023) ...............................................................7

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
    601 F. Supp. 3d 625 (C.D. Cal. 2022) .................................................................4

iv

**Statutes**

18 U.S.C. § 1595(a) ...........................................................................10

18 U.S.C. § 1965(b) ...........................................................................4

22 U.S.C. § 220505(c)(5)....................................................................13

36 U.S.C. § 220522(5) ........................................................................13

Cal. Civ. Proc. Code  § 340.16 ........................................................11, 12

Plaintiffs' Opposition to the USOPC's Motion to Dismiss (ECF 89; "Opposition" or "Opp'n") relies on sweeping conclusory and speculative statements untethered from any plausible factual allegations. Such statements are insufficient to establish personal jurisdiction over the USOPC or to satisfy the *Iqbal* pleading standard. The USOPC's Motion to Dismiss (ECF 80; "Motion" or "Mot.") should be granted.

## I.     ARGUMENT

### A.     The USOPC Is Not Subject to Personal Jurisdiction in California.

#### 1.     This Court Lacks Specific Personal Jurisdiction over the USOPC.

The USOPC is not subject to specific personal jurisdiction because the First Amended Complaint ("FAC") is devoid of factual allegations establishing that the alleged claims "arise out of or relate to" contacts between the USOPC and California. *See* Mot. at 15–17[1]; *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067–68 (9th Cir. 2017). Confirming this, the Opposition does not cite to a single allegation in the FAC to support its bare assertion that "Plaintiffs' claims arise from USOPC's California conduct." Opp'n at 14–15. Worse, the Opposition mischaracterizes and contradicts the allegations in the FAC, speculating for the first time that an alleged assault on Plaintiff Fletcher "would have possibly been avoided" had the USOPC instituted certain protocols in relation to a training camp in California. *Id.* at 15. The Opposition does not mention that the training camp at issue happened at a *USSS* "official training site," not at any venue operated or controlled by the USOPC. FAC ¶¶ 19, 85. And the Opposition further omits that the alleged assault did not occur at the training camp, or even in the State of California. *See id.* (alleging that assault occurred over 150 miles away at a hotel in Reno, Nevada, after the conclusion of the training camp). There is no allegation that the USOPC's purported contacts in California had anything to do with that training camp or alleged assault outside of the state.

Nor can the Court exercise personal jurisdiction over the USOPC based on Plaintiffs' or Foley's travel or activities within the state, independent of any contacts by the USOPC.

---

[1] All citations to filings on the docket refer to ECF page numbering.

1

*See* Opp'n at 12–13 (claiming that "Plaintiffs also unquestionably suffered harm in California . . . whenever they were around Foley and subject to the environment of abuse he created[.]").  The Supreme Court "ha[s] consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014).  "[P]laintiff cannot be the only link between the defendant and the forum.  Rather, it is the *defendant's conduct* that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."  *Id.* at 285–86 (emphasis added).

The cases cited in the Opposition (Opp'n at 13–14) reinforce the lack of specific personal jurisdiction over the USOPC here.  In *Riot Games, Inc. v. John Does 1-10*, 2022 WL 18358951, at *1 (C.D. Cal. Feb. 2, 2022), the defendants purportedly used "emails, chats, and texts" to target California residents and offer them fake employment at a California corporation by conducting fake interviews through chat platforms and instructing victims to send money to purchase equipment, and the alleged claims directly arose from those California-targeted communications.  Similarly, in *Skout, Inc v. Jen Processing, Ltd*, 2015 WL 224930, at *1 (N.D. Cal. Jan. 15, 2015), the plaintiff's claims arose directly from the defendant's alleged "spamming" of a California company's website and its users, many of which were California residents.  In both of those cases, unlike here, the alleged claims directly arose from the defendant's purported forum contacts.[2]

Finally, because the first two prongs of the specific jurisdiction test are not met, the Court need not consider whether the exercise of personal jurisdiction over the USOPC is "reasonable."  Mot. at 16 n.1.  Regardless, the Opposition's arguments on this point (Opp'n at 15) are unavailing.  Contrary to the Opposition's assertion, California has a limited, if any, interest in adjudicating alleged sexual abuse that occurred out of state and, for Fletcher

