1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROSEY FLETCHER, ERIN O'MALLEY, and CALLAN CHYTHLOOK-SISOF, <br>                              Plaintiffs, <br>         v. <br><br> PETER FOLEY, UNITED STATES SKI AND SNOWBOARD, and UNITED STATES OLYMPIC AND PARALYMPIC COMMITTEE, <br>                            Defendants. | Case No. 2:23-cv-00803-SPG-JPR <br><br> **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 78, 80, 81]** |

      Before the Court are three motions to dismiss ("Motions"), filed by Defendants Peter Foley, United States Ski and Snowboard, and United States Olympic and Paralympic Committee, respectively.   (ECF Nos. 78, 81, 80).   Having considered the parties' submissions, oral arguments, the relevant law, and the record in this case, the Court GRANTS Defendants' Motions.

-1-

## I.   BACKGROUND

### A.   Procedural Background

Plaintiffs filed their original complaint in this action on February 2, 2023.  (ECF No. 1).  On May 15, 2023, Plaintiffs filed the operative First Amended Complaint.  (ECF No. 53 ("FAC")).  On June 30, 2023, Defendant Peter Foley ("Foley"), Defendant United States Ski and Snowboard ("USSS"), and Defendant United States Olympic and Paralympic Committee ("USOPC") all filed individual motions to dismiss.  (ECF No. 78 ("Foley MTD")); (ECF No. 80 ("USOPC MTD")); (ECF No. 81 ("USSS MTD")).  Defendant Foley also filed a Notice of Joinder in USSS's MTD.  (ECF No. 79).  Plaintiffs opposed each of the Motions, and Defendants replied.  (ECF No. 88 ("Opp. to USSS MTD")); (ECF No. 89 ("Opp. to USOPC MTD")); (ECF No. 90 ("Opp. to Foley MTD")); (ECF No. 91 ("USOPC Reply")); (ECF No. 92 ("Foley Reply")); (ECF No. 93 ("USSS Reply")).

### B.   Factual Background

The following allegations are taken from Plaintiff's First Amended Complaint ("FAC"):

Plaintiffs Fletcher, O'Malley, and Chythlook-Sifsof are all former competitive snowboarders, who were coached by Defendant Foley during their time competing on the USSS Team ("the Team").  (FAC ¶ 71).  Plaintiffs allege that Foley sexually and/or mentally abused at least three of the snowboard athletes he coached on the Team.  (*Id.* ¶ 69).  They also allege that he would get into bed with young female team USA athletes in his hotel room, socialize with athletes inappropriately, often encouraging underage drinking, and would make crude comments about young female athletes' bodies.  (*Id.* ¶ 70–75).  In addition to these general allegations, Plaintiffs each make allegations about ways in which Foley mistreated them individually.

Plaintiff Fletcher competed for the Team for almost ten years, including at three winter Olympics.  (*Id.* ¶ 80).  She believed that Foley controlled whether she would become an Olympian and would have control over her career outside the Olympics, as well.  (*Id.* ¶ 80–83).  When Fletcher was 19 years old, after attending a training camp in Mammoth

Mountain, California, in 1994, she and the snowboarding team spent the night in Reno, Nevada. (*Id.* ¶ 85). Plaintiff alleges that she had been asleep in bed in the hotel when she was awoken by Foley climbing into her bed and sexually assaulting her. (*Id.* ¶ 85–86). Plaintiff Fletcher also alleges that several years later in 1997, Foley assaulted her again as she was exiting a postrace event in San Candido, Italy. (*Id.* ¶ 87–88). Finally, Plaintiff alleges that in 2006, at a postrace event in Turin, Italy, after Plaintiff had won an Olympic Medal, Foley made suggestive comments to her and referenced the first instance of assault he had committed against her. (*Id.* ¶ 90). Fletcher alleges that she feared physical and professional retaliation from Foley, which led her to stay silent, even while she suffered from humiliation, guilt, shame, and disgust. (*Id.* ¶¶ 93–95).