---

[2] The Opposition also cites *Shields v. Fed'n Internationale de Natation*, but that case involved an antitrust claim, which is governed by an entirely different standard.  *See* 419 F. Supp. 3d 1188, 1201–02 & n.8 (N.D. Cal. 2019) (under the Sherman Act, "the relevant forum for the Court's jurisdictional analysis in these antitrust actions is the United States as a whole, and not merely California.").

and Cythlook-Sifsof, involved non-residents.  *See id.*; *Doe v. Geller*, 533 F. Supp. 2d 996, 1008 (N.D. Cal. 2008) ("Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished.") (quoting *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 114 (1987)).  And the Opposition's statement that "California is the most efficient jurisdiction as there are many California state law claims" is both wrong and irrelevant.  Opp'n at 15.  California state law likely will not apply for the same reasons specific personal jurisdiction is lacking.  In any event, this factor looks at the location of evidence and witnesses, not the asserted governing state law.  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).  Last, it is Plaintiffs' burden to establish that no other alternative forum exists for Plaintiff's claims against the USOPC. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993).  The Opposition does not dispute that Colorado, where the USOPC is headquartered, is such a forum.

2.   This Court Lacks General Personal Jurisdiction over the USOPC.

General personal jurisdiction over the USOPC is also plainly lacking.  The Supreme Court has held that "a corporation's continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity."  *Daimler AG v. Bauman*, 571 U.S. 117, 132 (2014)[3]; *see also id.* at 137–38 (calling the exercise of general jurisdiction "in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business'" "unacceptably grasping").  "The exceptional case"—where the forum is not the place of incorporation or principal place of business—"centers upon whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State, not whether the contacts are merely continuous and systematic."  *Handsome Music, LLC v. Etoro USA LLC*, 2020 WL 8455111, at *4 (C.D. Cal. Dec. 17, 2020).

The isolated contacts identified in the Opposition between the USOPC and California are plainly inadequate under the exacting general personal jurisdiction standard.

---

[3] All internal citations are omitted unless otherwise noted.

Numerous courts have held that in-state activities of a far greater degree, standing alone, do not render a defendant subject to general jurisdiction. *See, e.g.*, *Caldrone v. Circle K Stores, Inc.*, 2021 WL 6496746, at *4 (C.D. Cal. Aug. 2, 2021) ("Even if . . . Circle K conducts extensive business in California, have a regional office in the state, and '80-90 percent of the profits on wholesale fuels' for Circle K are generated in California, that is insufficient to show that a national brand with many business units like Circle K is 'at home' in California.") (emphasis omitted); *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 980–81 (N.D. Cal. 2016) ("Plaintiffs' contention that CVS Health has a substantial number of pharmacies, maintains two distribution centers, and solicits employees in California is not persuasive."); *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 963–64 (N.D. Cal. 2015) (no general jurisdiction over defendant car manufacturer with 302 employees in California and over one hundred thousand cars registered in California in the past year). Even if the allegations regarding the USOPC's forum contacts were true,[4] they are insufficient to show that the USOPC is "at home" in California.

        3.     <u>RICO's Nationwide Service Provision Does Not Confer Jurisdiction Over the USOPC.</u>

The Opposition to USSS's Motion to Dismiss (ECF 88) asserts that 18 U.S.C. § 1965(b) provides jurisdiction over all defendants in this case. This assertion fails for two reasons. *First*, the FAC fails to state a RICO claim, and therefore Plaintiffs cannot rely upon RICO's nationwide service provision to confer jurisdiction. *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 697 (C.D. Cal. 2022); *see* Mot. at 19–26; Part I.B.1, *infra*. *Second*, to rely on § 1965(b), Plaintiffs must establish that at least one defendant is subject to personal jurisdiction in this district court. *See Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 989 (C.D. Cal. 2013). As detailed in the USOPC's Motion

---

[4] The Opposition incorrectly asserts, without citation, that the "USOPC directly owns and operates an Olympic training facility in Chula Vista, California." Opp'n at 17. Since 2017, the Chula Vista site has been owned and operated by the City of Chula Vista. *See* City of Chula Vista, *Chula Vista Elite Training Center*, https://www.chulavistaca.gov/departments/city-manager/cveatc.