Plaintiff O'Malley joined the Team in 1995, not long after Fletcher. (*Id.* ¶ 96). She competed with the team until retiring from the sport, early, in 2003. (*Id.*). O'Malley alleges that Foley began mentally and verbally abusing her when she was fifteen years old, calling her "chubby" and causing her to develop an eating disorder. (*Id.* ¶¶ 100–101). O'Malley further alleges that one night after a competition, Foley pinned her back against the wall of an elevator and attempted to kiss her without her consent. (*Id.* ¶ 103). She alleges that Plaintiff Fletcher was present and witnessed the assault, as did unnamed USSS personnel. (*Id.*). Plaintiffs Fletcher and O'Malley allege that they ran out of the elevator and, after Foley chased them into their room, pleaded with him to leave them alone. (*Id.* ¶¶ 104–106). Although he ultimately left the room, both Plaintiffs allege that it worsened their trauma and made them feel unsafe. (*Id.* ¶¶ 107–109). Plaintiff O'Malley alleges that, but for Foley's abuse, her snowboarding career would have continued beyond 2003. (*Id.* ¶ 110). She also alleges that she felt she could not report the abuse and/or that reporting would lead nowhere due to Foley's power. (*Id.* ¶ 111). However, in March 2022, O'Malley did report the alleged abuse. (*Id.* ¶ 112).

Plaintiff Chythlook-Sifsof competed for the US Snowboard Team from 2005 until 2014, including at the Winter Olympics in Vancouver in 2010. (*Id.* ¶ 114). When she began training and competing with the Team, she was 15 years old. (*Id.*). Shortly after

making the US Team, Chythlook-Sifsof alleges that Foley made lewd comments to her about another young woman. (*Id.* ¶ 118). She also recalls Foley taking nude photos of female athletes. (*Id.* ¶ 119). Chythlook-Sifsof alleges that Foley's examples of abusive behavior allowed the creation of a culture of inappropriate behavior, including sexually explicit comments, sexual abuse, and underage drinking. (*Id.* ¶¶ 120–122). Plaintiff alleges that she was forced to listen to these conversations and was subjected to abuse during them, including racial discrimination and harassment. (*Id.* ¶ 123). In 2005, while in attendance at her first Junior World Championship on behalf of the US Snowboard Team, in Zermatt, Switzerland, Chythlook-Sifsof alleges that she was encouraged to attend a party with the athletes and coaches that involved heavy drinking. (*Id.* ¶ 126–128). She was sixteen at the time. (*Id.* ¶ 128). Plaintiff alleges that she was encouraged by adults on the Team to drink excessively and that those same adults, personnel of Defendants USSS and USOPC, did nothing to stop a Czech coach, who was much older than Chythook-Sifsof, from taking her back to his room. (*Id.* ¶ 129). She alleges that the Czech coach then sexually assaulted her, when she should have been protected by the adults who brought her to the competition. (*Id.* ¶¶ 130–31). Plaintiff alleges that USSS never put in place any safeguards to protect athletes or warn parents or athletes that Team trips often included partying. (*Id.* ¶ 134). In the wake of these experiences, Chythlook-Sifsof attempted to protect herself by distancing herself from Foley and other coaches and athletes who made her uncomfortable. (*Id.* ¶ 135). She found that these efforts were met with a decline in professional opportunities and ultimately led her to retire from competition. (*Id.* ¶¶ 136–37). However, in 2021, Chythlook-Sifsof was hired as a coach for the US Paralympics Snowboarding National Team. (*Id.* ¶ 141). In this role, with other athletes in her care, she publicly reported Foley's behavior in February 2022. (*Id.* ¶¶ 142–44). She alleges that the trauma from her interactions with Foley and the Team as a young adult led to ongoing emotional trauma. (*Id.* ¶ 146).

All the Plaintiffs share in their allegations that their complaints, even after publicly reporting them, fell on deaf ears. (*Id.* ¶ 182). They allege that USSS and USOPC wanted

1    to protect Foley.  (*Id.* ¶ 184–85).  They allege that the efforts to protect Foley allowed

2    further abuse and were made in an effort to keep Foley coaching and leading the team to

3    further Olympic medals and other financial benefits for the organizations.  (*Id.* ¶¶ 203–

4    207).

5    **II.    LEGAL STANDARD**

6        **A.    Motion to Dismiss Under Rule 12(b)(2)**

7          Defendants may move to dismiss for lack of personal jurisdiction pursuant to Federal

8    Rule of Civil Procedure 12(b)(2).  "Where a defendant moves to dismiss a complaint for

9    lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that

10   jurisdiction is appropriate."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d. 797,

11   800 (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).  In determining whether

12   jurisdiction is appropriate, the court is permitted to consider evidence introduced by

13   declaration or affidavit and it may order jurisdictional discovery, if necessary.  *Doe v.