(Mot. at 14–17); Part I.A.1-2, *supra*; Foley's Motion to Dismiss (ECF 78); and USSS's Motion to Dismiss (ECF 88); the FAC fails to establish that this Court has personal jurisdiction over any Defendant.

### 4. Jurisdictional Discovery Is Not Warranted.

"[A] party seeking jurisdictional discovery must present at least a 'colorable basis' that jurisdiction exists." *Kellytoy Worldwide, Inc. v. Jay at Play Int'l Hong Kong Ltd.*, 2019 WL 8064196, at *7 (C.D. Cal. Dec. 5, 2019); *see also CAO Lighting, Inc. v. Signify N.V.*, 628 F. Supp. 3d 996, 1005 (C.D. Cal. 2022) ("[A] court may deny a request for jurisdictional discovery if the requesting party does not demonstrate facts sufficient to constitute a basis for jurisdiction."). "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006). As discussed in the Motion and Part I.A.1-2, *supra,* the FAC fails to establish a colorable basis for jurisdiction over the USOPC, and so jurisdictional discovery is not warranted. Tellingly, the Opposition does not even attempt to justify the request for such discovery because there is no basis for it. Opp'n at 17–18; *see Smith v. Nerium Int'l, LLC*, 2018 WL 6444898, at *6 (C.D. Cal. Nov. 7, 2018) (denying jurisdictional discovery where "plaintiffs fail[ed] to identify any specific reason explaining why such discovery is necessary or what specific evidence they hope[d] to obtain through the proposed discovery").

### B. The Court Should Dismiss All Causes of Action Pursuant to Federal Rule of Civil Procedure 12(b)(6).

In response to the USOPC's argument that the FAC is comprised of "labels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement," *see, e.g.*, Mot. at 17–19, the

Opposition puts forward more of the same.[5]  The Opposition also ignores the USOPC's argument that the FAC is replete with improper "[u]ndifferentiated pleading against multiple defendants." *Aaron v. Aguirre*, 2007 WL 959083, at *16 n.6 (S.D. Cal. Mar. 8, 2007); *see* Mot. at 18–19.  By not addressing this issue, the Opposition concedes the FAC does not comply with Rule 8(a)(2).  *See Vernon Aviation, LLC v. Lone Sky Aero Advisors, LLC*, 2022 WL 17371080, at *9 (C.D. Cal. Sept. 9, 2022) (Garnett, J.) ("Because Plaintiff does not oppose Defendant's argument, the Court finds that Plaintiff concedes this point for purposes of this Motion [to dismiss].").  All of the FAC's claims should be dismissed.

        1.   <u>The FAC Fails to State a Claim Under the RICO Act (Claim 1).</u>

            *a)*   *The FAC Fails to Allege RICO Standing.*

Plaintiffs lack standing to pursue a RICO claim.  *See* Mot. at 19–21.  Indeed, the Opposition admits that Plaintiffs seek physical and emotional distress damages (Opp'n at 18), which are "not compensable under section 1964(c) of RICO." *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990).  While the Opposition claims that the alleged RICO damages are "in large part due to the Enterprise precluding [Plaintiffs] from seeking legal recourse against Enterprise members," Opp'n at 18, the FAC fails to allege *any* actions taken by the USOPC or its employees to prevent Plaintiffs from reporting Foley's alleged abuse.  Rather, these actions were allegedly limited to employees of USSS.  FAC ¶¶ 176–86.  Moreover, the FAC does not identify even one sponsor Plaintiffs allegedly lost as a result of the Enterprise's alleged conduct.  *See* Mot. at 20–21; *see also* Opp'n at 19.  No "discovery [or] expert examination" is required to identify the names of sponsors with