14   Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citing *Data Disc, Inc. v. Sys. Tech.

15   Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).  If the motion to dismiss for lack of

16   personal jurisdiction is not based upon an evidentiary hearing and is based solely upon

17   written materials, a plaintiff need only make a prima facie showing of facts supporting

18   jurisdiction to survive the motion.  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218,

19   1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124,

20   1127 (9th Cir. 2010)).  A plaintiff cannot "simply rest on the bare allegations of its

21   complaint," but uncontroverted allegations in the complaint must be taken as true by the

22   court.  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)

23   (citation omitted).  Finally, genuine "[c]onflicts between parties over statements contained

24   in affidavits must be resolved in the plaintiff's favor."  *Schwarzenegger*, 374 F.3d at 800

25   (citations omitted).

26   **III.   DISCUSSION**

27         Defendants USSS, USOPC, and Foley all challenge both this Court's personal

28   jurisdiction and the adequacy of Plaintiffs' allegations as to each of the claims in the FAC.

Because the Court finds that it does not have personal jurisdiction over Defendants as currently alleged, it does not reach the arguments on the merits of Plaintiffs' claims.

### A.   Personal Jurisdiction

Where there is no applicable federal statute governing personal jurisdiction, district courts apply the law of the state in which they sit. *See* Fed. R. Civ. P 4(k)(1)(A). California's long-arm jurisdictional statute is coextensive with federal due process requirements, therefore, the jurisdictional analyses under state law and federal due process are the same. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).   Minimum contacts may be established via general jurisdiction or specific jurisdiction.  General jurisdiction exists where the defendant's contacts with the forum state "are so 'continuous and systematic' as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 317)).  Specific jurisdiction exists when the plaintiff's claims or causes of action "arise out of or relate to" the defendant's contacts with the forum state.   *See Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Here Plaintiffs argue that all three defendants are properly subject to both general and specific personal jurisdiction in California.  Defendants dispute that they are subject to personal jurisdiction at all.  The Court therefore will analyze each basis.

### B.   General Personal Jurisdiction

Courts have general jurisdiction over a defendant only when the defendant's contacts with the forum state are "so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (alteration original). Claims based on general jurisdiction "need not relate to the forum State or to the

defendant's activity there; they may concern events and conduct anywhere in the world. *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). However, given the breadth of this jurisdiction, "only a select 'set of affiliations with a forum' will expose a defendant to such sweeping jurisdiction." *Id.* (citing *Daimler AG*, 571 U.S. at 137). For instance, individuals are subject to general jurisdiction in their place of domicile. *Id.* Meanwhile, corporations are subject to general jurisdiction in their place of incorporation and their principal place of business. *Id.*

Plaintiffs here argue that Defendants Foley, USSS, and USOPC may all be properly subject to general jurisdiction in California. However, as Plaintiffs' FAC makes clear on its face, Defendant Foley is domiciled in Oregon. (Compl. ¶ 16). Defendant USSS has both its principal place of business and its headquarters in Park City, Utah. (*Id.* ¶ 18). Similarly, Defendant USOPC has its principal place of business and its headquarters in Colorado. (*Id.* ¶ 20). Therefore, Plaintiffs do not allege, nor do they argue, that any of the Defendants fit the typical bases for general jurisdiction. Instead, pointing to cases that predate *Daimler* and the Supreme Court's limitation of general jurisdiction in that case, Plaintiffs argue that Defendants have such systematic and continuous connections to California that they may be properly subjected to general jurisdiction. The Court disagrees. In *Daimler*, the Supreme Court made clear that general jurisdiction may not be based solely on a corporation's engagement in "a substantial, continuous, and systematic course of business in a forum." *Daimler*, 571 U.S. at 137–38. Instead, the Court found that such a "formulation" would be "unacceptably grasping." *Id.* at 138. While the Court did not "foreclose the possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State," the allegations in the instant case do not rise to such a level. *Id.* at 139 n. 19.