---

[5] The Opposition also improperly introduces new assertions that are not in the FAC.  *See, e.g.*, Opp'n at 8–9 (purporting to quote USOPC executive statements in an unrelated matter); 10 (alleging without basis that the USOPC "is privy to an athlete's weight, height, muscle composition, family background, diet"); 11 (alleging without basis that abuse and negligence "include offenses in Fiji, Switzerland, Nevada and many more locations"); 22 (claiming "we have learned" that Foley "took photographs when [] athletes were not fully clothed").  Plaintiffs' counsel's unfounded and immaterial assertions should be disregarded.  *See Harper v. Cherry*, 2021 WL 2168958, at *2 (C.D. Cal. Apr. 22, 2021) ("[T]he Court may not consider materials outside the complaint, including new allegations in the Opposition.").

whom Plaintiffs allegedly lost relationships.  *Id.*  Rather, if true, that would be factual information within Plaintiffs' knowledge.

Last, the Opposition relies on (and misquotes) *Fleites v. MindGeek S.A.R.L.*, which states that the "loss of employment opportunities and damage to [plaintiff's] image . . . *may be* cognizable."  617 F. Supp. 3d 1146, 1166 (C.D. Cal. 2022) (emphasis added).  But outside of special circumstances where a plaintiff is wholly prevented from pursuing any form of employment, the weight of authority in this Circuit has found that reputational harm is not cognizable under RICO.  *Compare, e.g.*, *Diaz v. Gates*, 420 F.3d 897, 898 (9th Cir. 2005) (finding RICO standing where plaintiff alleged lost employment, employment opportunities, and the inability to pursue gainful employment while "unjustly incarcerated"), *and Guerrero v. Gates*, 442 F.3d 697, 707 (9th Cir. 2006) (similar); *with, e.g.*, *Young v. Schultz*, 2023 WL 1784758, at *3 (N.D. Cal. Feb. 6, 2023) ("Plaintiffs also hint at potential reputational harm, but that injury is similarly not redressable under RICO."), *and Cobb v. JPMorgan Chase Bank, N.A.*, 2012 WL 5335309, at *5 (N.D. Cal. Oct. 26, 2012) ("[Plaintiff's] allegations of injury to his reputation or goodwill are personal injuries that are unconnected to a business or property interest."), *aff'd sub nom. Cobb v. JPMorgan Chase Bank NA*, 594 F. App'x 395 (9th Cir. 2015), *and Grotius v. Riverside Cnty.*, 2011 WL 2560245, at *4 (C.D. Cal. May 25, 2011) ("Plaintiff's allegations that he suffered 'emotional distress and suffering, the related social injury, and the financial injury, costs, expenses, and loss of earnings, and reputation' do not allege a RICO injury.").

     *b)*   *No Plausible RICO Enterprise or the USOPC's Participation in the Alleged Enterprise.*

As explained in the Motion, the conclusory allegations made in the FAC and relied on in the Opposition to argue the existence of an enterprise and the USOPC's alleged participation in such enterprise wholly fail to describe how defendants acted together or towards a common purpose.  They are thus textbook examples of *Iqbal*'s prohibition of a "formulaic recitation of the elements of a cause of action."  *See Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009); Mot. at 21–23.

Nor does the Opposition engage with the cases cited by the USOPC demonstrating that the FAC's RICO claim should be dismissed (Mot. at 21–23) or cite any contrary case law. The Opposition instead attempts to distract from the FAC's paucity of factual allegations indicating, for example, when and how the USOPC purportedly learned of Foley's alleged misconduct, by pointing to alleged social interactions a former USOPC employee (Alan Ashley) had with Foley and the snowboarding team when he was employed by USSS and how he allegedly handled sexual abuse claims in another sport. Opp'n at 20–21; FAC ¶¶ 75, 157, 222–25. These vague assertions do not allege an enterprise's existence or the USOPC's participation in it.

<em>c)    No Pattern of Racketeering Activity by the USOPC.</em>

The Opposition fails to remedy the FAC's failure to allege the requisite predicate acts and pattern of racketeering activity. *First*, the Opposition does not address the FAC's failure to meet Rule 9(b)'s heightened pleading standards for fraud-based predicate acts. Opp'n at 22; *Doan v. Singh*, 617 F. App'x 684, 685 (9th Cir. 2015); Mot. at 24–25. Absent detailed allegations regarding each defendant's alleged role in the fraud, mail and wire fraud cannot serve as a predicate act under RICO. *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1053 (C.D. Cal. 2016) ("[A]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged" and "[a] plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud.").