In making the decision in *Daimler*, the Supreme Court cited to its prior case, *Perkins v. Benguet Consol. Mining Co.*, as an example of the type of exceptional case that would justify the exercise of general jurisdiction over a corporation in a forum where it was not

incorporated and did not maintain its principal place of business. *Id.* at 129. However, the facts of *Perkins* are indeed rare. In *Perkins*, the plaintiff sued a mining company that was incorporated in and had its principal place of business in the Philippines. *Perkins v. Benguet Colsol. Mining Co.*, 342 U.S. 437, 438–39 (1952). During the Japanese occupation of the Philippines, the company's president, who was also the principal stockholder and general manager of the company, relocated to Ohio, where he maintained an office, conducted much of the company's business, and stored company files. *Id.* at 447–48. The Court recognized that, in this unique circumstance, because the president of the company essentially ran the company out of Ohio, the activities were so "continuous and systematic" as to justify exercising general jurisdiction in that state. *Id.* at 448–49. In essence, the defendant company had its principal place of business temporarily relocated.

In contrast, here, there are no such exceptional allegations. Plaintiffs allege that Defendant Foley regularly visited California with USSS. (FAC ¶ 19). They allege that USOPC has official training sites for athletes in California and has conducted business in the state related to multiple Olympic games. (*Id.* ¶¶ 19–24). Finally, Plaintiffs allege that USSS routinely sends athletes to its California training location at Mammoth Mountain, recruits heavily from California, and deploys personnel to California in relation to training sessions and competitions in the state. (*Id.* ¶¶ 19, 26). None of these allegations present an exceptional case, like that in *Perkins*, that transform an out-of-state corporation or individual's contacts with the forum such that they may be considered "at home." Therefore, the Court does not possess general personal jurisdiction over Defendants and must determine whether it may properly exercise specific personal jurisdiction.

### C.   Specific Personal Jurisdiction

A three-prong test applies for analyzing a claim of specific personal jurisdiction: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises

out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger*, 374 F.3d at 802.  The plaintiff bears the burden of proving the first two prongs of the test.  *Id.*  If the plaintiff fails to demonstrate either, the forum state does not have personal jurisdiction.  *Id.*  However, if the plaintiff succeeds in demonstrating both prongs, the burden shifts to the defendant to demonstrate that the exercise of jurisdiction would not be reasonable.  *Burger King*, 471 U.S. at 476–78.

The first prong of this test asks courts to apply either a "purposeful availment" or "personal direction" standard.  *Schwarzenegger*, 374 F.3d at 802.  Historically, the purposeful availment standard has typically been applied in actions based on contract while the purposeful direction standard has typically been applied to actions sounding in tort.  *Unocal*, 248 F.3d at 915.  However, in a series of recent cases, the Ninth Circuit has repeatedly stated that these typical applications do not create a "hard-and fast-rule."  *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023); *see also Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1088–89 (2023).  Instead, the Ninth Circuit has found that "the purposeful direction and availment tests simply frame [the] inquiry into the defendant's purposefulness vis-à-vis the forum state, ensuring that defendants are not haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Impossible Foods*, 80 F. 4th at 1089 (internal citations omitted).  Therefore, instead of considering merely the nature of a plaintiff's claims when deciding which test applies, "courts should comprehensively evaluate the extent of the defendant's contacts with the forum state and those contacts' relationship to the plaintiff's claims—which may mean looking at both purposeful availment and purposeful direction."  *Davis*, 71 F.4th at 1162.

Here, Plaintiffs' claims sound in tort.  Furthermore, the tort allegations involve alleged conduct outside the forum, such that purposeful direction would typically apply. *See Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018) (finding effects test under purposeful direction inquiry appropriate where allegations are based on torts allegedly committed outside the forum).  However, as Plaintiffs argue,

Defendants' other, non-tortious, contacts with California are not irrelevant and may be examined under the purposeful availment prong to determine whether Plaintiffs' overall allegations satisfy the first prong of specific jurisdiction.

1. Purposeful Direction

Typically for claims sounding in tort, as Plaintiffs' claims of assault here do, courts "apply a 'purposeful direction' test and look to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Picot v. Weston*, 780 F.3d 1206, 1212 (quoting *Schwarzenegger*, 374 F.3d at 802–03). To find purposeful direction, the defendant allegedly must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (internal quotations and citations omitted). "Failing to sufficiently plead any one of these three elements is fatal to Plaintiff's attempt to show personal jurisdiction." *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1163 (N.D. Cal. 2014) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128–29 (9th. Cir. 2010)).