*Second*, the Opposition does not remedy the problems identified by the USOPC with the FAC's Mann Act claim. Mot. At 24. The Opposition advances the unsupported assertion that "*one* of the motivating purposes of the transportation . . . was to engage in the criminal sexual activity." Opp'n at 22 (emphasis added). But even this does not meet the standard for intent under the Mann Act, which requires that the "dominant, significant,

8

or motivating purpose of the transportation . . . was to engage in criminal sexual activity." *United States v. Flucas*, 22 F.4th 1149, 1150 (9th Cir. 2022).

*Third*, for the reasons discussed in Part I.B.2, *infra*, and the USOPC's Motion, the FAC fails to allege sex trafficking as a predicate act.

> 2.    <u>The FAC Fails to State a Claim Under the Trafficking Victims
> Protection Act (Claims 3, 5, and 7).</u>

The FAC fails to plausibly allege that the USOPC "knowingly benefited" from "participation in a venture" that it "knew or should have known has engaged in sex trafficking" or forced labor.  *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *4 (N.D. Cal. July 30, 2020).

None of the paragraphs of the FAC that the Opposition cites plausibly establishes that the USOPC knew of any alleged "sharing [of] bedrooms with male and female coaches and athletes," "culture of underage drinking," or "sexually charged environment."  Opp'n at 23 (citing FAC ¶¶ 73, 78, 122, 129, 132, 160–64, 231(f)).  There are no allegations, for instance, that USOPC employees witnessed any of these alleged acts.  Nor does the Opposition explain why any knowledge of underage drinking (even if true) would provide the USOPC with constructive knowledge of Foley's sexual abuse.  *Cf. Margaret W. v. Kelley R.*, 139 Cal. App. 4th 141, 158 n.20 (2006) (defendant's failure to inform minor plaintiff's parents about her consumption of alcohol did not make sexual assault foreseeable); *see also Steinborn v. Himmel*, 9 A.D.3d 531, 534 (N.Y. App. Div. 2004) (knowledge of a scout leader providing underage scouts with cigarettes and alcohol was insufficient to provide notice regarding the risk of sexual assault).

Similarly, the Opposition's renewed attempt to base liability on speculation about what former USOPC executive Alan Ashley knew or did not know should be rejected.  The FAC's allegations that Ashley was formerly employed by USSS and spent time socially with Foley and snowboarding athletes do not plausibly establish the USOPC's knowledge of the alleged abuse.  *See Jensen v. U.S. Tennis Ass'n*, 2020 WL 6445117, at *6 (D. Kan.

9

Oct. 30, 2020) (allegation that "sexual abuse within USO[P]C-controlled sports" was well-known failed to "plausibly suggest that plaintiff notified USTA about Coach Haultain's conduct or that USTA witnessed Coach Haultain's conduct."); *Doe v. Piraino*, 2023 WL 5310556, at *8 (M.D. Tenn. Aug. 17, 2023).

The Opposition's cited cases confirm that the FAC's allegations fall far short of meeting the standard necessary to survive a motion to dismiss. *Compare J. B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *8 (N.D. Cal. Aug. 20, 2020) (dismissing TVPRA claim despite allegations that defendant knew its website was used for sex trafficking from "lawsuits, government action, public outcry, news media, victims, activities and employee observation" because plaintiff failed to allege that defendant had a tacit agreement with the sex traffickers who victimized plaintiff), *and J.M. v. Choice Hotels Int'l, Inc.*, 2022 WL 10626493, at *5 (E.D. Cal. Oct. 18, 2022) (dismissing TVPRA claim despite allegations regarding defendants' "general knowledge of sex trafficking problems in the hotel industry [and] at defendants' franchisee hotels), *with Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 839 (C.D. Cal. 2021) (denying motion to dismiss TVPRA claim when plaintiff alleged that defendant had reviewed, approved, and featured videos of plaintiff on its platforms that had the word "teen" in the title and were categorized as teen pornography, and defendant had knowledge of the pervasiveness of child pornography on its platforms).