Here, the allegations contained in the FAC do not support personal jurisdiction over Defendants based on purposeful direction alone because there is no allegation that Foley, USOPC, or USSS inflicted harm on the Plaintiffs that was directed at California. *See Davis*, 71 F.4th at 1163 ("Harm suffered in the forum state is a necessary element in establishing purposeful direction."). Plaintiffs allege that Foley sexually assaulted them in various locations all outside of California and that USOPC and USSS covered up those assaults. There are no allegations that, at the time of the assaults, any of the Plaintiffs resided in California such that the harm of the assault would have foreseeably been suffered in California. The FAC alleges that the assaults of Plaintiff Fletcher took place in Nevada and Italy. Similarly, the alleged assault of Plaintiff O'Malley took place in Colorado, and the alleged assault of Plaintiff Chythlook-Sifsof took place at the hands of a third-party in Switzerland. Additionally, while Plaintiffs allege a larger culture of harassment, sharing of naked or partially nude photos of young female teammates, and other potentially tortious

conduct, none of it is alleged to be expressly aimed at or related to California. Express aiming requires more than the idea that an injury to a plaintiff, however terrible, "would follow [her] wherever [s]he might choose to live or travel." *Picot*, 780 F.3d at 1215. Instead, it requires that the alleged tortious conduct be directed not only to a Plaintiff, who herself has ties to California, but at the forum itself through, for instance, occurring in the state, contacting a person in the state, or otherwise reaching out to the state. *Id.* Similarly, the allegations that USSS and USOPC failed to protect their young female athletes and, indeed, allegedly furthered Foley's ability to continue to engage in inappropriate behavior, as currently stated, have no clear ties to California. There is no express allegation that any sexually inappropriate behavior took place in California or that Defendants knew that their actions would have impacts in California beyond the individual Plaintiffs' potential travel there for training or competitions.

Instead, Plaintiffs make a novel argument regarding the nature of the harm caused by sexual assault. Plaintiffs ask the Court to find that, because of the invasiveness of the alleged assaults and the unique relationship these athletes had with Defendant Foley, as well as USSS and USOPC, the harm was directed at and foreseeably felt in California. Plaintiffs point to USSS training and competition in California and the alleged travel of these Plaintiffs to California with Foley and the team to argue that the harm of the assault continued into California. While the Court recognizes the appeal of such an argument and that there may indeed be something unique about the relationship between a young athlete and the coach that controls her access to success in her sport, the Court need not traverse that slippery slope today. Instead, the Court looks to purposeful availment and the Ninth Circuit's more expansive understanding of the first prong of specific personal jurisdiction to determine whether it may appropriately reach all three named Defendants.

### 2. Purposeful Availment

A defendant may be deemed to have purposefully availed itself of a forum when its dealings with a state establish a "quid pro quo." *Schwarzenegger*, 374 F.3d at 802. In other words, where a defendant "purposefully avails itself of the privilege of conducting

activities within the forum state, thus invoking the benefits and protections of its laws," in return it must "submit to the burdens of litigation in that forum." *Id.* Purposeful availment may thus be found where the defendant "deliberately reache[s] out beyond its home – by for example, exploiting a market in the forum state or entering a contractual relationship centered there." *Yamashita v. LG Chem., Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023). To make this determination, courts look to a defendant's "entire course of dealing" with the forum state, rather than "solely the particular contract or tortious conduct giving rise to [a] claim." *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1108 (9th Cir. 2020).

Here, Plaintiffs allege that each of the Defendants had varying levels of contacts with California. First, Plaintiffs allege that Defendant Foley frequently traveled to California and regularly brought his athletes to the state for competitions and training at both Mammoth Mountain and Tahoe. Second, Plaintiffs allege that USSS has an official training site at Mammoth Mountain Ski Area and that the team, including coaches, athletes, and personnel, attended training camps, media events, fundraisers, and competitions in California. (FAC ¶ 19). Third, Plaintiffs allege that USOPC has repeatedly organized Olympic Games in California and has multiple training facilities in California. (FAC ¶ 23). While Plaintiffs have not specifically alleged that a contract existed between any of the Defendants and any entity in the forum, Plaintiffs have alleged overall courses of dealing that demonstrate sufficient availment of the forum. Plaintiffs have alleged that USSS, Foley, and USOPC have all, in different ways, reached beyond their home fora and engaged in substantial enough activities within the state to invoke the benefits and protections of its laws. *Schwarzenegger*, 374 F.3d at 802. Therefore, Defendants can also reasonably expect to submit to litigation within the forum, and their contacts are not so fortuitous or attenuated that an exercise of specific jurisdiction would violate due process. *See Impossible Foods*, 80 F.4th at 1090 (finding company's prior base in California sufficiently demonstrated purposeful availment even though at the time of the action, it had moved out of state). Thus, because Plaintiffs have adequately demonstrated the first prong

of the analysis here, the Court turns to whether the alleged contacts arise out of or relate to the instant action.