Finally, the Opposition does not contest that the FAC's TVPA claims against the USOPC are time barred.[6]  Mot. at 29.  And the Opposition's citation of a 2023 "technical and clarifying" amendment to 18 U.S.C. § 1595(a) that inserted "or attempts or conspires to benefit" after "whoever knowingly benefits" does not save the beneficiary or conspiracy TVPA claims.  Opp'n at 25–26.  The December 23, 2008 amendment to the statute, which

---

[6] The Opposition incorporates by reference arguments made in Plaintiffs' Opposition to USSS's Motion to Dismiss.  Opp'n at 17 n.5.  While that brief asserts that *USSS* is estopped from raising statute of limitations defenses as "USSS's pattern of control, manipulation, cover-ups, and the like deprived Plaintiffs of the opportunity to commence this lawsuit before now," ECF 88 at 36–37, there are no allegations in the FAC that the USOPC took any actions to discourage or prevent Plaintiffs from filing this lawsuit.  FAC ¶¶ 176–86.  The "estoppel by duress" arguments, ECF 88 at 37, therefore do not apply to the USOPC.

added beneficiary liability in the first place, was undisputedly not retroactive.  Thus, even if the 2023 amendment applied retroactively, it does not apply to any alleged conduct prior to the 2008 amendment.

### 3. The FAC Fails to State a Conspiracy to Sex Trafficking and Forced Labor Claim (Claim 8).

The Opposition's citation to the FAC's conclusory allegations regarding the conspiracy to sex trafficking and forced labor claim should be rejected for the reasons explained in the USOPC's Motion.  Mot. at 30–31.  Further, the Opposition's citation to various documents that allegedly "should have informed [the] USOPC" of purported reports of sexual abuse in youth sport, writ large, Opp'n at 25 (emphasis omitted), also fails to state a claim.  Numerous courts have found that general knowledge of sexual abuse is not sufficient to allege knowledge of the specific abuse of the plaintiff.  *See, e.g.*, *J.M.*, 2022 WL 10626493, at *5 (allegations of defendants' "general knowledge of sex trafficking problems in the hotel industry, or even at defendants' franchisee hotels, [were] insufficient to demonstrate defendants should have known about [plaintiff's] trafficking"); *Jensen*, 2020 WL 6445117, at *6 (allegation that "sexual abuse within USO[P]C-controlled sports" was well-known failed to "plausibly suggest" that USTA knew of coach's alleged misconduct).  Nothing in the articles cited indicates that the USOPC had contemporaneous knowledge of the alleged sexual abuse of *Plaintiffs* in the 1990s and early 2000s.

### 4. The FAC Fails to State a Sexual Assault Claim (Claims 11, 12, 13).

The Opposition does not dispute that California Code of Civil Procedure Section 340.16 does not provide an independent cause of action, *see* Mot. at 31, and acknowledges that Section 340.16 merely extends the statute of limitations for certain claims if certain prerequisites are established.  Opp'n at 26.  The Opposition also does not show that Plaintiffs may avail themselves of Section 340.16 to extend the statute of limitations, given that no alleged sexual abuse or misconduct occurred in California.  *See* Mot. at 31.  Moreover, even if California law were to apply to the alleged common-law claims (Counts

11

19, 20, and 21), none of the statutory prerequisites to revive those expired claims under Section 340.16 are satisfied. *See* Mot. at 31–32. For example, there are no specific allegations in the FAC regarding any purported "cover up" of the alleged abuse by the USOPC, which must be shown under Section 340.16 in order to extend the applicable statutes of limitations for the alleged common-law claims. *See* Opp'n at 27–28. Counts 19, 20, and 21 are therefore time-barred. *See* Mot. at 31–32.