### 3. Arising Out of or Relating To

The second prong of the personal jurisdiction analysis asks the Court to consider "the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to the contacts." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (en banc). For an injury to arise out of a defendant's forum contacts, "a direct nexus [must] exist[] between [a defendant's] contacts [with the forum state] and the cause of action." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013). However, the Supreme Court has also made clear that "arise out of" and "relate to" should be seen as alternatives, such that personal jurisdiction may exist "without a causal showing." *Ford*, 141 S. Ct. at 1026. This "does not mean that anything goes," such that "relate to" still "incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.* The Ninth Circuit has interpreted these limits to mean that a plaintiff's injury sufficiently relates to a defendant's forum contacts if: (1) "similar injuries will tend to be caused by those contacts;" or (2) the "defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 505–506 (9th Cir. 2023). The Ninth Circuit has also found that "a stronger showing of purposeful contacts with the forum state will permit a lesser showing of relatedness to the litigation." *Impossible Foods*, 80 F.4th at 1091 (internal citations omitted). Meanwhile, "[a] single contact with the forum state may be sufficient to support jurisdiction if the action arises out of that particular purposeful contact of the defendant with the forum state." *Id.* (internal citation omitted).

Here, a direct nexus under the arising out of test does not exist. As already previewed, Plaintiffs' specific factual allegations of harm from assaults allegedly carried out by Foley and allegedly hidden by USSS and USOPC do not "arise out of" Defendants' contacts with the state. The allegations in this action relate to sexual assaults and a cover up of those assaults that all took place outside of California. The contacts Plaintiffs have

-13-

alleged that each Defendant possesses with California – namely, travel to the state for competitions and training, fundraising activities in the state, and using facilities within the state – do not have a direct nexus with the claims in this action.  The only allegation in this action that approaches but falls short of this level of proximity is allegations regarding Plaintiff Fletcher's assault in Reno, Nevada, which is alleged to have occurred after Fletcher had first attended a training camp in Mammoth, California.  However, this allegation does not demonstrate a sufficiently "direct nexus" with the Defendants' California contacts.  Therefore, the Court looks to the broader "related to" prong to determine whether it possesses personal jurisdiction over each of the Defendants.

Much of the precedent regarding the sufficiency of allegations that a defendant's contacts are "related to" claims in an action has been developed in the context of a stream of commerce analysis.  *See Ford*, 141 S. Ct. at 1026 (involving Ford's advertising, marketing, and sale of the type of cars that caused the injury in the forum states).  For example, in *Ford*, the Supreme Court held in a product liability case that Ford could be subject to specific personal jurisdiction in states where it did not make, sell, or design the particular model that was involved in the accident, because Ford had "systematically served a market" in those states through comprehensive auto sales, service, and marketing efforts. *See id.*, at 1028–29.  The Ninth Circuit, in the wake of *Ford*, applied the "related to" prong to another stream of commerce case.  *Yamashita*, 62 F.4th at 505.  The *Yamashita* Court looked to Ford for theories of what might satisfy the "related to" prong, and found that "relatedness proxies for causation, ensuring jurisdiction over a class of cases for which causation seems particularly likely but is not always easy to prove."  *Id*.  On this basis, the Court found that "a plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by those contacts."  *Id.*  The Ninth Circuit in *Yamashita* also reasoned that, just as Ford's "extensive marketing" of the car models involved in that suit led to sufficient relatedness, a plaintiff's injury more generally "relates to a defendant's forum contacts if the defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff."  *Id.* at 506.