### 5.   The FAC Fails to State a Claim for Negligence or Negligent Supervision (Claims 19, 20).

Even if they were not time-barred, the FAC's negligence-based claims fail because they do not establish a duty of care on the part of the USOPC—as the California Court of Appeal held in a materially identical case.[7] *See Brown v. USA Taekwondo*, 40 Cal. App. 5th 1077 (2019), *aff'd*, 11 Cal. 5th 204, (2021). The Opposition fails in its attempt to meaningfully distinguish this on-point precedent.

As discussed in the Motion, there is no duty to protect another from harm caused by third parties absent (1) a special relationship, and (2) public policy considerations that favor imposing such a duty (the *Rowland* factors). Mot. at 32–33. The *Brown* court held that the USOPC's ability to regulate an NGB did not impose a duty on the USOPC to prevent a coach from abusing an athlete because it "d[id] not establish that USO[P]C had the ability to control [the coach's] conduct." 40 Cal. App. 5th at 1102–03. The court also held that allegations that athletes were abused at events "sanctioned" by the USOPC were similarly insufficient to create such a duty. *Id.* at 1103.

The Opposition attempts to escape *Brown* with conclusory statements that mischaracterize and overstate the FAC's own allegations. The Opposition claims a special relationship existed between the USOPC and Foley because the USOPC "had direct control over placing and enforcing bans on Foley's participation in USOPC sponsored events."

---

[7] Duty is an essential element of a claim for negligent supervision as well as for ordinary negligence. *See Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 815–16 (2006) (negligent supervision claim failed because no duty of care established).

Opp'n at 29.  The Opposition purports to support this conclusion by citing to the vague allegation that "USSS and USOPC"—without differentiation—"had the ability to control Foley's conduct through hiring, disciplining, and firing Foley."  FAC ¶ 446.  The only specific allegation on this point is that the USOPC "'temporarily suspended' Foley during the Olympics" after his abuse came to light.  FAC ¶ 151.  This authority to suspend from the Olympic Games is derived from the USOPC's statutory ability to "facilitate . . . the resolution of conflicts or disputes . . . that arise in connection with [athletes and coaches'] eligibility for and participation in the Olympic Games."  22 U.S.C. § 220505(c)(5).

As the California Court of Appeal held in another analogous case, a limited "authority to discipline" after the fact will not create a special relationship "[a]bsent an ability to monitor [] day-to-day operations."  *Barenborg v. Sigma Alpha Epsilon Fraternity*, 33 Cal. App. 5th 70, 79–80 (2019) (holding that a national fraternity organization was not in a special relationship with local chapters, even though it had "the authority to discipline them for violations" "of general policies").  The ability to temporarily suspend Foley only within the context of the Olympic Games after his abuse came to light does not equate to day-to-day monitoring and control.  The Opposition ignores *Barenborg*; it also ignores the fact that Foley was employed by USSS, not the USOPC, and that USSS has a statutory mandate to remain "autonomous in the governance of its sport" and "not delegate decision-making and control of matters central to governance."  36 U.S.C. § 220522(5); FAC ¶ 456 (acknowledging that Foley was an employee of USSS, not the USOPC).  Neither the Opposition nor the FAC provide any basis to infer (because there is none) that the USOPC had the ability to control Foley's behavior day-to-day, when he was employed only by USSS and USSS is tasked by statute with independently governing its own affairs.

The Opposition also points to allegations that the USOPC "determines what athletes and coaches get to attend the Olympics" and that the USOPC paid for "expenses related to competitions, training sessions, and events" that were sponsored by the USOPC.  FAC ¶¶ 37, 39.  Even assuming the truth of these allegations, they are materially identical to

13

allegations that the *Brown* court considered and found insufficient to create a special relationship. *See, e.g.*, *Brown*, 40 Cal. App. 5th at 1101–02 (athletes' attendance at "competitions sanctioned by USO[P]C" were insufficient to create special relationship). Moreover, unlike in *Brown*, the FAC does not allege that any abuse occurred at any USOPC-sponsored events; the Opposition ignores this point. *See* Mot. at 35.