-14-

1    Then, in *Impossible Foods*, the Ninth Circuit applied the "related to" test outside of
2    the stream of commerce context. *Impossible Foods Inc.*, 80 F.4th at 1079. The *Impossible*
3    *Foods* Court found that a declaratory judgment action for trademark non-infringement was
4    sufficiently "related to" the challenging defendant's contacts with the forum because the
5    defendant had previously been headquartered in the state and had conducted most of its
6    trademark building activities in the forum. *Id.* Therefore, the heart of the dispute, the legal
7    rights over the trademark, were closely tied to the forum. *Id.* at 1097. Most recently, the
8    Ninth Circuit found that a consumer's claims of harm due to a shopping website's
9    extraction and processing of his personal information was not sufficiently related to the
10   website's contacts in the forum, including brick and mortar operations and contracts with
11   merchants in the state. *Briskin v. Shopify, Inc.*, 87 F.4th 404, 414–415 (9th Cir. Nov. 28,
12   2023). The Court found that the plaintiff "would have suffered the same injury regardless
13   of whether he purchased items from a California merchant or was physically present in
14   California when he did so." *Id.* It also rejected the idea that the shopping company's
15   "broader business actions in California set the wheels in motion for" the privacy-related
16   harm alleged. (*Id.*).

17   With this guidance in mind, Plaintiffs' claims here are not sufficiently "related to"
18   Defendants' contacts with the forum. While Plaintiffs allege that Foley and USSS made
19   frequent trips with athletes, including Plaintiffs, to the forum for competitions and
20   trainings, there are no allegations that any of the assaults took place in the forum.
21   Therefore, based on the allegations, like the plaintiff in *Briskin*, Plaintiffs here would have
22   suffered the same injury regardless of whether Foley and USSS generally encouraged
23   travel to California for meets and competitions. The larger conduct alleged of a culture of
24   sexually explicit language, underage drinking, and sharing rooms between young athletes
25   and adult male coaches, while troubling, does not create a sufficient relation, as currently
26   alleged. This culture did not make it "foreseeable" that assaults might occur in California.
27   Indeed, to make such a finding would be to reach personal jurisdiction beyond the bounds
28

set forth by the Supreme Court in *Ford*, when it cautioned that "relates to" "does not mean anything goes." *Ford*, 141 S. Ct. at 1026.

Plaintiffs' allegations under the "related to" prong are even more tenuous as to USOPC. Plaintiffs allege that USOPC recruited athletes from California, organizes Olympics in California, and has training facilities in Southern California. However, Plaintiffs have not alleged that the US Snowboard team ever trained at these facilities, that Plaintiffs themselves trained at these facilities, or that Plaintiffs would have been eligible for any Olympics held in California. Therefore, even under the more expansive conception of the "related to" prong, Plaintiffs have not established that this Court may exercise personal jurisdiction over USOPC.

Overall then, because the Court finds that Plaintiffs have not adequately alleged that their claims arise out of or relate to Defendants' contacts with the forum, the Court does not reach the reasonableness of any exercise of jurisdiction over Defendants.

### D.    Leave to Amend and Jurisdictional Discovery

Defendants all ask the Court to dismiss with prejudice, arguing that any amendment would be futile. Plaintiffs meanwhile argue that, if the Court finds that they have not adequately alleged personal jurisdiction, they should be allowed to engage in limited jurisdictional discovery. The Court addresses each argument in turn.

First, leave to amend in the Ninth Circuit is to be "freely given." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal citation omitted). While courts have greater discretion to deny leave to amend where a plaintiff has already amended their complaint, prior amendment alone is not sufficient grounds to deny leave. Here, Plaintiffs have only made one attempt to amend their pleadings, and the Court does not find amendment would be futile. Therefore, the Court grants leave to amend.

As to jurisdictional discovery, however, the Court is not persuaded that it would be appropriate here. "Discovery is available in federal court to establish the presence of personal jurisdiction in that court." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001) (internal citations omitted). Jurisdictional discovery is particularly appropriate when

"pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (quoting *Data Disc, Inc.*, 557 F. 2d at 1285 n.1). On the other hand, "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery . . . ." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)).

Here, at oral argument, Plaintiffs argued for jurisdictional discovery to demonstrate the extent of Defendants' contacts with the forum through, for instance, evidence of fundraising efforts and recruitment in California. However, this evidence would appear to support the purposeful availment and purposeful direction prong of the analysis, which the Court has already found satisfied. It is not clear, based on Plaintiffs' arguments, what additional information would be found through jurisdictional discovery that would bolster the relation of the claims asserted to the contacts already described. Therefore, the Court denies Plaintiffs' request for jurisdictional discovery.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS each Defendant's Motion to Dismiss. Plaintiffs shall file an amended complaint, if any, within twenty-one (21) calendar days of the publication of this order.

DATED:  December 26, 2023

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

-17-