The Opposition goes on to argue that the USOPC was in a special relationship with athletes due to its "statutory obligations" to ensure fair selection of athletes for the Olympic Games and that NGBs have athlete safety policies. Opp'n at 30. The *Brown* court considered these same safety policy requirements and found them insufficient to establish a special relationship. *See Brown*, 40 Cal. App. 5th at 1103 ("The fact USO[P]C . . . require[d] national governing bodies to adopt safe sport policies[] does not mean USO[P]C had the ability to control [the coach's] conduct or was in the best position to do so."). The Opposition also points out that coaches and staff have "outsized control over the athletes['] lives and wellbeing," Opp'n at 30–31, while eliding the fact that these coaches and staff *are not employed by the USOPC*.[8]

Turning to the *Rowland* factors, the Opposition argues that Foley's abuse was foreseeable because Alan Ashley was present with Foley and athletes at social events. As discussed above, *supra* at Part I.B.2, these allegations are not enough to impute constructive knowledge of Foley's abuse. The Opposition also argues that the abuse was foreseeable because the USOPC was aware of other instances of coaches abusing athletes, but "[t]he fact USO[P]C was aware generally of coaches sexually abusing athletes in Olympic sports" does not mean it had the ability to foresee and prevent this one coach's specific abuse. *Brown*, 40 Cal. App. 5th at 1103. As for moral blame, the Opposition confusingly argues that the USOPC should be responsible by pointing to *USSS*'s power

---

[8] Other musings in the Opposition—*e.g.*, that the USOPC enacted anti-doping regulations, evaluated athletes' performance, and earned revenue from their competition, *see* Opp'n at 29, n.7, 30—are too generalized and attenuated to create any duty on the part of the USOPC to prevent the alleged sexual abuse of Plaintiffs.

and ability to protect athletes from abuse.  The fact that USSS was in a better position to protect athletes counsels *against* extending a duty to the much further-removed USOPC.[9]

> 6. <u>The FAC Fails to State an Intentional Infliction of Emotional Distress Claim (Claim 21).</u>

Neither the Opposition nor the FAC point to any specific allegations amounting to intentional infliction of emotional distress ("IIED").  An IIED claim requires "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009).  The Opposition gestures vaguely to the entire FAC and its legal conclusion of a "long running sex-trafficking scheme and assistance in covering it up," without pointing to any specific instance of extreme and outrageous conduct on the part of the USOPC.  *See* Opp'n at 35–36.  The Opposition then relies on bald conclusions—that "USOPC fosters a culture of fear" and that "USSS and USOPC" (without differentiation) "shielded" Foley and "failed to protect the female athletes of their organizations."  *Id.*  These purely conclusory assertions, lacking in any specific facts, cannot state a claim for IIED.

Finally, the Opposition paradoxically cites to *Brown*, which held that an IIED claim could not be established against *either the USOPC or an NGB* due to a coach's abuse of an athlete.  40 Cal. App. 5th at 1109.  In dicta, the court also observed than an IIED claim could possibly be stated if *the NGB* did not protect athletes after learning about abuse, but this says nothing of the USOPC's role—which in fact did suspend Foley from participation in the Olympic Games when it learned of his abuse, as the FAC admits.

## II.   CONCLUSION

The USOPC respectfully requests that the Court dismiss the FAC with prejudice.

---

[9] The Opposition adds a final footnote suggesting that the USOPC was negligent because it "placed Plaintiffs" in "alcohol fueled and sexually charged parties and co-ed hotel beds" with "Foley and other bad actors."  Opp'n at 34 n.8.  The Opposition does not cite to any allegation in the FAC to support this contention, and there is none.

DATED:  September 15, 2023                    COVINGTON & BURLING LLP

                                              By:   _/s/ Lindsey Barnhart_
                                                   Lindsey Barnhart
                                                   *Lead Trial Counsel for USOPC*


### L.R. 11-6.2 Certificate of Compliance

The undersigned, counsel of record for Defendant United States Olympic and Paralympic Committee, certifies that this brief does not exceed 15 pages and therefore complies with the Court's Standing Order (ECF 23), entered in this case on February 28, 2023.


DATED:  September 15, 2023                    _/s/ Lindsey Barnhart_
                                              Lindsey Barnhart